IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LEANDRA ENGLISH,
*Plaintiff*,

v.

DONALD J. TRUMP and
JOHN M. MULVANEY,
*Defendants*.

Case No. 1:17-cv-02534

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER

Effective at midnight on November 24, 2017, Richard Cordray resigned as the Director of the Consumer Financial Protection Bureau. Upon his absence, plaintiff Leandra English, the Deputy Director, became Acting Director. Congress's succession plan for the agency mandates that, until the Senate confirms a permanent replacement, the Deputy Director "shall . . . serve as the Acting Director in the absence or unavailability of the Director." 12 U.S.C. § 5491(b)(5)(B). Despite this statutory mandate, President Trump announced on the evening of the 24th that he was designating defendant Mulvaney, a White House official, as interim head of the CFPB.

Acting Director English seeks a temporary restraining order (1) prohibiting the President from appointing or recognizing a new Acting Director of the Bureau and (2) prohibiting Mr. Mulvaney from holding that position or exercising the Bureau's authority until this Court has had time to hear from both sides and consider the merits.

A temporary restraining order is appropriate here for four reasons. First, as dictated by statute, Ms. English currently holds the position of Acting Director. Second, the President does not have the authority he claims under the Federal Vacancies Reform Act to replace her. Third, the President's appointment of a still-serving White House official would violate the legal

requirement that the CFPB be an independent agency. Lastly, the equities strongly counsel maintaining the status quo and avoiding the confusion and irreparable harm that would follow from allowing the parties' conflicting claims to go unsettled.

## LEGAL STANDARD

The standard for obtaining a temporary restraining order is well established. Courts evaluate a request for preliminary relief, via TRO or preliminary injunction, under a four-factor test. *See Chaplaincy of Full Gospel Churches v. England,* 454 F.3d 290, 297 (D.C. Cir. 2006); *Council on Am.-Islamic Relations v. Gaubatz*, 667 F. Supp. 2d 67, 74 (D.D.C. 2009). The party seeking the injunction must show "(1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction were not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction." *Chaplaincy*, 454 F.3d at 297. If a showing in any one of these areas is particularly strong, "an injunction may issue even if the showings in other areas are rather weak." *Id.*

## ARGUMENT

### I.    Ms. English has a substantial likelihood of success on the merits.

#### A.    Ms. English is the Acting Director of the Bureau.

Ms. English has a clear legal entitlement to the position of Acting Director of the CFPB. At the moment that Director Cordray's resignation became effective, she was the agency's Deputy Director, a position created by Congress through the Dodd-Frank Act. *See* 12 U.S.C. § 5491(b). The statutory provision creating the position states, in mandatory language, that the Deputy Director "shall . . . serve as Acting Director in the absence or unavailability of the Director." *Id.* § 5491(b)(5)(B). Under a plain reading of this language, the Deputy Director automatically becomes the Acting Director when the Director leaves office: a Director who is no longer serving in office is "absent" as well as "unavailable." *See, e.g., Absent*, Merriam Webster

Online Dictionary, https://www.merriam-webster.com/dictionary/absent (defining "absent" as "not existing: lacking"); *Unavailable*, Merriam Webster Online Dictionary, https://goo.gl/MwSrpD (defining "unavailable" as "not available: such as . . . unable or unwilling to do something"); *see generally Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187 (1995) ("When terms used in a statute are undefined, we give them their ordinary meaning.").

Thus, when a Director resigns, the Deputy Director serves as Acting Director. 12 U.S.C. § 5491(b)(5)(B). This legal arrangement was triggered by the resignation of Director Cordray on November 24. *See* C. Ryan Barber, *Read: Consumer Bureau Director Richard Cordray's Resignation Letter*, National Law Journal (Nov. 24, 2017), https://goo.gl/B9nU79. But, in contravention of this clear statutory directive, the President announced that he was appointing Mr. Mulvaney, the Director of the White House Office of Management and Budget, to be the Acting Director of the CFPB.

