**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| LEANDRA ENGLISH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-02534-TJK |
| | ) | |
| DONALD J. TRUMP and | ) | |
| JOHN MICHAEL MULVANEY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER

**INTRODUCTION**

This case presents a straightforward question: whether the Consumer Financial Protection Bureau ("CFPB")—uniquely among federal agencies—falls outside the purview of the Vacancies Reform Act ("VRA"), despite being ineligible for any of the Act's enumerated exceptions.   In arguing that it does, and on that basis asking the Court to issue a temporary restraining order enjoining the President's designation of John M. Mulvaney as the Bureau's Acting Director and recognize her as Acting Director in Mulvaney's place, Plaintiff Leandra English ("Plaintiff") rests her contention primarily on two of the CFPB's characteristics:   its status as an independent agency and the Dodd-Frank Act's provision that the Deputy Director "shall" become the Acting Director under certain circumstances.   But it is well established that neither of those (relatively common) characteristics is sufficient to take an agency outside the scope of the VRA.   Indeed, the Ninth Circuit ratified longstanding Executive Branch practice just last year when it applied the VRA to an independent agency with its own default succession statute.   *See Hooks v. Kitsap Tenant Support Servs., Inc.*, 816 F.3d 550, 555-56 (9th Cir. 2016); *see also* S. Rep. No. 105-250, at 16-17 (VRA applies to Export-Import Bank and Social Security Administration); 5 U.S.C. § 3349c (excepting certain independent agency positions from the VRA).   And, since the earliest days of the VRA, it has been clear that the Act remains available even where there are "mandatory" agency-specific succession statutes.   *See* S. Rep. 105-250, at 15-17; Memorandum from Steven A. Engel, Asst. Att'y Gen., to Donald F. McGahn II, Counsel to the President, *Designating an Acting Director of the Bureau of Consumer Financial Protection*, at 5 n.3 (Nov. 25, 2017) ("OLC Memo") (collecting statutes).

For those and other reasons, both the Department of Justice's Office of Legal Counsel ("OLC") and the General Counsel for the CFPB agree that the President of the United States

lawfully designated John M. Mulvaney as the CFPB's Acting Director pursuant to the VRA. Thus, Plaintiff cannot establish the likelihood of success on the merits of her claim necessary to obtain the extraordinary emergency injunctive relief she seeks.   And Plaintiff faces no prospect of irreparable harm warranting such a radical departure from the status quo that presently exists at the CFPB.

Plaintiff's arguments to the contrary rest on a bureaucratic sleight-of-hand effected on the final day of former CFPB Director Richard Cordray's tenure:   in the waning hours of the day after Thanksgiving, he purported to appoint Plaintiff, his then-chief of staff, as the Bureau's Deputy Director.   The CFPB had operated without a permanent Deputy Director for more than two years prior to that time, but the former Acting Deputy Director during that period had never been named to fill the post permanently.   In designating Plaintiff as Deputy Director on his last day in office, the former Director stated publicly that he had done so to determine his successor at the agency.

In the government's view, however, this sleight-of-hand does not mean that Plaintiff in fact acceded to the Acting Director position.   Rather, on the very same day, the President designated Mulvaney as Acting Director of the CFPB under the VRA, effective upon the resignation of the Director.   And because the VRA remains available even where there are agency-specific succession statutes, Mulvaney became the Acting Director at 12:01 a.m. on November 25, 2017.

Notwithstanding the President's designation of Acting Director Mulvaney, Plaintiff claims in this action that she acceded to the position of Acting Director pursuant to a provision in the Dodd-Frank Act, 12 U.S.C. § 5491(b)(5).   Remarkably, Plaintiff seeks the extraordinary remedy of an injunction prohibiting the President from exercising his authority under the VRA and

Article II of the Constitution to appoint an officer of the United States and ordering the President to withdraw his preexisting designation of Acting Director Mulvaney.   Such an order would be a radical departure from the established principle that courts have no power to issue injunctions against the President.   *See Mississippi v. Johnson*, 71 U.S. 475, 501 (1866) (finding "no jurisdiction of a bill to enjoin the President in the performance of his official duties"); *Franklin v. Massachusetts*, 505 U.S. 788, 828 (1992) (Scalia, J., concurring).

