IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LEANDRA ENGLISH,
                                    *Plaintiff,*

        v.

DONALD J. TRUMP and                          Case No. 1:17-cv-02534
JOHN M. MULVANEY,
                                    *Defendants.*

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION
## FOR PRELIMINARY INJUNCTION

The Dodd-Frank Act of 2010 created the Consumer Financial Protection Bureau as an "independent bureau," 12 U.S.C. § 5491(a), to be led by a single director. Effective at midnight on November 24, 2017, the Bureau's first Director, Richard Cordray, resigned his post. At that point, plaintiff Leandra English, the Bureau's Deputy Director, became the agency's Acting Director by operation of law. The Dodd-Frank Act is clear on this point: It mandates that the Deputy Director "shall . . . serve as the acting Director in the absence or unavailability of the Director." 12 U.S.C. § 5491(b)(5)(B). The Acting Director serves in that capacity until such time as the President appoints and the Senate confirms a new Director. *See* 12 U.S.C. § 5491(b)(2).

Disregarding this mandatory statutory language, President Trump issued a press release on the evening of November 24 indicating that he intended to install defendant Mulvaney, Director of the White House Office of Management and Budget (OMB), as the Bureau's Acting Director. Under an unprecedented arrangement, Mr. Mulvaney would wear two hats: he would continue to occupy his White House post at OMB while also serving as the head of an agency that Congress mandated be "independent." 12 U.S.C. § 5491(a).

1

The President apparently believes that he had authority to appoint Mr. Mulvaney under the Federal Vacancies Reform Act of 1988 (FVRA), 5 U.S.C. § 3345(a)(2). But Dodd-Frank, not the FVRA, controls who becomes Acting Director of the Bureau in the event of a vacancy. As the Supreme Court explained just this year, the FVRA was enacted to *limit*—not to enlarge—the President's authority, and to thereby to preserve the Senate's role in the appointments process. *See N.L.R.B. v. SW Gen., Inc.*, 137 S. Ct. 929, 935 (2017). The FVRA does not allow the President to supersede Dodd-Frank's later-enacted, more specific, and mandatory text. The President's stance also cannot be squared with the relevant legislative history: An earlier version of the Dodd-Frank Act, which would have specifically allowed the President to use the FVRA to temporarily fill the office, was eliminated and replaced with the current language designating the Deputy Director as the Acting Director. Finally, the FVRA expressly does not apply to the appointment of "any member" of a multi-member board that "governs an independent establishment or Government corporation." 5 U.S.C. § 3349c(1). The administration overlooks the fact that the CFPB Director falls within this exclusion because he or she is a member of the board of the Federal Deposit Insurance Corporation. *See* 12 U.S.C. §§ 1812(a)(1)(B); 1812(d)(2).

Even assuming that the President generally has the power to name an Acting Director of the CFPB under the FVRA, the President's appointment of defendant Mr. Mulvaney is unlawful as a violation of Congress's requirement that the agency function as "an independent bureau" within the Federal Reserve system. 12 U.S.C. § 5491(a). The President may not, consistent with this statutory requirement, install a still-serving White House staffer as the acting head of the Bureau. The unlawfulness of Mr. Mulvaney's appointment is compounded by the fact that Congress has taken specific steps to shield the CFPB's independence from OMB, which Mr. Mulvaney directs. *See*, *e.g.*, 12 U.S.C. § 5497(a)(4)(E).

Finally, President Trump's attempt to appoint Mr. Mulvaney is invalid because it violates the requirements of Article II, section 2 of the U.S. Constitution. The Constitution empowers the President to appoint "Officers of the United States," subject to "the Advice and Consent of the Senate." U.S. Const. Art. II, § 2, cl. 2. The President has only two means of appointing officers: with the advice and consent of the Senate, or pursuant to a law passed by Congress. When the President purports to make an appointment under such a law, courts evaluating that claim should apply a clear statement rule out of concern for the Constitution's separation of powers. Where, as here, no statute grants the President the power to appoint an officer, he has no constitutional authority to do so without the consent of the Senate.

As the rightful Acting Director of the Bureau, Ms. English brings this action against President Trump and Mr. Mulvaney, seeking a declaratory judgment and a preliminary and permanent injunction to prevent the defendants from appointing, causing the appointment of, recognizing the appointment of, or acting on the appointment of any Acting Director of the CFPB via any mechanism other than that provided for by 12 U.S.C. § 5491(b)(5)(B). The Court should declare that any actions that Mr. Mulvaney takes or purports to take as purported Acting Director of the CFPB "shall have no force or effect." 5 U.S.C. § 3348(d).

## BACKGROUND

Congress created the CFPB in the wake of the 2008 financial crisis. Before the CFPB's creation, consumer financial protection had been fragmented among a dozen federal agencies. This meant that no single agency bore responsibility for regulating core consumer financial markets like deposits, mortgages, credit cards, auto loans, payday loans, and debt collection.

Congress sought to solve that problem by consolidating regulatory authority in a single independent agency with robust statutory powers and its own source of funding. To help guard against regulatory capture, Congress determined that the agency would be headed by a single

director, who would serve a five-year term and be removable by the President only "for cause" (defined as "inefficiency, neglect of duty, or malfeasance in office"). 12 U.S.C. § 5491(c). In keeping with its goal of maximizing agency independence, Congress gave the CFPB's Director the authority to appoint a Deputy Director, and provided that the Deputy Director "shall serve . . . as acting Director in the absence or unavailability of the Director." *Id.* § 5491(b)(5).

The agency's first Director was Richard Cordray, who was confirmed by a 66-34 vote in the Senate on July 16, 2013, and took office on July 17, 2013. FAC ¶ 11. Nearly four-and-a-half years into his five-year term, Mr. Cordray resigned his position as Director, effective at midnight on November 24, 2017. FAC ¶ 12.

At approximately 2:30 p.m. on the afternoon of November 24, before leaving office, Director Cordray publicly announced that he had appointed Leandra English—until then the Bureau's Chief of Staff—as the Bureau's Deputy Director, to ensure that she would become the Acting Director under 12 U.S.C. § 5491(b)(5) until the Senate confirmed a new Director appointed by the President. FAC ¶ 13. "In considering how to ensure an orderly succession for this independent agency," he explained in a statement, "I have also come to recognize that appointing the current chief of staff to the deputy director position would minimize operational disruption and provide for a smooth transition given her operational expertise." FAC ¶ 14.

He had good reason for thinking so. In addition to serving as the CFPB's Chief of Staff, Ms. English has served in number of senior leadership roles at the CFPB, including Deputy Chief Operating Officer, Acting Chief of Staff, and Deputy Chief of Staff. And in addition to her work at the CFPB, she has served as the Principal Deputy Chief of Staff at the Office of Personnel Management, the Chief of Staff and Senior Advisor to the Deputy Director for Management at the White House Office of Management and Budget, and as a member of the CFPB Implementation Team at the U.S. Department of the Treasury. FAC ¶ 15.

