IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| LEANDRA ENGLISH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 17-2534 (TJK) |
| | ) | |
| DONALD J. TRUMP; JOHN M. MULVANEY, | ) | |
| | ) | |
| Defendants. | ) | |

———————————

**BRIEF FOR THE DISTRICT OF COLUMBIA AND THE STATES OF
CALIFORNIA, CONNECTICUT, DELAWARE, HAWAII, ILLINOIS,
IOWA, MAINE, MARYLAND, MASSACHUSETTS, MINNESOTA, NEW
MEXICO, NEW YORK, OREGON, PENNSYLVANIA, RHODE ISLAND,
VERMONT, AND WASHINGTON AS *AMICI CURIAE* IN SUPPORT OF
PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

———————————

# TABLE OF CONTENTS

STATEMENT OF INTEREST OF *AMICI CURIAE* ................................................1

BACKGROUND .................................................................................................2

ARGUMENT ......................................................................................................5

    I.     Congress's Specific Direction In The Consumer Financial Protection Act That The Deputy Director Succeed To The Acting Director Is An Essential Component Of The Act's Comprehensive Scheme Creating An Independent Agency Structure ...........................5

    II.    The Canon Of Constitutional Avoidance Is Inapplicable And In Any Event Cannot Defeat Congress's Intent—As Evidenced Through The Plain Language Of The Consumer Financial Protection Act—That The Deputy Director Succeed To The Acting Director ....................................................................................9

CONCLUSION ..................................................................................................12

i

# TABLE OF AUTHORITIES

## *Cases*

*Clark v. Martinez*, 543 U.S. 371 (2005) ....................................................9

*FCC v. Fox Television*, 556 U.S. 502 (2009) ............................................9

*Howard v. Pritzker*, 775 F.3d 430 (D.C. Cir. 2015) ..................................8

*Humphrey's Ex'r v. United States*, 295 U.S. 602 (1935) .........................7

*Morrison v. Olson*, 487 U.S. 654 (1988) ..................................................7

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639 (2012) ...........8

*Rust v. Sullivan*, 500 U.S. 173 (1991) ....................................................11

## *Constitution and Statutes*

U.S. Const. art. II, § 2 ..............................................................................10

5 U.S.C. § 3345 ..........................................................................................6

5 U.S.C. § 3346 ..........................................................................................6

12 U.S.C. § 5491 ............................................................... 3, 4, 5, 7, 10

12 U.S.C. § 5497 .................................................................... 3, 4, 7

12 U.S.C. § 5512 ....................................................................................4, 7

12 U.S.C. § 5513 ........................................................................................5

12 U.S.C. § 5515 ....................................................................................4, 7

12 U.S.C. § 5552 ........................................................................................1

12 U.S.C. § 5564 ....................................................................................4, 7

*Other Authorities*

Press Release, Office of the Attorney General for D.C. (July 18, 2015) .................2

S. Rep. No. 111-176 (2010) ...................................................................................2, 3

## STATEMENT OF INTEREST OF *AMICI CURIAE*

*Amici curiae* are the District of Columbia and the States of California, Connecticut, Delaware, Hawaii, Illinois, Iowa, Maine, Maryland, Massachusetts, Minnesota, New Mexico, New York, Oregon, Pennsylvania, Rhode Island, Vermont, and Washington, who seek to maintain the legislatively crafted independence of the Consumer Financial Protection Bureau ("CFPB") that is so essential to its mission. Through the Consumer Financial Protection Act ("Act"), Congress has authorized State Attorneys General to enforce the Act's consumer protection provisions and CFPB regulations. 12 U.S.C. § 5552(a). In bringing such enforcement actions, the States consult with the CFPB, which has the right to intervene in those suits. 12 U.S.C. § 5552(b). As enforcement partners with the CFPB, the *Amici* States have an interest in preserving the independence of the CFPB from short-term political pressures so that it can use its resources and expertise to pursue the long-term public interest. The CFPB's independence is crucial to the effectiveness of the *Amici* States' enforcement efforts, as the CFPB and the *Amici* States make decisions about cooperating in parallel investigations, sharing information and documents collected, coordinating enforcement actions, and negotiating joint settlements. Attempts to dismantle Congress's careful and concerted efforts in structuring the CFPB as a truly

independent agency would, if successful, harm the *Amici* States' ability to enforce the many consumer financial laws that protect their residents.[1]

