**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| LEANDRA ENGLISH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 1:17-cv-02534-TJK |
| | ) | |
| DONALD J. TRUMP and | ) | |
| JOHN M. MULVANEY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**BRIEF OF AMICI CURIAE PUBLIC CITIZEN, INC.,
AMERICANS FOR FINANCIAL REFORM, CENTER FOR RESPONSIBLE LENDING,
CONSUMER ACTION, NATIONAL ASSOCIATION OF CONSUMER ADVOCATES,
NATIONAL CONSUMER LAW CENTER, NATIONAL CONSUMERS LEAGUE,
NATIONAL FAIR HOUSING ALLIANCE, TZEDEK DC, INC., AND UNITED STATES
PUBLIC INTEREST RESEARCH GROUP EDUCATION FUND, INC.
IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

Rebecca Smullin (D.C. Bar No. 1017451)
Allison Zieve (D.C. Bar No. 424786)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
202-588-1000

Attorneys for Amici Curiae

December 8, 2017

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Local Civil Rule 7(o), amici curiae Public Citizen, Inc., Consumer Action, National Association of Consumer Advocates, National Consumer Law Center, National Consumers League, National Fair Housing Alliance, Tzedek DC, Inc., and United States Public Interest Research Group Education Fund, Inc. state that they are nonprofit, non-stock corporations. They have no parent corporations, and no publicly traded corporations have an ownership interest in them.

Amicus curiae Americans for Financial Reform (AFR) states that it is a project of The Leadership Conference on Civil and Human Rights and The Leadership Conference Education Fund, two nonprofit, non-stock corporations. These two nonprofit corporations have no parent corporations, and no publicly traded corporations have an ownership interest in them.

Amicus curiae Center for Responsible Lending (CRL) states that it is a nonprofit corporation and a supporting organization of its parent corporation, Center for Community Self-Help. Both organizations are exempt from taxation under section 501(c)(3) of the Internal Revenue Code. Neither CRL nor the Center for Community Self-Help has issued shares or securities. No publicly traded corporations have an ownership interest in CRL.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ................................................................ i

TABLE OF AUTHORITIES ................................................................................... iii

INTEREST OF AMICI.........................................................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT ...........................................1

ARGUMENT ........................................................................................................3

   I.   The CFPB has vigorously served the public interest. ...........................................3

      A.  Congress intended the CFPB to be an independent consumer agency. ..................3

      B.  The CFPB has meaningfully improved consumer financial markets and concretely benefited consumers. ....................................................................................6

      C.  The CFPB's independence has been central to its success. ...................................11

  II.   The public interest lies in the CFPB's faithful adherence to its mission and independence....................................................................................................14

 III.   The public interest weighs in favor of a preliminary injunction. .......................16

      A.  Without an injunction, the CFPB will be stymied from pursuing its mission, to the detriment of the public. .....................................................................................16

      B.  Without an injunction, the public will lose the CFPB's independence.................20

CONCLUSION...................................................................................................22

# TABLE OF AUTHORITIES

## CASES

*Electronic Privacy Information Center v. Department of Justice*,
    416 F. Supp. 2d 30 (D.D.C. 2006) ......................................................................................14

*Humphrey's Ex'r v. United States*,
    295 U.S. 602 (1935)...............................................................................................14, 15, 21, 22

*Jacksonville Port Authority v. Adams*,
    556 F.2d 52 (D.C. Cir. 1977) ......................................................................................14, 16

*National Association of Farmworkers Organizations v. Marshall*,
    628 F.2d 604 (D.C. Cir. 1980) .........................................................................................15

*PHH Corp. v. CFPB*,
    No. 15-1177 (D.C. Cir. filed June 19, 2015) .................................................................11

*Washington Post v. Department of Homeland Security*,
    459 F. Supp. 2d 61 (D.D.C. 2006) ...................................................................................14

## STATUTES

5 U.S.C. § 609 ..............................................................................................................................13

12 U.S.C. § 5481 ....................................................................................................................5, 15

12 U.S.C. § 5491 ......................................................................................................................3, 6

12 U.S.C. § 5492 ....................................................................................................................6, 20

12 U.S.C. § 5493 ......................................................................................................5, 6, 7, 11, 13

12 U.S.C. § 5494 .............................................................................................................................5

12 U.S.C. § 5496 ..........................................................................................................................13

12 U.S.C. § 5497 ................................................................................................6, 11, 17, 18, 20

12 U.S.C. § 5511 ......................................................................................................3, 5, 6, 14, 18

12 U.S.C. § 5512 ...............................................................................................................7, 10, 13

12 U.S.C. § 5514 ................................................................................................................5, 7, 10

12 U.S.C. § 5515................................................................................................5

12 U.S.C. § 5518..............................................................................................13

12 U.S.C. § 5532................................................................................................9

12 U.S.C. § 5534................................................................................................6

12 U.S.C. § 5535.....................................................................................5, 11, 13

12 U.S.C. § 5564................................................................................................6

12 U.S.C. § 5581................................................................................................4

12 U.S.C. § 5584................................................................................................5

12 U.S.C. § 5587..............................................................................................13

Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124
    Stat. 1376 (2010)....................................................................................1, 3

Joint Resolution, Pub. L. No. 115-74, 131 Stat. 1243 (2017)......................................13

## ADMINISTRATIVE AND EXECUTIVE MATERIALS

12 C.F.R. pt. 1075............................................................................................18

12 C.F.R. § 1080.6............................................................................................17

Ability-to-Repay and Qualified Mortgage Standards, Under the Truth in Lending Act
    (Regulation Z), 78 Fed. Reg. 6408 (Jan. 30, 2013)..........................................9

Amendments to Rules Concerning Prepaid Accounts under the Electronic Fund Transfer
    Act (Regulation E) and the Truth in Lending Act (Regulation Z),
    82 Fed. Reg. 29630 (June 29, 2017) ..........................................................19

Arbitration Agreements, 82 Fed. Reg. 33210 (Jul. 19, 2017)......................................13

Executive Order No. 13772, 82 Fed. Reg. 9965 (Feb. 3, 2017). ...................................12

Payday, Vehicle Title, and Certain High-Cost Installment Loans, 82 Fed. Reg. 54472
    (Nov. 17, 2017) ...............................................................................10, 13

## LEGISLATIVE MATERIALS

156 Cong. Rec. S5871 (July 15, 2010) ..............................................................5

H.J. Res. 122, 115th Cong. (2017) (introduced) ...........................................................13

H.R. 3118, 114th Cong. (2015)...................................................................................16

H.R. Rep. No. 111-517 (2010) (Conf. Rep.)..............................................................1, 5

S. Rep. No. 111-176 (2010) ...........................................................................3, 4, 5, 9, 21

## MISCELLANEOUS

*Acting CFPB Director Mulvaney News Conference*, C-Span (Nov. 27, 2017),
   https://www.c-span.org/video/?437841-1/acting-cfpb-director-mick-mulvaney-
   speaks-reporters ...............................................................................16, 17, 21

Americans for Financial Reform, *CFPB Enforcement Actions (through April 2017)*,
   https://docs.google.com/spreadsheets/d/1q5nD0Zku1YAoiu2GUOwL
   NodPdoqCu2j0sFPE3pW7Jy0/.................................................................................8

Steven Aronowitz, *et al.*, *Getting Organizational Redesign Right*, McKinsey Q. (June
   2015), https://www.mckinsey.com/business-functions/organization/our-
   insights/getting-organizational-redesign-right. ..................................................15

John Bowden, *Mulvaney: Authority I Have At Consumer Bureau 'Should Frighten
   People'*, Hill (Nov. 30, 2017),
   http://thehill.com/homenews/administration/362709-mulvaney-authority-i-have-
   at-consumer-bureau-should-frighten-people...........................................................17

