**IN THE UNITED STATES DISTRCT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LEANDRA ENGLISH,<br><br>Plaintiff,<br><br>v.<br><br>DONALD J. TRUMP and<br>JOHN MICHAEL MULVANEY<br><br>Defendants. | Case No. 1:17-cv-02534 |

**BRIEF OF CREDIT UNION NATIONAL ASSOCIATION**
**AS AMICUS CURIAE IN SUPPORT OF DEFENDANTS**

Theodore R. Flo
BALLARD SPAHR LLP
1909 K Street N.W. – 12th Floor
Washington, D.C. 20006
Telephone: (202) 661-2259
Facsimile: (202) 661-2299
flot@ballardspahr.com

Alan S. Kaplinsky
Jeremy T. Rosenblum
BALLARD SPAHR LLP
1735 Market Street – 51st Floor
Philadelphia, Pa. 19103
Telephone: (215) 864-8528
Facsimile: (215) 864 8999
kaplinskya@ballardspahr.com
rosenblumj@ballardspahr.com

*Counsel for Credit Union National Association*

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Local Rule 7(o)(5) of this Court and Rules 26.1 and 29(a)(4)(A) of the Federal Rules of Appellate Procedure, *amicus curiae* Credit Union National Association, Inc. ("CUNA") is a nonprofit trade association of state and federally chartered credit unions. CUNA has no parent corporation. No publicly traded corporation owns ten percent or more of its stock.

Dated: December 12, 2017

/s/ Theodore R. Flo

Theodore R. Flo
BALLARD SPAHR LLP
1909 K Street NW – 12th Floor
Washington, DC 20006
Telephone: (202) 661-2200
Facsimile: (202) 661-2299
flot@balladspahr.com

*Counsel for Credit Union National Association*

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT .................... II

IDENTITY AND INTEREST OF AMICUS CURIAE .................... 1

FRAP RULE 26(a)(4)(E) STATEMENT .................... 3

ARGUMENT .................... 4

I. THE CONSUMER FINANCIAL PROTECTION ACT DOES NOT PROVIDE A RULE OF SUCCESSION FOR THE DIRECTOR OF THE CFPB. .................... 4

II. THE STATUTORY INTERPRETATION PROPOSED BY PLAINTIFF IS NONSENSICAL AND UNCONSTITUTIONAL. .................... 7

CONCLUSION .................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Crowell v. Benson*,
285 U.S. 22 (1932)....................9

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*,
561 U.S. 477 (2010)....................9

*Freytag v. Comm'r*,
501 U.S. 868 (1991)....................9

*Hooks v. Kitsap Tenant Support Servs., Inc.*,
816 F.3d 550 (9th Cir. 2016)....................7

*Janko v. Gates*,
741 F.3d 136 (D.C. Cir. 2014)....................9

*Morrison v. Olson*,
487 U.S. 654 (1988)....................9

*PHH Corp. v. Consumer Fin. Prot. Bureau*,
839 F.3d 1 (D.C. Cir. 2016), *reh'g en banc granted, order vacated*, 2017 U.S. App. LEXIS 2733 (Feb. 16, 2017)....................8, 9

**FEDERAL STATUTES**

5 U.S.C. § 3345....................4, 8

12 U.S.C. § 5491.................... passim

Pub. L. No. 111-203, 124 Stat. 1376 (2010)....................4, 5

**CONSTITUTIONAL PROVISIONS**

U.S. Const. art. II, § 2, cl. 2....................9

**OTHER AUTHORITIES**

Hui, V., Myers, R., Seymour, K, *Regulatory Financial Impact Study*, Cornerstone Advisors, Inc. (Feb. 2016)....................2

Kent H. Barnett, *The Consumer Financial Protection Bureau's Appointment with Trouble*, 60 Am. Univ. L. Rev. 1459 (2011)....................10

S. Rep. No. 105-250 (1998)....................5, 7

## **IDENTITY AND INTEREST OF *AMICUS CURIAE***

The Credit Union National Association ("CUNA") is the largest organization representing the nation's 6,000 credit unions and their 110 million members. Credit unions are member-owned financial cooperatives with the statutory mission of meeting the credit and savings needs of their members, often in low-income, rural or underserved populations. Credit unions are unique in the financial services industry because they are not-for-profit financial cooperatives that provide products and services to their members in a manner fundamentally different from the largest financial institutions. CUNA advocates for credit unions before Congress, state and federal agencies, and the courts. It also meets the needs of credit unions for training, compliance, and operational resources, and it sponsors educational and networking opportunities for credit union volunteers and staff.

