# Exhibit 2

## Office of Legal Counsel Slip Opinion,
## *Designating an Acting Director of the CFPB*
## (November 25, 2017)

(Slip Opinion)

# Designating an Acting Director of the Bureau of Consumer Financial Protection

The statute providing that the Deputy Director of the Bureau of Consumer Financial Protection shall "serve as acting Director in the absence or unavailability of the Director" authorizes the Deputy Director to serve as the Acting Director when the position of Director is vacant.

Both the Federal Vacancies Reform Act of 1998 and the statute specific to the office of Director are available to fill a vacancy in the office of Director on an acting basis; the office-specific statute does not displace the President's authority to designate an acting officer under 5 U.S.C. § 3345(a)(2) or (3).

November 25, 2017

MEMORANDUM OPINION FOR THE COUNSEL TO THE PRESIDENT

You have asked whether the President may designate an Acting Director of the Bureau of Consumer Financial Protection ("CFPB") upon the resignation of the Director. This opinion confirms the oral advice that we gave you before the Director's resignation took effect at the end of November 24, 2017. *See* Letter for the President, from Richard Cordray, Director, CFPB (Nov. 24, 2017) (communicating resignation).

The CFPB Director is an office filled by presidential appointment, by and with the advice and consent of the Senate. 12 U.S.C. § 5491(b)(2). The Federal Vacancies Reform Act of 1998, 5 U.S.C. §§ 3345–3349d, provides the President with authority "for temporarily authorizing an acting official to perform the functions and duties" of an officer of an "Executive agency" whose appointment "is required to be made by the President, by and with the advice and consent of the Senate," and it is the "exclusive means" for authorizing acting service "unless" another statute expressly designates an officer to serve in an acting capacity or provides an alternative means for a designation as an acting officer. 5 U.S.C. § 3347(a).

The CFPB has such a statute. Specifically, 12 U.S.C. § 5491(b)(5) provides that the CFPB's Deputy Director shall "serve as acting Director in the absence or unavailability of the Director." While the statute is unusual in failing expressly to reference temporary service in the case of a vacancy in the office, we believe that the resignation of the Director would satisfy the requirement of "absence or unavailability." Therefore, the statute would

1

permit a properly appointed Deputy Director to serve as the Acting Director during a vacancy.[1]

The fact that the Deputy Director may serve as Acting Director by operation of the statute, however, does not displace the President's authority under the Vacancies Reform Act. As we have advised in our prior opinions, even when the Vacancies Reform Act is not the "exclusive" means for filling a vacancy, the statute remains an available option, and the President may rely upon it in designating an acting official in a manner that differs from the order of succession otherwise provided by an office-specific statute. This interpretation of the Vacancies Reform Act is in accord with the only federal court of appeals to address the issue. *See Hooks v. Kitsap Tenant Support Servs., Inc.*, 816 F.3d 550, 555–56 (9th Cir. 2016). The President therefore may designate an Acting Director of the CFPB under the Vacancies Reform Act. *See* 5 U.S.C. § 3345(a)(2), (3).

## I.

Because the Vacancies Reform Act specifies that it constitutes the "exclusive means" for temporarily authorizing an acting official absent another statutory provision, 5 U.S.C. § 3347(a), we first consider whether 12 U.S.C. § 5491(b)(5) authorizes the Deputy Director to serve as the CFPB's Acting Director when the Director has resigned his office.

Section 5491(b)(5) refers to the "absence or unavailability of the Director," but does not expressly state that it applies when the office is vacant. This phrasing is unusual. The Report of the Senate Committee on Governmental Affairs on the Vacancies Reform Act identified forty office-specific

---

[1] We understand that the CFPB had not had a Deputy Director since August 2015, and so, for over two years, the CFPB functioned with an Acting Deputy Director. On November 24, 2017, the CFPB Director's last day in office, he stated that he had appointed a Deputy Director in order to take advantage of the succession provision of 12 U.S.C. § 5491(b)(5) upon his resignation. Because we have no other details about this appointment, we express no view about its validity. Even if the Deputy Director were properly appointed, she did not become Acting Director; the President designated the Director of the Office of Management and Budget ("OMB") to perform the functions and duties of the Director of the CFPB, effective upon the CFPB Director's resignation. As someone who already "serves in an office for which appointment is required to be made by the President, by and with the advice and consent of the Senate," the Director of OMB is among the persons the President could select under 5 U.S.C. § 3345(a)(2) to "perform the functions and duties of the vacant office temporarily in an acting capacity."

