**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| Leandra English, | Case No. 1:17-cv-02534 |
| Plaintiff, |  |
| vs. | Hon. Timothy J. Kelly |
| Donald J. Trump and John M. Mulvaney, |  |
| Defendants. |  |

**MEMORANDUM OF LAW OF THE CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA AS *AMICUS CURIAE* SUPPORTING DEFENDANTS**

Steven P. Lehotsky
Warren Postman
Janet Galeria
U.S. CHAMBER LITIGATION CENTER
1615 H Street, NW
Washington, DC 20062
Tel.: (202) 463-5337

Andrew J. Pincus
MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006
Tel.: (202) 263-3000
Fax: (202) 263-3300

# TABLE OF CONTENTS

Corporate Disclosure Statement ................................................................ ii

Table of Authorities .................................................................................. iii

Interest of the *Amicus Curiae* ................................................................1

Summary of Argument ...............................................................................1

Argument ....................................................................................................4

I.  Plaintiff's Interpretation of the Dodd-Frank Act Would Impose an Unprecedented Limitation on the President's Constitutional Authority to Appoint and Remove the Head of an Agency Exercising Article II Authority. ...............................................4

  A.  The President's appointment and removal powers are central elements of his Article II executive authority. ......................................................4

  B.  Permitting only the CFPB Director to designate an Acting Director infringes impermissibly upon the President's constitutional authority and significantly diminishes accountability to the people. ...................................6

II.  The President May Designate An Acting Director Under 5 U.S.C. § 3345(a)(2). ...............10

  A.  The FVRA authorizes the President to appoint a Senate-confirmed individual as Acting Director. ..................................................10

  B.  The Dodd-Frank Act does not eliminate the authority conferred on the President by the FVRA. ..................................................15

    1.  Section 1011(b)(5) does not apply when the Director position is vacant. ..................................................15

    2.  Dodd-Frank does not displace the President's FVRA authority. .......................18

  C.  The constitutional concerns Plaintiff cites do not support her reading of Dodd-Frank. ..................................................21

III.  Plaintiff's Appointment As Deputy Director Is Invalid. ..................................................22

Conclusion ..................................................................................................24

**CORPORATE DISCLOSURE STATEMENT**

The Chamber of Commerce of the United States of America ("Chamber") is a non-profit, tax-exempt organization incorporated in the District of Columbia.  The Chamber has no parent corporation, and no publicly held company has 10% or greater ownership in the Chamber.

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott v. Abbott*,
560 U.S. 1 (2010)...............................................................................................................17

*Bowsher v. Synar*,
478 U.S. 714 (1986).............................................................................................................5

*Dep't of Transp. v. Ass'n of Am. Railroads*,
135 S. Ct. 1225 (2015).........................................................................................................5

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*,
561 U.S. 477 (2010)................................................................................................ *passim*

*Freytag v. Commissioner of Internal Revenue*,
501 U.S. 868 (1991)...........................................................................................................23

*Gustafson v. Alloyd Co.*,
513 U.S. 561 (1995)...........................................................................................................18

*Gutierrez de Martinez* v. *Lamagno*,
515 U.S. 417 (1995)...........................................................................................................19

*Hooks v. Kitsap Tenant Support Servs.*,
816 F.3d 550 (9th Cir. 2016) .............................................................................................19

*Humphrey's Executor v. United States*,
295 U.S. 602 (1935)...........................................................................................................22

*Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*,
796 F.3d 111 (D.C. Cir. 2015) ...........................................................................................23

*Jarecki v. G.D. Searle & Co.*,
367 U.S. 303 (1961)...........................................................................................................18

*Legal Servs. Corp. v. Velazquez*,
531 U.S. 533 (2001).............................................................................................................9

*Myers v. United States*,
272 U.S. 52 (1926)...............................................................................................................5

*NLRB v. SW Gen., Inc.*,
137 S. Ct. 929 (2017)....................................................................................................10, 11

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*PHH Corp. v. Consumer Fin. Protection Bureau,*
839 F.3d 1, 21 (D.C. Cir. 2016) .................................................................6, 22

*Providence Bank v. Billings,*
29 U.S. (4 Pet.) 514 (1830) ...............................................................................4

*Ratzlaf v. United States,*
510 U.S. 135 (1994) ........................................................................................21

*Russello v. United States,*
464 U.S. 16(1983) ...........................................................................................17

*United States v. Germaine,*
99 U.S. 508 (1878) ..........................................................................................23

**Constitutional Provisions and Statutes**

U.S. Const. Art. I, § 1 ...........................................................................................4

U.S. Const. art. II, § 5 ...........................................................................................5

U.S. Const. art. II, § 1 ...........................................................................................4

U.S. Const. art. II, § 2, cl. 2 ...............................................................................23

5 U.S.C.
§ 104 ...............................................................................................................12
§ 105 ...............................................................................................................12
§ 3345(a) ..................................................................................................10, 16
§ 3345(a)(1) ....................................................................................................10
§ 3345(a)(2) ..............................................................................................11, 12
§ 3345(a)(3) ....................................................................................................11
§ 3345(b)(1) ....................................................................................................21
§ 3346(a) .........................................................................................................21
§ 3347(a) .............................................................................................11, 15, 19
§ 3347(a)(1)(B) ...............................................................................................19
§ 3349c ........................................................................................................7, 12
§ 3349c(1) .......................................................................................................13

7 U.S.C. § 1505(a) ..............................................................................................14

12 U.S.C.
§ 1812(a)(1)(A) ...............................................................................................14
§ 1812(a)(1)(B) ...............................................................................................13
§ 1812(a)(1)(C) ...............................................................................................13
§ 1812(d)(2) .....................................................................................................16

**TABLE OF AUTHORITIES**
(continued)

Page(s)

§ 4512(f).........................................................................................................3, 16, 20
§ 5321(c)(3)..........................................................................................................17
§ 5491(a)....................................................................................................14, 20, 24
§ 5491(b)(1)............................................................................................................6
§ 5491(b)(5)................................................................................................15, 19, 21
§ 5491(b)(5)(A)......................................................................................................23
§ 5491(c)(1)............................................................................................................6
§ 5491(c)(2)............................................................................................................8
§ 5491(c)(3)............................................................................................................6
§ 5497....................................................................................................................7

15 U.S.C.
§ 41........................................................................................................................7
§ 78d......................................................................................................................7
§ 78d(a).................................................................................................................7
§ 633(b)(1)....................................................................................................16, 20

