## In the United States District Court
## for the District of Columbia

| | | |
|---|---|---|
| Leandra English, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | |
| Donald J. Trump and | § | |
| John M. Mulvaney, | § | Case No. 1:17-cv-02534 |
| | § | |
| *Defendants.* | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |

———————————————

## BRIEF OF THE STATES OF TEXAS, WEST VIRGINIA, ALABAMA, ARIZONA, ARKANSAS, FLORIDA, GEORGIA, KANSAS, LOUISIANA, MICHIGAN, NEBRASKA, OKLAHOMA, AND SOUTH CAROLINA AS AMICI CURIAE IN SUPPORT OF DEFENDANTS

———————————————

# TABLE OF CONTENTS

Page

Index of Authorities ...................................................................................... ii

Interest of Amici Curiae ................................................................................ 1

Introduction .................................................................................................. 3

Argument ...................................................................................................... 5

    I.    The Dodd-Frank Act Cannot Override the President's
        Prerogative to Appoint Officers Under the Federal Vacancies
        Reform Act to Wield Executive Power. ................................................... 5

        A.    Article II Requires That the President Retain the Power to
              Nominate and Appoint Principal Officers. ...................................... 5

        B.    The CFPB Director Wields Power Commensurate with a
              Principal Officer of the United States. ............................................ 8

        C.    Plaintiff's Proposed Statutory Interpretation Raises Grave
              Constitutional Concerns This Court Should Avoid. ...................... 12

    II.    The Federal Vacancies Reform Act Forecloses Plaintiff's Claims............16

Conclusion .................................................................................................. 17

Certificate of Service................................................................................... 19

# Index of Authorities

Page(s)

**Cases:**

*Allied-Bruce Terminix Co. v. Dobson,*
    513 U.S. 265 (1995) ........................................................................ 10

*Am. Express Co. v. Italian Colors Rest.,*
    133 S. Ct. 2304 (2013) .................................................................... 10

*Crowell v. Benson,*
    285 U.S. 22 (1932) ...................................................................... 4, 13

*Dean Witter Reynolds, Inc. v. Byrd,*
    470 U.S. 213 (1985) ........................................................................ 10

*Edmond v. United States,*
    520 U.S. 651 (1997) .......................................................................... 8

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.,*
    561 U.S. 477 (2010) ................................................. 3, 6, 8, 13, 14, 15

*Janko v. Gates,*
    741 F.3d 136 (D.C. Cir. 2014) .................................................... 4, 13

*Marmet Health Care Ctr., Inc. v. Brown,*
    565 U.S. 530 (2012) (per curiam) .................................................. 10

*Massachusetts v. EPA,*
    549 U.S. 497 (2007) .......................................................................... 1

*Morrison v. Olson,*
    487 U.S. 654 (1988) ..........................................................7, 8, 11, 12

*Myers v. United States,*
    272 U.S. 52 (1926) ........................................................................ 3, 6

*PHH Corp. v. Consumer Fin. Prot. Bureau,*
    839 F.3d 1–6 (D.C. Cir. 2016), *reh'g en banc granted, order vacated*
    (Feb. 16, 2017) ............................................1, 3, 9, 11, 12, 15

*Printz v. United States*,
521 U.S. 898 (1997) ................................................................. 5

*Rice v. Ames*,
180 U.S. 371 (1901) ................................................................. 7

*Rust v. Sullivan*,
500 U.S. 173 (1991) ............................................................. 4, 12

*Ex parte Siebold*,
100 U.S. (10 Otto) 371 (1879) ................................................ 7

*Texas v. United States*,
809 F.3d 134 (5th Cir. 2015), *aff'd by equally divided Court*, 136 S.
Ct. 2271 (2016) (per curiam) .................................................. 1

*United States v. Eaton*,
169 U.S. 331 (1898) ................................................................. 7

*United States v. Germaine*,
99 U.S. (9 Otto) 508 (1879) .................................................... 7

**Constitutional Provisions, Statutes, and Rules**

U.S. Const. art. II ............................................................. 3, 6, 7

