IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LEANDRA ENGLISH,
                    *Plaintiff*,

        v.

DONALD J. TRUMP and
JOHN M. MULVANEY,
                    *Defendants*.

Case No. 1:17-cv-02534

**MEMORANDUM IN REPLY TO DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

DEEPAK GUPTA
JONATHAN E. TAYLOR
JOSHUA MATZ
DANIEL TOWNSEND
GUPTA WESSLER PLLC
1900 L Street, NW, Suite 312
Washington, DC 20036
Phone: (202) 888-1741
Fax: (202) 888-7792
*deepak@guptawessler.com*

December 20, 2017                    *Attorneys for Plaintiff*

**ARGUMENT**

**I.     The defendants have not undercut Ms. English's likelihood of success.**

**A.     Dodd-Frank's succession provision is mandatory and self-executing, and it governs over the older, generally applicable FVRA.**

The merits of this case turn on a question of statutory interpretation: What happens when the CFPB's Director resigns, or is otherwise unavailable to perform his duties, and the Senate has not yet confirmed a replacement? As we explained in our motion, the CFPB's organic statute, the Dodd-Frank Act, supplies a clear answer: the agency's Deputy Director "shall . . . serve as the acting Director in the absence or unavailability of the Director." 12 U.S.C. § 5491(b)(5)(B).

If that provision were the only statute in play, this would be an easy case. Ms. English was the Deputy Director when Director Cordray resigned, creating an "absence or unavailability," so she "shall" be the acting Director until the Senate confirms a successor. Although the defendants try to dispute this point (at 17–18), positing that a vacancy might not trigger the mandate, they do not deny that a vacancy falls under the ordinary definition of "absent" or "unavailable," because a vacant Director no longer "exist[s]" and is "unable" to perform his duties. *See* ECF No. 26, at 7. Indeed, the very statute on which they rely recognizes that a vacancy occurs when an officer is "unable to perform the functions and duties of the office." 5 U.S.C. § 3345(a). And OLC has cited this language in rejecting the defendant's reading. *See Memorandum Re: Designating an Acting Director of the Bureau of Consumer Financial Protection*, at 3, Office of Legal Counsel (Nov. 25, 2017), https://goo.gl/psvaEY ('OLC Memo"). Under a straightforward application of Dodd-Frank's mandatory succession provision, therefore, Ms. English is the rightful acting Director.

Yet President Trump contends that an earlier, more generally applicable statute changes this result. Relying on the Federal Vacancies Reform Act of 1998 (or FVRA), he takes the position that he may disregard Dodd-Frank's mandate and install a White House official—OMB

Director Mulvaney—as the CFPB's acting Director. Under the FVRA, when a Senate-confirmed office of an executive agency goes vacant, the President "may direct" certain people to serve in an acting capacity. 5 U.S.C. § 3345(a). This is the language on which the President relies.

Dodd-Frank and the FVRA cannot both govern this case. If Dodd-Frank governs, Ms. English "shall" be acting Director; but if the FVRA governs, the President "may" designate someone else. "'The traditional, commonly repeated rule is that shall is mandatory and may is permissive.'" *Anglers Conservation Network v. Pritzker*, 809 F.3d 664, 671 (D.C. Cir. 2016) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 112 (2012)); *see also Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1977 (2016) ("Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement."). Although legislators have at times misunderstood this distinction, "when the word *shall* can reasonably be read as mandatory, it ought to be so read." Scalia & Garner, *Reading Law*, at 114. Here, as the defendants concede (at 15), there is nothing unreasonable about "an office-specific statute" mandating "that the FVRA does not apply to the office." So there can be nothing unreasonable about giving the word "shall" its usual mandatory meaning in this context. Because Dodd-Frank uses language that is "mandatory and self-executing," applying the FVRA's "permissive 'may direct'" provision in this case would "conflict" with Dodd-Frank. *N.L.R.B. v. SW Gen., Inc.*, 137 S. Ct. 929, 940–41 (2017). Picking between these two provisions is thus a matter of statutory construction.