The President's purported appointment of Mr. Mulvaney is unlawful. To justify the President's actions, the government issued a memorandum from the Department of Justice's Office of Legal Counsel regarding the attempted appointment. *See Memorandum Re: Designating an Acting Director of the Bureau of Consumer Financial Protection*, Office of Legal Counsel (Nov. 25, 2017), https://goo.gl/psvaEY ("OLC Memo"). This memo asserts that the President has the authority to appoint Mr. Mulvaney under the Federal Vacancies Reform Act, or FVRA, 5 U.S.C. §§ 3345–3349d. *Id.* at 1. That is incorrect.[1]

"Since President Washington's first term, Congress has given the President limited authority to appoint acting officials to temporarily perform the functions of a vacant . . . office without first obtaining Senate approval." *N.L.R.B. v. Sw. Gen., Inc.*, 137 S. Ct. 929, 935 (2017).

---

[1] In addition, the CFPB's General Counsel has issued a short memo agreeing with OLC's conclusion. See Memorandum from Mary E. McLeod to The Senior Leadership Team, CFPB, November 25, 2017, available at http://bit.ly/2ABdSvt.

Congress has granted only a limited authority to appoint acting officers via two kinds of statutes: statutes that apply to specific vacancies in particular federal agencies, and statutes creating default rules that apply across many agencies. *See id.* at 935–36 (discussing historical examples).

The President's attempt to use the FVRA to appoint an Acting Director of the CFPB is an "obvious contravention," *id.*, of Congress's statutory scheme. There are some situations where both the FVRA and an agency-specific vacancy filling process may apply to a particular vacancy, and either may be properly invoked. *See, e.g., Hooks v. Kitsap Tenant Support Servs., Inc.*, 816 F.3d 550, 556 (9th Cir. 2016). But this is not one of those situations, for several reasons.

First, the CFPB's organic statute includes a specific, mandatory succession plan for filling the vacancy in question: the Deputy Director "*shall* . . . serve as acting Director in the absence or unavailability of the Director." 12 U.S.C. § 5491(b)(5)(B). The OLC Memo agrees that this provision applies when the position of Director is vacant, as with Director Cordray's departure. OLC Memo at 3.

To the extent anything in the FVRA would conflict with this mandatory provision, the CFPB's statute controls. Dodd-Frank was enacted more recently than the FVRA, and the well-established rule for evaluating conflicts between two statutes is that "the more recent legal pronouncement controls." *Owner-Operator Indep. Drivers Ass'n, Inc. v. U.S. Dep't. of Transp.*, 724 F.3d 230, 233 (D.C. Cir. 2013). And Dodd-Frank's language is more specific than that of the FVRA, focusing narrowly on the head of one particular agency, as opposed to supplying general rules for all executive offices. "'[I]t is a commonplace of statutory construction that the specific governs the general.'" *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2071 (2012) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992); *see HCSC-Laundry v. United States*, 450 U.S. 1, 6 (1981) ("a specific statute . . . controls over a general provision").

Next, the legislative history surrounding the CFPB's creation makes clear that Congress specifically decided that the FVRA should not apply to the position of the CFPB's Acting Director. The early version of Dodd-Frank that passed the House of Representatives in December 2009 did not provide for a Deputy Director of the CFPB. Instead, it explicitly stated that when the Director's office became vacant a temporary replacement had to be appointed in the manner provided by the FVRA. *See* H.R. 4173, 111th Cong. § 4102(b)(6)(B)(1) (engrossed version, Dec. 11, 2009). But the Senate bill introduced and passed months later eschewed this choice, instead opting for what would become the present statutory language. *See* S. 3217, 111th Cong. § 1011(b)(5)(B) (2010). This change—from using the FVRA to providing a different mechanism—reflects a considered decision that the FVRA should not govern succession in the event of a vacancy in the Director position.