In addition, the Court should deny Plaintiff's motion for emergency injunctive relief because she is unlikely to succeed on the merits of her claim that the President's designation of Acting Director Mulvaney is unlawful.   As OLC concluded, the President "may designate an Acting Director of the CFPB under the Vacancies Reform Act."   OLC Memo at 2.   The CFPB's General Counsel independently reached the same conclusion. *See* Memorandum from Mary E. McLeod, CFPB General Counsel, to CFPB Senior Leadership Team, *Acting Director of the CFPB*, at 1 (Nov. 25, 2017) ("McLeod Memo") (concluding that "the President possesses the authority to designate an Acting Director for the Bureau under the FVRA, notwithstanding § 5491(b)(5)").   Plaintiff offers no basis for this Court to reject the sound conclusions of OLC and the CFPB's General Counsel that the President lawfully designated Acting Director Mulvaney.

Plaintiff's motion should also be denied because Plaintiff has failed to demonstrate that she will suffer irreparable harm in the absence of emergency injunctive relief.   As a threshold matter, Plaintiff grossly misstates the status quo.   Legally, Plaintiff never acceded to the position of Acting Director because the President's designation of Acting Director Mulvaney took effect immediately upon the former Director's resignation.   More practically, it is Acting Director Mulvaney who is in residence at the CFPB, is listed as "acting director" on the CFPB website, The Director, https://www.consumerfinance.gov/about-us/the-bureau/about-director/ (last visited

Nov. 27, 2017), and has begun work.   Indeed, on November 25, 2017, the CFPB's General

Counsel "advise[d] all Bureau personnel to act consistently with the understanding that Director

Mulvaney is the Acting Director of the CFPB."   McLeod Memorandum, *supra*, at 1.   Per that

directive, CFPB staff (with the exception of Plaintiff) is treating Mulvaney as the Acting Director.

Accordingly, Plaintiff's request for a temporary restraining order would radically upend the status

quo rather than maintain it.

To the same end, emergency injunctive relief should be denied on the basis that a loss of

position by itself does not amount to irreparable injury.   Nor has Plaintiff suffered any ancillary

injury:   she remains the purported Deputy Director of the CFPB and has not been removed from

that position.   And, because no additional pay is tied to an acting designation, she cannot allege

any financial injury.   Further, Plaintiff has not identified any imminent action by the CFPB's

Acting Director prompting the need for emergency relief.

Finally, as to the balancing of harms (which in this case is coextensive with the public

interest inquiry), there is no question that temporary injunctive relief would impose substantial

harms on the President and the CFPB.   An order compelling the President to recognize Plaintiff

as Acting Director and withdraw his designation of Acting Director Mulvaney would intrude

extraordinarily into core Executive Branch operations; it would effectively install Plaintiff in

office, potentially leading her to argue that she cannot be removed by anyone, for any reason; it

would sow confusion in the face of the General Counsel's advice that CFPB should recognize

Mulvaney as the Acting Director; and it would lend credence to the view that the leadership of the

CFPB is accountable to no one, not even to the President of the United States.   By the same

token, an order compelling the withdrawal of Mulvaney from his position as Acting Director and

substituting Plaintiff would disrupt the agency's operations and open the door to potential

4

collateral attacks on agency actions taken by or at the direction of Plaintiff.   For these reasons, the Court should deny the motion.

## STATUTORY BACKGROUND

The VRA provides procedures to temporarily fill a vacancy in an "Executive agency" wherever an officer "dies, resigns, or is otherwise unable to perform the functions and duties of the office."   5 U.S.C. § 3345(a).   For purposes of Title 5, the CFPB "shall be considered an Executive agency."   12 U.S.C. § 5491(a).   The VRA applies to every "officer of an Executive agency" outside of certain enumerated exceptions.   5 U.S.C. § 3345(a); 5 U.S.C. § 3349c (exceptions); *see also* S. Rep. No. 105-250, at 2 ("The bill applies to all vacancies in Senate-confirmed positions in executive agencies with a few express exceptions.").   By its terms, the VRA is "the exclusive means for temporarily authorizing an acting official to perform the functions and duties of any [Senate-confirmed] office of an Executive agency," other than by recess appointment.   5 U.S.C. § 3347(a).   The VRA ceases to be "exclusive" only when "a statutory provision expressly . . . (A) authorizes the President, a court, or the head of an Executive department, to designate an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity; or (B) designates an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity."   *Id.*   In such cases, it provides "an alternative procedure for temporarily occupying the office."   S. Rep. No. 105-250, at 17 (1998).