At approximately 8:50 p.m. on the evening of November 24, the White House press office issued the following statement: "Today, the President announced that he is designating Director of the Office of Management and Budget (OMB) Mick Mulvaney as Acting Director of the Consumer Financial Protection Bureau (CFPB)." FAC ¶ 16. The White House statement did not refer to Director Cordray's earlier appointment of Ms. English as Deputy Director and was not accompanied by any legal reasoning concerning the President's claimed authority to make the appointment. *Id.*

Unlike Ms. English, Mr. Mulvaney has never previously served in any capacity in a consumer-protection enforcement or financial or banking regulatory agency at the state, federal, or local level. FAC ¶ 17. He has described the CFPB as a "sad, sick joke," has co-sponsored legislation proposing to eliminate the agency, and has said at a hearing in the House of Representatives: "I don't like the fact that CFPB exists, I'll be perfectly honest with you." *Id.*

On Saturday, November 25, the Department of Justice's Office of Legal Counsel released a memorandum providing legal arguments in support of Mr. Mulvaney's appointment. The memorandum acknowledges that the statutory scheme of the CFPB provides that the Deputy Director shall become the Acting Director when there is a vacancy in the position of the Director. But, the memorandum asserts, the President may instead choose to appoint someone from outside the agency to take the position of Acting Director via the Federal Vacancies Reform Act of 1998, 5 U.S.C. §§ 3345–3349d.

The next day, Ms. English filed this lawsuit, accompanied by an emergency motion for a temporary restraining order preventing President Trump and Mr. Mulvaney from appointing, causing the appointment of, or recognizing the appointment of an Acting Director of the CFPB via any mechanism other than that provided for by 12 U.S.C. § 5491(b)(5)(b). Reflecting the importance of the issues and the need for prompt resolution, *amicus curiae* filed briefs on both

sides, and this Court held two hearings in the span of two days. At the second hearing, after the defendants filed their opposition, the Court denied the motion from the bench.

## LEGAL STANDARD

Courts evaluate a request for preliminary relief by using a four-factor test. *See Chaplaincy of Full Gospel Churches v. England,* 454 F.3d 290, 297 (D.C. Cir. 2006). The party seeking the injunction must show "(1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction were not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction." *Chaplaincy*, 454 F.3d at 297. The last two factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## ARGUMENT

**I.      Ms. English has a substantial likelihood of success on the merits of her claim that she is the Acting Director of the CFPB.**

**A.      *Dodd-Frank, not the FVRA, governs the determination of who becomes Acting Director in the event of a vacancy.***

Congress created the CFPB to be "an independent bureau." 12 U.S.C. § 5491(a). To preserve the agency's independence, Congress specified in the Dodd-Frank Act that the position of Director would have its own mandatory line of succession. Specifically, Congress provided that the CFPB's Deputy Director "shall . . . serve as Acting Director in the absence or unavailability of the Director." *Id.* § 5491(b)(5)(B). At the moment that Director Cordray's resignation took effect, Ms. English was the CFPB's Deputy Director. *See* 12 U.S.C. § 5491(b). Under the plain terms of Dodd-Frank, she immediately became the Acting Director.

Whereas Ms. English enjoys a statutory entitlement to lead the agency until a new Director is nominated and confirmed, Mr. Mulvaney's claim to the Acting Director position lacks any valid legal basis. In this litigation, the government has asserted that the President's authority

to appoint Mr. Mulvaney arises under the FVRA, 5 U.S.C. §§ 3345–3349d. *See* ECF No. 9, at 5. But that is incorrect, for two reasons. *First*, the FVRA's terms conflict with mandatory language in Dodd-Frank. Because Dodd-Frank was enacted later in time, and speaks with greater specificity to the question at hand, this conflict must be resolved against application of the FVRA. That conclusion is confirmed by a review of Dodd-Frank's legislative history and overarching plan. *Second*, the FVRA limits the President's power to appoint officers to independent agencies with multi-member boards. This limitation renders the FVRA inapplicable to the Acting Director of the CFPB because, by statute, the Acting Director serves on the multi-member board of the Federal Deposit Insurance Corporation (FDIC).

1.     **The FVRA does not allow the President to supersede Dodd-Frank's mandatory terms.**

Dodd-Frank provides that the CFPB's Deputy Director "shall . . . serve as Acting Director in the absence or unavailability of the Director." 12 U.S.C. § 5491(b)(5)(B). When the Director leaves office, he becomes "absent" as well as "unavailable." Given their ordinary meaning, these terms plainly encompass a vacancy, in which the Director can aptly be described as "not existing," "lacking," or "not available." *See, e.g.*, *Absent*, Merriam Webster Online Dictionary, https://www.merriam-webster.com/dictionary/absent (defining "absent" as "not existing: lacking"); *Unavailable*, Merriam Webster Online Dictionary, https://www.merriam-webster.com/dictionary/unavailable (defining "unavailable" as "not available: such as . . . unable or unwilling to do something"); *see also Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187 (1995) ("When terms used in a statute are undefined, we give them their ordinary meaning."). As the Department of Justice's Office of Legal Counsel concluded in a recent memorandum regarding the very facts of this case, *Id.* § 5491(b)(5)(B)'s "reference to 'unavailability' is best read to refer both to a temporary unavailability (such as the Director's recusal from a particular matter) and to

the Director's being unavailable because of a resignation or other vacancy in office." *See Memorandum Re: Designating an Acting Director of the Bureau of Consumer Financial Protection*, at 3, Office of Legal Counsel (Nov. 25, 2017), https://goo.gl/psvaEY ("OLC Memo").

Thus, when a Director resigns, Dodd-Frank provides that the Deputy Director "shall" serve as Acting Director. 12 U.S.C. § 5491(b)(5)(B). This legal arrangement was triggered by the resignation of Director Cordray at midnight on the night of November 24. *See* English Declaration, Ex. B (Resignation Letter of Richard Cordray). At the time of Director Cordray's resignation, Ms. English was the Deputy Director. By virtue of Dodd-Frank, she then became the Acting Director.

The FVRA does not enable the President's attempted end-run around this result. To the contrary, the FVRA provides a *limited* grant of power to the President, and must be strictly construed. That rule follows from first principles. The Constitution requires the President to obtain Senate approval before appointing "Officers of the United States." U.S. Const. Art. II, § 2, cl. 2. Congress has steadfastly guarded this prerogative: "Since President Washington's first term, Congress has given the President limited authority to appoint acting officials to temporarily perform the functions of a vacant . . . office without first obtaining Senate approval." *N.L.R.B. v. SW Gen., Inc.*, 137 S. Ct. 929, 935 (2017). This limited authority may be granted in two ways: statutes that apply to specific vacancies in particular federal agencies, and statutes creating default rules that apply across many agencies. *See id.* at 935–36 (discussing historical examples).