## BACKGROUND

Congress established an independent CFPB to help prevent a repeat of the 2008 financial crisis, which devastated the nation's economy and was the worst such crisis since the Great Depression.  S. Rep. No. 111-176, at 15, 39 (2010).  More than 8 million American jobs were lost, 7 million homes entered foreclosure, and household wealth fell by $13 trillion.  *Id.* at 39.  As the Senate Committee on Banking, Housing, and Urban Affairs found, "it was the failure by the prudential regulators to give sufficient consideration to consumer protection that helped bring the financial system down."  *Id.* at 166.  The existing regulatory system had been a "spectacular failure," as regulators had "routinely sacrificed consumer protection for short-term profitability of banks" and other financial institutions.  *Id.* at 15.

 After extensive testimony and deliberations, Congress enacted the Consumer Financial Protection Act, which created the CFPB as an "independent bureau" within

---

[1]     As just one concrete example, the CFPB coordinated with the States to investigate allegations that Chase Bank USA N.A. and Chase Bankcard Services, Inc. had committed a variety of deceptive and unlawful debt-collection practices for credit cards.  This resulted in a joint settlement with the District of Columbia, 47 States, and the CFPB under which Chase agreed to reform those practices, pay $136 million, and cease collection actions against more than 528,000 consumers.  *See* Press Release, Office of the Attorney General for the District of Columbia (July 18, 2015), *available at* https://oag.dc.gov/release/chase-bank-change-unlawful-debt-collection-practices-thanks-agreements-state-attorneys.

the Federal Reserve System, itself an independent entity, to regulate consumer financial products and services under federal consumer financial laws.  12 U.S.C. § 5491 (a); *see* S. Rep. No. 111-176, at 9-11.

In the Act, Congress carefully calibrated the CFPB's structure to ensure a particularly high degree of independence.  First, the Act establishes independent leadership of the agency.  It provides for a Director, who "shall be appointed by the President, by and with the advice and consent of the Senate," and a Deputy Director "who shall be appointed by the Director . . . and serve as acting Director in the absence or unavailability of the Director."  12 U.S.C. § 5491(b).  The Director "shall serve for a term of 5 years," and may be removed by the President only "for cause," that is, "inefficiency, neglect of duty, or malfeasance in office."  12 U.S.C. § 5491(c).

Second, the Act provides the CFPB a source of funding independent of the usual budget process.  Specifically, "the Board of Governors shall transfer to the Bureau from the combined earnings of the Federal Reserve System, the amount determined by the Director to be reasonably necessary to carry out the authorities of the Bureau," subject to an annually adjusted funding cap (but with a mechanism for additional appropriations).  12 U.S.C. § 5497(a)(1)-(2), (e).  Such funds "shall not be subject to review by the Committees on Appropriations of the House of Representatives and the Senate."  12 U.S.C. § 5497(a)(2)(C).

Third, the Act gives the CFPB independent rulemaking authority.  It provides: "The Director may prescribe rules and issue orders and guidance, as may be necessary or appropriate to enable the Bureau to administer and carry out the purposes and objectives of the Federal consumer financial laws."  12 U.S.C. § 5512(b)(1).  This rulemaking authority is "exclusive," and the judicial deference afforded the Bureau's interpretation "shall be applied as if the Bureau were the only agency" interpreting and administering those laws.  12 U.S.C. § 5512(b)(4).

Fourth, the Act gives the CFPB "primary enforcement authority" among federal agencies authorized to enforce the consumer financial laws with respect to certain covered entities.  12 U.S.C. § 5515(c)(1).  Another federal agency may not bring its own enforcement action until 120 days after it recommends that the CFPB bring such action and the CFPB declines to do so.  12 U.S.C. § 5515(c)(2)-(3).  In support of its strong enforcement powers, the Act provides the CFPB with independent litigation authority, such that it may "commence a civil action" and "act in its own name and through its own attorneys" in any suit.  12 U.S.C. § 5564(a)-(b).