Dave Boyer, *Mulvaney Scrutinizing 125 CFPB Cases Opened by Liberal Predecessor*,
   Wash. Times (Nov. 30, 2017),
   https://www.washingtontimes.com/news/2017/nov/30/mick-mulvaney-seeks-
   more-trump-appointees-help-him/ ....................................................17, 18, 21

*The Bureau*, CFPB, https://www.consumerfinance.gov/about-us/the-bureau/.............................10

*Bureau Structure,* CFPB (Nov. 27, 2017), https://www.consumerfinance.gov/about-
   us/the-bureau/bureau-structure/ ..................................................................13

Center for Responsible Lending, *Neglect and Inaction: An Analysis of Federal Banking
   Regulators' Failure to Enforce Consumer Protections* (Jul. 13, 2009),
   http://www.responsiblelending.org/sites/default/files/nodes/files/research-
   publication/neglect-and-inaction-7-10-09-final.pdf...........................................4

*CFPB to Supervise Credit Reporting*, CFPB (Jul. 16, 2012),
   https://www.consumerfinance.gov/about-us/newsroom/consumer-financial-
   protection-bureau-to-superivse-credit-reporting/....................................................5

Kelly Cochran, *Spring 2017 Rulemaking Agenda,* CFPB (July 20, 2017),
    https://www.consumerfinance.gov/about-us/blog/spring-2017-rulemaking-
    agenda/ ........................................................................................................10, 19

*Consumer Education and Engagement Division*, CFPB
    https://www.consumerfinance.gov/about-us/the-bureau/bureau-
    structure/consumer-education-engagement/ ...................................................11

CFPB, *CFPB Compliance Bulletin 2017-01* (July 31, 2017),
    https://s3.amazonaws.com/files.consumerfinance.gov/f/documents/201707_cfpb_
    compliance-bulletin-phone-pay-fee.pdf..........................................................19

CFPB, *Factsheet, Consumer Financial Protection Bureau: By the Numbers* (July 2017),
    https://s3.amazonaws.com/files.consumerfinance.gov/f/documents/201707_cfpb_
    by-the-numbers.pdf.......................................................................................2, 8, 9

CFPB, *Financial Report of the Consumer Financial Protection Bureau, Fiscal Year 2017*
    (Nov. 15, 2017), https://s3.amazonaws.com/files.consumerfinance.gov/f/
    documents/cfpb_financial-report_fy17.pdf ....................................................12

CFPB, *Monthly Complaint Report, Vol. 25* (2017),
    https://s3.amazonaws.com/files.consumerfinance.gov/f/documents/201707_cfpb_
    monthly-complaint-report-vol-25.pdf ...........................................................6, 7

CFPB, *Semi-Annual Report of the Consumer Financial Protection Bureau* (Spring 2017),
    https://www.consumerfinance.gov/data-research/research-reports/semi-annual-
    report-spring-2017/ .................................................................................5, 8, 9, 13

CFPB, *Supervisory Highlights, Issue 16, Summer 2017* (Sept. 2017),
    https://s3.amazonaws.com/files.consumerfinance.gov/f/documents/201709_cfpb_
    Supervisory-Highlights_Issue-16.pdf ..............................................................9

CFPB, *TILA-RESPA Integrated Disclosure Rule: Small Entity Compliance Guide* (Oct.
    2017),
    https://s3.amazonaws.com/files.consumerfinance.gov/f/documents/201710_cfpb_
    KBYO-Small-Entity-Compliance-Guide_v5.pdf .............................................9

*Consumer Financial Protection Bureau Fines Wells Fargo $100 Million for Widespread
    Illegal Practice of Secretly Opening Unauthorized Accounts*, CFPB (Sep. 8,
    2016), https://www.consumerfinance.gov/about-us/newsroom/consumer-
    financial-protection-bureau-fines-wells-fargo-100-million-widespread-illegal-
    practice-secretly-opening-unauthorized-accounts/ ...........................................8

Stacy Cowley, *Consumer Bureau Lifts Freeze on Payments to Crime Victims*, N.Y.
    Times (Dec. 7, 2017), https://nyti.ms/2klKiTQ ...............................................17

Steve Eder, *et al.*, *Republicans Want to Sideline This Regulator. But It May Be Too Popular*, N.Y. Times (Aug. 31, 2017), https://nyti.ms/2wVYGr5 ..............................11, 14

Matt Egan, *After Political Drama at Consumer Agency, What Happens to Its Open Investigations?*, CNN (Nov. 27, 2017), http://money.cnn.com/2017/11/27/investing/cfpb-mick-mulvaney-consumer-agency/index.html ........................................................................................................18

Financial Crisis Inquiry Commission, *The Financial Crisis Inquiry Report* (2011) https://www.gpo.gov/fdsys/pkg/GPO-FCIC/pdf/GPO-FCIC.pdf........................................4

Alissa Greenberg, *The Real-Life Consequences of the Federal Hiring Freeze*, Atlantic (Feb. 9, 2017), https://www.theatlantic.com/business/archive/2017/02/real-life-consequences-hiring-freeze/516150/ ..............................................................................20

Yuka Hayashi, *New CFPB Chief Curbs Data Collection, Citing Cybersecurity Worries*, Wall St. J. (Dec. 4, 2017), https://www.wsj.com/articles/new-cfpb-chief-curbs-data-collection-citing-cybersecurity-worries-1512429736................................................17

*Justice Department Reaches $60 Million Settlement with Sallie Mae to Resolve Allegations of Charging Military Servicemembers Excessive Rates on Student Loans*, U.S. Dep't of Justice (May 13, 2014), https://www.justice.gov/opa/pr/justice-department-reaches-60-million-settlement-sallie-mae-resolve-allegations-charging ............................................................................7

Megan Leonhardt, *Buried in Trump's Budget: A New Attempt to Kill a Powerful Consumer Watchdog*, Money (May 23, 2017), http://time.com/money/4790486/trump-budget-2018-cuts-cfpb-consumers/..............12, 21

Zixta Q. Martinez, *Six Years Serving You*, CFPB (July 21, 2017), https://www.consumerfinance.gov/about-us/blog/six-years-serving-you/ ......................2, 8

Ian McKendry, *Mulvaney's First Days at CFPB: Payday, Personnel and a Prank*, Am. Banker (Dec. 4, 2017), https://www.americanbanker.com/news/cfpbs-mulvaney-backs-congressional-repeal-of-payday-lending-rule..................................................21, 22

Shahien Nasiripour, *Banks Can't Wait to Wipe this Complaints Database*, Bloomberg (Feb. 8, 2017), https://www.bloomberg.com/news/articles/2017-02-08/the-cfpb-keeps-a-database-that-banks-can-t-wait-to-wipe ................................................................7

Office of Management and Budget, *Major Savings and Reforms: Budget of the U.S. Government, Fiscal Year 2018* (2017), https://www.whitehouse.gov/sites/whitehouse.gov/files/omb/budget/fy2018/msar.pdf .......................................................................................................................12, 15, 21

*Office of Management and Budget*, White House, https://www.whitehouse.gov/omb ................20

*Payments to Harmed Consumers by Case*, CFPB,
    https://www.consumerfinance.gov/about-us/payments-harmed-
    consumers/payments-by-case/ .........................................................................................18

Zach Piaker, *Help Wanted: 4,000 Presidential Appointees*, Center for Presidential
    Transition (Mar. 16, 2016),
    http://presidentialtransition.org/blog/posts/160316_help-wanted-4000-
    appointees.php .................................................................................................................6