In offering consumer financial services to their members, CUNA's credit unions must comply with the rules adopted by the Consumer Financial Protection Bureau (the "CFPB") and are profoundly affected by the enforcement actions initiated and threatened by the CFPB (whether or not a CUNA credit union is the defendant). Large credit unions, with more than $10 billion of assets, are subject to CFPB examination and supervision. Accordingly, CUNA and its members have a strong interest in ensuring that the CFPB at all times operates under proper direction of the official who is statutorily and constitutionally entitled to act as its Director. Confusion about the CFPB's leadership creates uncertainty about the status of pending rules, rule effective dates, and examination schedules. It leaves credit unions uncertain about actions required by the CFPB and thereby impacts their operations and their ability to provide financial services on a daily-basis to credit union members.

CUNA is well qualified to provide the Court with a unique insight into how credit unions' ability to provide safe and affordable financial services has been significantly impeded in

the last several years by a regulatory scheme that favors the largest financial service providers that can afford to absorb regulatory changes.[1] As credit unions consider what services they can continue to offer their members, what their costs of compliance may be in the immediate future, and how they want to innovate, it is critical that they have certainty and transparency about the leadership of the CFPB.

---

[1] Based on a recent Regulatory Burden Study, CUNA found that in 2014, the regulatory burden on credit unions caused $6.1 billion in regulatory costs, and an additional $1.1 billion in lost revenue. Even more alarming, these figures do not include the CFPB's recent regulatory additions to mortgage disclosure and reporting requirements, which has caused the greatest increase in compliance cost, but has yet to be precisely measured. Hui, V., Myers, R., Seymour, K, *Regulatory Financial Impact Study*, Cornerstone Advisors, Inc., available at http://www.cuna.org/regburden/ (Feb. 2016).

**FRAP RULE 26(a)(4)(E) STATEMENT**

Pursuant to Local Rule 7(o)(5) of this Court and Rule 29(a)(4)(E) of the Federal Rules of Appellate Procedure, *amicus curiae* Credit Union National Association, Inc. states that (i) undersigned counsel authored this brief, (ii) no party or party's counsel contributed any money that was intended to fund preparing or submitting this brief, and (iii) no other person contributed money that was intended to fund preparing or submitting this brief.

## ARGUMENT

### I. THE CONSUMER FINANCIAL PROTECTION ACT DOES NOT PROVIDE A RULE OF SUCCESSION FOR THE DIRECTOR OF THE CFPB.

The Consumer Financial Protection Act of 2010 ("CFPA"), which created the CFPB,[2] provides that the Deputy Director of the CFPB "shall . . . serve as Acting Director in the *absence* or *unavailability* of the Director." 12 U.S.C. § 5491(b)(5)(B) ("Section 5491(b)(5)(B)") (emphasis added). As we explain, Section 5491(b)(5)(B) is plainly inapplicable to the succession of a former CFPB Director who no longer serves in office. It is instead the Vacancies Reform Act, 5 U.S.C. § 3345, *et seq.* (the "VRA"), and only the VRA, that governs the succession of the CFPB Director.[3]

Plaintiff would have this Court believe that Congress chose to use the words "absence" and "unavailability" to refer to a "vacant" office. Citing only Section 5491(b)(5)(B) and two inconclusive definitions from the Merriam Webster Online Dictionary, Plaintiff concludes that, "[u]nder a plain reading of this language, the Deputy Director automatically becomes the Acting Director when the Director leaves office: a Director who is no longer serving in office is 'absent' as well as 'unavailable.'" Dkt. No. 3 at 9. What Plaintiff fails to explain is why Congress would use such obscure coded language to refer to a vacancy.

Congress does not use code when providing a succession rule. For example, shortly before the VRA was enacted, the Senate Committee on Governmental Affairs on the Vacancies Reform Act considered, among other things, statutes addressing situations where an office

---

[2] The CFPA is Title 10 of the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank" or the "Dodd-Frank Act"), Pub. L. No. 111-203, 124 Stat. 1376 (2010).