*Designating an Acting Director of the CFPB*

statutes that the committee believed would continue to provide alternative mechanisms for acting service. S. Rep. No. 105-250, at 16–17 (1998). Each of these statutes refers to either a vacancy or a resignation. We have, for instance, construed the succession provisions of the Department of Justice and the Office of the Management and Budget. *See Authority of the President to Name an Acting Attorney General*, 31 Op. O.L.C. 208 (2007) ("*Acting Attorney General*"); *Acting Director of the Office of Management and Budget*, 27 Op. O.L.C. 121, 121 n.1 (2003) ("*Acting Director of OMB*"). The Department of Justice's statute speaks of service as Acting Attorney General by "reason of absence, disability, or *vacancy*" in the offices of the Attorney General and the Deputy Attorney General. 28 U.S.C. § 508(b) (emphasis added). Similarly, the Office of Management and Budget's succession statute speaks of the Director's being "absent or unable to serve or when the office of the Director is *vacant*." 31 U.S.C. § 502(b)(2) (emphasis added). Accordingly, it could be argued that section 5491(b)(5) applies only in cases of the Director's transient "absence or unavailability," and does not apply in the case of a vacancy or a resignation.

This Office distinguished between an "absence" and a "vacancy" when considering whether the Vice Chairman of the Federal Reserve Board would automatically assume the duties of the Chairman upon the expiration of his term. *Status of the Vice Chairman of the Federal Reserve Board*, 2 Op. O.L.C. 394, 395 (1978). There, the statute provided that the Vice Chairman would preside at meetings of the Federal Reserve Board in the Chairman's "absence," but was otherwise silent on succession following the end of the Chairman's term. We advised that "[t]he term 'absence' normally connotes a failure to be present that is temporary in contradistinction to the term 'vacancy' caused, for example, by death of the incumbent or his resignation." *Id*. Accordingly, the Vice Chairman's authority to preside in the "absence" of the Chairman did not mean that he would automatically assume the duties of the chairmanship upon a vacancy. Rather, we determined that the President would need to designate an acting Chairman. *Id*. at 396. If section 5491(b)(5) were limited to service when the Director is "absent," we might similarly conclude that the CFPB statutory provision would not apply in the case of a "vacancy" in the office of the Director.

Section 5491(b)(5), however, speaks not only of the Director's "absence," but also of his "unavailability." While the question is not free from doubt, we believe that the provision's reference to "unavailability" is best read to refer both to a temporary unavailability (such as the Director's recusal from

3

*Opinions of the Office of Legal Counsel in Volume 41*

a particular matter) and to the Director's being unavailable because of a resignation or other vacancy in office. *See Acting Attorney General*, 31 Op. O.L.C. at 209 n.1 (referring to officials who "have died, resigned, or *otherwise* become unavailable") (emphasis added); *Designation of Acting Solicitor of Labor*, 26 Op. O.L.C. 211, 214 (2002) (describing provisions of the Vacancies Reform Act as contemplating "that a 'vacancy' occurs when the occupant dies or resigns or is *otherwise* unavailable") (emphasis added). *Cf. TCF Film Corp. v. Gourley*, 240 F.2d 711, 714 (3d Cir. 1957) (observing, for purposes of law-of-the-case doctrine, that a judge who "dies or resigns from the court . . . obviously is no longer available") (footnote omitted). This broader reading of "unavailability" is consistent with how this Office has interpreted the Vacancies Reform Act's reference to when an officer "dies, resigns, or is otherwise unable to perform the functions and duties of the office." 5 U.S.C. § 3345(a). In our view, an officer is "unable to perform the functions and duties of the office" during both short periods of unavailability, such as a period of sickness, and potentially longer ones, such as one resulting from the officer's removal (which would arguably not be covered by the reference to "resign[ation]"). *See Guidance on Application of Federal Vacancies Reform Act of 1998*, 23 Op. O.L.C. 60, 61 (1999) ("In floor debate, Senators said, by way of example, that an officer would be 'otherwise unable to perform the functions and duties of the office' if he or she were fired, imprisoned, or sick.") (citing statements by Senators Thompson and Byrd). We think that "unavailability" should be similarly construed, and thus that 12 U.S.C. § 5491(b)(5) would authorize a properly appointed Deputy Director of the CFPB to serve as its Acting Director during a true vacancy in the Director position.