19 U.S.C. § 1330(a).................................................................................................7

19 U.S.C. § 1330(b).................................................................................................7

19 U.S.C. § 1330(c).................................................................................................7

20 U.S.C. § 3412(a)(1)...........................................................................................20

29 U.S.C. § 153(d).................................................................................................16

29 U.S.C. § 552......................................................................................................20

29 U.S.C. § 1302(d)(1)...........................................................................................14

31 U.S.C. § 301(c).................................................................................................20

44 U.S.C. § 2103(c)...............................................................................................20

46 U.S.C. § 301......................................................................................................7

46 U.S.C. § 301(b)(2).............................................................................................7

47 U.S.C. § 154(a)..................................................................................................7

47 U.S.C. § 154(c)..................................................................................................7

49 U.S.C. § 1111....................................................................................................7

49 U.S.C. § 1111(c)...............................................................................................7

## TABLE OF AUTHORITIES
### (continued)

Page(s)

49 U.S.C. § 24302(a)(1)(A) ...........................................................................................14

Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-
     203, § 1100D, 124 Stat. 1376, 2111 (2010) ..........................................................13

**Other Authorities**

*Absent*, Merriam-Webster Online Dictionary, https://www.merriam-
     webster.com/dictionary/absent.......................................................................15, 16

*Designating an Acting Director of the Bureau of Consumer Financial Protection*,
     41 O.L.C. Op., slip op. (Nov. 25, 2017) ..........................................................17, 18

*Federal Reserve Board –Vacancy With the Office of the Chairman – Status of the
     Vice Chairman*,
     2 U.S. Op. O.L.C. 394 (1978) ...............................................................................18

The Federalist No. 39 (James Madison) (Lillian Goldman Law Library, 2008),
     http://avalon.law.yale.edu/18th_century/fed39.asp ...............................................4

The Federalist No. 70, at 476 (Alexander Hamilton) (J. Cooke ed. 1961).....................5

B. Garner, Dictionary of Modern Legal Usage 939 (2d ed. 1995) ...............................19

Julian Hattem, *NLRB at full strength as Obama appointees are sworn into office*,
     The Hill (Aug. 12, 2013), http://thehill.com/regulation/labor/316677-nlrb-full-
     of-senate-confirmed-members-for-first-time-in-decade- .......................................8

D. Mellinkoff, Mellinkoff's Dictionary of American Legal
     Usage 402–403 (1992)...........................................................................................19

Memorandum from Mary E. McLeod, General Counsel,
     to The Senior Leadership Team, CFPB (Nov. 25, 2017).......................................21

S. Rep. 105-250 (1998).................................................................................................16

Jennifer L. Selin, *What Makes an Agency Independent?* (Vanderbilt Univ.
     Working Paper 08-2013), https://www.vanderbilt.edu/
     csdi/research/CSDI_WP_08-2013.pdf...................................................................7

*Unavailable*, Merriam-Webster Online Dictionary, https://www.merriam-
     webster.com/dictionary/unavailability ..................................................................15

## INTEREST OF THE *AMICUS CURIAE*

The Chamber of Commerce of the United States of America is the world's largest business federation. It represents 300,000 direct members and indirectly represents the interests of more than 3 million companies and professional organizations of every size, in every industry sector, and from every region of the country. An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts. To that end, the Chamber regularly files *amicus curiae* briefs in cases that raise issues of concern to the nation's business community.

The Chamber's members include numerous consumer financial services providers—and other businesses—subject to the regulatory and enforcement authority of the Consumer Financial Protection Bureau. The plaintiff's claim threatens uncertainty about the status of the acting Director and the legality of actions taken by him. That is to the detriment of businesses (and consumers) who need certainty regarding the actions of the Bureau and its direction. The Chamber accordingly has a strong interest in the resolution of this lawsuit.[1]

## SUMMARY OF ARGUMENT

Plaintiff contends that she is the rightful acting Director of the Consumer Financial Protection Bureau—and that the President's invocation of his authority under the Federal Vacancies Reform Act ("FVRA") to designate Mick Mulvaney as acting Director is unlawful. Plaintiff is wrong as a matter of statutory construction and her arguments, if accepted, would raise grave questions about the constitutionality of the provision of the Dodd-Frank Act on which she relies.

Our Constitution is founded on the principle that government power is subject to control by the people. That goal is accomplished by ensuring that the President—who is elected by and accountable to the people—retains control over the executive branch, principally through his powers

---

[1] No counsel for a party authored this brief in whole or in part, and no person other than the amicus curiae, its members, or its counsel contributed money that was intended to fund the preparation or submission of this brief. *See* Local Rule LCvR 7(o)(5); Fed. R. App. P. 29(a)(4)(E).

to appoint and remove executive officers. An interpretation of the Dodd-Frank Act that would prevent the President from designating the acting Director of the Bureau after a Director's resignation would accordingly raise serious constitutional concerns.

The governing statutes do not permit that result. Congress in 1998 enacted the FVRA to establish the generally-applicable rules for appointment of officials on an "acting" basis. The FVRA's plain terms authorize the President to designate a Senate-confirmed officer to serve as acting Director.

Plaintiff's argument that the FVRA is inapplicable because of the acting Director's *ex officio* membership on the board of the Federal Deposit Insurance Corporation would, if accepted, prevent the President from using his FVRA authority to designate acting Secretaries of Commerce, Labor, Treasury, and Transportation, among other offices—because each sits on the board of a government corporation. Such a significant contraction in the FVRA's scope confirms the flaws in Plaintiff's argument.

Plaintiff's claim that the Dodd-Frank Act displaces the President's authority under the FVRA is similarly flawed. The Dodd-Frank Act provision relied upon by Plaintiff empowers the Deputy Director to exercise the Director's authority on an "acting" basis only when the Director position is occupied, but the incumbent is not available. It does not apply in situations such as that presented here, where the Director position is vacant. The provision uses the words "absent" and "unavailable," but not the terms "vacant," "dies," or "resigns"—which are the terms that Congress consistently employs when it wishes to designate an official to serve in an "acting" capacity for a position that has become vacant.

Moreover, Plaintiff's textual argument that the Dodd-Frank Act revokes the President's FVRA authority hangs entirely on the word "shall," but the Supreme Court has recognized that in context "shall" can mean "may"—just so here. And the statute applicable to another office created after enactment of the FVRA—the director of the Federal Housing Finance Agency—shows that

Congress uses much more specific language when it intends to limit the President's discretion: that statute states that "[i]n the event of the death, resignation, sickness, or absence of the Director, *the President shall designate* either the Deputy Director of the Division of Enterprise Regulation, the Deputy Director of the Division of Federal Home Loan Bank Regulation, or the Deputy Director for Housing Mission and Goals, to serve as acting Director." 12 U.S.C. § 4512(f) (emphasis added). The absence from the Dodd-Frank provision of similar language limiting the President's discretion—especially given the fact that Section 4512(f) was enacted just two years before Dodd-Frank—is fatal to Plaintiff's argument.

Even if the statute were not clear on this point, the doctrine of constitutional avoidance would mandate that it be read in the government's favor. Allowing the Director to name his own successor and block the President for months or even years from naming anyone to the Bureau's directorship would make the Bureau even more insulated from public accountability than it already is, posing grave constitutional concerns under Article II.