5 U.S.C. § 3347(a)(1)(B) ........................................................ 16

12 U.S.C.
§ 5491(b) .................................................................... 9, 16
§ 5491(c) ....................................................................... 9
§ 5512(b) .................................................................... 9, 11
§ 5514(b) .................................................................... 9, 11
§ 5515(b) .................................................................... 9, 11
§ 5516 ....................................................................... 9, 11
§ 5562 .................................................................... 9, 11, 12
§ 5563(a) ................................................................... 9, 11
§ 5564(f) ................................................................... 9, 11
§ 5581(b) ..................................................................... 12

## Other Authorities

1 Annals of Cong. 463 (1789) (Joseph Gales ed., 1834) ............................................ 6

2 J. Story, Commentaries on the Constitution § 1536, pp. 397 (3d ed. 1858) ................................................................................................................... 7

3 Joseph Story, Commentaries on the Constitution of the United States § 1414, 283 (1833) ................................................................................. 6

Akhil Reed Amar, AMERICA'S CONSTITUTION: A BIOGRAPHY 197 (2005) ............................................................................................................... 5

Arbitration Agreements, 82 Fed. Reg. 33210 (July 19, 2017) .............................. 9, 10

H.J. Res. 111, 115th Cong., 1st Sess. (2017) (signed by President Nov. 1, 2017) ................................................................................................................ 10

Kent Barnett, *The Consumer Financial Protection Bureau's Appointment with Trouble*, 60 AM. U. L. REV. 1459, 1460 (2011) ............................................ 14

Neomi Rao, *Removal: Necessary and Sufficient for Presidential Control*, 65 ALA. L. REV. 1205, 1215 (2014) ..................................................................... 6

President Donald J. Trump Signs H.J. Res. 111 into Law (Nov. 1, 2017), at https://www.whitehouse.gov/the-press-office/2017/11/01/president-donald-jtrump-signs-hjres-111-law ..................... 10

U.S. Dep't of the Treasury, *Limiting Consumer Choice, Expanding Costly Litigation: An Analysis of the CFPB Arbitration Rule* (Oct. 23, 2017), https://www.treasury.gov/press-center/press-releases/Documents/10-23-17%20Analysis%20of%20CFPB%20arbitration%20rule.pdf ................................ 11

## Interest of Amici Curiae

Amici are the States of Texas, West Virginia, Alabama, Arizona, Arkansas, Florida, Georgia, Kansas, Louisiana, Michigan, Nebraska, Oklahoma, and South Carolina.[1] States have "special solicitude" to challenge unlawful federal Executive Branch actions. *Massachusetts v. EPA*, 549 U.S. 497, 520 (2007). Courts have long recognized that the States guard "the public interest in protecting separation of powers by curtailing unlawful executive action." *Texas v. United States*, 809 F.3d 134, 187 (5th Cir. 2015), *aff'd by equally divided Court*, 136 S. Ct. 2271 (2016) (per curiam).

Those interests lie at the heart of this case: the Consumer Financial Protection Bureau wields sweeping power over the actions of millions of Americans. As a panel of the D.C. Circuit recently observed, "the Director of the CFPB possesses more unilateral authority—that is, authority to take action on one's own, subject to no check—than any single commissioner or board member in any other independent agency in the U.S. Government." *PHH Corp. v. Consumer Fin. Prot. Bureau*, 839 F.3d 1–6 (D.C. Cir. 2016), *reh'g en banc granted, order vacated* (Feb. 16, 2017).

---

[1] Neither amici nor counsel received any monetary contributions intended to fund preparing or submitting this brief. No party's counsel authored this brief in whole or in part.

Any federal official who wields that level of power should be selected by the President—not by an unaccountable federal bureaucrat. Amici fully expect that the President will quickly nominate the next permanent Director of the CFPB, and that the Senate will act expeditiously to fulfill its role of advising and consenting in the appointment of that individual. In the meantime, the President's choice for Acting Director pursuant to the Federal Vacancies Reform Act must be honored. Plaintiff's contrary argument that the Dodd-Frank Act of 2010 supplants the President's choice raises serious constitutional concerns and undermines the Constitution's separation of powers.

Amici thus urge the Court to deny plaintiff's motion for a preliminary injunction and dismiss the operative complaint with prejudice.[2]

---

[2] Local Rule 7(o)(1) provides that "a state may file an amicus curiae brief without the consent of the parties or leave of Court."