The most relevant canon of construction—and the one that the defendants have no good response to—is the rule "that the specific governs the general." *See id.* at 941 (applying canon in interpreting the FVRA). The FVRA "addresses [vacancies] *generally*," *see id.*, providing an agency-wide default rule that Congress may deviate from by enacting "an office-specific statute." Opp. 15. Dodd-Frank is such a statute. It "speaks to a *specific* . . . scenario," *SW Gen.*, 137 S. Ct. at

941—providing a rule of succession for a single office in a single agency—as the Act's co-sponsors (amici in this case) intended. *See generally* ECF No. 29-1. "In this particular situation," the general provision "yields to the more specific," and "has no effect." *SW Gen.*, 137 S. Ct. at 941. And when the more specific statute is also the more recent one, as here, it "controls" for that reason as well. *Owner-Operator Indep. Drivers Ass'n, Inc. v. U.S. Dep't. of Transp.*, 724 F.3d 230, 233 (D.C. Cir. 2013); *see also Lockhart v. United States*, 546 U.S. 142, 149 (2005) (Scalia, J. concurring) ("When the plain import of a later statute directly conflicts with an earlier statute, the later enactment governs.").[1]

This does not mean, however, that Dodd-Frank impliedly repealed the FVRA under our reading, leaving it without any effect, as the defendants repeatedly assert. The problem with this characterization is that it "disregards the principle behind the specific/general canon—namely, that the two provisions are not in conflict, but can exist in harmony. The specific provision does not negate the general one entirely, but only in its application to the situation that the specific provision controls. Hence the canon does apply to successive statutes. Indeed, that is perhaps its most common application." Scalia & Garner, *Reading Law*, at 185. And so it is here. Like most general provisions, the FVRA continues to have effect in the many other contexts in which it is generally applicable; it just isn't applicable in the specific scenario at issue in this case.[2]

---

[1] On the later-trumps-earlier point: The defendants still have not produced an example of a post-FVRA statute with mandatory language that has been interpreted to preserve the FVRA as an alternative. The statute creating the Federal Housing Finance Agency, which they don't mention, was passed in 2008 and also sets forth a mandatory succession scheme. It creates three Deputy Directors and provides: "In the event of the death, resignation, sickness, or absence of the Director, the President shall designate" one of the three Deputy Directors "to serve as acting Director until the return of the Director, or the appointment of a successor." 12 U.S.C. § 4512(f). The defendants do not say whether they think the FVRA would allow the President to defy this statutory command as well, but that is where the logic of their position ("shall" = "may") leads.

[2] The specific/general canon also helps explain why other Dodd-Frank provisions containing mandatory language (*e.g.*, the Director "shall serve a term of 5 years") can themselves

In a sentence (at 21), the defendants say that the FVRA is actually more specific because it expressly mentions "resign[ations]," whereas Dodd-Frank does not. But as we pointed out in our motion (at 10 n.1), Dodd-Frank's succession provisions either covers vacancies, or it does not. If it does, then it "is far more specific than the FVRA because it creates a mandatory provision for a particular position at a single agency, rather than a general term intended to apply across many agencies." If it does not, then the canon is irrelevant. The defendants offer no response.[3]

Nor do they offer a persuasive account of what Congress sought to accomplish by including the mandatory succession provision in Dodd-Frank. On their reading, the provision operates no differently than it would if Congress had used the word "may" instead of "shall," or had added language like "unless the President designates another officer of the Government as Acting [Director]," as Congress has done in other statutes. 42 U.S.C. § 902; *see also, e.g.*, 38 U.S.C. § 304 (similar); 40 U.S.C. § 302 (same). But courts must presume "that the legislature says . . . what it means and means . . . what it says." *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1725 (2017) (brackets and quotation marks omitted). The "proper role of the judiciary," after all, is "to apply, not amend, the work of the People's representatives." *Id.* at 1726. And the defendant's proposed amendments would make particularly little sense in these circumstances. They would not only sharply reduce the practical effect of Dodd-Frank's succession provision—

---

yield to more specific provisions, even those using permissive language, as in the scenario when the President "remove[s] the Director" before his term ends. 12 U.S.C. § 5491(c)(1) & (3). Allowing the more general provision to control in that scenario would also impermissibly render the more specific provision meaningless—in conflict with another canon of construction. The defendants are therefore correct to say that "the term 'may' sometimes overrides the term 'shall.'" Opp. 19. But the *reasons* it does so illustrate why the opposite is true in this case.

[3] Nor is there any force to the defendant's continued reliance on Dodd-Frank's use of the phrase "except as otherwise provided expressly by law." 12 U.S.C. § 5491(a). The succession provision is clear and unambiguous, and provides an office-specific scenario that "directly conflict[s]" with the FVRA's general regime. *See Lockhart*, 546 U.S. at 149 (Scalia, J. concurring). No more is needed. To demand more, as the defendants do, is to require "magical passwords"— a requirement the Supreme Court has rejected. *Marcello v. Bonds*, 349 U.S. 302, 310 (1955).

rendering it something approaching a nullity—but would do so in a way that contravened the legislative history and undermined Congress's intent to establish the CFPB as "an independent bureau," free from undue political influence. 12 U.S.C. § 5491(a). To accept the defendants' revisions would be to resurrect the very language that Congress excised from Dodd-Frank, and to treat an independent agency as if resided in the West Wing. *See* ECF No. 26, at 11–12.