This interpretation is strengthened by the overall statutory scheme of Dodd-Frank, which "established . . . an independent bureau" and created mechanisms to protect that independence. 12 U.S.C. § 5491(a). In establishing the Bureau, Congress determined that it needed to be an independent regulator—insulated from direct presidential management and control—to remain a vigilant guardian of consumers' interests. *See* S. Rep. No. 111-176, at 174 (2010) (discussing the need for a "strong and independent Bureau"). Accordingly, Congress structured the Bureau to enhance its independence, placing it within the already-independent Federal Reserve System, giving it an independent funding source, and protecting its Director from removal except for good cause. *See* 12 U.S.C. §§ 5491(a), 5491(c)(3), 5497(a)(1). Yet if the President can appoint his own chosen successor under the FVRA, it would mean that the CFPB could be headed—potentially for many months—by an Acting Director hand-picked by the President without the check of Senate confirmation. "A fair reading of legislation demands a fair understanding of the legislative plan." *King v. Burwell*, 135 S. Ct. 2480, 2496 (2015). The President's interpretation of

Dodd-Frank ignores this principle, depriving the CFPB of the independence that was central to Congress's plan.

In sum, the President's interpretation of the relationship between the FVRA and Dodd-Frank is contrary to the latter's text, legislative history, structure, and purpose. The OLC's arguments to the contrary, meanwhile, are unconvincing.

The FVRA states that the appointment mechanisms it provides are

> the exclusive means for temporarily authorizing an acting official to perform the functions and duties of any office of an Executive agency . . . for which appointment is required to be made by the President, by and with the advice and consent of the Senate, unless—
>
> (1) a statutory provision expressly—
>
> > (A) authorizes the President, a court, or the head of an Executive department, to designate an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity; or
> >
> > (B) designates an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity . . .

5 U.S.C. § 3347(a). OLC argues that where the listed exceptions apply, it only means that the FVRA is not the "exclusive" means for authorizing the appointments in question. OLC Memo at 4. In other words, according to the OLC, the exceptions say nothing about whether the FVRA may be an *additional* method for making such appointments. *Id.* To support the argument that the FVRA may coexist as an appointment method alongside other statutory provisions governing appointments, the OLC cites the Ninth Circuit's case *Hooks v. Kitsap Tenant Support Services*, the legislative history of the FVRA, and prior OLC opinions discussing specific statutes. *Id.* at 3–6.

None of these examples is a persuasive analogue to the case at hand. Even if the OLC is right that the FVRA's use of the term "exclusive" implies that it may sometimes comfortably coexist alongside other appointment provisions, nothing in the OLC's argument indicates that the FVRA will *always* be an available alternative. *Hooks* itself illustrates how the compatibility of

one statute with the FVRA does not imply the compatibility of Dodd-Frank with the FVRA. That case dealt with the National Labor Relations Act, which gives the authority to appoint an Acting General Counsel for the National Labor Relations Board to the very same person authorized to make a temporary appointment under the FVRA: the President. *See Hooks*, 816 F.3d at 555–56 (discussing 29 U.S.C. § 153(d)). Where two statutes provide a mechanism by which the same person (in that case, the President) may fill the same vacancy (the vacancy left by the General Counsel), it makes sense that "the President is permitted to elect between these two statutory alternatives," both of which empower the President directly. *Hooks*, 816 F.3d at 556. Similarly, the statutes discussed in the OLC's prior opinions provide for appointments made either by the President or those acting under his control. *See* 28 U.S.C. § 508 (providing that the Attorney General "may designate" a line of succession); *Authority of the President to Name an Acting Attorney General*, 2007 WL 5334854, at *2 (2007) ("Nor would it make sense that the Attorney General . . . could prevent the President, his superior, from using his separate authority under the Vacancies Reform Act."). Here, in contrast, the statute governing the position of Acting Director does not empower the President or someone he controls to fill the vacancy; it instead provides for the automatic succession of the Deputy Director to the position of Acting Director. 12 U.S.C. § 5491(b)(5)(B).

The only statutes mentioned in the OLC Memo featuring mandatory language that is arguably comparable are those mentioned in the FVRA's legislative history. *See* OLC Memo at 5 & n.3. In other words, these statutes all predate the FVRA—and the FVRA therefore supersedes them when there is a conflict. *See Owner-Operator Indep. Drivers Ass'n*, 724 F.3d at 233. These examples are thus inapplicable to the present instance of a statute that, as discussed above, was enacted post-FVRA, contains legislative history indicating that Congress considered and rejected

making the FVRA applicable, and sets up an independent agency that is designed to be free from direct Presidential intervention after the President appoints a Senate-confirmed Director.