The VRA's coverage is limited only by carefully delineated exclusions.   As relevant, one of those exclusions protects the independence of certain independent agencies by excluding "any member who is appointed by the President, by and with the advice and consent of the Senate to any board, commission, or similar entity that (A) is composed of multiple members; and (B)

governs an independent establishment or Government corporation."   5 U.S.C. § 3349c.   Offices

in independent agencies not covered by those criteria are eligible to be filled on a temporary basis

by the VRA.   *See Hooks*, 816 F.3d at 556 & n.6 (applying VRA to the General Counsel of the

NLRB).

      The Dodd-Frank Act established the CFPB in 2010 to enforce U.S. consumer-protection

laws that had previously been administered by seven different government agencies, as well as

new provisions added by Dodd-Frank itself. *See* 12 U.S.C. § 5581(b).   The CFPB is headed by a

single Director who is appointed by the President, with the advice and consent of the Senate, for a

term of five years, 12 U.S.C. § 5491(b), (c)(1), and who, according to a statutory removal

restriction, is removable by the President only for "inefficiency, neglect of duty, or malfeasance in

office," *id.* § 5491(c)(3).   Under the CFPB's organic statute, the CFPB's Deputy Director is

authorized to "serve as acting Director in the absence or unavailability of the Director." 12 U.S.C.

§ 5491(b)(5).   The statute further provides, though, that "[e]xcept as otherwise provided

expressly by law, all Federal laws dealing with . . . officers . . ., including the provisions of

chapters 5 and 7 of title 5, shall apply to the exercise of the powers of the Bureau."   12 U.S.C. §

5491(a).

      Although the question is "not free from doubt," OLC Memo at 3, the CFPB-specific

statute providing that the Deputy Director "shall . . . serve as acting Director in the absence or

unavailability of the Director," 12 U.S.C. § 5491(b)(5), may satisfy section 3347(a)'s reference to

"a statutory provision" that "expressly . . . designates an officer or employee to perform the

functions and duties of a specified office temporarily in an acting capacity."   5 U.S.C.

§ 3347(a)(1)(B).   It is undisputed, however, that the CFPB's Director does not fall within the

category of officers whom Congress has excluded from coverage under that Act because he is not

a member of a Board "composed of *multiple* members."   *See* 5 U.S.C. § 3349c(1) (emphasis added).

## FACTUAL BACKGROUND

Former CFPB Director Richard Cordray purported to appoint Plaintiff, his chief of staff, as Deputy Director of the CFPB on November 24, 2017, in his final hours as Director.   Cordray released a statement that he had appointed Plaintiff in an effort to invoke the succession provision of 12 U.S.C. § 5491(b)(5).   That same day, the President filled the vacancy created by the resignation of former Director Cordray by designating OMB Director Mick Mulvaney to serve as Acting Director of the CFPB, effective at the time of Cordray's resignation.   On November 27, 2017, Acting Director Mulvaney presented himself at the CFPB's offices as the Acting Director, was given access to the CFPB's building and shown to the Director's office, and began work as Acting Director.   Plaintiff now seeks emergency injunctive relief to disrupt the President's designation of Acting Director Mulvaney and to prevent Mulvaney from performing the official duties of the position to which he has been designated.