The FVRA is an example of the latter kind of statute, and was designed by Congress "to preserve one of the Senate's most important powers: the duty to advise and consent on presidential nominees." 144 Cong. Rec. S6413–14 (daily ed. June 16, 1998) (Statement of Sen. Thompson). In the face of the Executive's increasing tendency not to submit nominations to the Senate "in a timely fashion," Congress decided that legislative action was necessary "[i]f the

Constitution's separation of powers is to be maintained." S. Rep. 105-250, 1998 WL 404532, at *5. Thus, the FVRA was passed not to grant the President broad authority over appointments, but rather to reinforce Congress's constitutional prerogatives after years of "interbranch conflict . . . [and] obvious contravention[s] of the Senate's wishes." *SW Gen.*, 137 S. Ct. at 935–36.

Here, the President once again seeks to contravene Congress's statutory plan. Congress created a mandatory, agency-specific succession scheme for the CFPB: the Deputy Director "*shall . . . serve as acting Director in the absence or unavailability of the Director.*" 12 U.S.C. § 5491(b)(5)(B) (emphasis added). This unqualified, mandatory language creates an unavoidable conflict with provisions of the FVRA that would permit a person other than the Deputy Director to serve as Acting Director. *See* 5 U.S.C. § 3345.

Given the existence of a conflict between Dodd-Frank and the FVRA, Dodd-Frank governs. Dodd-Frank was enacted more recently than the FVRA, and the well-established rule for evaluating conflicts between two statutes is that "the more recent legal pronouncement controls." *Owner-Operator Indep. Drivers Ass'n, Inc. v. U.S. Dep't. of Transp.*, 724 F.3d 230, 233 (D.C. Cir. 2013). Further, Dodd-Frank's language is more specific than that of the FVRA. It focuses narrowly on the head of one particular agency, as opposed to supplying general rules for all executive offices. "'[I]t is a commonplace of statutory construction that the specific governs the general.'" *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2071 (2012) (citation omitted).[1]

---

[1] When it denied Ms. English's request for a temporary restraining order, this Court posited that the FVRA is "more specific" than Dodd-Frank "in that it addresses the issue of vacancies, not absences or unavailabilities." Hr'g Tr. at 26, Nov. 28, 2017. Respectfully, that analysis confuses the issues. If Dodd-Frank's use of the phrase "absence or unavailability" *does not* encompass a vacancy in the position of Director, then the statute simply does not speak to the issue of how to fill that vacancy. But if the phrase *does* encompass vacancies, then Dodd-Frank is far more specific than the FVRA because it creates a mandatory provision for a particular position at a single agency, rather than a general term intended to

In its ruling on Ms. English's TRO request, this Court reasoned that Dodd-Frank's use of the term "shall" does not necessarily conflict with the FVRA's provision that the President "may" appoint acting officers. 5 U.S.C. § 3345(a)(2); Hr'g Tr. at 24–25, Nov. 28, 2017. The Court gave an analogy from another provision of Dodd-Frank, which states that the Director of the CFPB "shall" serve a term of five years, but which also says the President "may" remove him for cause. *See* 12 U.S.C. § 5491(c)(1)–(3). Because it is clear that the removal provision allows the President to cut short the term of the CFPB Director "for cause," the Court noted, a permissive "may" term can—in some circumstances—override a "shall" term.

That general proposition, however, is inapplicable to this case. Dodd-Frank's provisions for the Director's term and removal were passed simultaneously, and make sense together only if construed to enable the Director's removal "for cause." Otherwise the removal provision would have no effect at all. *See Great Lakes Comnet, Inc. v. F.C.C.*, 823 F.3d 998, 1003 (D.C. Cir. 2016) ("[W]hen construing a statute courts 'give effect, if possible, to every clause and word.'" (citation omitted)). In contrast, here the President would allow Dodd-Frank's mandatory language to be overridden by permissive language in an *earlier* statute—the FVRA. There is no special justification for such an unnatural reading, though, since no absurdity would result from construing the FVRA as unavailable in this context.

Construing the FVRA as *available*, moreover, would be in considerable tension with a design choice that Congress made specifically for the CFPB. Dodd-Frank's succession language is straightforward and admits of no exceptions or alternatives—in stark contrast to the succession provisions that Congress has included in other statutes. Addressing the General Services Administration, for instance, Congress has provided that when there is a vacancy in the position

---

apply across many agencies. The question whether "absence or unavailability" refers to vacancies is separate from—and antecedent to—the question of which statute is more specific.

of Administrator, "the Deputy Administrator is Acting Administrator . . . *unless the President designates another officer of the Federal Government*." 40 U.S.C. § 302 (emphasis added); *see also* 38 U.S.C. § 304 ("*Unless the President designates another officer of the Government*, the Deputy Secretary shall be Acting Secretary of Veterans Affairs . . . in the event of a vacancy in the office of Secretary." (emphasis added)). Indeed, in the case of yet another single-director independent agency—the Social Security Administration—Congress provided that "[t]he Deputy Commissioner shall be Acting Commissioner" in the event of a vacancy in the office of the Commissioner "unless the President designates another officer of the Government as Acting Commissioner." 42 U.S.C.A. § 902. These succession provisions for other agencies demonstrate that Congress is capable of making mandatory language that yields to an alternative decision by the President. It is therefore significant that Congress chose not to do so in Dodd-Frank. *See Lukhard v. Reed*, 481 U.S. 368, 376 (1987) (plurality opinion).

This conclusion is reinforced by Dodd-Frank's legislative history. In addition to the clear text of Dodd-Frank, the legislative history. The version of Dodd-Frank that passed the House of Representatives in December 2009 did not provide for a Deputy Director of the CFPB. Rather, it explicitly stated that when the Director's office became vacant, a temporary replacement had to be appointed in the manner provided by the FVRA. *See* H.R. 4173, 111th Cong. § 4102(b)(6)(B)(1) (engrossed version, Dec. 11, 2009). But the Senate bill introduced and passed months later eschewed this choice, instead opting for what would become the present statutory language. *See* S. 3217, 111th Cong. § 1011(b)(5)(B) (2010). That change reflects a considered decision that the FVRA should not govern succession in the event of a vacancy in the Director position at the CFPB.