Congress, of course, did not give the CFPB unbridled discretion, but struck a precise and intentional balance.  For example, as mentioned, the President may remove the Director for cause before the end of his or her five-year term.  12 U.S.C. § 5491(c)(3).  In addition, the Act directs the Government Accountability Office to conduct annual audits of the CFPB's financial transactions.  12 U.S.C. § 5497(a)(5).

4

The Act also permits the Financial Stability Oversight Council to set aside a CFPB regulation when it decides, by a two-thirds vote, that the regulation risks certain adverse impacts.  12 U.S.C. § 5513.  As designed by Congress, the independence of the CFPB is not only robust but also carefully delineated.

## ARGUMENT

**I.**    **Congress's Specific Direction In The Consumer Financial Protection Act That The Deputy Director Succeed To The Acting Director Is An Essential Component Of The Act's Comprehensive Scheme Creating An Independent Agency Structure.**

The defendants' position—that the President may select an acting CFPB Director outside of the Consumer Financial Protection Act's provisions—violates the "independent" agency structure that Congress expressly created.  12 U.S.C. § 5491(a).  Under the Act, once a Director has been appointed by the President with approval of the Senate, the Director serves a five-year term, which notably transcends the President's own four-year term.  12 U.S.C. § 5491(c)(1).  To further ensure the Director's independence, the President's role during the Director's term is limited: the President can remove the Director only for cause.  12 U.S.C. § 5491(c)(3).  And if the Director is removed, or resigns, then the Act provides that the Deputy Director "shall" serve as the acting Director until the President appoints (again with Senate approval) a new Director.  12 U.S.C. § 5491(b)(2), (5).  Thus, the text of the Act, on its face, forecloses the defendants' position.

In contravention of this statutory scheme, the defendants erroneously contend that the President can unilaterally designate another individual—not the Deputy Director—to serve as acting Director for an extended period.  They posit that the 1998 Federal Vacancies Reform Act, 5 U.S.C. § 3345 *et seq*., allows the President to make such a designation.  Under this view, the President could select an acting Director who could serve for as long as the Vacancies Reform Act permits—seven months or much longer—but all the while presumably at the President's will.  *See* 5 U.S.C. § 3346. Indeed, because defendants contend that the Vacancies Reform Act is just "one means" of filling the Director's vacancy (Opp. to TRO Mot. 10), the President could choose an acting Director under that act and then select, as another successor, the Deputy Director that the acting Director has appointed.   Taken to its logical conclusion, the defendants' interpretation would allow the CFPB to be headed indefinitely by individuals who are effectively just of the President's own choosing. This would not only circumvent the required process for Senate confirmation and the separation-of-powers doctrine, but also violate the Congressionally mandated independence of the agency director.[2]

---

[2]     Raising further concerns about the President's ability to undermine the CFPB's independence, President Trump tweeted this morning in response to news reports about an ongoing CFPB enforcement action: "Fines and penalties against Wells Fargo Bank for their bad acts against their customers and others will not be dropped, as has incorrectly been reported, but will be pursued and, if anything, substantially increased.

The defendants' approach demolishes a critical part of Congress' carefully constructed statutory scheme for the CFPB's independence.  The independence of an agency means little without independent leadership.  *See Morrison v. Olson*, 487 U.S. 654, 687-88 (1988) ("Were the President to have the power to remove FTC Commissioners at will, the 'coercive influence' of the removal power would 'threat[en] the independence of [the] commission.'" (quoting *Humphrey's Ex'r v. United States*, 295 U.S. 602, 630 (1935))).  Congress thus found it necessary to ensure independent leadership through the for-cause removal and succession provisions.  12 U.S.C. § 5491(b)-(c).  These leadership provisions undergird other provisions of the Consumer Financial Protection Act that are also essential to a strong and independent CFPB, such as those that insulate it from the usual budget process and grant it exclusive rulemaking authority and primary enforcement powers.  *See* 12 U.S.C. §§ 5497(a), 5512(b), 5515(c), 5564.  This independence should be maintained, as Congress intended, even when the Director leaves office.