Beth Reinhard & Rebecca Ballhaus, *Impact of Federal Hiring Freeze Seen at Veterans
    Affairs, Prisons, Social Security*, Wall St. J. (Apr. 9, 2017),
    https://www.wsj.com/articles/impact-of-federal-hiring-freeze-seen-at-veterans-
    affairs-prisons-social-security-1491735612 ...................................................................19

*Research, Markets, and Regulations*, CFPB, https://www.consumerfinance.gov/about-
    us/the-bureau/bureau-structure/research-markets-regulation/ ....................................10, 14

Patrick Rucker & Pete Schroeder, *U.S. Consumer Financial Watchdog Official Defies
    Trump from Within Agency*, Reuters (Dec. 1, 2017),
    https://www.reuters.com/article/us-usa-trump-cfpb/u-s-consumer-financial-
    watchdog-official-defies-trump-from-within-agency-idUSKBN1DV5IC ......................16

Senate Committee on Homeland Security and Government Affairs, 114th Cong., 2d
    Sess., *United States Government Policy and Supporting Positions* (Comm. Print
    2016), https://www.govinfo.gov/content/pkg/GPO-PLUMBOOK-2016/pdf/GPO-
    PLUMBOOK-2016.pdf .....................................................................................................6

*Testimony of Richard Cordray* (Apr. 5, 2017),
    https://financialservices.house.gov/uploadedfiles/hhrg-115-ba00-wstate-rcordray-
    20170405.pdf. ...................................................................................................................8

Donald J. Trump (@realDonaldTrump), Twitter (Nov. 25, 2017, 1:48 PM),
    https://twitter.com/realDonaldTrump/status/934539256940417024 ................................12

U.S. Department of the Treasury, *A Financial System That Creates Economic
    Opportunities Banks and Credit Unions* (2017), https://www.treasury.gov/press-
    center/press-releases/Documents/A%20Financial%20System.pdf. ...........................12, 15

Kevin Wack, *Mulvaney's Plan to Embed Political Staffers in CFPB Sparks Backlash*,
    Am. Banker (Dec. 5, 2017), https://www.americanbanker.com/news/mulvaneys-
    plan-to-embed-political-staffers-in-cfpb-sparks-backlash ................................................22

*We're the CFPB*, CFPB, https://www.consumerfinance.gov/ ......................................................10

## INTEREST OF AMICI

Amici are 10 nonprofit consumer organizations whose work to protect and defend the rights of consumers through education, advocacy, policy, research, and litigation spans many decades combined. They are particularly well qualified to help the Court understand the substantial public interest that Plaintiff's requested preliminary injunction would promote. Amici have extensive knowledge of the history of the Consumer Financial Protection Bureau (CFPB), the statutes that the CFPB enforces, and the consumer needs that the agency addresses. Since the CFPB was created, amici have engaged frequently with the agency and continually supported both its statutory mission and its independence. A description of each organization is included in the motion for leave to file this brief. All parties have consented to the filing of this brief.[1]

## INTRODUCTION AND SUMMARY OF ARGUMENT

Inattention by federal regulatory agencies, along with limitations on their authority, contributed significantly to the 2008 financial crisis that destabilized the American economy and caused grave hardship to American families. Responding to market and regulatory failures that fueled this "Great Recession," Congress in 2010 enacted the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1376 (2010) (Dodd-Frank Act). As part of this reform, Congress sought to ensure that consumer financial protections would get undivided attention from an agency able to withstand political pressure and avoid capture by the industries whose practices it was charged with regulating. To achieve this objective, Congress created the CFPB. Congress gave the agency both power to improve financial markets for consumers and autonomy to guarantee the agency "the authority and accountability to ensure that existing

---

[1] No counsel for a party authored this brief in whole or in part, and no person other than the amici curiae, their members, or their counsel contributed money that was intended to fund the preparation or submission of this brief.

consumer protection laws and regulations are comprehensive, fair, and vigorously enforced." H.R. Rep. No. 111-517, at 874 (2010) (Conf. Rep.).

From the day of the agency's creation until the start of this dispute, the CFPB has used its authority and accountability to serve the public interest. The CFPB's supervision and enforcement actions alone have resulted in nearly $12 billion in ordered relief for more than 29 million consumers victimized by unlawful activity. *See* CFPB, *Factsheet, Consumer Financial Protection Bureau: By the Numbers* (July 2017);[2] Zixta Q. Martinez, *Six Years Serving You*, CFPB (July 21, 2017).[3]

Today, with the dispute over its acting director, the CFPB is at a turning point. Although Plaintiff's claim regards *who* can serve as acting director until the next Senate-confirmed director is seated, the Court, in considering the motion for a preliminary injunction, should also examine *how* Plaintiff English or Defendant Mulvaney would lead the CFPB. The answer to this question has great significance to the fourth prong of the Court's analysis of the preliminary injunction motion: where the public interest lies. The public has an overriding interest in the CFPB's continued pursuit of its statutory role, including both its consumer protection mission and the independence that Congress deemed critical to the agency's achievement of the objectives that the Dodd-Frank Act gave the CFPB. Plaintiff English, a long-time and full-time CFPB official, has a track record of preserving this mission and independence. By contrast, Defendant Mulvaney has a an inherent conflict of interest with the agency's statutory mission as long as he serves in his White House leadership position, as Director of the Office of Management and Budget. Further, he is using his purported appointment at the CFPB to slow or halt execution of the CFPB's core

---

[2]  Available at https://s3.amazonaws.com/files.consumerfinance.gov/f/documents/2017 07_cfpb_by-the-numbers.pdf.

[3] At https://www.consumerfinance.gov/about-us/blog/six-years-serving-you/.

functions and to tie the independent agency to the current Administration's priorities. For this reason, the public interest weighs strongly in favor of Plaintiff's motion for a preliminary injunction.

## ARGUMENT

### I.   The CFPB has vigorously served the public interest.

#### A.   Congress intended the CFPB to be an independent consumer agency.

Congress created the CFPB in 2010 after more than 100 hearings and years of debate about the causes of the 2008 financial crisis and the ways in which the government could prevent a similar crisis from occurring in the future. *See* Dodd-Frank Act, § 1011, 124 Stat. at 1964 (12 U.S.C. § 5491); S. Rep. No. 111-176, at 44 (2010). When it did so, Congress charged the agency with a singular purpose: "to implement and, where applicable, enforce Federal consumer financial law consistently for the purpose of ensuring that all consumers have access to markets for consumer financial products and services and that markets for consumer financial products and services are fair, transparent, and competitive." 12 U.S.C. § 5511(a). To direct its work, Congress assigned the CFPB five key functions, in addition to support activities: (1) "collecting, investigating, and responding to consumer complaints"; (2) supervising financial companies and taking enforcement action to address violations of the law; (3) "issuing rules, orders, and guidance" to implement consumer protection law; (4) "conducting financial education programs," and (5) researching and monitoring the markets for consumer financial products and services. 12 U.S.C. § 5511(c)(1)–(6).