[3] Defendants have reserved the right to contest whether Section 5491(b)(5)(B) addresses in any manner the appointment of an Acting Director of the CFPB upon the resignation of a prior Director. *See* Dkt. No. 9 at 12 n. 2.

needed to be filled after an officer resigned or otherwise vacated his or her post. In doing so, it identified 38[4] office-specific statutes that the Committee believed would continue to provide alternative mechanisms for acting service. S. Rep. No. 105-250, at 16-17 (1998). All of these statutes explicitly refer to a "vacancy" in office or a "resignation." Thus, Congress knew how to refer to the CFPB's current situation. It repeatedly chose the terms "vacancy" and "resignation." Only here, Plaintiff argues, Congress departed from its uniform practice.

Plaintiff makes this argument in the face of contrary language in Dodd-Frank, the very statute that *created* the CFPB. For example, in specifying how the Director's seat on the Federal Deposit Insurance Corporation (FDIC) Board of Directors is to be filled in the case of a vacancy in the CFPB Director's office or the Director's disability or absence, section 336(a) of Dodd-Frank *explicitly* distinguishes between a "vacancy" and "absence or disability":

> In the event of a *vacancy* in the office of . . . the Director of the Consumer Financial Protection Bureau and pending the appointment of a successor, *or* during the *absence* or *disability* of . . . the Director of the Consumer Financial Protection Bureau, the acting . . . Director of the Consumer Financial Protection Bureau . . . shall be a member of the Board of Directors in the place of the . . . Director.

Dodd-Frank, Pub. L. No. 111-203, § 336(a)(2), 124 Stat. 1376, 1540 (codified at 12 U.S.C. § 1812(d)(2) (2010)) (emphasis added); *see also id.*, § 111(c)(3) at 1393 (using similar language to describe how vacancies on the Financial Stability Oversight Counsel would be filled). Thus, when it enacted Dodd-Frank, Congress knew how to address vacancies and did not craft Section 5491(b)(5)(B) to do so.

Even without legislation such as the VRA making it clear that Congress uses the word "vacancy" to address situations where an official has resigned, it is impossible to believe that Congress would have chosen the phrase "absence or unavailability of the Director" to cover a

[4] Though the list in the report contains 40 enumerated statutes, the list skips numbers 26 and 27. Thus, there are only 38 statutes listed.

resignation. This language naturally connotes a temporary situation, for example, when the Director in office suffers an accident requiring long-term hospitalization. It does not extend to a permanent departure from office. Indeed, if the Director dies, resigns, or is fired, there is no Director in office who can be absent or unavailable.[5]

A hypothetical makes the point: Imagine that a school principal, call him Mr. Cordray, resigns one day. The next day, a student is suspended by another administrator. If the student's parent wanted to discuss the suspension with Principal Cordray and called for an appointment, would Mr. Cordray's assistant advise the parent that Mr. Cordray was absent or unavailable? Of course not. Mr. Cordray is not absent and he is not unavailable. He has resigned. He is gone. Never to return. His office is *vacant*.

Not only does "absence or unavailability of the Director" not suggest a resignation or permanent departure from office, it does not suggest an intent to deprive the President of his normal powers under the VRA. If that had been Congress' intent in adopting Section 5491(b)(5)(B), why did Congress not simply say so by explicitly expressing it in the statute? It would not have been difficult for Congress to state that Section 5491(b)(5)(B) is the exclusive provision (or even an alternative provision) governing service as Acting Director of the CFPB.

---

[5] In her brief in support of a preliminary injunction, Dkt. No. 3 at 10-11, Plaintiff cites several statutes providing for succession of a designated official unless the President makes a temporary appointment. She claims that Congress would have followed this pattern if it intended to give appointment power to the President here. This argument fails, however, because Section 5491(b)(5)(B) does not apply to the succession issue in the first place. Moreover, unlike Section 5491(b)(5)(B), all of the statutes cited by Plaintiff used the word "vacancy" (and not the phrase "absence or unavailability" found in the CFPA provision) to describe a succession scenario. There is a self-evident reason, namely CUNA's reasoning as described in this brief, why Congress did not refer in Section 5491(b)(5)(B) to Presidential appointments of a successor to a departed CFPB Director. Plaintiff proffers no alternate explanation as to why Section 5491(b)(5)(B) did not refer to a "vacancy" and instead refers to a mere "absence or unavailability."