## II.

We next consider whether 12 U.S.C. § 5491(b)(5), by authorizing the CFPB's Deputy Director to serve as its Acting Director, eliminates the President's authority under the Vacancies Reform Act to fill a vacancy in the Director position on an acting basis. We have addressed this question before in connection with similar statutes, and our answer is straightforward. The Vacancies Reform Act is not the "exclusive means" for the temporary designation of an Acting Director, but it remains available to the President as one means for filling a vacancy in the Director position.

The Vacancies Reform Act expressly addresses how it interacts with statutes that deal with who shall act when specific offices are vacant. It provides

*Designating an Acting Director of the CFPB*

that its mechanisms for designating an acting officer (5 U.S.C. § 3345) and the accompanying time limitations (*id*. § 3346) are

> the exclusive means for temporarily authorizing an acting official to perform the functions and duties of any office of an Executive agency . . . for which appointment is required to be made by the President, by and with the advice and consent of the Senate, unless—
>
>> (1) a statutory provision expressly—
>>
>>> (A) authorizes the President, a court, or the head of an Executive department, to designate an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity; or
>>>
>>> (B) designates an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity; or
>>
>> (2) the President makes an appointment to fill a vacancy in such office during the recess of the Senate pursuant to clause 3 of section 2 of article II of the United States Constitution.

*Id*. § 3347(a); *see also* 12 U.S.C. § 5491(a) (specifying that the CFPB "shall be considered an Executive agency").

By its terms, section 3347(a) provides that the Vacancies Reform Act shall be the "exclusive means" of filling vacancies on an acting basis unless another statute "expressly" provides a mechanism for acting service. It does not follow, however, that when another statute applies, the Vacancies Reform Act ceases to be available. To the contrary, in calling the Vacancies Reform Act the "exclusive means" for designations "unless" there is another applicable statute, Congress has recognized that there will be cases where the Vacancies Reform Act is non-exclusive, i.e., one available option, together with the office-specific statute. If Congress had intended to make the Vacancies Reform Act *unavailable* whenever another statute provided an alternative mechanism for acting service, then it would have said so. It would not have provided that the Vacancies Reform Act ceases to be the "*exclusive* means" when another statute applies.

This Office has consistently adhered to this reading of section 3347. In 2007, we concluded that the President has the authority to designate an Acting Attorney General under the Vacancies Reform Act, even though a separate statute specific to the position of Attorney General, 28 U.S.C.

5

§ 508, also provides a mechanism by which other designated officials in the Department of Justice may "act as Attorney General" during the "vacancy," "absence," or "disability" of the Attorney General. *Acting Attorney General*, 31 Op. O.L.C. at 209–11. We observed that "[t]he Vacancies Reform Act nowhere says that, if another statute [for naming an acting officer] remains in effect, the Vacancies Reform Act may not be used." *Id*. at 209. We reached the same conclusion in 2003, when we examined the availability of the Vacancies Reform Act in light of a separate statute that identified several officers who could be designated as Acting Director of the Office of Management and Budget in the event of a vacancy in that office. Notwithstanding that office-specific alternative mechanism, we concluded that "the Vacancies Reform Act may still be used." *Acting Director of OMB*, 27 Op. O.L.C. at 121 n.1.