Finally, Plaintiff's lawsuit cannot succeed even if her reading of the Dodd-Frank Act were correct, because her appointment as Deputy Director of the Bureau was itself unlawful. As a panel of the D.C. Circuit has already recognized, the current structure of the Bureau—with sweeping rulemaking, adjudicatory, and enforcement powers concentrated in a single individual removable only for cause—is unconstitutional. Director Cordray's appointment of Plaintiff was therefore ultra vires and invalid. And at a minimum, ruling in favor of Plaintiff would require the Court to resolve a serious constitutional question about the validity of the Dodd-Frank Act provision authorizing the Director to appoint a Deputy Director. Congress may vest the power to appoint such inferior officers in the "Heads of Departments" under Article II, but the Bureau, which is entirely contained within another agency (the Federal Reserve), is not a "Department" for Article II purposes, and the Director accordingly may not appoint inferior officers such as the Deputy Director.

## ARGUMENT

I. **Plaintiff's Interpretation of the Dodd-Frank Act Would Impose an Unprecedented Limitation on the President's Constitutional Authority to Appoint and Remove the Head of an Agency Exercising Article II Authority.**

This case implicates one of the most fundamental aspects of Presidential power: the power to appoint and to remove officers exercising Article II authority. The Constitution assigns that power to the President in order to promote accountability to the public. Diluting the President's appointment and removal powers would undermine that critical objective. Plaintiff's interpretation of the relevant statutory provisions, which would allow the Bureau's Director to name his own replacement and prevent the President from placing a person selected by him in charge of the Bureau—potentially for years—must therefore be rejected.

A. **The President's appointment and removal powers are central elements of his Article II executive authority.**

"Our Constitution was adopted to enable the people to govern themselves, through their elected leaders." *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 499 (2010). It embodies "that honorable determination which animates every votary of freedom, to rest all our political experiments on the capacity of mankind for self-government." The Federalist No. 39 (James Madison) (Lillian Goldman Law Library, 2008), http://avalon.law.yale.edu/18th_century/fed39.asp; *see also, e.g.*, *Providence Bank v. Billings*, 29 U.S. (4 Pet.) 514, 548 (1830) ("The power of self government is a power absolute and inherent in the people.").

In accordance with that objective, all "legislative Powers" of the federal government are "vested in a Congress of the United States," consisting of the people's elected Representatives and Senators. U.S. Const. Art. I, § 1. And "[t]he executive Power" is "vested in a President of the United States" (Art. II, § 1), who is "chosen by the entire Nation" (*Free Enter. Fund*, 561 U.S. at 499). Conferring legislative and executive authority directly, and solely, on the representatives chosen by the people is essential for accountability to the people—and therefore to the self-government on which the constitutional structure rests. That is because "[t]he diffusion of power carries with it a

diffusion of accountability," which "subverts . . . the public's ability to pass judgment on" the efforts of those whom they elect. *Id.* at 497-98; *see also id.* at 498 ("[w]ithout a clear and effective chain of command, the public cannot 'determine on whom the blame or the punishment of a pernicious measure, or series of pernicious measures ought really to fall'" (quoting The Federalist No. 70, at 476 (Alexander Hamilton) (J. Cooke ed. 1961)).

The President necessarily must act with "the assistance of subordinates." *Myers v. United States*, 272 U.S. 52, 117 (1926). But in order to preserve the accountability of the executive branch, the President must be able to supervise and control his subordinates' actions: "[t]he buck stops with the President" under Article II. *Free Enter. Fund*, 561 U.S. at 493; *see also Dep't of Transp. v. Ass'n of Am. Railroads*, 135 S. Ct. 1225, 1238 (2015) (explaining that Article II "ensures that those who exercise the power of the United States are accountable to the President, who himself is accountable to the people").

To effectively control his subordinates, the President must also be able to remove them: "Without such power, the President could not be held fully accountable for discharging his own responsibilities; the buck would stop somewhere else." *Free Enter. Fund*, 561 U.S. at 514; *see also, e.g.*, *Bowsher v. Synar*, 478 U.S. 714, 726 (1986) ("Once an officer is appointed, it is only the authority that can remove him, and not the authority that appointed him, that he must fear and, in the performance of his functions, obey.") (internal quotation marks omitted); *Myers*, 272 U.S. at 119 ("[T]hose in charge of and responsible for administering functions of government, who select their executive subordinates, need in meeting their responsibility to have the power to remove those whom they appoint."). In short, the President's powers to both appoint and remove officers exercising Article II authority are essential to ensuring that the executive power is fully answerable to the people.

**B.    Permitting only the CFPB Director to designate an Acting Director infringes impermissibly upon the President's constitutional authority and significantly diminishes accountability to the people.**

Plaintiff's submission is that the President's constitutional appointment authority is effectively eliminated with respect to the acting Director of the CFPB: the President may not designate the acting Director (only the Director may do so) and the President may remove the acting Director only for cause. (The latter point is not explicit in Plaintiff's argument, but if the President could remove the Deputy Director at will, then the question of who appoints the acting Director would have little importance.) Such a result would raise grave constitutional questions because the Director's—not the President's—preference would govern unless the acting Director committed "inefficiency, neglect of duty, or malfeasance in office."

The Dodd-Frank Act already insulates the Director from presidential accountability to an unprecedented degree, by: (1) making the Director the sole head of the Bureau (*see* 12 U.S.C. § 5491(b)(1)), rather than employing a multi-member commission or board to govern the agency; (2) giving the Director a five-year term that will often span Presidential administrations (*id.* § 5491(c)(1)); (3) making the Director removable only for cause (*id.* § 5491(c)(3)); and (4) exempting the Bureau's expenditures from the appropriations process generally applicable to government agencies, which requires the President's assent to a bill passed by Congress (or a congressional override of his veto) (*id.* § 5497). The first three of these features led a D.C. Circuit panel to conclude that the Bureau's "unprecedented" structure was unconstitutional under Article II and to remedy that problem by invalidating the provision of the statute making the Director removable only for cause. *See PHH Corp. v. Consumer Fin. Protection Bureau*, 839 F.3d 1, 21 (D.C. Cir. 2016), *reh'g en banc granted and opinion vacated*, Feb. 16, 2017.

Plaintiff contends that, on top of all this, the Dodd-Frank Act grants to the Director the unfettered authority to designate his own successor as acting Director before leaving the agency *and* makes that successor immune from removal or displacement by the President until the President

nominates and the Senate confirms a different person (unless the acting Director could be removed for cause, which Dodd-Frank defines as "inefficiency, neglect of duty, or malfeasance in office" (12 U.S.C. § 5491(c)(3)). Were that the case, the President's already limited authority to influence the Bureau and hold it accountable—and therefore the Bureau's accountability to the people who elected the President—would be attenuated past the breaking point.