## Introduction

The Constitution vests "[t]he executive Power" in the President and compels him to "take care that the laws be faithfully executed." U.S. Const. art. II, § 1, cl. 1; *id*. art. II, § 3. But the "President cannot 'take Care that the Laws be faithfully executed' if he cannot oversee the faithfulness of the officers who execute them." *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 484 (2010). That is why the Constitution grants the President, "as part of his executive power," the power to "select those who [are] to act for him under his direction in the execution of the laws." *Myers v. United States*, 272 U.S. 52, 117 (1926). It provides that the President "shall have [the] Power," with the Senate's advice and consent, to nominate and appoint "all other Officers of the United States." U.S. Const. art. II, § 2, cl. 2.

In this lawsuit, plaintiff asks the Court to blend the powers the Constitution proclaims separate. She seeks a declaration that Congress has overridden the President's decision as to who should wield the extraordinary executive powers vested in the CFPB—instead of a recognition that the Federal Vacancies Reform Act provides an alternate statutory means by which the President can make temporary appointments such as the appointment at issue here. According to plaintiff, the Dodd-Frank Act of 2010, which created the CFPB, overrides the Federal Vacancies Reform Act and gives the President no say in that decision. But the CFPB's Director "enjoys more unilateral authority than any other officer in any of the three branches of the U.S. Government, other than the President." *PHH Corp.*, 839 F.3d at 7.

If plaintiff is correct, then the Dodd-Frank Act raises "grave and doubtful constitutional questions," *Rust v. Sullivan*, 500 U.S. 173, 191 (1991), by impinging on the President's ability to carry out the executive power. The D.C. Circuit has held repeatedly that "[w]hen the validity of an act of the Congress is drawn in question, and even if a serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." *Janko v. Gates*, 741 F.3d 136, 145 n.9 (D.C. Cir. 2014) (quoting *Crowell v. Benson*, 285 U.S. 22, 62 (1932)). The Court should follow that constitutional-avoidance doctrine here and decline to construe the Dodd-Frank Act as overriding the President's choice of Acting Director. The proper course, as defendants argue, is to hold that under the Federal Vacancies Reform Act, the President's decision to appoint the CFPB's Acting Director controls and supplants and competing framework set out in the Dodd-Frank Act. The Court should therefore deny plaintiff's motion for a preliminary injunction and dismiss the operative complaint with prejudice.

# ARGUMENT

## I. The Dodd-Frank Act Cannot Override the President's Prerogative to Appoint Officers Under the Federal Vacancies Reform Act to Wield Executive Power.

The Constitution's separation of powers gives the President authority to decide who will wield the CFPB's extraordinary executive power. Plaintiff's interpretation of the Dodd-Frank Act thus raises a grave constitutional question of whether Congress can supplant that authority and give an unelected federal bureaucrat the sole, unchecked power to bestow extraordinary executive power on another individual without regard to the President's views. The Court should avoid that constitutional quagmire by holding that the President has the power to select the CFPB's Acting Director.

### A. Article II Requires That the President Retain the Power to Nominate and Appoint Principal Officers.

1. Article II bestows "[t]he executive Power" in a single, unitary executive. It makes "emphatically clear from start to finish" that "the president would be personally responsible for his branch."[3] Akhil Reed Amar, AMERICA'S CONSTITUTION: A BIOGRAPHY 197 (2005). The Framers demanded "unity in the Federal Executive" to guarantee "both vigor and accountability." *Printz v. United States*, 521 U.S. 898, 922 (1997). This unitary executive further promotes "[d]ecision, activity, secrecy, and d[i]spatch" in ways that

---

[3] State Constitutions, of course, may establish a different structure.

a "greater number" cannot. 3 Joseph Story, Commentaries on the Constitution of the United States § 1414, at 283 (1833).