The defendants claim that their atextual interpretation of Dodd-Frank is necessary to avoid constitutional concerns. *See* Opp. 23–25. But they don't flesh out what the specific concerns are. They gesture at the Take Care Clause (at 27), but that concern (such that it is one) is rooted in the removal provision, which is not directly at issue here. There is no authority for the proposition that the President's ability to faithfully executive the nation's laws is meaningfully impaired when the head of an independent agency leaves before his term expires, and the President is required to obtain Senate confirmation before making his mark on the agency. And this proposition is flatly inconsistent with the very idea of an independent agency. *See Humphrey's Ex'r v. United States*, 295 U.S. 602, 629 (1935). If anything, as the District of Columbia and 17 States explained in their amicus brief, *see* ECF No. 31-1, at 9–11, President Trump's attempted end-run around Senate confirmation would raise constitutional concerns of its own in the absence of clear statutory authorization, potentially allowing Mr. Mulvaney to serve as acting CFPB Director for years from his post in the White House. *See* 5 U.S.C. § 3346. This Court should not attribute that intent to Congress unless the text allows for no other reading. That is plainly not the case here.

Next, the defendants ask this Court to read the statues in their preferred way to avoid "troubling scenarios that Congress presumably did not intend." Opp. 23. But the scenarios they list are the very scenarios that Congress must have intended in creating the position of Deputy

Director, vesting the Director with the sole authority (but not the obligation) to select the Deputy Director, and providing that the Deputy Director "shall" be the acting Director if the Director becomes unavailable. And there is nothing unusual about the possibility that an independent agency could be without an acting Director until a replacement is confirmed (as would be the case if the Director had not named a Deputy Director before becoming unavailable).[4] Multi-member commissions are sometimes without a quorum, *see New Process Steel, L.P. v. N.L.R.B.*, 130 S. Ct. 2635, 2639 (2010) (addressing "the 27–month period in which the [NLRB] had only two members"), and yet there is no dispute that the FVRA is unavailable. What the President should do in that situation is the same thing he should do (but has not yet done) here: nominate a replacement and obtain Senate confirmation.

Finally, the government implies that Ms. English's case is somehow far-fetched, asserting categorically that "[o]nly Plaintiff" stands against the President's view that the FVRA allows him to override Dodd-Frank. Opp. 3. This ignores the numerous amici who have filed in support of Ms. English and her interpretation of Dodd-Frank, including the chief architects of the Act, then-Senator Christopher Dodd and Representative Barney Frank. This failure to recognize the mass of interests on the opposite side of this case means that the government has not responded to:

- The brief by 37 current and former members of Congress, including sponsors and drafters of Dodd-Frank, who agree with Ms. English's stance that the Act displaces the FVRA and is the sole means for filling a vacancy in the position of CFPB Director. *See* ECF No. 29-1.

---

[4] Nor, incidentally, was there anything improper about Director Cordray's decision to designate a Deputy Director before leaving office. Had he not done so, the agency would have lacked an acting head—thus creating the very problem the defendants now want to avoid.

- The brief by the District of Columbia and 17 States arguing that the mandatory successor language in Dodd-Frank is an essential component of the independent structure at the heart of the CFPB statutory scheme. *See* ECF No. 32.

- The brief by 10 consumer groups noting that the public interest requires an injunction in this case because the CFPB's independence is necessary for it to pursue its public mission. *See* ECF No. 36, at 25–31.

- The brief by Peter Conti-Brown describing how the precedent that the President is attempting to set in this case is an assault on norms of independence that are core parts of our nation's financial regulatory system. *See* ECF No. 33.

- The brief by 10 scholars of consumer financial regulation arguing that the appointment of Defendant Mulvaney in particular is a direct violation of Congress's intentions for the CFPB's independence. *See* ECF No. 28-2, at 28–32.

As these briefs illustrate, Ms. English's arguments have significant strength both in terms of law and sound public policy. The government's attempt to cast Ms. English as isolated rather than responding to her supporters is just one more attempt to legitimize Mr. Mulvaney's appointment by fiat rather than by law.