The President's actions are contrary to the text and purpose of Dodd-Frank, and none of the government's apparent legal justifications are persuasive. Plaintiff therefore has a high likelihood of succeeding on the merits of her claim.

### B. The President may not appoint a still-serving White House staffer to displace the acting head of an agency that is required by statute to be "independent."

Even if the President's interpretation of the FVRA were correct, applying the FVRA as the President wishes to do here would still be unlawful because it would contravene Congress's clear requirement that the CFPB be established as "an independent bureau." 12 U.S.C. § 5491(a). As discussed above, granting the CFPB durable independence was one of Congress's primary goals in the agency's creation. *See* S. Rep. No. 111-176, at 174 (2010) (discussing the need for a "strong and independent Bureau"). The CFPB was created "in the Federal Reserve System," 12 U.S.C. § 5491(a), another branch of the executive whose independence is essential to its mission and required as a matter of both law and custom. *See generally* Peter Conti-Brown, *The Power and Independence of the Federal Reserve* (2016). Its Director is removable only for cause, a quintessential protection of agency independence. 12 U.S.C. § 5491(c)(3); *see also Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 483 (2010) (noting that "Congress can, under certain circumstances, create independent agencies run by principal officers appointed by the President, whom the President may not remove at will but only for good cause"). And it is independently funded via the Federal Reserve System, rather than the usual annual appropriations process in Congress, to further bolster its independence. 12 U.S.C. § 5497(a)(1).

The President seeks to subvert this independence by appointing a new Acting Director for the CFPB who will continue to serve the President simultaneously as an at-will employee in the

White House's Executive Office. The President has chosen Mr. Mulvaney, the Director of the White House Office of Management and Budget, to serve as Acting Director. But Mr. Mulvaney has not resigned from his position with OMB, and news reports indicate that he is not planning to do so.[2] OMB is an agency within the Executive Office of the President and works closely with the President to implement his policy priorities across the entirety of the Executive branch.[3] In his capacity as OMB Director, Mr. Mulvaney does not enjoy the statutory protections given to the CFPB director, and instead may be fired at the President's whim. He is thus particularly susceptible to the direct presidential influence that Congress sought to avoid.

Appointing a still-serving White House staffer to be the leader of the CFPB is a clear violation of Congress's statutory mandate that the agency be "independent." 12 U.S.C. § 5491(a). Indeed, if such an appointment is permissible, the statutory requirement of independence would be required utterly meaningless. From Mr. Mulvaney's perspective, his job at the CFPB would be temporary, lasting only until the President nominated a Director, while his full-time, at-will job at OMB is the job that he will presumably retain throughout and after his tenure at the CFPB. As the Supreme Court has noted, in the context of protections for independent executive agencies, "it is quite evident that one who holds his office only during the pleasure of another cannot be depended upon to maintain an attitude of independence against the latter's will." *Humphrey's Ex'r v. United States*, 295 U.S. 602, 629 (1935). If Mr. Mulvaney were to serve as Acting Director while continuing to be employed in an at-will position in the White House, it would violate Dodd-

---

[2] *See, e.g.*, Renae Merle & Damien Paletta, *OMB Director Mick Mulvaney being considered for interim CFPB leadership position*, Wash. Post (Nov. 16, 2017), https://goo.gl/2ngvG5 ("If given the job, Mulvaney would probably lead both agencies until a permanent head of CFPB is chosen and confirmed by the Senate . . . .").

[3] *See generally* Office of Management and Budget, The White House, *https://www.whitehouse.gov/omb*.

Frank's requirement that the CFPB be independent and set a dangerous precedent for independent agencies throughout the executive branch.

The President's appointment of Mr. Mulvaney is thus unlawful for reasons beyond the errors in the President's interpretation of the FVRA. Plaintiff is therefore likely to succeed on the merits of her claim, as she has two independently valid bases to challenge the President's actions.