## STANDARD OF REVIEW

"The standard for issuance of the extraordinary and drastic remedy of a temporary restraining order or a preliminary injunction is very high." *Jack's Canoes & Kayaks, LLC v. Nat'l Park Serv.*, 933 F. Supp. 2d 58, 75 (D.D.C. 2013) (citation omitted).   An interim injunction is "never awarded as of right," *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008), and "should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion," *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004).   A party moving for a temporary restraining order or a preliminary injunction "must demonstrate '(1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction is

7

not granted, (3) that an injunction would not substantially injure other interested parties, and (4)

that the public interest would be furthered by the injunction.'" *Jack's Canoes*, 933 F. Supp. 2d at

75-76 (quoting *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir.

1995)).   When, as here, the government is opposing a motion for a preliminary injunction, the

third and fourth factors merge.   *See Nken v. Holder*, 556 U.S. 418, 435 (2009).[1]

Moreover, a plaintiff seeking a mandatory injunction faces a greater hurdle than one

seeking a prohibitive injunction.   *Mylan Pharm., Inc. v. Shalala*, 81 F. Supp. 2d 30, 36 (D.D.C.

2000).   In this Circuit, "the power to issue a preliminary injunction, especially a mandatory one,

should be sparingly exercised."   *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 (D.C. Cir. 1969); *see*

*also Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1319 (9th Cir. 1994) (where movant seeks

mandatory injunction "well beyond maintaining the status quo pendente lite, courts should be

extremely cautious about issuing a preliminary injunction.").   "[W]here an injunction is

mandatory—that is, where its terms would alter, rather than preserve, the status quo by

commanding some positive act—the moving party must meet a higher standard than in the

ordinary case by showing 'clearly' that he or she is entitled to relief or that 'extreme or very

serious damage' will result from a denial of the injunction."   *Phillip v. Fairfield Univ.*, 118 F.3d

131, 133 (2d Cir. 1997); *see also Columbia Hosp. for Women Found., Inc. v. Bank of Tokyo-*

*Mitsubishi, Ltd.*, 15 F. Supp. 2d 1, 4 (D.D.C. 1997), *aff'd*, 159 F.3d 636 (D.C. Cir. 1998)

---

[1]  "The D.C. Circuit has, in the past, followed the 'sliding scale' approach to evaluating preliminary injunctions. . . . The continued viability of the sliding scale approach is highly questionable, however, in light of the Supreme Court's holding in *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2007)."   *Singh v. Carter*, No. 16-cv-399 (BAH), 2016 WL 2626844, at *3 (D.D.C. May 6, 2016) (citing *In re Navy Chaplaincy*, 738 F.3d 425, 428 (D.C. Cir. 2013) for the proposition that all four prongs of the preliminary injunction standard must be met before injunctive relief can be granted).   In any event, regardless of which standard is applied, a temporary restraining order is inappropriate here.

("*Columbia Hospital*").

<u>**ARGUMENT**</u>

**I.     PLAINTIFF HAS NOT ESTABLISHED A LIKELIHOOD OF SUCCESS.**

     Plaintiff contends that the President lacked authority to designate Acting Director

Mulvaney because Plaintiff acceded to the Acting Director position by operation of law.   As

explained in the opinions of the Department of Justice's Office of Legal Counsel and the CFPB's

General Counsel, Plaintiff's contention is contrary to the text and settled understanding of the

VRA.   Moreover, even if the President's designation of Acting Director Mulvaney were

unlawful, the requested injunction against the President would be an extraordinary and

inappropriate remedy.

     The President lawfully exercised his authority to designate Acting Director Mulvaney

upon the resignation of former Director Cordray.   The VRA provides the President with authority

"for temporarily authorizing an acting official to perform the functions and duties" of an officer of

an Executive agency whose appointment "is required to be made by the President, by and with the

advice and consent of the Senate . . . ."   5 U.S.C. § 3347(a).   It is undisputed that the CFPB

"shall be considered an Executive agency," 12 U.S.C. § 5491(a), within the ambit of the VRA,

and that the CFPB's Director does not fall within the exemptions to the Act Congress carefully

delineated, *see* 5 U.S.C. § 3349c.   Because Acting Director Mulvaney was previously confirmed

by the Senate to serve as the Director of the Office of Management and Budget, he is among the

officials whom the VRA expressly authorizes the President to select to "perform the functions and

duties of the vacant office temporarily in an acting capacity."   5 U.S.C. § 3345(a)(2).