Mrs. English's position is further confirmed by the overall statutory scheme of Dodd-Frank, which "established . . . an independent bureau" and devised mechanisms to protect that

independence. 12 U.S.C. § 5491(a). In creating the CFPB, Congress determined that the agency needed to be an independent regulator—insulated from direct presidential management and control—to remain a vigilant guardian of consumers' interests. *See* S. Rep. No. 111-176, at 174 (2010). Accordingly, Congress placed the CFPB within the already-independent Federal Reserve small system, gave it an independent funding source, and protected its Director from removal except for good cause. *See* 12 U.S.C. §§ 5491(a), 5491(c)(3), 5497(a)(1). This independence is reinforced by the Senate's advice and consent power, which "[t]he Framers envisioned . . . as 'an excellent check upon a spirit of favoritism in the President' and a guard against 'the appointment of unfit characters.'" *SW Gen.*, 137 S. Ct. at 935 (quoting The Federalist No. 76, p. 457 (C. Rossiter ed. 1961) (A. Hamilton)). The President's position is flatly at odds with this structure. If he could appoint a different chosen successor under the FVRA, then the CFPB could be headed—potentially for many months—by an Acting Director hand-picked by the President without the check of Senate confirmation. That is exactly what Congress sought to prevent. Accordingly, his interpretation cannot succeed. *See King v. Burwell*, 135 S. Ct. 2480, 2496 (2015) ("A fair reading of legislation demands a fair understanding of the legislative plan.").

The President and Mr. Mulvaney contend that Dodd-Frank permits the application of the FVRA in this context for several reasons. First, they argue that the FVRA is still available because Dodd-Frank states as follows:

> [E]xcept as otherwise provided expressly by law, all Federal laws dealing with public or Federal . . . officers, employees, budgets, or funds, including the provisions of chapters 5 and 7 of title 5, shall apply to the exercise of the powers of the Bureau.

ECF No. 9, at 13 (quoting 12 U.S.C. § 5491(a)). But section 5491(b)(5)'s mandatory language for the CFPB Director's succession "provide[s] expressly by law" that the Deputy Director "shall" become the Acting Director. The requirement that an exception be "express" does not "require

the Congress to employ magical passwords." *Marcello v. Bonds*, 349 U.S. 302, 310 (1955); *see also Dorsey v. United States*, 567 U.S. 260, 273–74 (2012) ("Congress . . . remains free to repeal the earlier statute [or] to exempt the current statute . . . [a]nd Congress remains free to express any such intention either expressly or by implication as it chooses."). It is enough for "the plain import of a later statute" to "directly conflict" with the earlier statute. *Lockhart v. United States*, 546 U.S. 142, 149 (2005) (Scalia, J. concurring). That is the case here.

Next, the President and Mr. Mulvaney argue that the FVRA's own text indicates that it may apply alongside Dodd-Frank's provisions. The FVRA states that the appointment mechanisms it provides are

> the exclusive means for temporarily authorizing an acting official to perform the functions and duties of any office of an Executive agency . . . for which appointment is required to be made by the President, by and with the advice and consent of the Senate, unless—
>
> (1) a statutory provision expressly—
>
>> (A) authorizes the President, a court, or the head of an Executive department, to designate an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity; or
>>
>> (B) designates an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity . . .

5 U.S.C. § 3347(a). The government argues that where the listed exceptions apply, it means only that the FVRA is not the "exclusive" means for authorizing the appointments in question. Doc #9 at 11. In other words, according to the government, these exceptions say nothing about whether the FVRA may be an *additional* method for making such appointments. *Id.* To support that argument, the government cites the Ninth Circuit's case *Hooks v. Kitsap Tenant Support Services*, 816 F.3d 550 (9th Cir. 2016), and prior OLC opinions discussing specific statutes. *Id.*

But *Hooks* and the OLC opinions, as well as the government's briefing so far in this case, involved statutes that meaningfully differ from the case at hand. First, *Hooks* dealt with the National Labor Relations Act, which gives the authority to appoint an Acting General Counsel for the National Labor Relations Board to the very same person authorized to make a temporary appointment under the FVRA: the President. *See Hooks*, 816 F.3d at 555–56 (discussing 29 U.S.C. § 153(d)). Where two statutes provide a mechanism by which the same person may fill the same vacancy, it makes sense that "the President is permitted to elect between these two statutory alternatives," both of which empower the President directly. *Hooks*, 816 F.3d at 556. Similarly, many of the statutes discussed in the OLC precedent provide for appointments made either by the President or those acting under his control. *See* 28 U.S.C. § 508 (providing that the Attorney General "may designate" a line of succession); *Authority of the President to Name an Acting Attorney General*, 2007 WL 5334854, at *2 (2007) ("Nor would it make sense that the Attorney General . . . could prevent the President, his superior, from using his separate authority under the Vacancies Reform Act."). Here, in stark contrast, the statute governing the position of Acting Director does not empower the President or someone he controls to fill the vacancy; it instead provides for the Deputy Director's automatic succession to the position of Acting Director. 12 U.S.C. § 5491(b)(5)(B).

The President and Mr. Mulvaney also discusses yet another category of inapposite statutes: namely, those that use mandatory language similar to Dodd-Frank but that *predate* the FVRA. *See* ECF No. 9, at 12. They argue that when the FVRA was passed, it was understood to supplement these statutes, and thus should be understood to supplement Dodd-Frank as well. *Id.* But even assuming the defendants were right as a historical matter, that would not shed light on this case. There is a material difference between pre-FVRA statutes that would conflict with the FVRA and the Dodd-Frank Act, which was passed *after* the FVRA. Congress is free to undo or

amend its past acts. *See Newton v. Mahoning County Com'rs*, 100 U.S. 548, 559 (1879); *Lockhart v. United States*, 546 U.S. 142, 247–48 (2005) (Scalia, J., concurring). This fundamental principle explains both why the FVRA could modify mandatory language in prior statutes, and why Dodd-Frank can use mandatory language to the exclusion of the FVRA. To date, the administration has not produced a single example of a post-FVRA statute with mandatory language that has nonetheless been interpreted to allow the FVRA to remain as an alternative.

Finally, the President and Mr. Mulvaney note that the FVRA "also uses mandatory terms." They cite the FVRA's provision that, absent a presidential designation, "the first assistant to the office . . . shall perform the functions and duties of the office temporarily in an acting capacity." ECF No. 9, at 13 (citing 5 U.S.C. § 3345(a)(1)). They assert that this Court should refrain from "interpreting one statute to be more mandatory than the other." ECF No. 9, at 13. But Dodd-Frank's succession provision would be largely "superfluous" (or at least "insignificant") if the FVRA were to apply, *see Regions Hosp. v. Shalala*, 522 U.S. 448, 467 (1998) (Scalia, J., dissenting) (quoting *Market Co. v. Hoffman*, 101 U.S. 112, 15–16 (1879)), because the FVRA already provides for the default rule that the first assistant becomes the acting official. 5 U.S.C. § 3345(a)(1). And Ms. English's reading of Dodd-Frank does not reflect a choice to make one statute "more mandatory" than another statute that exists on equal footing. Dodd-Frank simply *is* mandatory, and therefore overrides the FVRA pursuant to the established rule that later legal enactments control earlier ones. Despite the general presumption that statutes should not be read to conflict, "[w]hen the plain import of a later statute directly conflicts with an earlier statute, the later enactment governs." *Lockhart*, 546 U.S. at 149 (Scalia, J., concurring). The plain import of Dodd-Frank is clear: the Deputy Director automatically assumes the post of Acting Director when the Director's post becomes vacant.