The Vacancies Reform Act can and should be harmonized with the Consumer Financial Protection Act to effectuate its provision requiring that the Deputy Director serve as the acting Director.  *See* Mot. for Prelim. Inj. 12-17.  But if the two acts cannot be harmonized, the Consumer Financial Protection Act's successor provision

---

I will cut Regs but make penalties severe when caught cheating!" https://twitter.com/realDonaldTrump/status/939152197090148352.

7

must prevail.  Not only is it the more recent enactment, but it is the more specific one.

It is "a commonplace of statutory construction that the specific governs the general."

*Howard v. Pritzker*, 775 F.3d 430, 438 (D.C. Cir. 2015).  Notably, this principle is

"particularly true" where "Congress has enacted a comprehensive scheme and has

deliberately targeted specific problems with specific solutions."  *Id.*; *accord RadLAX*

*Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012).

    That precisely describes the situation here.  Congress enacted a comprehensive

scheme to ensure the CFPB's independence.  It did not simply declare the CFPB

independent and leave unresolved the bounds of that independence.  Instead, the

Consumer Financial Protection Act has numerous, detailed provisions that create a

high degree of agency independence, while still striking a balance that carefully

delineates its scope.  As a direct response to the 2008 financial crisis, the

establishment of the CFPB as an independent agency was a "specific solution" to

"specific problems" of utmost national importance.  By contrast, the Vacancies

Reform Act was a statute enacted well before the devastating financial crisis in 2008,

at a time when the CFPB was not even in existence.  It would be unreasonable to

conclude that, on the present question concerning the agency's structure and

independence, such a statute would prevail over the act that created the CFPB to target

the regulatory failures underlying that crisis.  Such a conclusion would impermissibly

allow a general statute to fundamentally undermine Congress' comprehensive legislative solution to a critically important issue.

## II. The Canon Of Constitutional Avoidance Is Inapplicable And In Any Event Cannot Defeat Congress's Intent—As Evidenced Through The Plain Language Of The Consumer Financial Protection Act—That The Deputy Director Succeed To The Acting Director.

The States of Texas and West Virginia have authored a brief as *amici curiae* in support of the defendants, which argues that the canon of constitutional avoidance requires adoption of the defendants' position.[3]  But it has no application here.  The canon "is an interpretive tool, counseling that ambiguous statutory language be construed to avoid serious constitutional doubts."  *FCC v. Fox Television*, 556 U.S. 502, 516 (2009).  Its premise is a "presumption that Congress did not intend the alternative which raises [such] doubts."  *Clark v. Martinez*, 543 U.S. 371, 381 (2005). This canon must be used with caution, though, since it should be "a means of giving effect to congressional intent, not of subverting it."  *Id.* at 382.

The Texas *amici* do not articulate a constitutional question to be avoided in this case.  Their concern that the President's power under the Appointments Clause is at stake in these proceedings is simply misplaced.  There is no dispute that, consistent

---

[3]    Texas sought leave to file its brief as the Court was considering Ms. English's request for a temporary restraining order.  On November 29, 2017, this Court denied Texas's motion for leave as moot because it had already ruled on the temporary restraining order, but its denial was without prejudice to Texas refiling its brief at a later stage in the proceedings.

with the Appointments Clause, the Consumer Financial Protection Act upholds the President's power to appoint the CFPB Director with the advice and consent of the Senate. *See* U.S. Const. art. II, § 2, cl. 2; 12 U.S.C. § 5491(b). Nothing in the present brief or Ms. English's position suggests that the Act "removes that power from the President." Tex. Br. 13. The President can exercise that power presently to nominate a new Director.

Meanwhile, the Texas *amici*'s argument raises its own constitutional questions. It posits that the CFPB Director is a principal officer of the United States and that whenever a vacancy exists in such a position, the President alone has the authority to select who temporarily acts in that position. Tex. Br. 11-13. This broad proposition is constitutionally problematic given the Senate's "advice and consent" role under the Appointments Clause. U.S. Const. art. II, § 2, cl. 2. The Texas *amici* qualify their argument by stating that the Vacancies Reform Act "is fully consistent with the President's appointment power and the separation of powers because it defers to the President's choice." Tex. Br. 13. But they do not explain this statement or try to reconcile it with that act's extensive restrictions on the President's ability to temporarily fill such vacancies. Nor do they explain why the Vacancies Reform Act might satisfy the Constitution but the Consumer Financial Protection Act—as Ms. English and her *amici* interpret it—does not. There is a real constitutional question

then whether the Texas *amici*, in their own statutory interpretation, are impermissibly drawing the separation-of-powers line too far in favor of executive power.