Many of the CFPB's authorities to curb financial companies' abuses existed in other federal agencies before 2010. But Congress concluded that with a clear focus on consumers, the CFPB could serve American households more effectively than other regulators. Indeed, regulators in the

past had neglected the consumer protection aspects of their missions. Overall, the Financial Crisis Inquiry Commission concluded, "scant regulation" was a key contributor to the financial crisis, in which $11 trillion in household wealth vanished. Fin. Crisis Inquiry Comm'n, *The Financial Crisis Inquiry Report* xv-xvi (2011).[4] The Senate explained: "Underlying [the] whole chain of events leading to the financial crisis was the spectacular failure of the prudential regulators to protect average American homeowners … ." S. Rep. No. 111-176, at 15. In the run-up to the crisis, "these regulators routinely sacrificed consumer protection for short-term profitability of banks." *Id.* (internal quotation marks omitted). The Federal Reserve, for example, "waited more than 14 years to implement rules Congress gave it to address unfair and deceptive trade practices in the mortgage lending market … ." Ctr. for Responsible Lending, *Neglect and Inaction: An Analysis of Federal Banking Regulators' Failure to Enforce Consumer Protections* 1 (Jul. 13, 2009).[5] For 25 years, the Office of the Comptroller of the Currency never once used its authority to address unfair and deceptive practices at the large banks that it oversaw. *Id.* at 4. Further, that regulator exempted national banks from following state anti-predatory lending laws, helping "create[] an environment where abusive mortgage lending could flourish." S. Rep. No. 111-176, at 16-17.

Congress thus consolidated in the CFPB authorities that were previously dispersed among seven other agencies. 12 U.S.C. § 5581(b); S. Rep. No. 111-176, at 10-11. It also gave the CFPB important new authority. The CFPB is the first federal regulator to supervise credit reporting agencies—companies whose data fuel many of consumers' most important financial transactions.

---

[4] Available at https://www.gpo.gov/fdsys/pkg/GPO-FCIC/pdf/GPO-FCIC.pdf.

[5] Available at http://www.responsiblelending.org/sites/default/files/nodes/files/research-publication/neglect-and-inaction-7-10-09-final.pdf.

*See CFPB to Supervise Credit Reporting*, CFPB (Jul. 16, 2012);[6] *see generally* 12 U.S.C. § 5481(15)(A)(ix) (regarding financial products under the CFPB's jurisdiction). More generally, Congress made the CFPB the first federal regulator to supervise both banks and non-bank financial companies, including mortgage companies, private student lenders, and payday lenders. *See* 12 U.S.C. §§ 5514-15; S. Rep. 111-176, at 167; CFPB, *Semi-Annual Report of the Consumer Financial Protection Bureau* 70 (Spring 2017).[7] With this "level playing field" approach, Congress aimed to ensure that consumers would receive the same level of protection and companies the same level of regulation, in either sector of the market. S. Rep. 111-176, at 11, 167-68, 229; *see also* 12 U.S.C. § 5511(b)(4) (stating CFPB objectives including that consumer protection law be "enforced consistently, without regard to the status of a person as a depository institution, in order to promote fair competition").

Congress also paid careful attention to the CFPB's structure. Vital to the new agency's success, Congress concluded, was its independence. *See* S. Rep. No. 111-176, at 10-11, 161, 163; H.R. Rep. No. 111-517, at 874.[8] Congress determined that failures of existing regulatory agencies were largely attributable to those agencies focusing on the interests and needs of the financial industry they regulated, while giving insufficient attention to the interests and needs of consumers. *See* S. Rep. No. 111-176, at 10-11, 15. As Senator Cardin put it, "This legislation will create a consumer bureau … that will be on the side of the consumer, that is independent, so the consumer

---

[6]  At https://www.consumerfinance.gov/about-us/newsroom/consumer-financial-protection-bureau-to-superivse-credit-reporting/.

[7]  Available at https://www.consumerfinance.gov/data-research/research-reports/semi-annual-report-spring-2017/.

[8] Congress also provided exacting direction about other aspects of the new agency's organization. The Dodd-Frank Act required specific offices and units and an advisory board, 12 U.S.C. §§ 5493(a)(5), (b)-(g), 5494, 5535, specified personnel rules, *id.* § 5493(a)(1)-(4), and described how employees could be transferred from other agencies, *id.* § 5584.

is represented in the financial structure." 156 Cong. Rec. S5871 (daily ed. July 15, 2010). To that

end, the Dodd-Frank Act expressly designated the agency as independent, 12 U.S.C. § 5491(a),

gave the CFPB its own source of funding from the Federal Reserve, *id.* § 5497(a), allowed the

CFPB to make financial operating plans without OMB approval, *id.* § 5497(a)(4)(E), and placed

the agency under a single director appointed by the President and confirmed by the Senate for a

five-year term, removable by the President only for "inefficiency, neglect of duty, or malfeasance

in office," *id.* § 5491(b)(1)-(2), (c)(1), (c)(3). The Dodd-Frank Act also allowed the CFPB to make

independent recommendations to Congress, *id.* § 5492(c)(4), and represent itself in court, *id.*

§ 5564(b). Consistent with this independence, the CFPB has not had political appointee staff. *See*

Zach Piaker, *Help Wanted: 4,000 Presidential Appointees*, Center for Presidential Transition (Mar.

16, 2016);[9] *see also* S. Comm. on Homeland Sec'y and Gov't Affairs, 114th Cong., 2d Sess.,

*United States Government Policy and Supporting Positions* 151 (Comm. Print 2016).[10]

   **B.  The CFPB has meaningfully improved consumer financial markets and**
   **concretely benefited consumers.**

   Since its 2011 launch, the CFPB has advanced the public interest that Congress identified

in the Dodd-Frank Act. By operating independently of the government's political branches, it has

delivered on its mission to protect consumers and make the markets for consumer financial

products fair, transparent, and competitive. On its opening day, for example, the agency started a

consumer complaints program that responded to a detailed set of Dodd-Frank Act directives. *See*

12 U.S.C. §§ 5493(b)(3), 5511(c)(2), 5534(a); CFPB, *Monthly Complaint Report*, *Vol. 25*, at 2

---

[9] At http://presidentialtransition.org/blog/posts/160316_help-wanted-4000-appointees.php.

[10] Available at https://www.govinfo.gov/content/pkg/GPO-PLUMBOOK-2016/pdf/GPO-PLUMBOOK-2016.pdf.

(2017).[11] A legal aid attorney identified this program as the source of the "biggest change" in the consumer financial industry since the 2008 financial crisis; now, when he "complains about a large company, the company actually responds." Shahien Nasiripour, *Banks Can't Wait to Wipe this Complaints Database*, Bloomberg (Feb. 8, 2017).[12] By July 2017, the CFPB had collected more than 1.2 million consumer complaints and helped hundreds of thousands of consumers receive relief. Companies responded to nearly every complaint forwarded to them by the CFPB and provided relief to consumers in about 20 percent of cases. *See Monthly Complaint Report*, *supra*, at 5, 8-9.

Congress anticipated that the CFPB could also use consumer complaints like canaries in coal mines, to help federal agencies identify more widespread problems. *See* 12 U.S.C. §§ 5512(c)(4)(B)(i) (regarding the CFPB's use of complaints to monitor markets for risks to consumers), 5514(a)(1)(C) (giving the CFPB authority to supervise a nonbank financial company when the CFPB determines, based on consumer complaints, that a company's conduct poses risk to consumers); *see also id.* § 5493(b)(3)(D) (requiring the CFPB to share complaint data with other agencies). The agency has done just that. One set of complaints to the CFPB sparked a Department of Justice investigation of student loan companies for ignoring servicemembers' rights under consumer law. The matter ended with the companies agreeing to pay about $60 million in compensation to about 60,000 servicemembers. *See Justice Department Reaches $60 Million*

---

[11] Available at https://s3.amazonaws.com/files.consumerfinance.gov/f/documents/201707_cfpb_monthly-complaint-report-vol-25.pdf.

[12] At https://www.bloomberg.com/news/articles/2017-02-08/the-cfpb-keeps-a-database-that-banks-can-t-wait-to-wipe.