Nor would it have been difficult for Congress to say that the President is forbidden from making a temporary appointment of Acting Director. Its failure to include such language shows its intent.

Indeed, in its report on the VRA, the Senate Committee on Governmental Affairs stated that:

> [S]tatutes enacted in the future purporting to or argued to be construed to govern the temporary filling of offices covered by this statute are *not to be effective unless they expressly provide that they are superseding the Vacancies Reform Act.*

S. Rep. No. 105-250, at 15 (1998) (emphasis added). If Congress's intent in enacting the VRA is taken into account, the CFPA's failure to even mention the VRA is *dispositive*. Thus, the VRA gave the President the power to appoint the CFPB Director following the former Director's resignation and Plaintiff's claim to that office is invalid.

## II. THE STATUTORY INTERPRETATION PROPOSED BY PLAINTIFF IS NONSENSICAL AND UNCONSTITUTIONAL.

Plaintiff suggests that her interpretation of the law is mandated by Congress' desire to insulate CFPB decision-making from Executive control. Dkt. No. 3 at 5-6. We do not deny that Congress (or at least the members who voted in favor of Dodd-Frank) adopted extraordinary measures to this end. However, the argument that the President must be deprived of even the power to appoint an interim Director after the resignation of the former Director goes too far.

*First*, this argument produces bizarre results. If Plaintiff is correct, under the VRA, the President—duly elected to office and politically answerable to the American public—has *limited* powers of appointment while the CFPB Director—an unelected official responsible to nobody—has *limitless* power. Such dangerous public policy would contradict the CFPB's stated mission that consumers deserve fair treatment in a more transparent and competitive financial marketplace.[6] Further, this delegation of authority would not produce a more transparent

[6] *See* Prepared Remarks of CFPB Director Richard Cordray at the Consumer Advisory Board

financial services marketplace as credit unions and other covered entities would have no visibility into the appointment process and would be subject to the whims of any outgoing CFPB Director in selecting his/her replacement.

Under the VRA, the President can only appoint in an acting capacity an individual who either serves in another office requiring Presidential appointment and Senate confirmation or a senior officer of the agency in question who has served at least 90 days at the agency during the immediately preceding year. 5 U.S.C. § 3345(a)(2) and (3). Further, the President may not appoint an acting officer who is also nominated for the permanent position unless the individual was the first assistant to the departed officer for a specified period. *Id.* at § 3345(b)(1); *Hooks v. Kitsap Tenant Support Servs., Inc.*, 816 F.3d 550, 553 (9th Cir. 2016) (appointment of individual as acting General Counsel of NLRB violated VRA when that same individual was also nominated for the permanent position).

By contrast, under Plaintiff's view of the law, former Director Cordray was perfectly entitled on his way out of office to appoint *anyone at all*, including his favorite intern or even a non-U.S. citizen, to become Deputy Director of the CFPB and thereupon Acting Director. *Compare* Section 5491(b)(5)(B) (imposing no limitations on individuals serving as Acting Director) with Section 5491(b)(3) (requiring CFPB Director but not the Deputy Director to be U.S. citizen and saying nothing about qualifications of the Deputy Director or an Acting Director). Nonsense!

*Second*, Plaintiff's position that the President must be deprived of any right of control over the CFPB, including even the right to appoint an Acting Director in the event of a

---

Meeting (June 8, 2017), available at https://www.consumerfinance.gov/about-us/newsroom/prepared-remarks-cfpb-director-richard-cordray-consumer-advisory-board-meeting-june-2017/.

resignation entirely beyond the President's control, raises serious constitutional questions. The Court of Appeals for the D.C. Circuit currently has before it, *en banc*, a petition by PHH Corporation to declare that Dodd-Frank unconstitutionally deprives the President of the right to discharge the CFPB Director without cause. *See PHH Corp. v. Consumer Fin. Prot. Bureau,* No. 15-1177 (D.C. Cir.) (*en banc*).