A federal court of appeals adopted the same reading of section 3347. In *Hooks*, an employer challenged the service of an individual designated under the Vacancies Reform Act as Acting General Counsel of the National Labor Relations Board. 816 F.3d at 554. The employer argued, among other things, that the Vacancies Reform Act was not available because a provision of the National Labor Relations Act specifically provided for the temporary designation of an Acting General Counsel. *Id*. at 555–56. The Ninth Circuit rejected that contention, concluding that, under section 3347, "neither the [Vacancies Reform Act] nor the [National Labor Relations Act] is the *exclusive* means of appointing an Acting General Counsel" and that "the President is permitted to elect between these two statutory alternatives to designate an Acting General Counsel." *Id*. at 556.

Our past opinions have recognized that the legislative history confirms this reading of the Vacancies Reform Act. *Acting Attorney General*, 31 Op. O.L.C. at 209; *Acting Director of OMB*, 27 Op. O.L.C. at 121 n.1. Discussing an earlier draft of the bill, the Senate committee noted that, "with respect to the specific positions in which temporary officers may serve under the specific statutes this bill retains, the Vacancies [Reform] Act would continue to provide an alternative procedure for temporarily occupying the office." S. Rep. No. 105-250, at 17. The enacted version of the statute differs from the version discussed in the Senate Report, but it does so in ways that reinforce the conclusion that both the Vacancies Reform Act and an office-specific statute are available to fill a vacancy on an acting basis. The earlier version of section 3347 discussed in the Senate Report would have provided that "[s]ections 3345 and 3346 are applicable" to offices to be filled by

*Designating an Acting Director of the CFPB*

appointment of the President, by and with the advice and consent of the Senate, "unless—(1) another statutory provision expressly provides that . . . such provision supersedes sections 3345 and 3346; [or] (2) a statutory provision in effect on the date of enactment of the Federal Vacancies Reform Act of 1998 expressly" designates or authorizes the designation of an acting officer. *Id*. at 26. That phrasing could well have been susceptible to a reading that the Vacancies Reform Act would cease to apply when another statute provided a mechanism for filling a vacancy, notwithstanding the committee's explanation to the contrary. But the enacted version of section 3347(a) has removed all doubt, both by striking the language contemplating that another provision might expressly supersede the Vacancies Reform Act and by adopting the formulation that the latter is to be "exclusive" when no other statute is available.[2]

The CFPB-specific statute does state that the Deputy Director "shall" serve as Acting Director where the Director is unavailable. 12 U.S.C. § 5491(b)(5). However, the Vacancies Reform Act itself, like the CFPB-specific statute, similarly uses mandatory terms, providing that the first assistant to a vacant office "shall perform the functions and duties" of that office unless the President invokes his authority under the statute to direct another official to do so. 5 U.S.C. § 3345(a)(1). Accordingly, we cannot view either statute as more mandatory than the other. Rather, they should be construed in parallel. Furthermore, the Senate Report lists forty office-specific statutes to which the Vacancies Reform Act is an alternative, *see* S. Rep. No. 105-250, at 16–17, and a number of those statutes similarly employ mandatory language that, like the CFPB-specific statute, provides that the first assistant to the vacant office "shall" serve in an acting capacity.[3] Nevertheless, Congress plainly intended in those cases that the President

---

[2] The enacted version also removed the requirement that a statutory provision be in effect on the date of the Vacancies Reform Act's enactment in order to be available for filling a vacancy. As a result, the fact that section 5491(b)(5) was enacted after 1998 does not affect our analysis.

[3] *See, e.g.*, 15 U.S.C. § 633(b)(1) ("The Deputy Administrator shall be Acting Administrator of the [Small Business] Administration during the absence or disability of the Administrator or in the event of a vacancy in the office of Administrator."); 20 U.S.C. § 3412(a)(1) ("During the absence or disability of the Secretary [of Education], or in the event of a vacancy in the office of the Secretary, the Deputy Secretary shall act as Secretary."); 29 U.S.C. § 552 ("The Deputy Secretary [of Labor] shall (1) in case of the death, resignation, or removal from office of the Secretary, perform the duties of the Secretary until a successor is appointed[.]"); 31 U.S.C. § 301(c) ("The Deputy Secretary [of the Treasury] shall carry out . . .

could invoke the Vacancies Reform Act as "an alternative procedure" and depart from the statutory order of succession. S. Rep. No. 105-250, at 17.