The nomination and confirmation process for a new Director could, even in the best of circumstances, take months or years after an incumbent's resignation. And in circumstances in which the Senate is controlled by a different political party from the President's, the Senate could refuse outright to confirm any new Director, allowing the Deputy Director to serve as acting Director for the President's entire term, and blocking the President's choice from ever taking office.

Other independent agencies' structures do not permit that result. To begin with, those agencies are virtually all multi-member, bi-partisan commissions for which the President is empowered to designate the member who will serve as chair. *See, e.g.*, 15 U.S.C. § 41 (Federal Trade Commission); 15 U.S.C. § 78d (Securities and Exchange Commission); 19 U.S.C. § 1330(a), (c) (U.S. International Trade Commission); 46 U.S.C. § 301 (Federal Maritime Commission); 47 U.S.C. § 154(a) (Federal Communications Commission); 49 U.S.C. § 1111 (National Transportation Safety Board). And the chair exercises considerable authority in setting these agencies' agendas. *See, e.g.*, Jennifer L. Selin, *What Makes an Agency Independent?* at 6 (Vanderbilt Univ. Working Paper 08-2013), https://www.vanderbilt.edu/csdi/research/CSDI_WP_08-2013.pdf.

Even more important, no one has authority to designate an "acting commissioner" when a commissioner position is vacant. Commissioners serve for a term of years. Once that period expires—or if a commissioner leaves before its expiration—the position simply cannot be filled on an acting basis. *See, e.g.,* 15 U.S.C. § 41; 15 U.S.C. § 78d(a); 19 U.S.C. § 1330(b); 46 U.S.C. § 301(b)(2); 47 U.S.C. § 154(c); 49 U.S.C. § 1111(c); *see also* 5 U.S.C. § 3349c (providing that these positions may not be filled on an acting basis under the authority conferred by the FVRA).

That reality has led to situations in which regulatory agencies lack a quorum, and are unable to function, because of the Senate's refusal to confirm a President's nominees. Those impasses have been resolved through the political process—with the Senate and President maintaining their constitutional prerogatives but reaching a compromise. *See, e.g.*, Julian Hattem, *NLRB at full strength as Obama appointees are sworn into office*, The Hill (Aug. 12, 2013), http://thehill.com/regulation/labor/316677-nlrb-full-of-senate-confirmed-members-for-first-time-in-decade- (explaining that Republicans agreed not to oppose two NLRB members' confirmation in exchange for the withdrawal of two other nominations).

Plaintiff's approach would completely eviscerate the President's appointment authority in the event of such a stalemate—with the acting Director appointed by a Director, and not the President, permitted to stay in place for as long as the Senate refuses to confirm the President's nominee.  And the President would have no leverage to encourage Senate action because, in contrast to the independent commission situation, the Bureau would continue to operate in accordance with policy preferences more acceptable to the Senate than those of the President.[2]

Plaintiff touts the Bureau's and the Director's insulation from political control as a virtue of the agency (*e.g.*, PI Mem. 1, 4, 19-20) and "essential to its mission" (*id.* at 19). But similar arguments were made in favor of the two layers of removal protection for members of the Public Company Accounting Oversight Board (PCAOB) at issue in *Free Enterprise Fund*, and the Supreme Court rejected them.

The dissenters in *Free Exercise Fund* defended the PCAOB's structure on the ground that the Board's functions called for "agency independence" and "technical expertise." 561 U.S. at 531

---

[2] The Dodd-Frank Act contains a provision permitting a CFPB Director to remain in office past the expiration of his or her term "until a successor has been appointed and qualified." 12 U.S.C. § 5491(c)(2). But that holdover provision gives no basis for limiting the President's appointment power when the office becomes vacant. And that provision itself raises serious constitutional concerns because it creates the possibility that a Director could remain in office through multiple presidential terms, and continue to exercise his broad statutory authority in a manner opposed by the President, as long as the Senate refused to confirm a successor.

(Breyer, J., dissenting). But the Supreme Court majority rejected this rationale, because it left no "role for oversight by an elected President"—and thereby undermined the Constitution's "require[ment] that a President chosen by the entire Nation oversee the execution of the laws." *Id.* at 499 (majority opinion). The Court explained that "the Framers recognized that, in the long term, structural protections against abuse of power were critical to preserving liberty," and that "[c]alls to abandon those protections in light of [an] era's perceived necessity" must not be heeded, whatever that "necessity" might be. *Id.* at 501 (brackets and internal quotation marks omitted).

So too here. Plaintiff's concern about insulating the Bureau from "regulatory capture" (PI Mem. 3)—a concern that would apply to *any* executive branch agency—provides no basis for rejecting the well-established principle that the President must retain some control over agency heads in order to ensure the executive branch's accountability to the people.

Moreover, the Bureau in fact is not insulated from the political process. Director Cordray was appointed by President Obama, presumably because his policy views accorded with President Obama's. And Director Cordray designated Ms. English as Deputy Director because her policy views are consistent with his. The arguments for "independence" are thus in reality arguments that the Bureau should continue to be administered in accordance with Director Cordray's policy views, rather than in accordance with the policy views of the new President who took office as the result of the November 2016 election. That anti-democratic notion is squarely at odds with the Framers' vision of accountability to the people.

The Dodd-Frank Act must therefore be construed, if possible, to avoid an interpretation that would deny the President any ability to designate an acting head of the Bureau after the Director leaves office. *See, e.g.*, *Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 545 (2001) ("It is well understood that when there are two reasonable constructions for a statute, yet one raises a constitutional question, the Court should prefer the interpretation which avoids the constitutional issue.").

9

## II.     The President May Designate An Acting Director Under 5 U.S.C. § 3345(a)(2).

The governing statutes plainly authorize the President to appoint a Senate-confirmed individual as acting Director of the Bureau when a Director resigns or the office otherwise becomes vacant. But even if the Court were to conclude that the statutory text is not clear, the Court should interpret the relevant laws to authorize the President's action to avoid the serious constitutional questions that would result from construing them to eliminate that Presidential authority.

### A.     The FVRA authorizes the President to appoint a Senate-confirmed individual as Acting Director.

The Supreme Court explained earlier this year that "the responsibilities of an office requiring Presidential appointment and Senate confirmation—known as a 'PAS' office—may go unperformed if a vacancy arises and the President and Senate cannot promptly agree on a replacement." *NLRB v. SW Gen., Inc.*, 137 S. Ct. 929, 934 (2017). "Congress has long accounted for this reality," the Court continued, "by authorizing the President to direct certain officials to temporarily carry out the duties of a vacant PAS office in an acting capacity." *Id.*

The Supreme Court explained in *SW General* that there had been conflict between the President and Congress regarding the scope of the President's authority to appoint individuals on an acting basis. By 1998, a large percentage of offices were filled on an acting basis—long after the time period permitted under then-existing law. "Perceiving a threat to the Senate's advice and consent power," Congress enacted the FVRA. 137 S. Ct. at 936.