Among those executive powers is the power to nominate and appoint, with the advice and consent of the Senate, "Ambassadors, other public Ministers and Consuls, Judges of the Supreme Court, and all other Officers of the United States[.]" U.S. Const. art. II, § 2, cl. 2. The power to appoint "Officers of the United States" empowers the President, "as part of his executive power," to "select those who [are] to act for him under his direction in the execution of the laws." *Myers*, 272 U.S. at 117. Selecting assistants and deputies lies at the heart of "the executive power," which necessarily includes "the power of appointing, overseeing, and controlling those who execute the laws." *Free Enter. Fund*, 561 U.S. at 492 (quoting 1 Annals of Cong. 463 (1789) (Joseph Gales ed., 1834) (remarks of Madison)).

The appointment power ensures the proper functioning of the chain of command under which the Executive Branch functions. *See* Neomi Rao, *Removal: Necessary and Sufficient for Presidential Control*, 65 ALA. L. REV. 1205, 1215 (2014) ("The text and structure of Article II provide the President with the power to control subordinates within the executive branch."). As the Supreme Court has recognized, Congress intolerably impinges on the President's power to faithfully execute the law when it deprives the President of the power to "oversee the faithfulness of the officers who execute them." *See Free Enter. Fund*, 561 U.S. at 484.

2.  To be sure, the Constitution does not require the President to appoint every actor in the Executive Branch. Instead, it authorizes Congress to "vest the appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const. art. II, § 2, cl. 2. Thus, for purposes of appointments, the Constitution "divides all its officers into two classes." *Morrison v. Olson*, 487 U.S. 654, 670 (1988) (quoting *United States v. Germaine*, 99 U.S. (9 Otto) 508, 509 (1879)). Congress may vest the appointment of so-called "inferior" officers outside the Executive Branch if it chooses, but "principal" officers must be nominated and appointed only by the President. *Id.*

The Supreme Court has acknowledged that the "line between 'inferior' and 'principal' officers is one that is far from clear, and the Framers provided little guidance into where it should be drawn." *Id.* at 671 (citing 2 J. Story, Commentaries on the Constitution § 1536, at. 397–98 (3d ed. 1858)). The Supreme Court has rarely categorized government officials, though it has clarified that election supervisors are inferior officers. *Ex parte Siebold*, 100 U.S. (10 Otto) 371, 397-98 (1879). So, too, are vice consuls, *United States v. Eaton*, 169 U.S. 331, 343 (1898), and extradition commissioners, *Rice v. Ames*, 180 U.S. 371, 378 (1901).

The *Morrison* Court listed several factors relevant to the inquiry. The first is whether the official is "subject to removal by a higher Executive Branch official." 487 U.S. at 671. Next is whether the official may perform "only certain, limited duties." *Id.* Third is whether the official's "office is limited in

jurisdiction." *Id*. at 672. Fourth, and finally, is whether the official's "office is limited in tenure." *Id*. None is dispositive. *See id.*

Most recently, the Supreme Court declared in *Free Enterprise Fund* that the five members of the Public Company Accounting Oversight Board are inferior officers who may be appointed by the Securities and Exchange Commission. *Free Enterprise Fund*, 561 U.S. at 510. Relying on *Edmond v. United States*, 520 U.S. 651, 662–63 (1997), the Court held that inferior officers are "'directed and supervised at some level' by other officers appointed by the President with the Senate's consent." 561 U.S. at 510 (quoting 520 U.S. at 664). Because the SEC had the power to remove PCAOB members, those members were inferior officers whose appointments could be vested in the "Hea[d] of Departmen[t]." *Id.*

The Supreme Court has provided little additional guidance. While the above cases confirm that there is no bright-line rule for when Congress may place a particular office outside the President's appointment power, the Constitution's separation-of-powers structure remains the touchstone. *See Morrison*, 487 U.S. at 693-94 ("Time and again we have reaffirmed the importance in our constitutional scheme of the separation of governmental powers into the three coordinate branches.").

**B. The CFPB Director Wields Power Commensurate with a Principal Officer of the United States.**

8

1.a.   While no court has confronted this issue directly, the CFPB Director—and by extension, the Acting Director—wields vast powers commensurate with a principal officer of the United States.

The CFPB is headed by a single Director. 12 U.S.C. § 5491(b). He serves a term of five years and may be fired only for "inefficiency, neglect of duty, or malfeasance in office." *Id.* § 5491(c). And he wields quintessentially "executive power," that is, the "power to enforce federal law against private citizens," or "to bring criminal prosecutions and civil enforcement actions." *PHH Corp.*, 839 F.3d at 5.