**B.      The President's selection of Mr. Mulvaney would be impermissible even if Dodd-Frank's succession statute were not mandatory.**

Even if Dodd-Frank's succession statute were interpreted as being permissive rather than mandatory, the President's selection of Mr. Mulvaney would still be impermissible. As our motion lays out (at 16–22), that is true for two reasons. One: It flouts Congress's design in creating the CFPB as an "independent bureau." 12 U.S.C. § 5491(a). Two: The FVRA, by its terms, does not apply to the appointment of "any member" of a multi-member board that

"governs an independent establishment or Government corporation," 5 U.S.C. § 3349c(1), and the CFPB Director, as an automatic FDIC board member, is such a member, *see* 12 U.S.C. §§ 1812(a)(1)(B); 1812(d)(2). The defendants fail to refute either point.

**1.** On the first point, they have very little to say. Their argument is essentially: nothing in the FVRA precludes the President from selecting Mr. Mulvaney as acting Director, and Dodd-Frank does not "erect a 'wall of separation . . . between the CFPB and OMB." Opp. 26–28. This argument is largely non-responsive to the real thrust of our point—that Congress created the CFPB to be insulated from the President. It is striking that the President does not even dispute that his selection of Mr. Mulvaney has put the agency under his thumb, indefinitely.

Just the opposite. Two days after we filed our motion, the President took to Twitter to proclaim his control over the CFPB: "Fines and penalties against Wells Fargo Bank for their bad acts against their customers and others will not be dropped, as has incorrectly been reported, but will be pursued and, if anything, substantially increased. I will cut Regs but make penalties severe when caught cheating!" Donald J. Trump, @realdonaldtrump, Twitter, Dec. 8, 2017, 7:18am *available at* https://twitter.com/realDonaldTrump/status/939152197090148352. In making this pronouncement, the President weighed in on a particular enforcement action against a particular regulated entity, thus illustrating the problems with presidential interference.

There is a reason Congress wanted the CFPB's Director to be removable only for cause, and took specific steps to shield the agency's independence from OMB. *See, e.g.*, 12 U.S.C. § 5497(a)(4)(E). The President's selection of OMB Director Mulvaney stymies Congress's intent. As amicus Peter Conti-Brown summarizes: The President's "decision to appoint a White House

official to act as the Bureau's director eliminates the independence that Congress has required for that Bureau." *See* ECF No. 30-1, at 1. That should not be permissible under Dodd-Frank.[5]

**2.** Nor is it what Congress intended in enacting the FVRA. Congress "determined that some positions with hallmarks of independence should not be filled on an acting basis through the Vacancies Reform Act." OLC Memo at 7. The CFPB Director unquestionably has those hallmarks, and the defendants do not contend otherwise. One indication of the CFPB's Director's independence is her service on the FDIC's multi-member board, which consists only of independent financial regulators. Although the defendants draw a distinction between service on that board as a member directly appointed and service as a member appointed to a different position (*ex officio* members), this too misses the larger point: the reason *why* the FVRA does not reach independent, multi-member agencies—which is to preserve independence and to prevent statutory requirements of board members from being manipulated. Both of those concerns are implicated here. Amici professors of consumer-finance regulation makes this very point, *see* ECF No. 28-2, at 15–17, and the defendants offer no rejoinder.

## II.     Ms. English's claims are not barred by the de-facto-officer doctrine, and this Court has the authority to issue injunctive relief.

**A.** The defendants do not deny that Ms. English has Article III standing. Nor do they specifically deny that she states a claim with respect to any of the six counts asserted in her amended complaint. *See* ECF No. 22 at 7–10. Instead, the defendants contend that a provision of D.C. law codifying the writ of quo warranto (D.C. Code § 16-3501) preempts all of her otherwise

---

[5] The defendants point out that the FVRA did not specifically contemplate and carve out the CFPB from its scope. True. But that's because the CFPB did not exist at the time. The FVRA excluded most other independent financial agencies, the multimember commissions that predated the CFPB, and there is no reason to think Congess would not have done the same with the respect to the CFPB had the agency been around at the time of the FVRA.

applicable federal statutory and constitutional challenges by virtue of the common-law "de facto officer" doctrine.