## II.    Ms. English will suffer irreparable injury if an injunction is not granted.

To allow for the appointment of an Acting Director via an inapplicable general statute would cause harm to the public at large and irreparable injury to plaintiff in particular. This Court has recognized that the loss of a government official's "statutory right to function" in his or her role is an irreparable injury. *Berry v. Reagan*, 1983 WL 538, at *5 (D.D.C. Nov. 14, 1983); *see also Mackie v. Bush*, 809 F. Supp. 144, 147 (D.D.C. 1993), *vacated as moot sub nom. Mackie v. Clinton*, 10 F.3d 13 (D.C. Cir. 1993) (issuing temporary restraining order prohibiting President from removing plaintiffs from federal office and noting that "neither a damages remedy nor a declaratory judgment would provide an adequate remedy" after the fact of their removal).

Ms. English is legally entitled—and legally required—to perform the duties of the CFPB's Acting Director. If another person is appointed to that role, her ability to perform these duties will become at best unclear and at worst impossible. This consequence would also be nearly irreversible—by Congress's design, the position comes with many powers and protections. *See* 12 U.S.C. §§ 5491(c)(3), 5497(a)(1). Any person who is appointed to the office and contests plaintiff's entitlement to the office may attempt to resolve the dispute by terminating Ms. English from her employment with the CFPB, which would further cause her irreparable injury. And this alternative Acting Director may also endeavor to take other permanent actions that countermand Ms. English's "statutory right to function" in her role. *Berry*, 1983 WL 538, at *5.

## III.    The defendants' interests will not be substantially injured by an injunction.

The temporary order that Ms. English seeks would preserve the status quo and not substantially injure the defendants. Ms. English is the current Acting Director of the CFPB. The order plaintiff seeks would not jeopardize the President's ability to appoint an Acting Director in the near future, whether Mr. Mulvaney or someone else, after the Court has had further opportunity to hear a response from the defendants and consider the merits. "Temporary postponement of the President's" appointment "would not appear to cause any damage to his interest or to that of the United States." *Mackie*, 809 F. Supp. at 146. But removal of plaintiff from her office, "particularly during this period of transition, could be irrevocably disruptive" for her. *Id.*

**IV.     The public interest is furthered by the injunction sought here.**

The CFPB is a major federal agency with regulatory and enforcement authority covering a wide array of consumer financial services—from mortgages and student loans to debt collection and credit reporting. The public has a strong and urgent interest in knowing who is at its helm. The injunction that the plaintiff seeks would prevent the existence of two competing claimants for the same position at the head of the CFPB. In contrast, if the President is permitted to move forward with his stated plans, it would foster immediate confusion as to who is legally in control of the CFPB. This confusion would likely be compounded over time if the plaintiff and Mr. Mulvaney take actions that contradict each other. The best way to prevent a scenario in which competing Acting Directors attempt to exercise contradictory claims to authority is by preserving the status quo, preventing the immediate appointment or recognition of a new Acting Director, and proceeding to consider both sides' arguments in full.

**CONCLUSION**

The plaintiff's motion for a temporary restraining order should be granted.

Respectfully submitted,

*/s/ Deepak Gupta*
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾

DEEPAK GUPTA (D.C. Bar No. 495451)
MATTHEW WESSLER (D.C. Bar No. 985241)
RACHEL BLOOMEKATZ (*pro hac vice* application to be filed)
JOSHUA MATZ (*pro hac vice* application to be filed)
DANIEL TOWNSEND (*pro hac vice* application to be filed)
**GUPTA WESSLER PLLC**
1900 L Street, NW, Suite 312
Washington, DC 20036
Phone: (202) 888-1741
Fax: (202) 888-7792
*deepak@guptawessler.com*

November 26, 2017          *Attorneys for Plaintiff*

### CERTIFICATE OF SERVICE

I hereby certify that on November 26, 2017, I electronically filed this motion for a temporary restraining order through this Court's CM/ECF system. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

*/s/ Deepak Gupta*
Deepak Gupta