     Plaintiff erroneously contends that Section 5491(b)(5) of the Dodd-Frank Act displaces

the President's authority to designate Acting Director Mulvaney under the VRA.   That

9

contention rests on a basic misunderstanding of the VRA.   The VRA provides that it is the "exclusive means" for authorizing acting service "unless" another statute expressly designates an officer to serve in an acting capacity.   5 U.S.C. § 3347(a).   If another statute contains an express designation, the only consequence is that the VRA is not the *exclusive* means" of filling the vacancy.   The Act still remains an available option for the President to designate an acting official in a manner that differs from the order of succession provided for by Section 5491(b)(5) of the Dodd-Frank Act.   *See, e.g.*, *Hooks*, 816 F.3d at 555-56 (explaining that "neither the [VRA] nor the [National Labor Relations Act] is the *exclusive* means of appointing an Acting General Counsel" and that "the President is permitted to elect between these two statutory alternatives to designate an Acting General Counsel"); S. Rep. 105–250, 1998 WL 404532, at *17 (1998) ("[W]ith respect to the specific positions in which temporary officers may serve under the specific statutes this bill retains, the Vacancies Act would continue to provide an alternative procedure for temporarily occupying the office."); *see also Acting Attorney General*, 31 Op. O.L.C. 208, 209-11 (2007); *Acting Director of OMB*, 27 Op. O.L.C. 121, 121 n.1 (2003).

OLC and the CFPB's General Counsel each independently concluded that the President's designation of Acting Director Mulvaney controls over the succession provision in Section 5491(b)(5) of the Dodd-Frank Act.   As OLC concluded, "[t]he Vacancies Reform Act is not the 'exclusive means' for the temporary designation of an Acting Director, but it remains available to the President as one means for filling a vacancy in the Director position," OLC Memo at 3, even if § 5491(b)(5) provides an alternative means of succession.   Thus, "when the President designates an individual under the Vacancies Reform Act outside the ordinary order of succession, the President's designation necessarily controls" or else the "Vacancies Reform Act would not remain available as an actual alternative" to the President.   *Id.* at 6.   OLC's

interpretation of the VRA in this instance is consistent with the Office's longstanding view. *See Guidance on Application of Federal Vacancies Reform Act of* 1998, 23 Op. O.L.C. 60, 62-63 (1999); *Applicability of the Federal Vacancies Reform Act to Vacancies at the International Monetary Fund and the World Bank*, 24 Op. O.L.C. 58, 60 n.2 (2000).

Similarly, the CFPB's General Counsel "advise[d] all Bureau personnel to act consistently with the understanding that Director Mulvaney is the Acting Director of the CFPB."   McLeod Memo at 1.   After considering "the statutory language, legislative history, precedent from the Office of Legal Counsel at the Department of Justice, and case law," the General Counsel concluded that they "all point to the conclusion that the President may use the Vacancies Reform Act to designate an acting official, even when there is a succession statute under which another official may serve as acting."   *Id.* at 2.   "Accordingly, as General Counsel for the Bureau, it is my legal opinion that the President possesses the authority to designate an Acting Director for the Bureau under the FVRA, notwithstanding § 5491(b)(5)."   *Id.* at 3.

Contrary to Plaintiff's contention (TRO Mot. at 4), the fact the CFPB-specific statute uses the mandatory word "shall" does not change the analysis.   When the VRA was passed, Congress made clear that any Presidential designation under the Act would be valid notwithstanding the operation of agency-specific statutes.   *See* S. Rep. No. 105-250, at 15-17 (The Act "retains existing . . . statutes that expressly provide for the temporary performance of the functions and duties of an office by a particular officer or employer. . . .   [T]he Vacancies Act would continue to provide an alternative procedure for temporarily occupying the office.").   Indeed, Congress explicitly stated that statutes like Section 5491(b)(5), which "provide for an automatic designation," would be among those that provide an "alternative procedure" to that found in the VRA.   *Id.*

11

In any event, the VRA also uses mandatory terms.   *See* 5 U.S.C. § 3345(a)(1) (absent a