**2.      The FVRA's exception for independent officers prevents the President from using it to appoint an Acting Director of the CFPB**

Even if Dodd-Frank did not supersede the FVRA, the government's reliance on the FVRA would fail on its own terms. The FVRA "shall not apply" to the appointment of various positions, including the appointment of "any member . . . to any board, commission, or similar entity that (A) is composed of multiple members; and (B) governs an independent establishment or Government corporation." 5 U.S.C. § 3349c(1). In its recent memo, OLC recognized the importance of that strict limitation on presidential power under the FVRA: "As this provision illustrates, Congress has indeed determined that some positions with hallmarks of independence should not be filled on an acting basis through the Vacancies Reform Act." OLC Memo at 7.

Although OLC discussed § 3349c(1), it overlooked a critical fact: the CFPB Director falls within this exclusion because she also serves as a member of an independent, multi-member board—namely, the Board of Directors of the FDIC. *See* 12 U.S.C. § 1812(a)(1)(B) ("The management of the Corporation shall be vested in a Board of Directors consisting of 5 members . . . 1 of whom shall be the Director of the Consumer Financial Protection Bureau."). By statute, the FDIC Board of Directors is a "board . . . composed of multiple members" that governs an independent Government corporation. 5 U.S.C. § 3349c(1); 12 U.S.C. § 1812(a)(1); *Community Financial Servs. Assoc. of Am., Ltd. v. Fed. Deposit Ins. Corp.*, 132 F. Supp. 3d 98, 106 (D.D.C. 2015); *see also* Henry B. Hogue et al., *Independence of Federal Financial Regulators*, Congressional Research Service (Feb. 28, 2017). Further, Congress has made clear that in the absence of a CFPB Director, the CFPB's Acting Director automatically becomes a member of this independent board. *See* 12 U.S.C. § 1812(d)(2) (providing that, "[i]n the event of a vacancy in . . . the office of Director of the Consumer Financial Protection Bureau and pending the appointment of a

successor, . . . the acting Director of the Consumer Financial Protection Bureau . . . shall be a member of the Board of Directors in the place of the . . . Director").

Thus, when the President attempted to designate Mr. Mulvaney as the Acting Director of the CFPB—and thus as a member of the FDIC Board of Directors—he exceeded his authority under the FVRA. The purported appointment of Mr. Mulvaney is therefore invalid.

**B.     *The President's appointment of Mr. Mulvaney violates the Constitution's Appointments Clause***

The Constitution empowers the President to appoint "Officers of the United States," subject to "the Advice and Consent of the Senate." U.S. Const. Art. II, § 2, cl. 2. As the Supreme Court has emphasized, this provision "is more than a matter of 'etiquette or protocol'; it is among the significant structural safeguards of the constitutional scheme." *Edmond v. United States*, 520 U.S. 651, 659 (1997) (quoting *Buckley v. Valeo*, 424 U.S. 1, 125 (1976) (*per curiam*)). The Framers considered the appointment power "the most insidious and powerful weapon of eighteenth century despotism," and responded "by carefully husbanding the appointment power to limit its diffusion." *Freytag v. C.I.R.*, 501 U.S. 868, 883 (1991). The Appointments Clause was thus designed to "ensure public accountability for both the making of a bad appointment and the rejection of a good one." *Edmond*, 520 U.S. at 660. Apart from the Appointments Clause itself, there is only one additional source of authority for the President to appoint an officer. Where it sees fit to do so, Congress may pass a statute granting the President the authority to appoint "inferior Officers" without the Senate's advice and consent. U.S. Const. Art. II, § 2, cl. 2.

The President thus has two, and only two, means of appointing officers: with the advice and consent of the Senate, or pursuant to a statute. *See SW Gen.*, 137 S. Ct. at 945 (Thomas, J., concurring). "[A]ll persons who can be said to hold an office under the government . . . were intended to be included within one or the other of these modes of appointment." *United States v.*

*Germaine*, 99 US 508, 510 (1878). When no statute grants the President the power to appoint an officer, then, he has no constitutional authority to do so without the advice and consent of the Senate. *See, e.g.*, *Williams v. Phillips*, 360 F. Supp. 1363, 1364 & 1371 (D.D.C. 1973) (enjoining Acting Director of the Office of Economic Opportunity from "taking any action as Acting Director" because he was not appointed under a statute or with Senate confirmation).[2]

Here, the Court is faced with two statutes designed to *limit* the President's authority. Dodd-Frank was enacted to create an independent agency, and the FVRA was enacted to reinforce the Senate's advice-and-consent power. *See SW Gen.*, 137 S. Ct. at 935–36. Given the "separation-of-powers concerns" that naturally arise in this field, the Court should hesitate to "read[] legislation, absent clear statement, to place in executive hands authority to" appoint officers without the Senate's advice or consent. *See Kucana v. Holder*, 558 U.S. 233, 237 (2010).[3] That risks improperly aggrandizing executive power at the direct expense of a co-equal branch.

Here, there is no clear statement in the FVRA that supplants the Dodd-Frank Act's rule of succession. To the contrary, the FVRA's appointment provision does not apply by its own

---

[2] Mr. Mulvaney has not been confirmed by the Senate to the position of CFPB Director; his confirmation by the Senate to the position of OMB Director does not, on its own, allow the President to assign him additional duties in a position at another agency. *See Weiss v. United States*, 510 U.S. 163, 173–76 (1994); *Shoemaker v. United States*, 147 U.S. 282 (1893).