At the least, the canon of constitutional avoidance provides no assistance in this case.  Ms. English's interpretation of the Consumer Financial Protection Act has not been shown to raise "grave and doubtful" constitutional questions, and so the canon has no application.  *Rust v. Sullivan*, 500 U.S. 173, 191 (1991).  Assuming that the Act's provisions for a highly independent CFPB might conceivably implicate executive power, that is the statutory scheme that Congress deliberately established, and so there is also no relevant ambiguity for the canon to address.  Of course, courts can determine if what Congress intended through legislation is unconstitutional.[4]  But it is entirely inappropriate to refuse to give effect to Congress's intent, as expressed in the plain language of the statute, simply because the legislation operates in an area of constitutional complexity or uncertainty.  In this particular area, such concerns may well be unavoidable and, as explained, the Texas *amici*'s interpretation raises its own questions.

Accordingly, the touchstone for discerning Congress's intent remains the language of the Consumer Financial Protection Act, which plainly establishes that Ms. English, as the Deputy Director, lawfully serves as the acting Director of the CFPB.

---

[4]     The constitutionality of Congress's determination that the Director be removable only for cause, though not challenged in this preceding, is an issue before the District of Columbia Circuit in *PHH Corp. v. CFPB*, No. 15-1177.

# CONCLUSION

This Court should grant Ms. English's motion for a preliminary injunction.

Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

LOREN L. ALIKHAN
Acting Solicitor General

/s/ Carl J. Schifferle
CARL J. SCHIFFERLE
Assistant Attorney General
Office of the Solicitor General

Office of the Attorney General
441 4th Street, NW, Suite 600S
Washington, D.C. 20001
(202) 724-6624
carl.schifferle@dc.gov

XAVIER BECERRA
Attorney General
State of California
1300 I Street
Sacramento, CA 95814

MATTHEW P. DENN
Attorney General
State of Delaware
Carvel State Building, 6th Floor
820 North French Street
Wilmington, DE 19801

LISA MADIGAN
Attorney General
State of Illinois
100 West Randolph Street, 12th Floor
Chicago, IL 60601

GEORGE JEPSEN
Attorney General
State of Connecticut
55 Elm Street
Hartford, CT 06106

DOUGLAS S. CHIN
Attorney General
State of Hawaii
425 Queen Street
Honolulu, HI 96813

TOM MILLER
Attorney General
State of Iowa
1305 East Walnut Street
Des Moines, IA 50319

JANET T. MILLS
Attorney General
State of Maine
6 State House Station
Augusta, ME 04333-0006

MAURA HEALEY
Attorney General
Commonwealth of Massachusetts
One Ashburton Place
Boston, MA 02108

HECTOR BALDERAS
Attorney General
State of New Mexico
408 Galisteo Street
Santa Fe, NM 87501

ELLEN F. ROSENBLUM
Attorney General
State of Oregon
1162 Court Street NE
Salem, OR 97301

PETER F. KILMARTIN
Attorney General
State of Rhode Island
150 South Main Street
Providence, RI 02903

ROBERT W. FERGUSON
Attorney General
State of Washington
1125 Washington Street SE
P.O. Box 40100
Olympia, WA 98504-0100

BRIAN E. FROSH
Attorney General
State of Maryland
200 Saint Paul Place
Baltimore, MD 21202

LORI SWANSON
Attorney General
State of Minnesota
102 State Capitol
75 Rev. Dr. Martin Luther King Jr. Blvd.
St. Paul, MN 55155

ERIC SCHNEIDERMAN
Attorney General
State of New York
120 Broadway, 25th Floor
New York, NY 10271

JOSH SHAPIRO
Attorney General
Commonwealth of Pennsylvania
16th Floor, Strawberry Square
Harrisburg, PA 17120

THOMAS J. DONOVAN, JR.
Attorney General
State of Vermont
109 State Street
Montpelier, VT 05609-1001