*Settlement with Sallie Mae to Resolve Allegations of Charging Military Servicemembers Excessive Rates on Student Loans*, U.S. Dep't of Justice (May 13, 2014).[13]

Through its other key functions, the CFPB has likewise forcefully pursued the consumer protection mission that Congress required of it. The CFPB's enforcement and supervision actions have led to nearly $12 billion in ordered relief for more than 29 million consumers. *See Factsheet, Consumer Financial Protection Bureau: By the Numbers*, *supra*; *Six Years Serving You*, *supra*. In one heavily publicized matter, the CFPB forced Wells Fargo to pay a $100 million fine in addition to refunds for opening millions of accounts without consumers' authorization. *See Consumer Financial Protection Bureau Fines Wells Fargo $100 Million for Widespread Illegal Practice of Secretly Opening Unauthorized Accounts*, CFPB (Sep. 8, 2016).[14] In dozens of other enforcement actions, the CFPB has halted myriad other abuses, such as "illegal debt collections tactics," "reselling sensitive personal information to lenders," "illegal redlining and discriminatory mortgage underwriting and prices practices," and deception of students by a for-profit education provider. *See Testimony of Richard Cordray* 4–5 (Apr. 5, 2017);[15] *see also Semi-Annual Report of the Consumer Financial Protection Bureau*, *supra*, at 77–100; *see generally* Am. for Fin. Reform, *CFPB Enforcement Actions (through April 2017)*.[16] In supervisory actions, the CFPB has rooted out illegal practices in auto loan servicing, credit card accounts, debt collection, deposit accounts,

---

[13]   At https://www.justice.gov/opa/pr/justice-department-reaches-60-million-settlement-sallie-mae-resolve-allegations-charging.

[14]   At https://www.consumerfinance.gov/about-us/newsroom/consumer-financial-protection-bureau-fines-wells-fargo-100-million-widespread-illegal-practice-secretly-opening-unauthorized-accounts/.

[15]   Available at https://financialservices.house.gov/uploadedfiles/hhrg-115-ba00-wstate-rcordray-20170405.pdf.

[16]   At https://docs.google.com/spreadsheets/d/1q5nD0Zku1YAoiu2GUOwLNodPdoqCu2j0sFPE3pW7Jy0/.

mortgage origination and servicing, remittances, and short-term small-dollar lending. *See* CFPB, *Supervisory Highlights*, *Issue 16, Summer 2017* (Sept. 2017).[17]

The CFPB's regulations have brought important protections to the mortgage market, where abuses by lenders and federal agencies' weak oversight were widely viewed as key contributors to the 2008 financial crisis. *See* S. Rep. 111-176, at 11-14, 167. For instance, the agency's rules require lenders to determine that borrowers can afford their loans. *See Ability-to-Repay and Qualified Mortgage Standards*, *Under the Truth in Lending Act (Regulation Z)*, 78 Fed. Reg. 6408 (Jan. 30, 2013). The CFPB also overhauled mortgage disclosures so that consumers have two, easy-to-use disclosures rather than four forms. *See* 12 U.S.C. § 5532(f); CFPB, *TILA-RESPA Integrated Disclosure Rule: Small Entity Compliance Guide* 15-16 (Oct. 2017).[18] More than 10 million consumers have now received those forms. *See Factsheet, Consumer Financial Protection Bureau: By the Numbers*, *supra*; *see also generally Semi-Annual Report of the Consumer Financial Protection Bureau*, *supra*, at 59–69 (describing other rulemaking activities and the CFPB's initiatives to support companies in implementing new rules).

The CFPB's financial education programs have reached millions. By July 2017, the agency's "Ask CFPB" website had received over 13 million unique visitors. *See Factsheet, Consumer Financial Protection Bureau: By the Numbers*, *supra*. Students at more than 3,200 colleges are now benefiting from a "financial aid shopping sheet" that the CFPB developed with the Department of Education, and that colleges are voluntarily adopting to help students understand college financing options. *Id.* Additional CFPB programs help consumers navigate

---

[17]    Available    at    https://s3.amazonaws.com/files.consumerfinance.gov/f/documents/ 201709_cfpb_Supervisory-Highlights_Issue-16.pdf.

[18]    Available    at    https://s3.amazonaws.com/files.consumerfinance.gov/f/documents/2017 10_cfpb_KBYO-Small-Entity-Compliance-Guide_v5.pdf.

other critical financial decisions. The agency's online resources include "financial empowerment" materials for practitioners to use with the consumers they serve and consumer tools for: Owning a Home, Planning for Retirement, Managing Someone Else's Money, and Navigating the Military Financial Lifecycle. *See We're the CFPB*, CFPB.[19]

Undergirding the CFPB's work is the agency's research and monitoring of consumer financial markets. The Dodd-Frank Act required the research and monitoring function so that the new agency could identify key risks to consumers and prioritize its activities accordingly. *See* 12 U.S.C. §§ 5512(c)(1), 5514(b)(2). To implement the Dodd-Frank Act's commands, the CFPB built multiple teams to research and monitor the markets that it regulates. *See Research, Markets, and Regulations*, CFPB.[20] Years of CFPB research and market monitoring anchor the CFPB's recent rulemaking activities. *See, e.g.,* 82 Fed. Reg. 54472, 54507-09 (Nov. 17, 2017) (describing CFPB's research and market monitoring prior to a rulemaking on payday loans); Kelly Cochran, *Spring 2017 Rulemaking Agenda*, CFPB (July 20, 2017) (recognizing CFPB research that has preceded rulemaking activities regarding overdraft products).[21]

In short, by dedicating itself to its statutory mission, the agency has consistently and effectively advanced the public interest that Congress identified in the Dodd-Frank Act. To use its own words, the CFPB has

> aim[ed] to make consumer financial markets work for consumers, responsible providers, and the economy as a whole. [It has] protect[ed] consumers from unfair, deceptive, or abusive practices and take[n] action against companies that break the

---

[19] At https://www.consumerfinance.gov/ (navigate to "Consumer Tools" and "Practitioner Resources" menus) (last visited Dec. 4, 2017).

[20] At https://www.consumerfinance.gov/about-us/the-bureau/bureau-structure/research-markets-regulation/ (last visited Dec. 1, 2017).

[21] At https://www.consumerfinance.gov/about-us/blog/spring-2017-rulemaking-agenda/.

law. [It has] arm[ed] people with the information, steps, and tools that they need to
make smart financial decisions.

*The Bureau*, CFPB.[22] In accordance with Dodd-Frank Act requirements, the CFPB has done so

with special attention to the needs of underserved consumers, servicemembers, older Americans,

and students. 12 U.S.C. §§ 5493(b)(2), (e), (g), 5535; *Consumer Education and Engagement*

*Division*, CFPB.[23]

### C.  The CFPB's independence has been central to its success.

The CFPB has maintained its commitment to the Dodd-Frank Act's mandates through

turbulence in federal politics and under repeated pressure from elected officials and regulated

entities to reduce, reverse, or stop the agency's operations. As Congress foresaw, the agency's

independence appears central to its continued success.

Although the CFPB enjoys strong support from many members of Congress, other

politicians and financial companies have regularly criticized the congressionally-mandated

structure of the CFPB and the agency's implementation of Dodd-Frank Act directives. *See*

*generally* Steve Eder, *et al.*, *Republicans Want to Sideline This Regulator. But It May Be Too*

*Popular*, N.Y. Times (Aug. 31, 2017).[24] Political criticisms of the CFPB have intensified under

the current Administration. Although the Dodd-Frank Act protects the CFPB's budgeting process

and funding from control by the President and Congress, *see* 12 U.S.C. § 5497(a)(1), (a)(4)(E), the

President used his budget documents to call for the agency to be funded through appropriations

---

[22] At https://www.consumerfinance.gov/about-us/the-bureau/ (last visited Nov. 29, 2017).