A panel of the D.C. Circuit already ruled that limiting the President to for-cause removal of the Director was unconstitutional. According to the panel:

> The CFPB's concentration of enormous executive power in a single, unaccountable, unchecked Director not only departs from settled historical practice, but also poses a far greater risk of arbitrary decisionmaking and abuse of power, and a far greater threat to individual liberty, than does a multi-member independent agency.

*PHH Corp. v. Consumer Fin. Prot. Bureau*, 839 F.3d 1, 8 (D.C. Cir. 2016), *reh'g en banc granted, order vacated* 2017 U.S. App. LEXIS 2733, 2017 WL 631740 (Feb. 16, 2017).

While Plaintiff has not explicitly argued that the President cannot discharge her from office, it is necessarily implied from her other arguments. If the President could unilaterally terminate her without cause, she has nothing to complain about here, and there would arguably be no reason to seek to insulate the appointment of an acting director by the President under the VRA. So, Plaintiff is not "merely" arguing that a Director who has received a Presidential nomination and Senate approval is immune to without cause termination. She is arguing that this same Director can effectively appoint his successor, again without any Presidential control or check. This goes well beyond the position taken by the CFPB in *PHH*.[7] If the Circuit Court rules

[7] In addition to the constitutional issues raised in *PHH*, this case raises substantial questions under the Appointments Clause, U.S. Const. art. II, § 2, cl. 2, namely: (1) whether the Deputy Director/Acting Director is an "inferior officer" or instead a "principal officer" who may only be appointed by the President with the consent of the Senate, and (2) if the Deputy Director/Acting Director is an inferior officer, whether the CFPB is a "department" whose head may constitutionally appoint inferior officers. *See Free Enter. Fund v. Pub. Co. Accounting Oversight*

in favor of PHH, *a fortiori* this Court should rule in favor of Defendants. Of course, even if the Circuit Court does not rule in favor of PHH, this Court should still find Plaintiff's position to be constitutionally untenable.

At a minimum, this Court should rule in favor of Defendants in order to avoid a statutory interpretation raising these and other serious constitutional questions. "When the validity of an act of the Congress is drawn in question, and even if a serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." *Janko v. Gates*, 741 F.3d 136, 145 n.9 (D.C. Cir. 2014) (quoting *Crowell v. Benson*, 285 U.S. 22, 62 (1932)). Because, Plaintiff's position raises, at a minimum, serious questions about the constitutionality of Section 5491(b)(5)(B), it should be rejected and this Court should rule in favor of Defendants.

## CONCLUSION

For the foregoing reasons, Plaintiff's request for relief should be denied.

---

*Bd.*, 561 U.S. 477 (2010); *Morrison v. Olson*, 487 U.S. 654 (1988). Given that Plaintiff's sole defined role as Deputy Director is to act as Director in the sitting Director's absence or unavailability—a time when the Director will not be able to exercise any control over the Deputy Director—and given that former Director Cordray *never* exercised control over Plaintiff in her capacity as Deputy Director (having appointed Plaintiff minutes before his resignation took effect), Plaintiff's status as a constitutionally appointed "inferior officer" is highly suspect. Moreover, even if the Deputy Director were deemed an inferior officer, "it is unclear if the Bureau is a 'department' and thus if the Director is a department head who can appoint the Deputy Director." Kent H. Barnett, *The Consumer Financial Protection Bureau's Appointment with Trouble*, 60 Am. Univ. L. Rev. 1459, 1460 (2011) (*available at* *https://ssrn.com/abstract=1762805*) (analyzing *Free Enter. Fund* and *Freytag v. Comm'r*, 501 U.S. 868 (1991)).

Respectfully submitted,

*/s/Theodore R. Flo*

Theodore R. Flo
BALLARD SPAHR LLP
1909 K Street N.W. – 12th Floor
Washington, D.C. 20006
Telephone: (202) 661-2259
Facsimile: (202) 661-2299 fax
flot@ballardspahr.com

Alan S. Kaplinsky
Jeremy T. Rosenblum
BALLARD SPAHR LLP
1735 Market Street – 51st Floor
Philadelphia, Pa. 19103
Telephone: (215) 665-8500
Facsimile: (215) 864-8999
kaplinskya@ballardspahr.com
rosenblumj@ballardspahr.com

*Counsel for Credit Union National Association*