The canon of statutory interpretation that "[a] specific provision controls one of more general application," *Gozlon-Peretz v. United States*, 498 U.S. 395, 407 (1991), does not prevent the Vacancies Reform Act from being available here. While the CFPB-specific statute arguably is more specific than the Vacancies Reform Act in the sense that it applies only to the position of Director, the same is true with all of the office-specific statutes retained by section 3347(a). Yet in the text and the legislative history, Congress expressly recognized that both the Vacancies Reform Act and office-specific statutes would be available as separate means of temporarily authorizing individuals to serve in an acting capacity. In view of executive practice before the CFPB statute was enacted, as reflected in *Acting Attorney General* and *Acting Director of OMB*, and in the absence of some clearer statement in the CFPB's statute altering the applicability of the Vacancies Reform Act, there is no reason to conclude that Congress expected 12 U.S.C. § 5491(b)(5) to operate any differently than any of the other office-specific statutes.

The CFPB-specific statute providing that the Deputy Director "shall . . . serve as acting Director in the absence or unavailability of the Director," 12 U.S.C. § 5491(b)(5), satisfies section 3347(a)'s reference to "a statutory provision" that "expressly . . . designates an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity." 5 U.S.C. § 3347(a)(1)(B). It therefore should interact with the Vacancies Reform Act in the same way as other, similar statutes providing an office-specific mechanism for an individual to act in a vacant position. *See Acting Attorney General*, 31 Op. O.L.C. at 209–11; *Acting Director of OMB*, 27 Op. O.L.C. at 121 n.1. Both the Vacancies Reform Act and section 5491(b)(5) are available for filling on an acting basis a vacancy that results from the resignation of the CFPB's Director. And, as with other office-specific statutes, when the President designates an individual under the Vacancies Reform Act outside the ordinary order of succession, the President's designation necessarily controls. Otherwise, the Vacancies Reform Act would not remain available as an actual alternative in instances where

---

(2) the duties and powers of the Secretary when the Secretary is absent or unable to serve or when the office of Secretary is vacant."); 44 U.S.C. § 2103(c) ("In the event of a vacancy in the office of the Archivist, the Deputy Archivist shall act as Archivist until an Archivist is appointed[.]").

the office-specific statute identifies an order of succession, contrary to Congress's stated intent.

### III.

Nothing about the CFPB's statutory structure changes our analysis. Congress has characterized the CFPB as "independent," 12 U.S.C. § 5491(a), and has purported to make the Director removable only "for inefficiency, neglect of duty, or malfeasance in office," *id*. § 5491(c)(3).[4] But those indications of independence do not prevent the President from using the Vacancies Reform Act, because Congress has specified that the CFPB "shall be considered an Executive agency," *id*. § 5491(a), which brings it within section 3347(a), and because the CFPB's Director does not fall within the category of officers whom Congress has excluded from coverage under the Vacancies Reform Act.

In 5 U.S.C. § 3349c, Congress specified that the Vacancies Reform Act "shall not apply" to the following officers:

> (1) any member who is appointed by the President, by and with the advice and consent of the Senate to any board, commission, or similar entity that—
>
>> (A) is composed of multiple members; and
>>
>> (B) governs an independent establishment or Government corporation;
>
> (2) any commissioner of the Federal Energy Regulatory Commission;
>
> (3) any member of the Surface Transportation Board; or

---

[4] In pending litigation, the Department of Justice is contending that Congress may not impose a for-cause restriction on the President's power to remove the CFPB's Director, because he is a single-member head of an agency. *See* Brief for the United States as Amicus Curiae, *PHH Corp. v. Consumer Fin. Prot. Bureau*, No. 15-1177 (D.C. Cir. Mar. 17, 2017). That conclusion is consistent with the panel's decision in *PHH Corp. v. Consumer Fin. Prot. Bureau*, 839 F.3d 1 (D.C. Cir. 2016), *judgment vacated upon grant of reh'g en banc* (Feb. 16, 2017), as well as with earlier advice from this Office, as reflected in, for instance, a 1994 signing statement of President Clinton. *See* Statement on Signing the Social Security Independence and Program Improvement Act of 1994 (Aug. 15, 1994), 2 *Pub. Papers of Pres. William J. Clinton* 1471, 1472 (1994).