That statute provides three basic options for filling on an "acting" basis a position requiring Senate confirmation after the individual occupying the office "dies, resigns, or is otherwise unable to perform the functions and duties of the office" (5 U.S.C. § 3345(a)):

- "The general rule is that the first assistant to a vacant office shall become the acting officer" (*SW General*, 137 S. Ct. at 934-35)—in the words of the statute, "the first assistant to the office of such officer shall perform the functions and duties of the office temporarily in an acting capacity" (5 U.S.C. § 3345(a)(1));

10

- "The President may override that default rule by directing" another Senate-confirmed individual to fill the position in an acting capacity (*SW General*, 137 S. Ct. at 935)— "the President (and only the President) may direct a person who serves in an office for which appointment is required to be made by the President, by and with the advice and consent of the Senate, to perform the functions and duties of the vacant office temporarily in an acting capacity" (5 U.S.C. § 3345(a)(2)); or

- The President may override the default rule "by directing . . . a senior employee within the relevant agency to become the acting officer" (*SW General*, 137 S. Ct. at 935)— "the President (and only the President) may direct an officer or employee of such Executive agency to perform the functions and duties of the vacant office temporarily in an acting capacity" if the employee satisfies the criteria set forth in the statute (5 U.S.C. § 3345(a)(3)).

The FVRA makes clear that it was enacted to provide a comprehensive solution to the question of when and how it would be permissible to appoint individuals on an acting basis. The statute states that its provisions are "the exclusive means for temporarily authorizing an acting official to perform the functions and duties of" an office requiring Senate confirmation unless another statute "expressly" authorizes the President or another officer to designate someone to perform the duties on an acting basis or "expressly" designates an officer or employee to do so. 5 U.S.C. § 3347(a).[3]

Congress exempted some offices from the FVRA, stating in pertinent part that the law did not apply to:

> (1) any member who is appointed by the President, by and with the advice and consent of the Senate to any board, commission, or similar entity that—
>
> (A) is composed of multiple members; and

---

[3] We explain below (at 17-21) that the Dodd-Frank Act provision relied on by Plaintiff does not satisfy this test.

(B) governs an independent establishment or Government corporation;

(2) any commissioner of the Federal Energy Regulatory Commission; [and]

(3) any member of the Surface Transportation Board.

5 U.S.C. § 3349c.

The text of the FVRA leaves no doubt that—putting to one side the effect of Section 1011(b)(5) of the Dodd-Frank Act, discussed below—the FVRA authorizes the President to designate another Senate-confirmed individual to serve as acting Director of the CFPB. The general language of Section 3345(a)(2) encompasses the Director position: the statute applies to appointments to exercise on an acting basis the "functions and duties of any office of an Executive agency" for which Senate confirmation is required—the CFPB clearly qualifies as an "Executive agency" (*see* 5 U.S.C. § 105[4]); the CFPB is not a commission; and the FVRA's exclusions do not mention the CFPB.

Plaintiff and her *amici* argue that the FVRA does not apply, but those contentions are meritless.

*First*, they point to the exemption for members of multi-member boards overseeing independent agencies or government corporations, asserting that the exemption should apply to the Bureau, because Congress intended the Bureau to be independent. PI Mem. 16-17; Consumer Finance Regulation Scholars Amicus Br. 15-17. But the exemption is limited by the statutory text, and the Bureau is not included.

Moreover, this is not an oversight. The portion of the Dodd-Frank Act establishing the CFPB contains dozens of conforming amendments, including one adding the Bureau to the definition of "independent regulatory agency" in the Paperwork Reduction Act. *See* Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, § 1100D, 124 Stat. 1376,

---

[4] The CFPB is an "independent establishment" (*see* 5 U.S.C. § 104) and independent establishments qualify as executive agencies.

2111 (2010); *see generally id*. §§ 1081-1100C.   There is no basis for the contention that the failure

to add the Bureau to FVRA's list of excluded agencies was as an oversight. Even if it were, a court

has no power to disregard the statutory text.

Adding the Bureau to the list, moreover, would produce consequences very different from

those for the multi-member boards and commissions included in the exemption.   As discussed

above, positions on boards and commissions remain vacant when an appointee dies, resigns, or

reaches the end of his or her term. These organizations therefore could not be subject to the

continuing control of a chain of individuals not appointed by the President.   But that could be the

consequence of the approach advocated by Plaintiffs—and would be the consequence here. *See*

pages 6-10, *supra*.

*Second*, Plaintiff observes that the Director is an *ex officio* member of the board of directors

of the FDIC (PI Mem. 16 (citing 12 U.S.C. § 1812(a)(1)(B)), and contends that the Director position

falls within the FVRA's exemption of a "member" appointed by the President to "any board,

commission, or similar entity that—(A) is composed of multiple members; and (B) governs an

independent establishment or Government corporation." 5 U.S.C. § 3349c(1).

But the statutory exception by its terms applies only to an individual "who is appointed by

the President . . . to any board" (5 U.S.C. § 3349c(1)) governing an independent agency or

government corporation,[5] not to an individual who is a member of an entity's board *ex officio*, by

virtue of being appointed by the President and confirmed by the Senate to some *other* office. To hold

otherwise would be to allow the statutory tail—*i.e.*, the Director's incidental power to sit on the

FDIC board—to wag the dog in a manner inconsistent with the statutory text.

The consequences of accepting Plaintiff's argument would be dramatic.   The Federal Crop

Insurance Corporation's board of directors, for example, includes two of the Department of

---

[5] For example, the three members of the FDIC's board who are directly appointed by the President with Senate confirmation. *See* 12 U.S.C. § 1812(a)(1)(C).

Agriculture's Under-Secretaries as well as the Department's Chief Economist. 7 U.S.C. § 1505(a). Under Plaintiff's construction of the statute, those offices therefore could not be filled pursuant to the FVRA. The same would be true of the Secretary of Transportation, who serves on the board of Amtrak (49 U.S.C. § 24302(a)(1)(A)); the Secretaries of Labor, Treasury, and Commerce, who serve on the board of the Pension Benefit Guarantee Corporation (29 U.S.C. § 1302(d)(1)); and the Comptroller of the Currency, who serves on the FDIC board (12 U.S.C. § 1812(a)(1)(A))—among many others. These consequences confirm that Plaintiff's effort to broaden the exemption beyond its express terms—individuals appointed directly to such boards, and not individuals who serve on them *ex officio*—must be rejected.

*Third*, Plaintiff contends that the President's invocation of his FVRA authority to designate a Senate-confirmed individual whom the President can remove at will is precluded by the Bureau's status as an "independent bureau." PI Mem. 19-22 (citing 12 U.S.C. § 5491(a)). But nothing in the FVRA precludes the statute's application to vacancies in independent agencies, and nothing limits the Senate-confirmed individuals whom the President may designate to serve in an "acting" capacity.