The Director wields that executive power as to nineteen different federal consumer-protection statutes. 12 U.S.C. § 5512(b)(1). He may examine and investigate individuals and entities to assess their compliance with those statutes. *Id.* §§ 5514(b), 5515(b), 5516. He may issue "civil investigative demand[s]." § 5562(c). He may institute enforcement actions and conduct "adjudication proceedings." *Id.* § 5563(a). He may sue in state or federal court to enforce consumer-protection laws. *Id.* § 5564(f).

b.   The CFPB's Arbitration Rule—which Congress and the President recently rescinded—demonstrates the far-reaching powers of the CFPB's Director. *See* "Arbitration Agreements," 82 Fed. Reg. 33210 (July 19, 2017). Until its repeal, the Arbitration Rule restricted the ability of some businesses to compel arbitration in lieu of class-action litigation. *Id.* Among other things, it "prohibit[ed] covered providers of certain consumer financial products and

services from using an agreement with a consumer that provides for arbitration of any future dispute between the parties to bar the consumer from filing or participating in a class action concerning the covered consumer financial product or service." *Id.* It took effect in September 2017 but was repealed on November 1, 2017. *See* H.J. Res. 111, 115th Cong., 1st Sess. (2017) (signed by President Nov. 1, 2017); President Donald J. Trump Signs H.J. Res. 111 into Law (Nov. 1, 2017), at https://www.whitehouse.gov/the-press-office/2017/11/01/president-donald-j-trump-signs-hjres-111-law.

The Arbitration Rule seriously (and, as it turned out, temporarily) undermined the strong and longstanding national policy favoring arbitration. The Federal Arbitration Act enshrines an "emphatic federal policy in favor of arbitral dispute resolution." *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 533 (2012) (per curiam) (quotations omitted). It provides that arbitration agreements must be "rigorously enforce[d]." *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)). That pro-arbitration policy protects businesses and consumers alike. *See Allied-Bruce Terminix Co. v. Dobson*, 513 U.S. 265, 280 (1995) ("The advantages of arbitration [for consumers] are many.").

The CFPB's Arbitration Rule sought to supplant all those sound policies. Rather than advance the strong federal policy favoring arbitration, the CFPB effectively reversed it. Indeed, the U.S. Department of Treasury recently issued a report projecting that the Arbitration Rule, had it not been rescinded, would have "impose[d] extraordinary costs" on businesses with very little (if

any) benefit to consumers.  U.S. Dep't of the Treasury, *Limiting Consumer Choice, Expanding Costly Litigation: An Analysis of the CFPB Arbitration Rule* (Oct. 23, 2017), https://www.treasury.gov/press-center/press-releases/Documents/10-23-17%20Analysis%20of%20CFPB%20arbitration%20rule.pdf.

2. Analyzed under the *Morrison* and *Free Enterprise Fund* framework, the powers that the CFPB's Acting Director will wield are on par with that of a principal officer who can be nominated and appointed only by the President.

In particular, the CFPB Director—and, by extension, the Acting Director—wield significant powers, not the "certain, limited duties" the Supreme Court has tied to inferior officers. *See* 12 U.S.C. § 5512(b); *cf. Morrison*, 487 U.S. at 671. The Director has the "power to enforce federal law against private citizens," or "to bring criminal prosecutions and civil enforcement actions." *PHH Corp.*, 839 F.3d at 5. He wields that executive power as to nineteen different federal consumer-protection statutes. 12 U.S.C. § 5512(b)(1). He may examine and investigate individuals and entities to assess their compliance with those statutes. *Id.* §§ 5514(b), 5515(b), 5516. He may issue "civil investigative demand[s]." § 5562(c). He may institute enforcement actions and conduct "adjudication proceedings." *Id.* § 5563(a). He may sue in state or federal court to enforce consumer-protection laws. *Id.* § 5564(f). The CFPB "may pursue actions to enforce the consumer protection laws in federal court, as well as in administrative actions before administrative law judges, and may issue subpoenas requesting documents or testimony in connection with those

enforcement actions." *PHH Corp.*, 839 F.3d at 16 (citing 12 U.S.C. §§ 5562-5564).