The defendants are mistaken. In recent decades, "the Supreme Court has limited the doctrine, declining to apply it when reviewing Appointments Clause challenges, and important statutory defects." *SW Gen., Inc. v. N.L.R.B.*, 796 F.3d 67, 81 (D.C. Cir. 2015) (rejecting defense that a challenge could proceed only via quo warranto). The doctrine historically balances two concerns. On the one hand, it aims to prevent chaos when, for technical reasons, "it is later discovered that" an "appointment or election to office is deficient." *Ryder v. United States*, 515 U.S. 717, 180 (1995). On the other hand, the doctrine—especially in its modern form—encourages prompt adjudication of a claim of "trespass" in the "executive power of appointment." *Id.* at 182. This is particularly so where, as here, the challenge implicates separation of powers and the need to prevent the Executive Branch from "aggrandizing its power at the expense of another branch." *Id.* at 182. "Any other rule," the Court has cautioned, "would create a disincentive" to challenge "questionable . . . appointments." *Id.* at 183.

In keeping with this trend toward solicitude for prompt appointments challenges, the D.C. Circuit has disapproved of the traditional insistence on direct quo warranto actions because they are "cumbersome" and "could easily operate to deprive a plaintiff with an otherwise legitimate claim of the opportunity to have his case heard." *SW Gen.*, 796 F.3d at 81. Instead, the circuit has emphasized that an interested party like Ms. English, possessing Article III standing to challenge a purported officer's appointment, may collaterally challenge actions taken by the officer with respect to that plaintiff—such as the actions taken by the defendants to prevent Ms. English from exercising her rightful role as acting Director of the CFPB. Indeed, the D.C. Circuit recently held that a plaintiff with a far less direct stake—a bank indirectly regulated by the

agency—could bring a pre-enforcement challenge to the constitutionality of the CFPB Director's appointment, even though the CFPB had taken no action at all with respect to that bank. *See State Nat. Bank of Big Spring v. Lew*, 795 F.3d 48, 54 (D.C. Cir. 2015).

The defendants do not even attempt to contest the two requirements set forth by the D.C. Circuit for such collateral challenges—namely, that  (1) "the plaintiff must bring his action at or around the time that the challenged government action is taken" and (2) that "the plaintiff must show that the agency or department involved has had reasonable notice under all the circumstances of the claimed defect in the official's title to office." *SW Gen.*, 796 F.3d at 81–82. Both requirements are easily satisfied here. Ms. English did not delay; she brought this case at the earliest possible opportunity—as soon it as became apparent that the defendants were taking specific actions to block her from exercising her rightful role as acting Director. And she gave the defendants notice at the same time, and they "do[] not challenge the adequacy of this notice." *Id.* at 82; *see Andrade v. Regnery*, 824 F.2d 1253, 1256 (D.C. Cir. 1987) ("The filing of the underlying suit . . . in and of itself notified the government of appellants' . . . challenge."). Accordingly, the de-facto-officer doctrine does not bar Ms. English from challenging Mr. Mulvaney's authority. *SW Gen.*, 796 F.3d at 82.

**B.** The defendants also reiterate their extreme position that the federal courts categorically lack authority to enjoin the President in his official acts. We have already explained at length why the defendants' position not only misstates the precedent on which they chiefly rely, *Mississippi v. Johnson*, 71 U.S. 501 (1866), and 150 years of subsequent judicial precedent, but would also risk destabilizing the constitutional separation of powers. *See* ECF No. 26, at 23–25. We do not repeat those arguments here.  In any event, the defendants' arguments do not support their contention that Ms. English has "no right to the relief she seeks." ECF No. 41, at 31

(capitalization omitted). To the contrary, the defendants do not deny that the Court at least has the power to enjoin Mr. Mulvaney if Ms. English has met all other requirements for a preliminary injunction.

### III.    Ms. English satisfies the remaining preliminary-injunction factors.

Whatever else may be true, everyone agrees (or at least claims to agree) that this unusual case requires a prompt resolution. The parties, the Bureau's employees, and the many businesses and consumers subject to the Bureau's authority all need clarity about who is properly in charge. Nevertheless, the defendants devote several pages of their opposition (ECF No. 41, at 33–40) to defending a startling proposition: Even *assuming* that Ms. English has shown that the defendants acted beyond their legal authority and usurped her position as the rightful acting Director of the CFPB, they say, this Court should nevertheless decline to issue any preliminary relief. The Court, they argue, should instead allow Mr. Mulvaney to illegally occupy the office of acting Director as this case plays out on a typical litigation schedule (and, eventually, becomes moot).