Presidential designation, "the first assistant to the office of such officer *shall* perform the

functions and duties of the office temporarily in an acting capacity" but the President "may"

designate certain others "notwithstanding" that rule) (emphasis added).   Instead of interpreting

one statute to be more mandatory than the other, these two statutes should be construed in

parallel.   OLC Memo at 5.   At base, Plaintiff's argument turns on the proposition that

Congress's enactment of Section 5491 implicitly repealed the VRA's provisions insofar as the

latter statute authorizes the President to designate someone other than the first assistant to fill the

vacant Director position.   But "[i]mplied repeals are disfavored and not presumed unless the

legislative intent is 'clear and manifest.'"   *Howard v. Pritzker*, 775 F.3d 430, 437 (D.C. Cir.

2015) (quoting *Hui v. Castaneda*, 559 U.S. 799, 810 (2010)).   Plaintiff can point to nothing in the

text of Section 5491, or the legislative history surrounding that provision's passage, that signals

Congress's "clear and manifest" intent to divest the President of the authority previously

conferred on him by the VRA.   On the contrary, Section 5491 is completely silent as to

"vacancies."   Had Congress intended to repeal the VRA's provisions—and in particular, Section

3347's specific instructions regarding the effect of office-specific statutes on the VRA's

appointment procedures—Congress surely would have spoken more clearly, especially in light of

the longstanding Executive Branch interpretations regarding the intersection of the VRA with

office-specific statutes.[2]   Indeed, if there could be any question, the text of Section 5491(a) itself

---

[2]   The government assumes for present purposes that 12 U.S.C. § 5491(b)(5) authorizes the Deputy Director to serve as the CFPB's Acting Director when the Director has resigned and the position is thus vacant, but the government reserves the right to contest that question—and raise other defects in Plaintiff's complaint—in a motion to dismiss.   OLC acknowledged that question "is not free from doubt," OLC Memo at 3, and the CFPB's General Counsel concluded that the question is "debatable" but ultimately "not necessary to resolve."   McLeod Memo. at 1-2.   The

makes clear that Title 5—which contains the VRA—is not displaced by the Dodd-Frank Act absent the sort of "expres[s]" statement that is lacking here.   12 U.S.C. § 5491(a) ("Except as otherwise provided expressly by law, all Federal laws dealing with public or Federal contracts, property, works, officers, employees, budgets, or funds, including the provisions of chapters 5 and 7 of title 5, shall apply to the exercise of the powers of the Bureau.").

Plaintiff's contention that Acting Director Mulvaney's designation is somehow invalid because his simultaneous appointment as Director of OMB threatens the Bureau's independence is meritless.   It is well-established that the VRA applies to independent agencies such as the Export-Import Bank, Social Security Administration, and National Labor Relations Board.   *See* S. Rep. No. 150-205, at 15-17.   Although the VRA contains specific carve-outs for certain "independent" agencies and commissions, Congress expressly did not make the CFPB Director an exception to that authority.   *See* 5 U.S.C. §§ 3345(a) & 3349c.   Because Congress placed no such restriction on the President's power to designate an acting official, there is no basis for this Court to infer an extra-statutory limitation on the President's appointment authority.

Plaintiff's claim also ignores that the President appointed the CFPB's former Director and will appoint the next Director.   Indeed, before Cordray was confirmed as director, Elizabeth Warren served as a "special advisor" for the CFPB and reported to the President and Secretary of the Treasury.   *See* Jennifer Liberto, *Obama names Warren as special adviser*, CNN, http://money.cnn.com/2010/09/17/news/economy/Elizabeth_Warren_consumer_bureau/index.htm .   Whatever CFPB's degree of independence, the President is not prevented from exercising his

government also reserves the right to contest the validity of Plaintiff's purported appointment as CFPB's Deputy Director, as well as Plaintiff's apparent assumption that an Acting Director of the CFPB enjoys protection from removal at will.

authority under the VRA.   Plaintiff's position could also lead to absurd results, as an Acting

Director could argue that he or she is entitled to even greater protection than an actual Director,

because there is no statutory provision authorizing her removal, even for cause.   At bottom,

Plaintiff's argument that an Acting CFPB Director must be "independent" of the President boils

down to the assertion that the VRA does not apply at all and that the selection of an Acting

Director of the CFPB—unlike the selection of a Director—must be entirely outside of the

President's control.