[3] Amici Texas et al. argue that it raises "grave and doubtful constitutional questions" to "construe the Dodd-Frank Act as overriding the President's choice of Acting Director." ECF No. 11-1, at 9. This argument ignores the shared nature of the appointment power, as granting the President the ability to appoint Mr. Mulvaney would deprive the Senate of its constitutional prerogative to advise and consent. It raises equally serious constitutional problems to interpret a This Court has rejected the argument that the Constitution's general command for the President to "take care that the laws be faithfully executed," *See* ECF No. 11-1, at 8, provides the President with some freestanding power to appoint officers. *See Olympic Fed. Sav. and Loan Ass'n v. Dir., Office of Thrift Supervision*, 732 F.Supp. 1183, 1199–1200 (D.D.C. 1990); *Williams*, 360 F.Supp. at 1369. And there is nothing unusual about Dodd-Frank's mandatory succession plan. Congress has passed numerous other laws providing for automatic succession of agency heads without input from the President, or requiring the President to choose from within a narrow band of non-Senate-confirmed options. *See, e.g.*, 12 U.S.C. § 4512(f); 15 U.S.C. § 633(b)(1) ("The Deputy Administrator shall be Acting Administrator…"); 20 U.S.C. § 3412(a)(1) (". . . in the event of a vacancy in the office of the Secretary, the Deputy Secretary shall act as Secretary"); 29 U.S.C. § 552 ("The Deputy Secretary shall . . . perform the duties of the Secretary until a successor is appointed.").

terms, *see* § 3349c(1), and if it does apply then it is overridden by mandatory language in Dodd-Frank, *see* § 5491(b)(5)(B). The government's statutory arguments thus fail. And without a valid statutory basis, the President's purported unilateral appointment of Mr. Mulvaney to serve as Acting Director of the CFPB constitutes a direct violation of the Appointments Clause.

## C.  *Even if the FVRA were to apply to the position of Acting Director, the President's appointment of Mr. Mulvaney would still be invalid.*

The President's attempt to appoint a still-serving White House staffer to the position of Acting Director is foreclosed by Congress's establishment of the CFPB as "an independent bureau." 12 U.S.C. § 5491(a). Granting the CFPB durable independence was one of Congress's primary goals in the agency's creation. *See* S. Rep. No. 111-176, at 174 (2010). The CFPB was created "in the Federal Reserve System," 12 U.S.C. § 5491(a), another branch of the executive whose independence is essential to its mission. *See generally* Peter Conti-Brown, *The Power and Independence of the Federal Reserve* (2016). The CFPB's Director is removable only for cause, a quintessential protection of agency independence. *See* 12 U.S.C. § 5491(c)(3); *see also Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 483 (2010) (noting that "Congress can, under certain circumstances, create independent agencies run by principal officers appointed by the President, whom the President may not remove at will but only for good cause"). And the CFPB is independently funded via the Federal Reserve System—rather than the usual annual appropriations process in Congress—to further bolster its autonomy. 12 U.S.C. § 5497(a)(1).

The CFPB's independence is consistent with Congress's longstanding practice of insulating financial regulatory agencies from direct political control. *See generally* Steven A. Ramirez, *Depoliticizing Financial Regulation*, 41 Wm. & Mary L. Rev. 503 (2000); Michael S. Barr, *Comment: Accountability and Independence in Financial Regulation*, 78 Law & Contemp. Probs. 119 (2015). "[S]ince the [1930s], financial regulatory agencies have been given a great deal of

independence," because direct control of financial regulation by the President invites improper interference with financial agencies' enforcement and supervision capacities. Barr, *Accountability and Independence*, 78 Law & Contemp. Probs. at 120. Indeed, Congress has shielded many financial regulators other than the CFPB from presidential influence. *See, e.g.*, 12 U.S.C. § 4512(b)(2); 12 U.S.C. § 16; 12 U.S.C. § 250. The increasing size and interdependence of financial markets mean that independent oversight of financial institutions has never been more necessary. *See* Ramirez, *Depoliticizing Financial Regulation*, 41 Wm. & Mary L. Rev. at 510.

Yet the President now seeks to subvert this independence by selecting an Acting Director for the CFPB who will simultaneously continue to serve him as an at-will employee in the White House. Defying over a century of Executive Branch precedent, Mr. Mulvaney has not resigned from his position with OMB, and has issued a public statement saying that he will continue to serve as the Director of OMB while "wearing an additional hat as the Acting Director" of the CFPB.[4] OMB is an agency within the Executive Office of the President and works closely with the President to implement his policy priorities across the entirety of the Executive branch.[5] In his capacity as OMB Director, Mr. Mulvaney does not enjoy the statutory protections given to the CFPB director. Instead, he may be fired at the President's whim. He is thus highly susceptible to the direct presidential influence that Congress sought to avoid in financial regulators.

Appointing a still-serving White House staffer to lead the CFPB is a blatant violation of Congress's mandate that the agency be "independent." § 5491(a). From Mr. Mulvaney's perspective, his job at the CFPB will be temporary, lasting only until the President nominates a Director. His full-time, at-will job at OMB, in contrast, is one he will presumably retain

---

[4] *See* Statement from Director Mick Mulvaney on the CFPB, OMB Press (Nov. 24, 2017), https://goo.gl/iv48Xw

[5] *See generally* Office of Management and Budget, The White House, *https://www.whitehouse.gov/omb*.

throughout and after his tenure at the CFPB. As the Supreme Court has noted, in the context of protections for independent executive agencies, "it is quite evident that one who holds his office only during the pleasure of another cannot be depended upon to maintain an attitude of independence against the latter's will." *Humphrey's Ex'r v. United States*, 295 U.S. 602, 629 (1935). If Mr. Mulvaney were to serve as Acting Director while remaining employed in an at-will position in the White House, he would violate Dodd-Frank's requirement that the CFPB be independent and set a dangerous precedent for independent agencies throughout the executive branch.

Mr. Mulvaney's appointment is even more clearly inappropriate because Congress has enacted laws *specifically* to shield the CFPB's independence from the OMB, which Mr. Mulvaney directs. While the CFPB is required to provide information regarding its finances to OMB, Dodd-Frank contains a sweeping provision meant to guarantee that reporting requirements do not allow the OMB Director to have any control over the CFPB. Dodd-Frank thus disclaims "any obligation on the part of the [CFPB's] Director to consult with or obtain the consent or approval of the Director of the Office of Management and Budget with respect to any report, plan, forecast, or other information [subject to the reporting requirement] or any jurisdiction or oversight over the affairs or operations of the [CFPB]." 12 U.S.C. § 5497(a)(4)(E).

Mr. Mulvaney's appointment would turn Congress's statutory scheme upside down. More than just requiring the CFPB Director to obtain the consent or approval of the OMB Director, the President wants the person in charge of the CFPB to *be* the OMB Director. Congress has made clear that, by law, the President cannot require the OMB Director's approval with respect to "any jurisdiction or oversight over the affairs or operations of the [CFPB]." *Id.* The President's action here would put the OMB Director at the helm of the entire jurisdiction of the Bureau, with daily oversight over its affairs and operations. Even if the President had the general power to appoint an Acting Director under the FVRA, appointing the OMB Director in

particular violates statutory provisions that safeguard the CFPB's independence from OMB. No matter how many times he takes one hat off and puts another hat on, Mr. Mulvaney cannot be "depended upon to maintain [the] attitude of independence" required by Congress. *See* 295 U.S. at 629.