[23] At https://www.consumerfinance.gov/about-us/the-bureau/bureau-structure/consumer-education-engagement/ (last visited Nov. 29, 2017).

[24] At https://nyti.ms/2wVYGr5. Although industry groups have challenged the constitutionality of the CFPB's structure, *see, e.g.*, *PHH Corp. v. CFPB*, No. 15-1177 (D.C. Cir. filed June 19, 2015), that issue is not presented here.

rather than the Federal Reserve, and to advocate for a dramatic reduction in the CFPB's budget. Office of Mgmt. and Budget, *Major Savings and Reforms: Budget of the U.S. Government, Fiscal Year 2018*, at 158-69 (2017);[25] *see also* Megan Leonhardt, *Buried in Trump's Budget: A New Attempt to Kill a Powerful Consumer Watchdog*, Money (May 23, 2017).[26] The President's Secretary of the Treasury evaluated the CFPB against Administration priorities, and branded the CFPB's congressionally-created structure "unaccountable," labelled as "unduly broad" its statutorily-granted authority over financial companies' unfair, deceptive, and abusive practices, and deemed "unnecessary" the supervisory authority that Congress expressly granted to the agency. U.S. Dep't of the Treasury, *A Financial System That Creates Economic Opportunities Banks and Credit Unions* 79, 81, 88 (2017).[27] The President labelled the CFPB a "total disaster." Donald J. Trump (@realDonaldTrump), Twitter (Nov. 25, 2017, 1:48 PM).[28]

Nevertheless, the CFPB has maintained both its financial stability and its focus on the commands of Congress in the Dodd-Frank Act. *See generally* CFPB, *Financial Report of the Consumer Financial Protection Bureau, Fiscal Year 2017*, at 13, 15-28 (Nov. 15, 2017) (showing the CFPB's continued funding and accomplishment of its performance goals).[29] In this year alone,

---

[25] Available at https://www.whitehouse.gov/sites/whitehouse.gov/files/omb/budget/fy2018/msar.pdf.

[26] At http://time.com/money/4790486/trump-budget-2018-cuts-cfpb-consumers/.

[27] Available at https://www.treasury.gov/press-center/press-releases/Documents/A%20Financial%20System.pdf. The Treasury report responded to Executive Order 13772, which stated the current Administration's "Core Principles" for financial regulation and required the Secretary to report to the President on whether existing laws and policies promote those principles. Exec. Order No. 13772, §§ 1-2, 82 Fed. Reg. 9965, 9965 (Feb. 3, 2017).

[28] At https://twitter.com/realDonaldTrump/status/934539256940417024.

[29] Available at https://s3.amazonaws.com/files.consumerfinance.gov/f/documents/cfpb_financial-report_fy17.pdf.

for example, the CFPB issued rules regarding payday loans and arbitration agreements. In accordance with Dodd-Frank Act instructions about how the CFPB should do its work, the CFPB issued both rules after years of study and multiple rounds of input from industry and consumer stakeholders. *See Payday, Vehicle Title, and Certain High-Cost Installment Loans,* 82 Fed. Reg. at 54503–19 (describing the CFPB's multi-year process of seeking and receiving public input before issuing rule on payday loans); *Arbitration Agreements,* 82 Fed. Reg. 33210, 33245-46 (Jul. 19, 2017) (similar, regarding rule on arbitration agreements); *see also* 5 U.S.C. § 609 (requiring the CFPB to seek input from small entities prior to certain rulemakings); 12 U.S.C. § 5512(b)(2)(A) (requiring CFPB rulemaking to consider potential costs and benefits). Reflecting the significance of the independence conferred on it by statute, the CFPB issued both rules in the face of strong political opposition. *See* Joint Resolution, Pub. L. No. 115-74, 131 Stat. 1243 (2017); H.J. Res. 122, 115th Cong. (2017) (introduced).[30]

That said, independence does not mean that the CFPB acts alone. The Dodd-Frank Act requires regular engagement with Congress, industry, and other external stakeholders.[31] *See, e.g.*, 5 U.S.C. § 609; 12 U.S.C. §§ 5493(b)(3)(C), 5496, 5512(b)(2), 5535(d), 5587(b); *see also Bureau Structure*, CFPB (Nov. 27, 2017) (with links to descriptions of outreach offices in the divisions of

---

[30] Congress, of course, maintains the authority to change the CFPB's focus and structure. With regard to the CFPB's arbitration rule, it exercised this authority. In 2010, Congress expressly gave the CFPB the ability to restrict companies' use of mandatory pre-dispute arbitration agreements. 12 U.S.C. § 5518. In 2017, with a tiebreaking vote in the Senate, a different Congress voted to vacate the CFPB's rule regarding such arbitration agreements. Joint Resolution, Pub. L. No. 115-74, 131 Stat. 1243 (2017), *with vote information at* https://www.congress.gov/bill/115th-congress/house-joint-resolution/111/actions (last visited Dec. 6, 2017).

[31] By March 2017, senior CFPB officials had testified before Congress 63 times. *Semi-Annual Report of the Consumer Financial Protection Bureau, supra*, at 166.

External Affairs and Research, Markets, and Regulations).[32] The overriding thrust of the Dodd-Frank Act, however, is that the agency should view external input through the lens of the law, not politics. *Cf. Humphrey's Ex'r v. United States*, 295 U.S. 602, 624 (1935) (describing the Federal Trade Commission, an independent agency, as "charged with the enforcement of no policy except the policy of the law"). Appropriately, former CFPB Director Richard Cordray instructed his staff earlier this year to "tune out the political noise." Eder, *supra*.

## II.   The public interest lies in the CFPB's faithful adherence to its mission and independence.

As this Court considers Plaintiff English's motion for a preliminary injunction, it should significantly weigh the "overriding public interest" in both the particular aspects of the Dodd-Frank Act that this case implicates and "the general importance of [the] agency's faithful adherence to its statutory mandate." *Jacksonville Port Auth. v. Adams*, 556 F.2d 52, 59 (D.C. Cir. 1977); *see also Elec. Privacy Info. Ctr. v. Dep't of Justice*, 416 F. Supp. 2d 30, 42 (D.D.C. 2006). Because the public interest "is best assessed through the statutory provisions passed by the public's elected representatives," the public's interest in the CFPB implementing the Dodd-Frank Act's commands "outweighs" any general arguments about the agency's value. *See Wash. Post v. Dep't of Homeland Sec.*, 459 F. Supp. 2d 61, 76 (D.D.C. 2006) (in the context of a Freedom of Information Act request, concluding that the public's interest in statutorily-authorized expedited processing "outweighs any general interest that it has in first-in-first-out processing of FOIA requests").

In this case, the public interest in the CFPB's ability to carry out its statutory mandate is particularly strong because the agency's focus is protecting consumers from harm. *See, e.g.,* 12 U.S.C. § 5511(b)(2), (4) (describing CFPB objectives including "ensuring that … consumers are

---

[32] At https://www.consumerfinance.gov/about-us/the-bureau/bureau-structure/ (last visited Dec. 5, 2017).

protected from unfair, deceptive, or abusive acts and practices and from discrimination," and that "Federal consumer financial law is enforced consistently"). The laws that the CFPB implements and enforces, such as the Equal Credit Opportunity Act, the Truth in Lending Act, and the Fair Debt Collection Practices Act, 12 U.S.C. § 5481(12), (14), are fundamentally about the safety and fairness of consumer financial markets. Relaxation of the CFPB's efforts to implement and enforce these laws will irreparably harm consumers by increasing their risk of exposure to discrimination, unfair, deceptive, or abusive practices, and other illegal actions. *Cf. Nat'l Ass'n of Farmworkers Orgs. v. Marshall*, 628 F.2d 604, 613 n.39, 616 (D.C. Cir. 1980) (regarding safety laws and the public interest).