*Opinions of the Office of Legal Counsel in Volume 41*

(4) any judge appointed by the President, by and with the advice and consent of the Senate, to a court constituted under article I of the United States Constitution.

As that provision illustrates, Congress has indeed determined that some positions with hallmarks of independence should not be filled on an acting basis through the Vacancies Reform Act. But section 3349c does not exclude the Director of the CFPB, because the CFPB is not governed by any "entity that . . . is composed of *multiple* members," *id.* § 3349c(1) (emphasis added), and the Director does not appear among the other specifically enumerated positions.[5]

Even apart from the Director's absence from section 3349c's list of carveouts, the removal protections for the Director would not insulate an *Acting* Director from displacement by the President under the Vacancies Reform Act. In *Swan v. Clinton*, 100 F.3d 973 (D.C. Cir. 1996), the court considered whether members of the Board of the National Credit Union Administration, whom the court assumed to have tenure protection during their statutory terms of office, continued to have tenure protection while serving in a holdover capacity following the expiration of their terms. *Id.* at 983. It concluded that, "even if the [relevant] statute were interpreted to grant removal protection to Board members during their appointed terms . . . , this protection does not extend to holdover members." *Id.* at 988. To the extent that a designation under the Vacancies Reform Act might be regarded as comparable to a "removal" of an Acting Director of the CFPB, a similar analysis would apply. Congress does not, by purporting to give tenure protection to a Senate-confirmed officer, afford similar protection to an individual who temporarily performs the functions and duties of that office when it is vacant.

---

[5] The fact that the Director's position did not exist when the Vacancies Reform Act was enacted does not change the analysis. *See supra* note 2. To the contrary, it reinforces the proposition that Congress could have excluded the Director of the CFPB from coverage upon creating the office, but did not do so. In fact, the Senate Report on the Vacancies Reform Act expressly noted that both the Vacancies Reform Act and an office-specific statute would be available to fill a vacancy in the office of the Commissioner of the Social Security Administration, another single-member agency head with certain statutory tenure protections. *See* S. Rep. No. 105-250, at 16–17; *see also* 42 U.S.C. § 902(a)(3), (b)(4). Thus, the exclusion for an "independent establishment" headed by a multiple-member entity, but not by a single member, cannot be ignored.

*Designating an Acting Director of the CFPB*

Nor is our conclusion affected by the drafting history of section 5491. The version of that provision that passed the House of Representatives would have provided that, "[i]n the event of vacancy or during the absence of the Director . . . an Acting Director shall be appointed in the manner provided in [the Vacancies Reform Act]." Wall Street Reform and Consumer Protection Act of 2009, H.R. 4173, 111th Cong. § 4102(b)(6)(B)(i) (as passed by House of Representatives, Dec. 11, 2009). That version of the bill would not have established a position of Deputy Director. *See id*. § 4106(a) (providing for the Director's appointment of other officials). Although the enacted version of the provision dealing with a vacancy in the Director position does not expressly refer to the Vacancies Reform Act, there is no reason to infer that Congress deemed the Vacancies Reform Act inapplicable. Such an inference from the failure to enact the House-passed version "lacks persuasive significance because several equally tenable inferences may be drawn from such inaction, including the inference that" the enacted version of the provision "already incorporated the offered change." *Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 650 (1990) (internal quotation marks omitted). In fact, that is the most plausible inference, given that the statutory backdrop at the time included the Vacancies Reform Act. Because the enacted provision makes the Deputy Director available to act as Director, the Vacancies Reform Act is not the "exclusive means" for designating an Acting Director, as indicated by the text of section 3347(a) and this Office's 2003 and 2007 opinions. Yet the Vacancies Reform Act continues to provide an available mechanism for the President to designate an Acting Director of the CFPB.

## IV.

For the reasons set forth above, we conclude that the President may designate an Acting Director of the CFPB under 5 U.S.C. § 3345(a)(2) or (3), because both the Vacancies Reform Act and the office-specific statute are available to fill a vacancy in that office on an acting basis.

STEVEN A. ENGEL
*Assistant Attorney General*
*Office of Legal Counsel*

11