Moreover, the President's designation of Mr. Mulvaney as acting Director does not undermine the "independence" of the Bureau. Regardless of which official the President designates—Mr. Mulvaney, or a Federal Reserve Governor, or an FTC Commissioner, or a Treasury Department official—the President retains the power to revoke that designation and choose another acting Director. The President therefore can use his FVRA authority to influence the policy direction of the Bureau regardless of whom he initially selects as acting Director.  And that is entirely appropriate given the Constitution's design. Plaintiff's atextual reading of the statute—which would increase the Bureau's already-unusual level of independence and raise serious constitutional concerns—should therefore be rejected.

**B.      The Dodd-Frank Act does not eliminate the authority conferred on the President by the FVRA.**

Plaintiff's principal argument is that the Dodd-Frank Act withdraws any authority granted by the FVRA with respect to appointing an acting Director. She relies on Section 1011(b)(5) of the Act, 12 U.S.C. § 5491(b)(5), which states:

> (5) DEPUTY DIRECTOR.—There is established the position of Deputy Director, who shall—(A) be appointed by the Director; and (B) serve as acting Director in the absence or unavailability of the Director.

That contention is wrong for two reasons.

**1.      Section 1011(b)(5) does not apply when the Director position is vacant.**

The FVRA provides that it is the exclusive means of designating officials to serve on an acting basis unless another statute "expressly" designates an officer or employee to do so. 5 U.S.C. § 3347(a). Section 1011(b)(5)(B) does not qualify, because by its terms it applies only when there is an incumbent Director who is absent or unavailable. It does not apply when the Director position is vacant due to resignation or death of the incumbent. On the statute's face, Director Cordray could not be absent or unavailable when he resigned.

Plaintiff recognizes that "absence or unavailability" (PI Mem. 7) should be given their ordinary meaning, and the ordinary meaning of "absent" or "unavailable" is that an individual is not present or is incapable of performing his or her duties because of illness, incapacity, or other impediment. *See, e.g.*, *Absent*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/absent (defining "absent" as "not present at a usual or expected place"); *Unavailable*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/unavailability (defining "unavailable" as "not possible to get or use" or "unable or unwilling to do something").

The two terms manifestly would *not* be applied, in ordinary usage, to describe a circumstance in which an office is vacant. Director Cordray was not "absent" or "unavailable" after he resigned. There was no Director—and therefore no one who could be either "absent" or "unavailable."

Plaintiff suggests that "absent" can mean "not existing" (PI Mem. 7), but as the cited dictionary demonstrates, the word "absent" is only used in that sense when referring to nouns other than persons. *See id.* (referring to "a situation where power is absent" and "a gene that occurs in mammals but is absent in birds").

Other statutory provisions confirm this conclusion by including terms that explicitly refer to a vacancy in the office—terms other than "absent" or "unavailable"—to indicate that they apply when there is no incumbent occupying the office.  The FVRA itself is applicable when the incumbent officer "*dies, resigns*, or is otherwise unable to perform the functions and duties of the office."  5 U.S.C. § 3345(a) (emphasis added); *see also* 12 U.S.C. § 4512(f) ("[i]n the event of the death, resignation, sickness, or absence of the Director" of the Federal Housing Finance Agency); 15 U.S.C. § 633(b)(1) ("[d]uring the absence or disability of the Administrator or *in the event of a vacancy* in the office of the Administrator" of the Small Business Administration) (emphasis added); 29 U.S.C. § 153(d) ("*[i]n case of a vacancy* in the office of the General Counsel" of the NLRB) (emphasis added). Indeed, the legislative history of the FVRA includes a list of dozens of such statutes, all of which refer to either vacancy or resignation. *See* S. Rep. 105-250, at 16-17 (1998).

The absence from Section 1011(b)(5)(B) of the words used in these provisions to encompass the lack of an incumbent in the position—"dies," "resigns," "vacancy"—demonstrates that the Dodd-Frank provision only authorizes the Deputy Director to act if the incumbent occupying the Director position is temporarily unavailable. Congress employs particular terms when it wishes to encompass the situation in which there is no incumbent in the position, and Congress failed to include those terms here.

Indeed, the Dodd-Frank Act itself follows this approach, employing the term "vacancy" in addition to the terms "absence" and "disability" in provisions addressing the situation in which the office of Director is not occupied. *See* 12 U.S.C. § 1812(d)(2) ("[i]n the event of a vacancy in . . . the office of Director of the Consumer Financial Protection Bureau and pending the appointment of a

successor, or during the absence or disability of . . . the Director of the Consumer Financial Protection Bureau, . . . the acting Director of the Consumer Financial Protection Bureau, . . . shall be a member of the Board of Directors in the place of the . . . Director."); *id.* § 5321(c)(3) (same).

When Congress uses different words in the same statute, courts generally accord them different meanings. *See, e.g.*, *Abbott v. Abbott*, 560 U.S. 1, 33 (2010) ("In interpreting statutory text, we ordinarily presume that the use of different words is purposeful and evinces an intention to convey a different meaning."); *Russello v. United States*, 464 U.S. 16, 23 (1983). Here, Congress's use of "vacancy" in provisions of the same statute relating to the very same office makes clear that Section 1011(b)(5)(B) —in which that term is absent—does not apply when the office of Director is not occupied.

Moreover, the FVRA requires that another statute "expressly" designate the occupant of an office to serve in an "acting" capacity. Given the absence of any indication in the statutory text that the Dodd-Frank provision applies when the office of Director is vacant, the only way it could apply in that situation would be to draw an inference from the term "unavailable." But an inference falls short of satisfying the FVRA's requirement of "express[]" authority.

The Office of Legal Counsel came to a different conclusion, opining that Section 1011(b)(5)(B) "is best read to refer both to a temporary unavailability . . . and to the Director's being unavailable because of a resignation or other vacancy in office." *Designating an Acting Director of the Bureau of Consumer Financial Protection*, 41 O.L.C. Op., slip op. at 3 (Nov. 25, 2017).

Importantly, the Office did not consider the provisions in the Dodd-Frank Act expressly employing the term "vacancy." It rested its view on provisions in other statutory schemes referring to officials who "have died, resigned, or otherwise become unavailable," concluding that such provisions equate "unavailab[ility]" with death or resignation—and that the term "unavailable"

17

therefore always encompasses vacant positions. 41 O.L.C. Op., slip op. at 4 (emphasis and internal quotation marks omitted).

But context matters, and the Supreme Court has long applied the principle of interpretation that "a word is known by the company it keeps" in order to "avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving 'unintended breath to the Acts of Congress.'" *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995) (quoting *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307 (1961)). Thus, where a statute includes the phrase "died, resigned, or otherwise become unavailable," it is proper to interpret the word "unavailable" to encompass any situation in which the office is vacant.