Likewise, the CFPB office is hardly "limited in jurisdiction." *Morrison*, 487 U.S. at 672. The nineteen federal consumer-protection regimes the Director administers span across all reaches of American commerce. *PHH Corp.*, 839 F.3d at 7. They run the gamut "from home finance to student loans to credit cards to banking practices." *Id.* The power the CFPB Director wields "was previously exercised by seven different government agencies." *Id.* at 15 (citing 12 U.S.C. § 5581(b)).

These factors all lead to the conclusion that the CFPB's Acting Director carries the power of a principal officer. *Cf. Morrison*, 487 U.S. at 671 ("The line between 'inferior' and 'principal' officers is one that is far from clear, and the Framers provided little guidance into where it should be drawn."). At a minimum, a close review of the powers the CFPB's Acting Director will wield raises serious constitutional questions about whether Congress can take from the President the power to appoint the Acting Director.

## C. Plaintiff's Proposed Statutory Interpretation Raises Grave Constitutional Concerns This Court Should Avoid.

1. In light of the significant powers the CFPB's Director wields, plaintiff's statutory interpretation arguments raise grave constitutional doubts that this Court should avoid. *See Rust*, 500 U.S. at 191.

It is well settled that when presented with plausible, competing interpretations of a statutory scheme—such as defendant's argument that the President's choice of Acting Director is fully warranted under the Federal Vacancies Reform Act—courts generally should avoid resolving those disputes in a way that would raise constitutional concerns. Or, as the D.C. Circuit has put it, "[w]hen the validity of an act of the Congress is drawn in question, and even if a serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." *Janko*, 741 F.3d at 145 n.9 (quoting *Crowell*, 285 U.S. at 62).

As set out above in Part I.B.2, the CFPB's Acting Director wields extraordinary power over the daily lives of Americans. His power reflects that of a principal officer. Under the constitutional principles articulated in *Morrison* and *Free Enterprise Fund*, only the President, with the advice and consent of the Senate, retains the power to bestow those powers on a single individual. *See supra* Part I.B.2. Yet plaintiff argues that the Dodd-Frank Act removes that power from the President.

If the Court wished to adopt plaintiff's position, it would be forced to confront these important constitutional questions. Among other things, the Court would be forced to decide whether the CFPB's Acting Director is an inferior officer or a principal officer. If the latter, then the Dodd-Frank Act may not assign the President's appointment prerogative elsewhere. *See Free Enterprise Fund*, 561 U.S. at 492-94. If the former, then the Court must confront whether

the outgoing Director is a "Head of Department" capable of making such an appointment. *See generally* Kent Barnett, *The Consumer Financial Protection Bureau's Appointment with Trouble*, 60 AM. U. L. REV. 1459, 1460 (2011) (arguing that "it is unclear if the Bureau is a 'department' and thus if the Director is a department head who can appoint the Deputy Director"); *see also Free Enter. Fund*, 561 U.S. at 510-11 (discussing meaning of "department").

Plaintiff, in other words, invites this Court to enter a constitutional quagmire. The Court should decline that invitation, especially since plaintiff has not identified any constitutional flaws in defendants' arguments concerning the Federal Vacancies Reform Act—which is fully consistent with the President's appointment power and the separation of powers because it defers to the President's choice for this important role, consistent with the requirements of a congressionally enacted law.

2.  Amicus District of Columbia, joined by other amici States, has filed a brief arguing that because Congress' intent is clear, this case does not implicate the constitutional avoidance canon. *See* Dkt. 32 at 9-11.

Congress' intent is plain *in the contrary direction*: as defendants' briefing demonstrates, the Federal Vacancies Reform Act unambiguously bestows on the President the power to name Mr. Mulvaney Acting Director, and nothing in the Dodd-Frank Act supplants that power. The Court thus need not invoke the canon of constitutional avoidance to rule for defendants.