The defendants' suggestion makes no practical sense in light of the extraordinary circumstances of this case, would reward and encourage illegal temporary appointments in the future, and is a recipe for bureaucratic chaos. D.C. Circuit precedent is clear: the irreparable harm analysis *must* "assume[], without deciding, that the movant has demonstrated a likelihood that the non-movant's conduct violates the law," and courts should "examine only whether that violation, if true, inflicts irremediable injury." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 303 (D.C. Cir. 2006). The defendants' argument gives short shrift to that command, and likewise ignores the Court's obligation to significantly weigh the "overriding public interest" in the specific statutory requirements of the Dodd-Frank at issue here and "the general importance of [the] agency's faithful adherence to its statutory mandate." *Jacksonville Port Auth. v. Adams*, 556

F.2d 52, 59 (D.C. Cir. 1977); *see generally* Br. of Amicus Public Citizen, et al., ECF No. 27-1, at 16–22 (explaining why the public interest weighs in favor of an injunction).

As we explained in our motion, Ms. English has suffered an irreparable injury that will continue every day that Mr. Mulvaney claims to hold the office of acting Director. Assuming (again, as required by precedent) that she is likely to win on the merits, the harm she suffers is obvious: the usurpation of her position at the head of a federal agency in a role that will disappear as soon as the President nominates and the Senate confirms a new Director. Ms. English is the rightful acting Director of an independent agency tasked with protecting the nation's consumers, making critical decisions regarding policy and enforcement every day. As this Court has recognized, the loss of such a "statutory right to function" in a role like Ms. English's is an irreparable injury, *Berry v. Reagan*, 1983 WL 538, at *5 (D.D.C. Nov. 14, 1983)— and a harm felt not only by her but by the public.

The defendants' principal response is to claim that "[t]his is a textbook employment case" (ECF No. 41, at 35), analogizing it to run-of-the-mill employment disputes—none of which involve two competing claimants to the rightful head of a federal agency—and dismissing the few cases that fit this pattern. But the government never offers more analogous case law and never confronts the fact that the very nature of the acting Director position is that it is temporary: It will expire when the President nominates and the Senate confirms a new Director for the CFPB. Once a new Director is appointed, "neither a damages remedy nor a declaratory judgment would provide an adequate remedy" for Ms. English's lost time in office. *See Mackie v. Bush*, 809 F. Supp. 144, 147 (D.D.C. 1993), *vacated as moot sub nom. Mackie v. Clinton*, 10 F.3d 13 (D.C. Cir. 1993). With each passing day, then, Ms. English loses an irretrievable and irremediable legal entitlement. Her injury demands prompt intervention by this Court.

The government cannot deny that the injunction that Ms. English seeks would provide clarity to the public as to who is in charge of the CFPB. At the same time, the injunction would not prejudice the President's ability to appoint Mr. Mulvaney or anyone else as Director, pursuant to the Article II nominations process with the advice and consent of the Senate, after this Court rules on the merits of Ms. English's claim. Moreover, doubt over who is the legitimate acting Director hurts the public by casting a pall over the validity of the agency's actions, as actions taken by an illegally appointed Director may themselves be unlawful. *See, e.g.*, *F.E.C. v. NRA Political Victory Fund*, 6 F.3d 821 (D.C. Cir. 1993). If Mr. Mulvaney makes significant changes that end up being invalid due to the illegality of his appointment, it may be difficult for this Court or a subsequent Director to unscramble those actions. It also may be unlawful for subsequent officers to ratify Mr. Mulvaney's changes because the FVRA specifically prohibits the ex-post ratification of actions by officials appointed outside of the FVRA's parameters. *See* 5. U.S.C. § 3348(d). In addition to being ill-served by legitimate doubt as to any actions the CFPB takes, the public interest will also be hurt if this doubt has the effect of chilling the agency.

## CONCLUSION

The plaintiff's motion for a preliminary injunction should be granted.

Respectfully submitted,

*/s/ Deepak Gupta*
DEEPAK GUPTA (D.C. Bar No. 495451)
JONATHAN E. TAYLOR (D.C. Bar No. 1015713)
JOSHUA MATZ (*pro hac vice*) (D.C. Bar No. 1045064)
DANIEL TOWNSEND (*pro hac vice* to be filed)
GUPTA WESSLER PLLC
1900 L Street, NW, Suite 312
Washington, DC 20036
Phone: (202) 888-1741
Fax: (202) 888-7792
*deepak@guptawessler.com*

December 20, 2017                    *Attorneys for Plaintiff*

14

**CERTIFICATE OF SERVICE**

I hereby certify that on December 20, 2017, I electronically filed this reply brief through this Court's CM/ECF system. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

*/s/ Deepak Gupta*

Deepak Gupta