Finally, even if the President's designation of Acting Director Mulvaney was not

authorized by the VRA, this Court would still lack jurisdiction to grant Plaintiff her requested

relief of an injunction against the President.   The Supreme Court has long held that courts have

"no jurisdiction of a bill to enjoin the President in the performance of his official duties."

*Mississippi v. Johnson*, 71 U.S. at 500–01 ("The Congress is the legislative department of the

government; the President is the executive department.   Neither can be restrained in its action by

the judicial department.").   Given the President's unique status in the constitutional scheme, the

Court cannot issue an injunction restraining the President's exercise of his appointment power.

## II.   PLAINTIFF HAS NOT DEMONSTRATED IRREPARABLE HARM.

Plaintiff's motion for a temporary restraining order should also be denied because she has

not established that she will suffer irreparable injury absent emergency injunctive relief.   The

D.C. Circuit "has set a high standard for irreparable injury."   *In re Navy Chaplaincy*, 534 F.3d

756, 766 (D.C. Cir. 2008) (citation omitted); *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir.

1985) (per curiam).   In government personnel cases, a plaintiff must satisfy a particularly

stringent standard for making that showing.   *Sampson v. Murray*, 415 U.S. 61, 91-92 & n.68

(1974) (holding that absent a "genuinely extraordinary situation," a showing of financial distress

14

or difficulty in obtaining other employment does not constitute irreparable harm).

Plaintiff's burden is especially high here because she seeks a mandatory injunction that "would alter, rather than preserve, the status quo by commanding some positive act." *Phillip*, 118 F.3d at 133. Acting Director Mulvaney took control of the CFPB this morning and has begun work. Pursuant to the direction of the CFPB's General Counsel that "all Bureau personnel . . . act consistently with the understanding that Director Mulvaney is the Acting Director of the CFPB," CFPB GC Memo at 1, he was welcomed by CFPB staff into the Director's Office and presented with transition materials. The heightened standard applies here because Plaintiff never acceded to the position of Acting Director and Mulvaney is currently serving in that position.

Plaintiff cannot meet her extraordinarily high burden of demonstrating irreparable harm absent a mandatory injunction order declaring her to be the CFPB's Acting Director, because courts are virtually unanimous that the loss of a position is not irreparable. *See, e.g., Hetreed v. Allstate Ins. Co.*, 135 F.3d 1155, 1158 (7th Cir. 1998) (loss of position as senior manager leading audit department not irreparable injury); *Marxe v. Jackson*, 833 F.2d 1121, 1122 (3d Cir. 1987) (division manager); *Rubino v. City of Mount Vernon*, 707 F.2d 53 (2d Cir. 1983) (mayoral-appointed City Assessor); *Franks v. Nimmo*, 683 F.2d 1290, 1291 (10th Cir. 1982) (Associate Chief of Staff for Research and Development position at VA Medical Center); *EEOC v. City of Janesville*, 630 F.2d 1254, 1256 (7th Cir. 1980) (Chief of Police); *Levesque v. State of Me.*, 587 F.2d 78, 79 (1st Cir. 1978) (Maine Commissioner of Manpower). District courts in this Circuit have reached the same conclusion. *See, e.g., Farris v. Rice*, 453 F. Supp. 2d 76, 79-80 (D.D.C. 2006) ("cases are legion holding that loss of employment does not constitute irreparable injury"); *Nichols v. Agency of Int'l Dev.*, 18 F. Supp. 2d 1, 2, 4 (D.D.C. 1998) (Chief of Information Management Systems, Office of Inspector General); *Burns v. GAO Empl. Fed. Credit Union*, Civ.

No. 88-3424, 1988 WL 134925, at **1, 2 (D.D.C. Dec. 2, 1988) (President of Credit Union Board of Directors).