The President's appointment of Mr. Mulvaney also runs contrary to Congress's protections for the independence of the FDIC. As noted above, by appointing Mr. Mulvaney to be Acting Director of the CFPB, the President has placed Mr. Mulvaney on the FDIC's Board of Directors. 12 U.S.C. §§ 1812(a)(1)(B), (d)(2). But like Dodd-Frank, the laws governing the FDIC contain shields against OMB influence: Congress expressly disclaimed "any obligation on the part of the [FDIC] to consult with or obtain the consent or approval" of the OMB Director with respect to "any jurisdiction or oversight over the affairs or operations of" the FDIC. 12 U.S.C. § 1827(c)(3). Accordingly, just as the appointment of Mr. Mulvaney would undermine the wall of separation that Congress built between the CFPB and OMB, so too would it defeat Congress's intention to make the FDIC independent from one of the White House's main policy organs. These considerations compel the conclusion that Mr. Mulvaney's appointment is invalid.

**D.    *This Court may issue the relief plaintiff requests***

As we have shown, Ms. English is likely to succeed on the merits of her claims. That is also true with respect to her requested remedies.

The government disagrees. Adopting an extraordinary position—one highly destructive of the separation of powers—it argues that the Judiciary categorically lacks authority to enjoin the President in his official acts. *See* ECF No. 9, at 4. It builds that argument atop a case from 150 years ago. Not only does this contention fail to address much of Ms. English's claim for relief, but it also reflects an incorrect and untenable reading of applicable precedent.

The principal case that the government cites is *Mississippi v. Johnson*, 71 U.S. 501 (1866). That case, however, does not say what the government says it says. Instead, as many scholars and courts have recognized, it was a political question case that arose before the modern terminology of political questions jurisprudence. *See Nat'l Treasury Emps. Union v. Nixon*, 492 F.2d 587, 614 (D.C. Cir. 1974) (*NTEU*); *Mississippi v. Johnson*, 71 U.S. at 500–01; *see also* Mashaw, *Federal Administration and Administrative Law in the Gilded Age*, 119 Yale L.J. 1362, 1401 n.123 (2010) ("*Mississippi v. Johnson* was, in essence, a political question case."). This reading reflects the best interpretation of *Johnson* and has the further virtue of according with over 150 years of subsequent judicial precedent.

It's helpful to begin this analysis with first principles. The Supreme Court has "long held" that federal courts "ha[ve] the authority to determine whether [the President] has acted within the law." *Clinton v. Jones*, 520 U.S. 681, 703 (1997). As part of this authority, courts have the power to restrain unconstitutional presidential action—either through injunctive relief, *see, e.g.*, *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 584 (1952), or declaratory relief, *see, e.g.*, *Franklin v. Massachusetts*, 505 U.S. 788, 803 (1992). And, contrary to the government's claim that issuing such an injunction would be a "radical departure" from an "established principle," this very Court has previously done so in the specific context of the President's power over inferior officers.

*See, e.g., Berry v. Reagan*, No. 83-3182, 1983 WL 538 (D.D.C. Nov. 14, 1983); *Mackie v. Bush*, 809 F. Supp. 144, 148 (D.D.C.), *vacated as moot sub nom. Mackie v. Clinton*, 10 F.3d 13 (D.C. Cir. 1993).

Of course, "in most cases" courts can issue such relief "against subordinate officials," obviating the need for relief against the President. *Swan v. Clinton*, 100 F.3d 973, 978 (D.C. Cir. 1996). That is what happened in *Youngstown*, for example, when the Court invalidated President Truman's "order directing the Secretary of Commerce to take possession of and operate most of the Nation's steel mills." 343 U.S. at 582. "Although the President was not a party, the Court enjoined the Secretary of Commerce from executing a direct Presidential order," *Nixon v. Fitzgerald*, 457 U.S. 731, 754 n.36 (1982), and thus "understood its [opinion] effectively to restrain the president," *NTEU*, 492 F.2d at 611; *see also Clinton*, 520 U.S. at 703 ("[W]e exercised our Article III jurisdiction to decide whether [the President's] official conduct conformed to the law.").

In this case, the President is not the sole defendant, and Ms. English's injury may be at least partially remedied by an injunction against Mr. Mulvaney. But "only injunctive relief against the President himself," *Swan*, 100 F.3d at 978, will afford Ms. English full relief, as the President could attempt to appoint another officer under the FVRA. The power to appoint the head of an agency belongs uniquely to the President, and so an injunction against the President himself is appropriate. Holding otherwise would risk destabilizing the separation of powers.

Indeed, "it would be exalting form over substance if the President's acts were held to be beyond the reach of judicial scrutiny when he himself is the defendant, but held within judicial control" when "federal officials subordinate to the President . . . can be named as a defendant." *NTEU*, 492 F.2d at 613–15 (allowing case against the President to proceed where "no federal official other than the President [could] be properly named as defendant"). If this Court has the power to enjoin unlawful, injurious exercises of the executive power, it has the power to enjoin whichever federal officials must be enjoined to vindicate the Constitution. *See Marbury v. Madison*,

5 U.S. (1 Cranch) 137, 170 (1803) ("It is not by the office of the person to whom the writ is directed, but the nature of the thing to be done that the propriety or impropriety of issuing a mandamus, is to be determined."). A highly formalistic distinction that uniquely immunizes the President from judicial power would thus ignore (or effectively nullify) the "settled law" that federal courts are not precluded from "exercis[ing] jurisdiction over the President." *Fitzgerald*, 457 U.S. at 753–54 (listing examples); *see Boumediene v. Bush*, 553 U.S. 723 (2008) (habeas corpus); *Clinton v. New York*, 524 U.S. 417 (1998) (declaratory relief); *United States v. Nixon*, 418 U.S. 683 (1974) (subpoena); *United States v. Burr*, 25 F. Cas. 187 (No. 14,694) (CC Va. 1807) (Marshall, C.J.) (subpoena); *see also generally* Siegel, *Suing the President: Nonstatutory Review Revisited*, 97 Colum. L. Rev. 1612 (1997).

In short, this Court has enjoined the President before, and may do so again here.

## II.    Ms. English will suffer irreparable injury if an injunction is not granted.

Ms. English has suffered an irreparable injury that will continue every day that Mr. Mulvaney claims to hold the office of Acting Director. The irreparable harm analysis "assumes, without deciding, that the movant has demonstrated a likelihood that the non-movant's conduct violates the law," and courts should "examine only whether that violation, if true, inflicts irremediable injury." *Chaplaincy*, 454 F.3d at 303.[6] Assuming that Ms. English is likely to win on the merits, the harm she suffers is clear: the usurpation of her position at the fore of a federal agency in a role that will disappear as soon as the President nominates and the Senate confirms a new Director.