The overriding public interest in the CFPB's statutory mission encompasses the public interest in the agency's congressionally-mandated independence. A basic management principle holds that an organization's strategy and structure should be "inextricably linked." *See* Steven Aronowitz, *et al.*, *Getting Organizational Redesign Right,* McKinsey Q. (June 2015).[33] That principle could not be truer here. A reduction in the independence built into the CFPB's structure will create a very real risk to the CFPB's ability to pursue its statutory mission. The current Administration has already expressed interest in neutering the CFPB. *Major Savings and Reforms: Budget of the U.S. Government, Fiscal Year 2018*, *supra,* at 158-69; *A Financial System That Creates Economic Opportunities Banks and Credit Unions*, *supra*, at 79-92. If the boundaries that Congress drew between the CFPB and the Administration fall, the President will gain "coercive" authority to implement his vision and direct the agency away from the Dodd-Frank Act's commands. *Cf. Humphrey's Ex'r*, 295 U.S. at 630 (concluding that the President's authority to

---

[33] At https://www.mckinsey.com/business-functions/organization/our-insights/getting-organizational-redesign-right.

remove FTC Commissioners at will would have "coercive influence" that "threatens the independence of [the] commission.").

### III.   The public interest weighs in favor of a preliminary injunction.

#### A.   Without an injunction, the CFPB will be stymied from pursuing its mission, to the detriment of the public.

The public interest lies strongly with Plaintiff's requested injunction because, absent the injunction, Defendants' actions risk slowing the agency to a halt. The CFPB's "faithful adherence to its statutory mandate," *Jacksonville Port Auth.*, 556 F.2d at 59, will suffer dramatically. Plaintiff English is a full-time CFPB employee, prepared by her tenure at the agency to continue the CFPB's implementation of the Dodd-Frank Act. She has directed the CFPB to press forward with pending enforcement actions, for example. Patrick Rucker & Pete Schroeder, *U.S. Consumer Financial Watchdog Official Defies Trump from Within Agency*, Reuters (Dec. 1, 2017).[34] By contrast, Defendant Mulvaney has made clear that, if he leads the agency, he will drastically pare back the CFPB's mission work. As a member of Congress, Defendant Mulvaney co-sponsored legislation to eliminate the CFPB,[35] and his actions at the CFPB show his continued antipathy to the agency's work.

Defendant Mulvaney himself intends to give the CFPB only part-time leadership, working at the agency just three days per week. *Acting CFPB Director Mulvaney News Conference*, C-Span (Nov. 27, 2017).[36] This half-way commitment will slow any action requiring the acting

---

[34] At https://www.reuters.com/article/us-usa-trump-cfpb/u-s-consumer-financial-watchdog-official-defies-trump-from-within-agency-idUSKBN1DV5IC.

[35] H.R. 3118, 114th Cong. (2015) (Bill "[t]o eliminate the Bureau of Consumer Financial Protection by repealing title X of the Dodd-Frank Wall Street Reform and Consumer Protection Act, commonly known as the Consumer Financial Protection Act of 2010").

[36] Available at https://www.c-span.org/video/?437841-1/acting-cfpb-director-mick-mulvaney-speaks-reporters (video at approximately 4:27).

director's review, input, or approval. *See, e.g.,* 12 C.F.R. § 1080.6(e)(4) (giving the Director authority to rule upon a petition for an order modifying or setting aside a civil investigative demand, an investigative tool of the CFPB).

Defendant Mulvaney has attempted an even more drastic cut-back in the work of the CFPB staff. In his first week at the agency, he attempted to freeze hiring and contracting, and halt statutorily-mandated mission work: rulemaking and guidance, enforcement actions, and payments from the CFPB's Civil Penalty Fund, a fund that Congress required to provide relief to the victims of financial companies' abuses, 12 U.S.C. § 5497(d). *See Acting CFPB Director Mulvaney News Conference, supra* (video at approximately 2:38); Dave Boyer, *Mulvaney Scrutinizing 125 CFPB Cases Opened by Liberal Predecessor*, Wash. Times (Nov. 30, 2017).[37] Defendant Mulvaney also seeks to halt the agency's collection of personal information, a move that could reduce the CFPB's ability to enforce the law, address consumer complaints, and develop and implement rules. *See* Yuka Hayashi, *New CFPB Chief Curbs Data Collection, Citing Cybersecurity Worries*, Wall St. J. (Dec. 4, 2017).[38] In sum, Defendant Mulvaney explained: "We stopped a good many things…. We stopped all new regs going out the door. We stopped all the new contracting. We're stopping the filing of new lawsuits." Boyer, *supra.*

With these actions, Defendant Mulvaney is not leading the CFPB to pursue its statutory mission of implementing and enforcing consumer protection law. His goal at the CFPB is to "limit

---

[37] At https://www.washingtontimes.com/news/2017/nov/30/mick-mulvaney-seeks-more-trump-appointees-help-him/. Later, Defendant Mulvaney restarted Civil Penalty Fund payments. Stacy Cowley, *Consumer Bureau Lifts Freeze on Payments to Crime Victims*, N.Y. Times (Dec. 7, 2017), https://nyti.ms/2klKiTQ. Though the reversal will limit the irreparable harm that his actions are causing consumers, Defendant Mulvaney's initial freeze on Civil Penalty Fund payments is an example of his lack of commitment to the CFPB's statutory mandate.

[38] At https://www.wsj.com/articles/new-cfpb-chief-curbs-data-collection-citing-cybersecurity-worries-1512429736.

as much as we can what the CFPB does to sort of interfere with capitalism and with the financial services market." John Bowden, *Mulvaney: Authority I Have At Consumer Bureau 'Should Frighten People'*, Hill (Nov. 30, 2017).[39] This goal is fundamentally at odds with the consumer protection mission that Congress created for the CFPB. The agency's very purpose, as set forth by statute, focuses on changing markets, to make them more "fair, transparent, and competitive." 12 U.S.C. § 5511(a).

Further, if implemented, Defendant Mulvaney's commands to the CFPB will concretely harm consumers and businesses during the pendency of this litigation. When this lawsuit began, the CFPB had open about 100 pre-lawsuit investigations regarding companies such as Wells Fargo and Zillow. Boyer, *supra*; Matt Egan, *After Political Drama at Consumer Agency, What Happens to Its Open Investigations?*, CNN (Nov. 27, 2017).[40] A freeze on the agency's ability to take companies to court, even if temporary, means that companies violating the law will have more time to harm more consumers.[41]

A freeze on rules, regulations, and guidance also hurts consumers and businesses. One pending CFPB rulemaking proposal could amend a new prepaid card rule that is set to take effect

---

[39]  At  http://thehill.com/homenews/administration/362709-mulvaney-authority-i-have-at-consumer-bureau-should-frighten-people.

[40] At http://money.cnn.com/2017/11/27/investing/cfpb-mick-mulvaney-consumer-agency/index.html.