Here, however, the statute contains the phrase "in the absence or unavailability of the Director." Because the phrase in the Dodd-Frank Act does *not* contain "died," "resigned," "vacancy," or any other term connoting an unoccupied office—but rather only the term "absence," which is most appropriately read to mean that there is an incumbent who is "not present"—there is no basis for giving "unavailable" a broader meaning. *See Federal Reserve Board – Vacancy With the Office of the Chairman – Status of the Vice Chairman*, 2 U.S. Op. O.L.C. 394, 395 (1978) (opining that "[t]he term 'absence' normally connotes a failure to be present that is temporary in contradistinction to the term 'vacancy' caused, for example, by death of the incumbent or his resignation").

### 2. *Dodd-Frank does not displace the President's FVRA authority.*

Even if Section 1011(b)(5)(B) could be interpreted to apply when the Director position is vacant, there is no basis for construing it to displace the authority separately conferred by the FVRA. The President still retains the option of appointing an alternate official under the FVRA.

Plaintiff suggests that Congress was required to expressly provide that the FVRA applies to the Director if it wished to give the President this option (PI Mem. 11), but that is incorrect. The FVRA provides the general rule for designating officers to serve on an "acting" basis in the event of

a vacancy. By its terms, the FVRA is the "*exclusive* means for temporarily authorizing an acting official to perform the functions and duties of any office of an Executive agency" requiring Presidential appointment and Senate confirmation, except in certain circumstances. 5 U.S.C. § 3347(a) (emphasis added). If the Court were to conclude, contrary to our submission, that Dodd-Frank "designates an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity" (*id.* § 3347(a)(1)(B)), then that simply means that the FVRA is not the "exclusive" means of designating an acting replacement Director, not that it is unavailable. *Hooks v. Kitsap Tenant Support Servs.*, 816 F.3d 550, 555-56 (9th Cir. 2016).

Plaintiff relies (PI Mem. 7) entirely on Section 1011(b)(5)(B)'s use of "shall"—" [t]here is established the position of Deputy Director, who *shall* . . . (B) serve as acting Director in the absence or unavailability of the Director." 12 U.S.C. § 5491(b)(5) (emphasis added). She argues that "shall" by itself makes the Dodd-Frank provision the sole method for designating an acting Director. But that one word cannot bear the weight that Plaintiff places on it.

To begin with, the Supreme Court has explained that "[t]hough 'shall' generally means 'must,' legal writers sometimes use, or misuse, 'shall' to mean 'should,' 'will,' or even 'may.'" *Gutierrez de Martinez* v. *Lamagno*, 515 U.S. 417, 432-33 & n.9 (1995); *see also id.*, quoting D. Mellinkoff, Mellinkoff's Dictionary of American Legal Usage 402–403 (1992) ("'shall' and 'may' are 'frequently treated as synonyms' and their meaning depends on context"); B. Garner, Dictionary of Modern Legal Usage 939 (2d ed. 1995) ("'[C]ourts in virtually every English-speaking jurisdiction have held—by necessity—that *shall* means *may* in some contexts, and vice versa.'").

In *Lamagno*, the Supreme Court declined to interpret "shall" to mean "must" because the resulting preclusion of judicial review of an administrative determination would "run[] up against a mainstay of our system of government"—the principle that no person should be a judge in her own case. 515 U.S. at 428. Here, Plaintiff's interpretation of "shall" would lead to a similarly

unacceptable result, the diminution of the President's constitutional authority and of the federal government's accountability to the people.

The insufficiency of the Dodd-Frank provision's use of "shall" is confirmed by Congress's use of much more explicit language when it wishes to eliminate the President's discretion. In creating the office of Director of the Federal Housing Finance Agency—in 2008, after enactment of the FVRA—Congress provided that "[i]n the event of the death, resignation, sickness, or absence of the Director, *the President shall designate* either the Deputy Director of the Division of Enterprise Regulation, the Deputy Director of the Division of Federal Home Loan Bank Regulation, or the Deputy Director for Housing Mission and Goals, to serve as acting Director." 12 U.S.C. § 4512(f) (emphasis added). The absence from the Dodd-Frank provision of that language expressly limiting the President's discretion provides conclusive evidence that "shall" standing alone does not displace the President's FVRA authority—particularly because Section 4512(f) was enacted by Congress just two years earlier, and with respect to a financial services regulator, like the CFPB.

If Congress had intended to limit the President's discretion, it would have used the same language that it enacted just two years earlier. The absence of that phrase is fatal to Plaintiff's argument.[6]

That conclusion is bolstered by the inclusion within the Dodd-Frank Act of a provision stating that "[e]xcept as otherwise provided expressly by law, all Federal laws dealing with public or

---

[6] Plaintiff points (PI Mem. 10-11) to three statutes expressly preserving the President's discretion to designate an official to serve in an acting capacity other than the officeholder specifically identified in the statute. But two of these statutes were enacted prior to the enactment of the FVRA in 1998. And in any event, the fact that a scant few statutes restate the FVRA's grant of discretion—*i.e.*, that the statutorily designated person serves as acting official unless and until the President names a different replacement—is unsurprising and does not indicate that such references are *necessary* to preserve the President's power to appoint an acting official under the FVRA.

Importantly, a decision that "shall" alone is sufficient to displace the FVRA would broadly reduce the President's discretionary authority, because that word appears in a large number of statutes. *See, e.g.*, 15 U.S.C. § 633(b)(1); 20 U.S.C. § 3412(a)(1); 29 U.S.C. § 552; 31 U.S.C. § 301(c); 44 U.S.C. § 2103(c).

Federal . . . officers [or] employees . . . shall apply to the exercise of the powers of the Bureau." 12 U.S.C. § 5491(a). Plaintiff argues (PI Mem. 12-13) that "shall" fulfills this requirement of an express exception. But "shall" standing alone does not expressly displace these other laws, including the FVRA.[7]

### C.  The constitutional concerns Plaintiff cites do not support her reading of Dodd-Frank.

Plaintiff argues that Defendants' reading of the statute is constitutionally problematic because it would "aggrandiz[e] executive power at the direct expense" of the Senate's power to advise and consent on nominations. PI Mem. 18. But nothing could be further from the truth.