The canon of constitutional avoidance simply confirms that plaintiff's position is untenable. At base, plaintiff believes that Congress has bestowed on

an unelected bureaucrat the power to single-handedly override the President's decision as to who should wield "more unilateral authority than any other officer in any of the three branches of the U.S. Government, other than the President." *PHH Corp.*, 839 F.3d at 7. As plaintiff interprets the relevant statute, Congress has removed from the head of the Executive Branch any say whatsoever in who will carry these extraordinary executive powers. As set out above, that outcome is fundamentally inconsistent with the structure of government our Constitution creates because it impermissibly divests the President of the power to "oversee" the faithful execution of the law. *See Free Enter. Fund*, 561 U.S. at 484.

Amicus District of Columbia further argues that "the Texas amici . . . are impermissibly drawing the separation-of-powers line too far in favor of executive power." Dkt. 32 at 10-11. Not so: our insistence that the President is entitled to a say in the selection of an unprecedented, extraordinarily powerful executive branch bureaucrat is entirely consistent with the structure of Article II and Supreme Court authority from *Myers* to *Free Enterprise Fund*. *See infra* pp. 5-8. We fully expect that the President will quickly nominate the next permanent Director of the CFPB, and that the Senate will act expeditiously to fulfill its role of advising and consenting in the appointment of that individual. In the meantime, the President's choice for Acting Director pursuant to the Federal Vacancies Reform Act must be honored.

## II. The Federal Vacancies Reform Act Forecloses Plaintiff's Claims.

As explained above, the Court should reject plaintiff's statutory interpretation arguments—and adopt those of defendants—because plaintiff's arguments would create grave constitutional concerns. In all events, for the reasons defendants' have articulated previously, amici agree that the Federal Vacancies Reform Act forecloses plaintiff's request for injunctive relief.[4] *See* Dkt. 9, at 9-14.

---

[4] Defendants have suggested that the phrase "the absence or unavailability of the Director," as it appears in § 5491(b)(5)(B), might include the Director's resignation. *See* Dkt. 9, at 6 ("the CFPB-specific statute providing that the Deputy Director 'shall . . . serve as acting Director in the absence or unavailability of the Director,' 12 U.S.C. § 5491(b)(5), may satisfy section 3347(a)'s reference to 'a statutory provision' that 'expressly . . . designates an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity.'"). In amici's view, the Director is neither "absen[t]" nor "unavailab[le]"; he is permanently gone. So there is no statutory mechanism in the Dodd-Frank Act that expressly designates the Deputy Director to become the Acting Director. *Cf.* 5 U.S.C. § 3347(a)(1)(B). This is an additional, independent ground on which to deny injunctive relief and dismiss the operative complaint.

## Conclusion

The Court should deny plaintiff's motion for a preliminary injunction and dismiss the operative complaint with prejudice.

Respectfully submitted.

PATRICK MORRISEY
Attorney General of West Virginia

Erica N. Peterson
Assistant Attorney General

OFFICE OF THE WEST VIRGINIA ATTORNEY GENERAL
State Capitol Complex
Building 1, Room 26-E
Charleston, WV 25305
(304) 558-2021

STEVE MARSHALL
Attorney General of Alabama

MARK BRNOVICH
Attorney General of Arizona

LESLIE RUTLEGDE
Attorney General of Arkansas

PAMELA JO BONDI
Attorney General of Florida

CHRISTOPHER M. CARR
Attorney General of Georgia

DEREK SCHMIDT
Attorney General of Kansas

KEN PAXTON
Attorney General of Texas

JEFFERY C. MATEER
First Assistant Attorney General

BRANTLEY D. STARR
Deputy First Assistant Attorney General

/s/ *Scott A. Keller*
SCOTT A. KELLER
Solicitor General
Bar No. TX0120
scott.keller@oag.texas.gov

Kyle Hawkins
Assistant Solicitor General

OFFICE OF THE TEXAS ATTORNEY GENERAL
P.O. Box 12548, Mail Code 009
Austin, Texas 78711-2548
(512) 936-1700

*Attorneys for Amici Curiae*

JEFF LANDRY
Attorney General of Louisiana

BILL SCHUETTE
Attorney General of Michigan

DOUG PETERSON
Attorney General of Nebraska

MIKE HUNTER
Attorney General of Oklahoma

ALAN WILSON
Attorney General of
   South Carolina

## CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2017 the foregoing document was served via electronic filing on all counsel of record in this case.

/s/ Scott A. Keller
SCOTT A. KELLER
Solicitor General