Plaintiff characterizes her purported injury as the loss of a "statutory right to function," Mem. at 10 (quoting *Berry v. Reagan*, Civ. No. 83-3182, 1983 WL 538, at *5 (D.D.C. Nov. 14, 1983)), but her argument begs the question whether the President had authority to designate Acting Director Mulvaney pursuant to the VRA.   In any event, although she speculates that she "may" be terminated and that Acting Director Mulvaney "may" take actions with which she might disagree, such speculation falls short of the showing necessary to establish irreparable harm.   Nor, in any event, has Plaintiff pointed to an imminent decision of significance to be made by the Acting Director to justify immediate court intervention.

Moreover, the mere designation of Acting Director Mulvaney by the President does not threaten Plaintiff with an imminent loss of position.   Assuming Plaintiff's eleventh-hour appointment was valid, Plaintiff remains the purported Deputy Director of the CFPB because the President did not purport to remove her from that permanent position merely by designating Mulvaney as the acting director.   Plaintiff continues to exercise the powers of the Deputy Director and to be paid for performing those duties.   There is no need to settle the dispute over the CFPB's Acting Directorship on an emergency basis because Plaintiff does not face the prospect of any imminent irreparable harm from being denied that position on an interim basis.

## III.   THE BALANCE OF HARMS AND THE PUBLIC INTEREST WEIGH AGAINST INJUNCTIVE RELIEF.

A party seeking a temporary restraining order or preliminary injunction must also demonstrate "that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20.   "These factors merge when the Government is the opposing

16

party."   *Nken*, 556 U.S. at 435.

In an employment case such as this, the Court "is bound to give serious weight" to the potentially disruptive effect of interim relief like that sought by Plaintiff.   *Sampson*, 415 U.S. at 83.   And those concerns are at their apogee in employment claims such as this against the federal government and its agencies.   As *Sampson* made clear, the government "has traditionally been granted the widest latitude in the 'dispatch of its own internal affairs.'" *Id.* (quoting *Cafeteria & Rest. Workers Union, Local 473, A.F.L.-C.I.O. v. McElroy*, 367 U.S. 886, 896 (1961)).   Another district court within this Circuit has noted that it views "the institutional harm attendant to judicial interference with federal personnel actions" as "compelling and insurmountable."   *Farris*, 453 F. Supp. 2d at 81 (citing *Sampson*, 415 U.S. at 83-84).

Here, the public interest cuts against an injunction.   The confusion that presently exists surrounding the CFPB's Acting Directorship stems from Plaintiff's meritless claims.   The President, OLC, and the CFPB's General Counsel all agree that Mulvaney is the Acting Director of the CFPB, and Acting Director Mulvaney has begun work at the agency.   A temporary restraining order would radically alter the status quo, disrupt the orderly operation of the agency, and throw into doubt whether the CFPB, under the leadership of an Acting Director, is accountable to the President, or to anyone.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's motion for a temporary restraining order.   To the extent that Plaintiff now seeks a preliminary injunction, the Court should set a reasonable briefing schedule that requires Plaintiff to file a motion for preliminary injunction by December 11, 2017, Defendants to oppose that injunction by December 22, 2017, and Plaintiff to reply no later than January 2, 2018.

Dated:   November 27, 2017

Respectfully submitted,

CHAD A. READLER
Principal Deputy Assistant Attorney General

BRETT A. SHUMATE
Deputy Assistant Attorney General

CHRISTOPHER HALL
Assistant Director, Federal Programs Branch

MATTHEW J. BERNS
(DC Bar # 998094)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, DC 20001
Tel: (202) 616-8016
Fax: (202) 616-8470
E-mail: matthew.j.berns@usdoj.gov

Of Counsel:

MARY McLEOD
General Counsel

JOHN R. COLEMAN
Deputy General Counsel

STEVEN Y. BRESSLER
LAURA HUSSAIN
Assistant General Counsels

*/s/ Benjamin T. Takemoto*
BENJAMIN T. TAKEMOTO
(DC Bar # 1045253)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
Washington, DC 20530
Tel: (202) 532-4252
Fax: (202) 616-8470
E-mail: benjamin.takemoto@usdoj.gov

*Attorneys for Defendants*