Run-of-the-mill employment cases involving the loss of a position are inapt. *See* ECF No. 9, at 16. Ms. English's injury is not simply the loss of a salary; it is the loss of a "statutory right to function" in a position directly related to a federal agency's "ability to fulfill its mandate."

---

[6] For this reason, the President's response that Ms. English's assertion of irreparable harm "begs the question" of the merits of her case, ECF No. 9, at 17, is irrelevant.

*Berry v. Reagan*, 1983 WL 538, at *5 (D.D.C. Nov. 14, 1983). Ms. English is the rightful Acting Director of a large independent agency tasked with protecting the nation's consumers, making critical decisions regarding policy and enforcement every day. As this Court has recognized, the loss of such a "statutory right to function" in a role like Ms. English's is an irreparable injury. *Id.*

This injury continues every day the Court does not issue an injunction, and it will soon be entirely beyond remedy. The very nature of the Acting Director position is that it is temporary; it will expire when the President nominates and the Senate confirms a new Director for the CFPB. Once a new Director is appointed, "neither a damages remedy nor a declaratory judgment would provide an adequate remedy" for Ms. English's lost time in office. *See Mackie v. Bush*, 809 F. Supp. 144, 147 (D.D.C. 1993), *vacated as moot sub nom. Mackie v. Clinton*, 10 F.3d 13 (D.C. Cir. 1993). With each passing day, then, Ms. English loses an irretrievable and irremediable legal entitlement. Her injury demands prompt intervention by this Court.

## III.   The balance of the equities and the public interest weigh in Ms. English's favor.

The injunction Ms. English seeks would provide clarity to the public as to who is in charge of the CFPB, a critically important federal agency whose actions affect many institutions and consumers throughout the country.[7] At the same time, the injunction would not prejudice the President's ability to appoint Mr. Mulvaney or anyone else after this Court rules on the merits of Ms. English's claim to appoint a Director pursuant or pursuant to the Article II nominations process with the advice and consent of the Senate.

There is an urgent public need for clarity as to the Acting Director position at the CFPB. The CFPB is the primary federal regulator of many consumer financial products and services,

---

[7] In a motion for a preliminary injunction against the government, the last two factors of the preliminary injunction test—evaluating harm to the opposing party and weighing the public interest— "merge." *Nken*, 556 U.S. at 435.

issuing rules and taking enforcement actions affecting a large portion of the economy including consumer-facing banks with more than $10 billion in assets. *See* David H. Carpenter, *The Consumer Financial Protection Bureau (CFPB)*, at 9–14, Congressional Research Service (2014). The dispute between Ms. English, the President, and Mr. Mulvaney has generated substantial attention in the media, which has noted the public confusion over the agency's leadership. *See, e.g.*, Victoria Guida, *Trump taps Mulvaney to head CFPB, sparking confusion over agency's leadership*, Politico (Nov. 24, 2017), https://goo.gl/j5s6D4; Katie Rogers, *2 Bosses Show Up to Lead the Consumer Financial Protection* Bureau (Nov. 27, 2017), https://goo.gl/MbtyAU. At least one additional lawsuit seeking clarity over the agency's leadership has been filed by a financial institution affected by the CFPB's regulations, a credit union in New York City. *See Lower East Side People's Federal Credit Union v. Trump et al.*, No. 1:17-cv-09536 (E.D.N.Y. 2017).

Mr. Mulvaney, meanwhile, has indicated that he has a sweeping agenda to usher in change at the CFPB. *See* Jessica Silver-Greenberg and Stacy Cowley, *Consumer Bureau's New Leader Steers a Sudden Reversal*, N.Y. Times (Dec. 5, 2017), https://goo.gl/CN4Pdc. But doubt over who is the legitimate Acting Director hurts the public by casting a pall over the validity of the agency's actions, as actions taken by an illegally appointed Director may themselves be unlawful. *See, e.g.*, *FEC v. NRA Political Victory Fund*, 6 F.3d 821 (D.C. Cir. 1993). If Mr. Mulvaney makes significant changes that end up being invalid due to the illegality of his appointment, it may be difficult for this Court or a subsequent Director to unscramble those actions. It also may be unlawful for subsequent officers to ratify Mr. Mulvaney's changes because the FVRA specifically prohibits the ex-post ratification of actions by officials appointed outside of the FVRA's parameters. *See* 5. U.S.C. § 3348(d).

In addition to being ill-served by legitimate doubt as to any actions the CFPB takes, the public interest will also be hurt if this doubt has the effect of chilling the agency. Mr. Mulvaney

has declared a "freeze" on significant agency actions. *See* Andrew Restuccia, *Mulvaney imposes temporary hiring, regulations freeze on CFPB*, Politico (Nov. 27, 2017), https://goo.gl/d9KQpG. To the extent that such a freeze is motivated by concern for the legality of Mr. Mulvaney's actions, the public is deprived of the protections that Congress intended the CFPB to provide. The public interest therefore strongly supports the preliminary injunction Ms. English seeks.

In contrast, the injunction that Ms. English seeks would not substantially injure the defendants. Ms. English is the current Acting Director of the CFPB. The order plaintiff seeks would not jeopardize the President's ability to appoint an Acting Director in the near future, whether Mr. Mulvaney or someone else, after the Court has had further opportunity to consider the merits and resolve Ms. English's claim. And the President will retain at all times the authority to nominate someone subject to the advice and consent of the Senate. "Temporary postponement of the President's" appointment "would not appear to cause any damage to his interest or to that of the United States." *Mackie*, 809 F. Supp. at 146. But removal of plaintiff from her office, "particularly during this period of transition, could be irrevocably disruptive" for her. *Id.* And failing to grant a preliminary injunction would prolong the uncertainty over the CFPB's leadership for the public at large.

## CONCLUSION

The plaintiff's motion for a temporary restraining order should be granted.

Respectfully submitted,

/s/ Deepak Gupta

DEEPAK GUPTA (D.C. Bar No. 495451)
MATTHEW WESSLER (D.C. Bar No. 985241)
JONATHAN E. TAYLOR (D.C. Bar No. 1015713)
RACHEL BLOOMEKATZ (*pro hac vice*)
JOSHUA MATZ (*pro hac vice*)
**GUPTA WESSLER PLLC**
1900 L Street, NW, Suite 312

28

Washington, DC 20036
Phone: (202) 888-1741
Fax: (202) 888-7792
*deepak@guptawessler.com*

December 6, 2017                    *Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 6, 2017, I electronically filed this motion for a temporary restraining order through this Court's CM/ECF system. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

*/s/ Deepak Gupta*
Deepak Gupta