[41] Relatedly, if Defendant Mulvaney again stops Civil Penalty Fund payments, he will exacerbate the injury to consumers already harmed by companies' illegal acts. Congress required the CFPB to create the Civil Penalty Fund to hold penalties paid by companies and to use those funds to compensate the victims of companies' illegal practices. *See* 12 U.S.C. §§ 5497(d); 12 C.F.R. pt. 1075. A freeze on Civil Penalty Fund payments thus means that the victims of companies' wrongdoing will have to wait longer to receive compensation for their harms. When Defendant Mulvaney first froze payments from the fund, consumers injured by nine entities (or sets of entities) were potentially awaiting relief. *See Payments to Harmed Consumers by Case*, CFPB,   https://www.consumerfinance.gov/about-us/payments-harmed-consumers/payments-by-case/ (last visited Nov. 27, 2017) (see links for each open matter with Civil Penalty Fund relief).

on April 1, 2018. The CFPB proposed rule sought to address "unanticipated" issues and "facilitate compliance and relieve burden on those issues." The proposal also sought comment on whether the CFPB should delay the effective date of the earlier rule. *Amendments to Rules Concerning Prepaid Accounts under the Electronic Fund Transfer Act (Regulation E) and the Truth in Lending Act (Regulation Z)*, 82 Fed. Reg. 29630, 29630 (June 29, 2017); *see generally Spring 2017 Rulemaking Agenda*, *supra* (discussing this and other CFPB rulemaking activities to implement statutory directives, address consumer harm, and modernize, streamline, and clarify regulations). Now, although the April 2018 effective date of the earlier prepaid card rule is approaching, industry participants and consumers may remain uncertain even longer about their legal responsibilities and protections—as well as the effective date of the existing rule.

Halting the CFPB's ability to issue guidance can also increase uncertainty and lead companies to unwittingly violate the law. CFPB guidance aims to reduce such unwitting violations and the consumer harm that can result. For example, one recent CFPB guidance bulletin alerted companies that certain "phone pay fees" could violate consumer protection laws. CFPB, *CFPB Compliance Bulletin 2017-01* (July 31, 2017).[42]

Defendant Mulvaney's intended hiring freeze exacerbates the harm to the public interest that his directives will cause. Unfilled positions mean vital mission work will go undone. The agency will have fewer resources to enforce the law, monitor markets for risk, or educate consumers on financial decision-making. The stress and uncertainty experienced by current employees and potential new hires can have lasting organizational effects. *Cf.* Beth Reinhard & Rebecca Ballhaus, *Impact of Federal Hiring Freeze Seen at Veterans Affairs, Prisons, Social*

---

[42] Available at https://s3.amazonaws.com/files.consumerfinance.gov/f/documents/201707_cfpb_compliance-bulletin-phone-pay-fee.pdf.

*Security,* Wall St. J. (Apr. 9, 2017);[43] Alissa Greenberg, *The Real-Life Consequences of the Federal Hiring Freeze*, Atlantic (Feb. 9, 2017).[44]

**B.  Without an injunction, the public will lose the CFPB's independence.**

The public interest in the CFPB's independence also weighs strongly in favor of a preliminary injunction, which will preserve Plaintiff in her role as acting director. Plaintiff English has a proven commitment to the CFPB's independence. Defendant Mulvaney, by contrast, is inherently conflicted from supporting this congressionally-mandated aspect of the CFPB's structure; already, he is taking active steps to eviscerate it.

By the very nature of his OMB Director position, Defendant Mulvaney's presence at the CFPB will gut the agency's independence. OMB drives the President's budget agenda and is in charge, more generally, of "overseeing the implementation of [the President's] vision across the Executive Branch." *Office of Management and Budget*, White House.[45] Defendant Mulvaney's OMB responsibilities and role thus inherently conflict with those of the CFPB director, whom Congress intentionally divorced from the budget and policy processes that OMB drives. By statute, the CFPB and its Director are protected from OMB budgeting oversight, 12 U.S.C. § 5497(a)(4)(E), and allowed to make legislative recommendations that conflict with the President's, 12 U.S.C. §§ 5492(c)(4).

The conflict between Defendant Mulvaney's OMB role and his purported CFPB role is readily apparent here. The President's "vision" includes restructuring the CFPB and making it

---

[43] At https://www.wsj.com/articles/impact-of-federal-hiring-freeze-seen-at-veterans-affairs-prisons-social-security-1491735612.

[44]   At   https://www.theatlantic.com/business/archive/2017/02/real-life-consequences-hiring-freeze/516150/.

[45] At https://www.whitehouse.gov/omb (last visited Dec. 4, 2017).

funded through appropriations—a priority that *OMB itself* explained in the President's budget, with estimates of CFPB budget reductions so severe that they could amount to the agency's elimination. *Major Savings and Reforms: Budget of the U.S. Government, Fiscal Year 2018*, *supra*, at 158-69; Leonhardt, *supra*. With this Presidential priority at issue, Defendant Mulvaney cannot dutifully serve both the President as OMB Director and the CFPB. *See generally Major Savings and Reforms, supra*, at 1 (directing that the "Administration will build on [the listed] proposals in order to implement the President's charge."). As the Supreme Court has recognized, "one who holds his office only during the pleasure of another cannot be depended upon to maintain an attitude of independence against the latter's will." *Humphrey's Ex'r*, 295 U.S. at 629.

Defendant Mulvaney has also left no doubt that he intends to run the CFPB in accordance with the Administration's priorities, thus eliminating the CFPB's independence in practice. On his first day at the agency, he expressed "fundamental principled misgivings" about the structure that Congress created for the CFPB, warned that "[e]lections have consequences," and promised a "new attitude" "in light of the fact that the Trump Administration is now in charge." *Acting CFPB Director Mulvaney News Conference*, *supra* (video at approximately 2:10, 2:19, 7:41). He quickly sought to put these principles into practice. While directing agency staff to stop their work for consumers, he dialed up the agency's collaboration with CFPB detractors in Congress. *See* Boyer, *supra*; *see also* Ian McKendry, *Mulvaney's First Days at CFPB: Payday, Personnel and a Prank*, Am. Banker (Dec. 4, 2017).[46] While freezing the agency's ability to hire career officials, he sought immediately to infuse the CFPB with political appointees—an approach that would mirror OMB's but be dramatically out of step with those of independent financial regulators, which typically have

---

[46] At https://www.americanbanker.com/news/cfpbs-mulvaney-backs-congressional-repeal-of-payday-lending-rule.

few political appointees. *See* McKendry, *supra*;[47] Kevin Wack, *Mulvaney's Plan to Embed Political Staffers in CFPB Sparks Backlash*, Am. Banker (Dec. 5, 2017).[48]

OMB Director Mulvaney's commitment to White House priorities and his efforts to link the CFPB to politics stand to destroy the agency's independence and thus its ability to focus on its statutory mission. This type of risk is one that the Supreme Court foresaw decades ago when it considered the Federal Trade Commission's independence in *Humphrey's Executor*. Central to the agency's independent character, the Supreme Court recognized, was that the agency was "free from political domination and control," *Humphrey's Ex'r*, 295 U.S. at 625 (internal quotation marks omitted), and charged with "the enforcement of no policy except the policy of the law," *id.* at 624. The same is true here. And accordingly, an acting director beholden to the White House and politics would be anathema to the Congress that purposely crafted an independent CFPB.

## CONCLUSION

For the foregoing reasons, the public interest weighs strongly in favor of Plaintiff's motion for a preliminary injunction.

Dated: December 8, 2017

Respectfully submitted,

/s/ Rebecca Smullin
Rebecca Smullin (D.C. Bar No. 1017451)
Allison Zieve (D.C. Bar No. 424786)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
202-588-1000

Attorneys for Amici Curiae
Public Citizen, Inc., *et al.*

---

[47] At https://www.americanbanker.com/news/cfpbs-mulvaney-backs-congressional-repeal-of-payday-lending-rule.

[48] At https://www.americanbanker.com/news/mulvaneys-plan-to-embed-political-staffers-in-cfpb-sparks-backlash.