The FVRA—which Congress (and thus the Senate) itself enacted—does not permit permanent end runs around the Senate confirmation process. The statute includes safeguards specifically designed to prevent the President from evading the Senate confirmation process: an acting officer designated under the FVRA may serve only for a statutorily limited period of time (210 days from the date the vacancy occurred or from the date of a nomination for the office, *see* 5 U.S.C. § 3346(a)), and the individual designated as the acting official may not be the President's

---

[7] Plaintiff argues that the legislative history of the Dodd-Frank Act shows that the Dodd-Frank Act sets out the exclusive means for designating an acting Director because the version passed by the House expressly referred to the FVRA and the final legislation did not. PI Mem. 11-12. The legislative history is beside the point here, because the text of the relevant statutes squarely resolves the question presented. *See, e.g.*, *Ratzlaf v. United States*, 510 U.S. 135, 147–48 (1994) ("[W]e do not resort to legislative history to cloud a statutory text that is clear."). And in any event, the drafting history is equally consistent with the conclusion that Congress intended the FVRA to apply but wanted to make clear that the Deputy Director could assume the duties of acting Director if the incumbent was incapacitated or that the Deputy would serve as acting Director (under the FVRA provision relating to "first assistants") unless the President made a different choice under the FVRA. That is the conclusion reached by the Bureau's General Counsel in her Memorandum upholding the President's authority to appoint Mr. Mulvaney. *See* Memorandum from Mary E. McLeod, General Counsel, to The Senior Leadership Team, CFPB 3 (Nov. 25, 2017) ("to the extent this legislative history is . . . relevant in interpreting Section 5491(b)(5), one could just as easily argue it shows that Congress was aware that the FVRA generally applies, and chose not to preempt it by either expressly exempting the succession from the FVRA, or by expressly providing for the Deputy Director to serve in the event of a 'vacancy' or 'resignation'"), https://assets.documentcloud.org/documents/4310651/McLeod-Memo-CFPB.pdf.

nominee to fill the office permanently unless that individual served as first assistant to the office for more than 90 days out of the previous year (*id.* § 3345(b)(1)). The President's invocation of the FVRA will therefore have no effect on his obligation to nominate a permanent Director—or on the Senate's prerogative to confirm or reject the nomination.

The position that raises serious constitutional concerns is not Defendants', but Plaintiff's. As noted above, accepting Plaintiff's reading of the statute would mean that a Director could hand-pick a successor and that that individual could then (if the Senate refused to confirm a replacement) serve indefinitely, denying the President any opportunity to make an appointment to the post. The Dodd-Frank Act should not be construed to permit that highly undemocratic result.

## III.    Plaintiff's Appointment As Deputy Director Is Invalid.

Even if Plaintiff were correct that the Bureau's Deputy Director is the only official who may serve as acting Director, *she* could not do so because Plaintiff's appointment to the position of Deputy Director by outgoing Director Cordray was invalid. Director Cordray—at the time he made the appointment—was unconstitutionally insulated from Presidential control, and Congress cannot in any event vest the power to appoint the Deputy Director in the Director consistent with the Appointments Clause.

*First*, a panel of the D.C. Circuit has already held that the present structure of the Bureau— under which the Bureau is headed by a single Director removable only for cause—is unconstitutional because it deprives the President of virtually all ability to control the acts of the Bureau. *PHH*, 839 F.3d at 36. To be sure, the Supreme Court held in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), that Congress could create independent agencies that exercise executive power, but that exception to the requirement of Presidential control and accountability applies only to *multi-member* agencies constituted as a "body of experts appointed by law and informed by experience." *Id.* at 624 (internal quotation marks omitted). There is no precedent for a unitary, independent, and

unaccountable Director as the head of an agency charged with enforcing laws against private persons. *PHH*, 839 F.3d at 18.

The *PHH* panel remedied this constitutional problem by striking the portion of the Dodd-Frank Act permitting removal of the Director only for cause, but that ruling was vacated when the full D.C. Circuit voted to rehear the case en banc. As illustrated by the panel's reasoning in *PHH*, Director Cordray was unconstitutionally insulated from Presidential control at the time he appointed Plaintiff as Deputy Director—making that appointment invalid. *See Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 796 F.3d 111, 118-19 (D.C. Cir. 2015) (invalidating action of unconstitutionally appointed officials: "[b]ecause the Board's structure was unconstitutional at the time it issued its determination, we vacate and remand the determination").

Because Director Cordray's appointment of Plaintiff was invalid, there is currently *no one* empowered to appoint an acting Director of the Bureau if Plaintiff's reading of Section 1011(b)(5) is correct—which is an additional, significant reason that the Court should reject that construction of the statute.

*Second*, at a minimum, there are serious questions whether the provision of Dodd-Frank authorizing the Director to appoint a Deputy Director (12 U.S.C. § 5491(b)(5)(A)) is itself unconstitutional. Under the Appointments Clause of the Constitution, Congress may choose not to require Presidential appointment and Senate confirmation for "inferior Officers"—but if it does so, the appointment power must instead be vested in "the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const. art. II, § 2, cl. 2. The Bureau arguably is not a "department," which would mean that its Director may not be given the authority to appoint inferior officers.

That conclusion follows from Supreme Court precedent, which requires that an agency be a free-standing entity in order to qualify as a "department." Indeed, in *Freytag v. Commissioner of Internal Revenue*, 501 U.S. 868 (1991), the Court noted that it had held "for more than a century" that the "term 'Departmen[t]' refers only to 'a part or division of the executive government, as the

Department of State, or of the Treasury,' expressly 'created and given the name of a department' by Congress." *Id.* at 886 (brackets and ellipsis omitted) (quoting *United States v. Germaine*, 99 U.S. 508, 510 (1878)). *Freytag* thus held that the term "departments" encompasses "executive divisions like the Cabinet-level departments." *Id.* In *Free Enterprise Fund*, the Court expanded the definition of "departments" to include so-called principal agencies such as the SEC, but it did so on the rationale that the SEC "is a freestanding component of the Executive Branch, not subordinate to or contained within any other such component." 561 U.S. at 511.

The Bureau likely does not qualify as a "department" for Appointments Clause purposes under the Supreme Court's approach. It clearly has not been designated as an executive, Cabinet-level "department" by Congress, which described it in Dodd-Frank as a "bureau" (12 U.S.C. § 5491(a)). Nor is the Bureau a "freestanding component of the Executive Branch," like the SEC; rather, it is contained within the Federal Reserve. *See id.* If the Bureau is not a "department," then Director Cordray's appointment of Plaintiff as Deputy Director would be unconstitutional—which would bar her from serving as acting Director. In order to avoid having to address this constitutional question regarding the Director's authority to appoint a Deputy Director, the Court should construe the statute to allow the President to select his own acting Director.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for a preliminary injunction should be denied.

Dated: December 18, 2017

Respectfully submitted,

/s/ *Andrew J. Pincus*

Andrew J. Pincus
MAYER BROWN LLP
1999 K Street, NW
Washington, D.C. 20006
Tel.: (202) 263-3000
Fax: (202) 263-3300

Steven P. Lehotsky
Warren Postman
Janet Galeria
U.S. CHAMBER LITIGATION CENTER
1615 H Street, NW
Washington, DC 20062
Tel.: (202) 463-5337