# U.S. District Court
# District of Columbia (Washington, DC)
# CIVIL DOCKET FOR CASE #: 1:17–cv–02534–TJK

ENGLISH v. TRUMP et al
Assigned to: Judge Timothy J. Kelly
Cause: 28:2201 Declaratory Judgment

Date Filed: 11/26/2017
Jury Demand: None
Nature of Suit: 890 Other Statutory Actions
Jurisdiction: U.S. Government Defendant

## Plaintiff

**LEANDRA ENGLISH**
*Deputy Director and Acting Director,*
*Consumer Financial Protection Bureau*

represented by **Deepak Gupta**
GUPTA WESSLER PLLC
1900 L Sreet, NW
Suite 312
Washington, DC 20036
(202) 888–1741
Email: deepak@guptawessler.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel Townsend**
GUPTA WESSLER PLLC
1900 L Street NW
Suite 312
Washington, DC 20036
202–888–1741
Fax: 202–888–7792
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joshua Matz**
GUPTA WESSLER PLLC
1900 L Sreet, NW
Suite 312
Washington, DC 20036
202–888–1741
Fax: 202–888–7792
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Rachel S. Bloomekatz**
GUPTA WESSLER PLLC
1148 Neil Avenue
Columbus, OH 43201
202–888–1741
Fax: 202–888–7792
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

| | | |
|---|---|---|
| **DONALD JOHN TRUMP** | represented by | **Brett A. Shumate** |
| *in his official capacity as President of the* | | U.S. Department of Justice |
| *United States of America* | | Civil – Federal Programs Branch |

**DONALD JOHN TRUMP**
*in his official capacity as President of the United States of America*

represented by

**Brett A. Shumate**
U.S. Department of Justice
Civil – Federal Programs Branch
950 Pennsylvania Ave.
Washington, DC 20530
202–514–2331
Email: brett.a.shumate@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew Joseph Berns**
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, DC 20530
(202) 616–8016
Fax: (202) 616–8470
Email: matthew.j.berns@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Benjamin Thomas Takemoto**
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
20 Massachusetts Ave. NW
Rm. 7109
Washington, DC 20530
(202) 532–4252
Fax: (202) 616–8470
Email: benjamin.takemoto@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**JOHN MICHAEL MULVANEY**
*in his capacity as the person claiming to be Acting Director of the Consumer Financial Protection Bureau*

represented by

**Brett A. Shumate**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew Joseph Berns**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Benjamin Thomas Takemoto**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**SHERROD BROWN**

represented by **Brianne Jenna Gorod**
CONSTITUTIONAL
ACCOUNTABILITY CENTER
1200 18th Street, NW
Suite 501
Washington, DC 20036
(202) 296–6889 ext. 304
Email: brianne@theusconstitution.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**MICHAEL CAPUANO**

represented by **Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**CATHERINE CORTEZ MASTO**

represented by **Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**CHARLIE CRIST**

represented by **Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**JOHN K. DELANEY**

represented by **Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**KEITH ELLISON**

represented by **Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**BILL FOSTER**

represented by **Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**BARNEY FRANK**                          represented by **Brianne Jenna Gorod**
                                          (See above for address)
                                          *LEAD ATTORNEY*
                                          *ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**DENNY HECK**                            represented by **Brianne Jenna Gorod**
                                          (See above for address)
                                          *LEAD ATTORNEY*
                                          *ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**JIM HIMES**                             represented by **Brianne Jenna Gorod**
                                          (See above for address)
                                          *LEAD ATTORNEY*
                                          *ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**RUBEN J. KIHUEN**                       represented by **Brianne Jenna Gorod**
                                          (See above for address)
                                          *LEAD ATTORNEY*
                                          *ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**DAN KILDEE**                            represented by **Brianne Jenna Gorod**
                                          (See above for address)
                                          *LEAD ATTORNEY*
                                          *ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**CAROLYN B. MALONEY**                    represented by **Brianne Jenna Gorod**
                                          (See above for address)
                                          *LEAD ATTORNEY*
                                          *ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**BOB MENENDEZ**                          represented by **Brianne Jenna Gorod**
                                          (See above for address)
                                          *LEAD ATTORNEY*
                                          *ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**GWEN S. MOORE**                         represented by **Brianne Jenna Gorod**
                                          (See above for address)
                                          *LEAD ATTORNEY*
                                          *ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**NANCY PELOSI**
represented by **Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**BRIAN SCHATZ**
represented by **Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**CHARLES E. SCHUMER**
represented by **Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**BRAD SHERMAN**
represented by **Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**CHRIS VAN HOLLEN**
represented by **Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**JUAN VARGAS**
represented by **Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**ELIZABETH WARREN**
represented by **Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**MAXINE WATERS**
represented by **Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**STENY HOYER**                    represented by **Brianne Jenna Gorod**
                                                  (See above for address)
                                                  *LEAD ATTORNEY*
                                                  *ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**NYDIA VELAZQUEZ**                represented by **Brianne Jenna Gorod**
                                                  (See above for address)
                                                  *LEAD ATTORNEY*
                                                  *ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**VICENTE GONZALEZ**               represented by **Brianne Jenna Gorod**
                                                  (See above for address)
                                                  *LEAD ATTORNEY*
                                                  *ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**STATE OF TEXAS**                 represented by **Andrew John Pincus**
                                                  MAYER BROWN PLLC
                                                  1999 K Street, NW
                                                  Washington, DC 20006
                                                  (202) 263–3220
                                                  Fax: (202) 263–5220
                                                  Email: apincus@mayerbrown.com
                                                  *LEAD ATTORNEY*
                                                  *ATTORNEY TO BE NOTICED*

                                                  **Scott A. Keller**
                                                  OFFICE OF THE TEXAS ATTORNEY
                                                  GENERAL
                                                  PO Box 12548 (MC 059)
                                                  Austin, TX 78711–2548
                                                  (512) 936–1700
                                                  Fax: (512) 474–2697
                                                  Email: scott.keller@oag.texas.gov
                                                  *LEAD ATTORNEY*
                                                  *ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**STATE OF WEST VIRGINIA**         represented by **Andrew John Pincus**
                                                  (See above for address)
                                                  *LEAD ATTORNEY*
                                                  *ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**STATE OF ALABAMA**               represented by **Andrew John Pincus**
                                                  (See above for address)
                                                  *LEAD ATTORNEY*
                                                  *ATTORNEY TO BE NOTICED*

**Amicus**

**STATE OF ARKANSAS**                      represented by  **Andrew John Pincus**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**STATE OF GEORGIA**                       represented by  **Andrew John Pincus**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**STATE OF LOUISIANA**                     represented by  **Andrew John Pincus**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**STATE OF OKLAHOMA**                      represented by  **Andrew John Pincus**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**STATE OF SOUTH CAROLINA**                represented by  **Andrew John Pincus**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**PUBLIC CITIZEN, INC.**                   represented by  **Rebecca H Smullin**
PUBLIC CITIZEN LITIGATION
GROUP
1600 20th Street NW
Washington, DC 20009
202−588−7714
Email: rsmullin@citizen.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**AMERICANS FOR FINANCIAL**                represented by  **Rebecca H Smullin**
**REFORM**                                 (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**CENTER FOR RESPONSIBLE
LENDING**

represented by **Rebecca H Smullin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**CONSUMER ACTION**

represented by **Rebecca H Smullin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**NATIONAL ASSOCIATION OF
CONSUMER ADVOCATES**

represented by **Rebecca H Smullin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**NATIONAL CONSUMER LAW
CENTER**

represented by **Rebecca H Smullin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**NATIONAL CONSUMERS LEAGUE**

represented by **Rebecca H Smullin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**NATIONAL FAIR HOUSING
ALLIANCE**

represented by **Rebecca H Smullin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**TZEDEK DC, INC.**

represented by **Rebecca H Smullin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**UNITED STATES PUBLIC
INTEREST RESEARCH GROUP
EDUCATION FUND, INC.**

represented by **Rebecca H Smullin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**ETHAN S BERNSTEIN**                    represented by    **Courtney L. Weiner**
                                                            LAW OFFICE OF COURTNEY
                                                            WEINER PLLC
                                                            1629 K Street, NW
                                                            Suite 300
                                                            Washington, DC 20006
                                                            (202) 827–9980
                                                            Fax: (202) 379–9749
                                                            Email: cw@courtneyweinerlaw.com
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

<u>**Amicus**</u>

**BENJAMIN P. EDWARDS**                  represented by    **Courtney L. Weiner**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

<u>**Amicus**</u>

**KATHLEEN C. ENGEL**                    represented by    **Courtney L. Weiner**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

<u>**Amicus**</u>

**ROBERT HOCKETT**                       represented by    **Courtney L. Weiner**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

<u>**Amicus**</u>

**DALIE JIMENEZ**                        represented by    **Courtney L. Weiner**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

<u>**Amicus**</u>

**ADAM J. LEVITIN**                      represented by    **Courtney L. Weiner**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

<u>**Amicus**</u>

**PATRICIA A. MCCOY**                    represented by    **Courtney L. Weiner**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

<u>**Amicus**</u>

**CHRISTOPHER LEWIS PETERSON**

represented by **Courtney L. Weiner**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Amicus**</u>

**JEFF SOVERN**

represented by **Courtney L. Weiner**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Amicus**</u>

**ARTHUR E. WILLMARTH, JR.**

represented by **Courtney L. Weiner**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Amicus**</u>

**JOYCE BEATTY**

represented by **Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Amicus**</u>

**WILLIAM "LACY" CLAY, JR.**

represented by **Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Amicus**</u>

**EMANUEL CLEAVER**

represented by **Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Amicus**</u>

**JOSEPH CROWLEY**

represented by **Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Amicus**</u>

**CHRISTOPHER DODD**

represented by **Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Amicus**</u>

**AL GREEN**        represented by   **Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**MAZIE K. HIRONO**        represented by   **Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**U.S. REPRESENTATIVE TIM JOHNSON**        represented by   **Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**PAUL E. KANJORSKI**        represented by   **Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**STEPHEN F. LYNCH**        represented by   **Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**GREGORY W. MEEKS**        represented by   **Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**JEFF MERKLEY**        represented by   **Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**BRAD MILLER**        represented by   **Brianne Jenna Gorod**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**PETER CONTI–BROWN**                   represented by   **Anna C. Haac**
                                                         TYCKO & ZAVAREEI, LLP
                                                         1828 L Street, NW
                                                         Suite 1000
                                                         Washington, DC 20036
                                                         (202) 973–0900
                                                         Fax: (202) 973–0950
                                                         Email: ahaac@tzlegal.com
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

**Amicus**

**DISTRICT OF COLUMBIA**                 represented by   **Carl James Schifferle**
                                                         OFFICE OF THE ATTORNEY
                                                         GENERAL FOR THE DISTRICT OF
                                                         COLUMBIA
                                                         Office of the Solicitor General
                                                         441 4th Street NW
                                                         Suite 600S
                                                         Washington, DC 20002
                                                         (202) 724–6624
                                                         Fax: (202) 730–1472
                                                         Email: carl.schifferle@dc.gov
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

**Amicus**

**CALIFORNIA**                           represented by   **Carl James Schifferle**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

**Amicus**

**CONNECTICUT**                          represented by   **Carl James Schifferle**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

**Amicus**

**DELAWARE**                             represented by   **Carl James Schifferle**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

**Amicus**

**HAWAII**                               represented by   **Carl James Schifferle**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

**Amicus**

**ILLINOIS**                                 represented by **Carl James Schifferle**
                                             (See above for address)
                                             *LEAD ATTORNEY*
                                             *ATTORNEY TO BE NOTICED*

**Amicus**

**IOWA**                                     represented by **Carl James Schifferle**
                                             (See above for address)
                                             *LEAD ATTORNEY*
                                             *ATTORNEY TO BE NOTICED*

**Amicus**

**MAINE**                                    represented by **Carl James Schifferle**
                                             (See above for address)
                                             *LEAD ATTORNEY*
                                             *ATTORNEY TO BE NOTICED*

**Amicus**

**MARYLAND**                                 represented by **Carl James Schifferle**
                                             (See above for address)
                                             *LEAD ATTORNEY*
                                             *ATTORNEY TO BE NOTICED*

**Amicus**

**MASSACHUSETTS**

**Amicus**

**MASSACHUSETTS**                            represented by **Carl James Schifferle**
                                             (See above for address)
                                             *LEAD ATTORNEY*
                                             *ATTORNEY TO BE NOTICED*

**Amicus**

**MINNESOTA**                                represented by **Carl James Schifferle**
                                             (See above for address)
                                             *LEAD ATTORNEY*
                                             *ATTORNEY TO BE NOTICED*

**Amicus**

**NEW MEXICO**                               represented by **Carl James Schifferle**
                                             (See above for address)
                                             *LEAD ATTORNEY*
                                             *ATTORNEY TO BE NOTICED*

**Amicus**

**NEW YORK**                                 represented by **Carl James Schifferle**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**OREGON**                          represented by   **Carl James Schifferle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**PENNSYLVANIA**                    represented by   **Carl James Schifferle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**RHODE ISLAND**                    represented by   **Carl James Schifferle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**VERMONT**                         represented by   **Carl James Schifferle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**WASHINGTON**                      represented by   **Carl James Schifferle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**CREDIT UNION NATIONAL**           represented by   **Theodore R. Flo**
**ASSOCIATION, INC**                                 BALLARD SPAHR LLP
1909 K Street, NW
12th Floor
Washington, DC 20006
(202) 661–2259
Fax: (202) 661–2299
Email: flot@ballardspahr.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**CHAMBER OF COMMERCE OF**          represented by   **Andrew John Pincus**
**THE UNITED STATES OF**                             (See above for address)

**AMERICA**

LEAD ATTORNEY
ATTORNEY TO BE NOTICED

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**STATE OF FLORIDA**                    represented by **Andrew John Pincus**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**STATE OF ARIZONA**                    represented by **Andrew John Pincus**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**STATE OF KANSAS**                    represented by **Andrew John Pincus**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**STATE OF MICHIGAN**                    represented by **Andrew John Pincus**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**STATE OF NEBRASKA**                    represented by **Andrew John Pincus**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 11/26/2017 | 1 | | COMPLAINT *FOR DECLARATORY AND INJUNCTIVE RELIEF (EMERGENCY TEMPORARY RESTRAINING ORDER SOUGHT)* against All Defendants ( Filing fee $ 400 receipt number 0090–5219866) filed by Leandra English. (Attachments: # 1 Civil Cover Sheet, # 2 Summons Summons to Donald John Trump, # 3 Summons Summons to John M. Mulvaney)(Gupta, Deepak) (Entered: 11/26/2017) |
| 11/26/2017 | 2 | | Emergency MOTION for Temporary Restraining Order by Leandra English (Attachments: # 1 Text of Proposed Order Proposed Order)(Gupta, Deepak) (Entered: 11/26/2017) |
| 11/27/2017 | 3 | | MEMORANDUM re 2 Emergency MOTION for Temporary Restraining Order filed by Leandra English by Leandra English. (Gupta, Deepak) (Entered: 11/27/2017) |

| 11/27/2017 | 4 | | AFFIDAVIT *OF DEEPAK GUPTA UNDER LOCAL RULE 65.1(B)* by Leandra English. (Gupta, Deepak) (Entered: 11/27/2017) |
|---|---|---|---|
| 11/27/2017 | 5 | | NOTICE of Appearance by Matthew Joseph Berns on behalf of All Defendants (Berns, Matthew) (Entered: 11/27/2017) |
| 11/27/2017 | | | MINUTE ORDER: The parties shall appear for a hearing on Plaintiff's 2 Motion for a Temporary Restraining Order today, November 27, 2017, at 4:30 p.m. in Courtroom 11. If the parties wish to reschedule the hearing for a later date, they shall confer and jointly contact chambers today by 3:30 p.m. with a mutually agreed upon date and time. (lctjk1) (Entered: 11/27/2017) |
| 11/27/2017 | 6 | | MOTION for Leave to File *Amici Curiae Brief* by SHERROD BROWN, MICHAEL CAPUANO, CATHERINE CORTEZ MASTO, CHARLIE CRIST, John K. Delaney, KEITH ELLISON, Bill Foster, BARNEY FRANK, Denny Heck, Jim Himes, Ruben J. Kihuen, Dan Kildee, Carolyn B. Maloney, Bob Menendez, Gwen S. Moore, NANCY PELOSI, Brian Schatz, CHARLES E. SCHUMER, BRAD SHERMAN, CHRIS VAN HOLLEN, Juan Vargas, ELIZABETH WARREN, MAXINE WATERS, STENY HOYER, NYDIA VELAZQUEZ, Vicente Gonzalez (Attachments: # 1 Exhibit Proposed Amici Curiae Brief, # 2 Exhibit Proposed Order)(Gorod, Brianne) (Entered: 11/27/2017) |
| 11/27/2017 | 7 | | ERRATA by LEANDRA ENGLISH. (Attachments: # 1 Corrected Complaint, # 2 Corrected Motion and Memorandum for Temporary Restraining Order)(Gupta, Deepak) (Entered: 11/27/2017) |
| 11/27/2017 | | | Minute Entry for proceedings held before Judge Timothy J. Kelly: Motion Hearing held on 11/27/2017 re 2 Emergency MOTION for Temporary Restraining Order filed by LEANDRA ENGLISH. Oral arguments heard and taken under advisement. (Court Reporter: Timothy Miller) (kh) (Entered: 11/27/2017) |
| 11/27/2017 | 8 | | NOTICE of Appearance by Benjamin Thomas Takemoto on behalf of All Defendants (Takemoto, Benjamin) (Entered: 11/27/2017) |
| 11/27/2017 | | | MINUTE ORDER: It is hereby ORDERED that any opposition to the 6 Motion for Leave to File Amici Curiae Brief shall be filed by tomorrow, November 28, 2017, at 10:00 a.m. Signed by Judge Timothy J. Kelly on 11/27/2017. (lctjk1) (Entered: 11/27/2017) |
| 11/27/2017 | 9 | | Memorandum in opposition to re 2 Emergency MOTION for Temporary Restraining Order filed by JOHN MICHAEL MULVANEY, DONALD JOHN TRUMP. (Takemoto, Benjamin) (Entered: 11/27/2017) |
| 11/27/2017 | 13 | | AMICUS BRIEF by SHERROD BROWN, MICHAEL CAPUANO, CATHERINE CORTEZ MASTO, CHARLIE CRIST, JOHN K. DELANEY, KEITH ELLISON, BILL FOSTER, BARNEY FRANK, VICENTE GONZALEZ, DENNY HECK, JIM HIMES, STENY HOYER, RUBEN J. KIHUEN, DAN KILDEE, CAROLYN B. MALONEY, BOB MENENDEZ, GWEN S. MOORE, NANCY PELOSI, BRIAN SCHATZ, CHARLES E. SCHUMER, BRAD SHERMAN, CHRIS VAN HOLLEN, JUAN VARGAS, NYDIA VELAZQUEZ, ELIZABETH WARREN, MAXINE WATERS. (jf) (Entered: 11/29/2017) |

| 11/27/2017 | | | SUMMONS (4) Issued as to JOHN MICHAEL MULVANEY, DONALD JOHN TRUMP, U.S. Attorney and U.S. Attorney General (jf) (Entered: 11/29/2017) |
|---|---|---|---|
| 11/28/2017 | | | MINUTE ORDER granting, for good cause shown, the 6 Motion for Leave to File Amici Curiae Brief. It is hereby ORDERED that the amici curiae brief (ECF No. 6–1) shall be deemed filed as of November 27, 2017. Signed by Judge Timothy J. Kelly on 11/28/2017. (lctjk1) (Entered: 11/28/2017) |
| 11/28/2017 | | | MINUTE ORDER: The parties shall appear for a further hearing on the 2 Motion for Temporary Restraining Order today, November 28, 2017, at 4:00 p.m in Courtroom 11. Signed by Judge Timothy J. Kelly on 11/28/2017. (lctjk1) (Entered: 11/28/2017) |
| 11/28/2017 | 10 | | NOTICE of Appearance by Scott A. Keller on behalf of STATE OF TEXAS (Keller, Scott) (Entered: 11/28/2017) |
| 11/28/2017 | 11 | | MOTION for Leave to File *Brief of Amici Curiae* by STATE OF TEXAS, STATE OF WEST VIRGINIA, STATE OF ALABAMA, STATE OF ARKANSAS, STATE OF GEORGIA, STATE OF LOUISIANA, STATE OF OKLAHOMA, STATE OF SOUTH CAROLINA (Attachments: # 1 Exhibit Proposed Brief of Texas et al., # 2 Text of Proposed Order)(Keller, Scott) Modified to add filers on 11/29/2017 (znmw). (Entered: 11/28/2017) |
| 11/28/2017 | 12 | | MOTION Plaintiff's Scheduling Request by LEANDRA ENGLISH (Gupta, Deepak) (Entered: 11/28/2017) |
| 11/28/2017 | | | Minute Order and Entry for Proceedings held before Judge Timothy J. Kelly: Motion Hearing held on 11/28/2017. Emergency MOTION for Temporary Restraining Order filed by Leandra English 2 DENIED for reasons stated on the record. (Court Reporter: Timothy Miller) (kh) (Entered: 11/28/2017) |
| 11/29/2017 | | | MINUTE ORDER: In light of the Court's ruling on Plaintiff's 2 Emergency Motion for Temporary Restraining Order, it is hereby ORDERED that the 11 Motion for Leave to File Amici Curiae Brief is DENIED AS MOOT, without prejudice to re–filing for leave to file a brief with respect to the merits or any additional motions for injunctive relief. Signed by Judge Timothy J. Kelly on 11/29/2017. (lctjk1) (Entered: 11/29/2017) |
| 11/29/2017 | | | MINUTE ORDER: For reasons stated on the record at the hearing on November 28, 2017, Plaintiff's 12 Motion to treat her emergency Motion for a Temporary Restraining Order as a Motion for a Preliminary Injunction is DENIED. To the extent that the Motion requests that the Court enter a briefing schedule on the merits, the Motion is DENIED without prejudice. The parties shall meet and confer, and submit, by December 1, 2017, a joint proposed schedule for briefing the merits and/or for briefing a preliminary injunction, should one be filed by Plaintiff by then. If the parties cannot agree on a joint proposed schedule, they shall submit separate proposed schedules. Signed by Judge Timothy J. Kelly on 11/29/2017. (lctjk1) (Entered: 11/29/2017) |
| 11/29/2017 | | | Set/Reset Deadlines: Joint Proposed Briefing Schedule due by 12/1/2017. (kh) (Entered: 11/29/2017) |
| 11/29/2017 | 14 | | NOTICE of Appearance by Brett A. Shumate on behalf of All Defendants (Shumate, Brett) (Entered: 11/29/2017) |

| 12/01/2017 | 15 | | TRANSCRIPT OF MOTION HEARING before Judge Timothy J. Kelly held on 11−27−2017; Page Numbers: 1–30. Date of Issuance: 12−1−2017. Court Reporter/Transcriber Timothy R. Miller, Telephone number 202−354−3111, Transcripts may be ordered by submitting the <u>Transcript Order Form</u><br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenc ed above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 12/22/2017. Redacted Transcript Deadline set for 1/1/2018. Release of Transcript Restriction set for 3/1/2018.(Miller, Timothy) (Entered: 12/01/2017) |
| 12/01/2017 | 16 | | TRANSCRIPT OF MOTION HEARING before Judge Timothy J. Kelly held on 11−28−2017; Page Numbers: 1–37. Date of Issuance: 12−1−2017. Court Reporter/Transcriber Timothy R. Miller, Telephone number 202−354−3111, Transcripts may be ordered by submitting the <u>Transcript Order Form</u><br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenc ed above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 12/22/2017. Redacted Transcript Deadline set for 1/1/2018. Release of Transcript Restriction set for 3/1/2018.(Miller, Timothy) (Entered: 12/01/2017) |
| 12/01/2017 | 17 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. JOHN MICHAEL MULVANEY served on 12/1/2017; DONALD JOHN TRUMP served on 12/1/2017, RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed on United States Attorney General. Date of Service Upon United States Attorney General 12/1/2017., RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 12/1/2017. ( Answer due for ALL FEDERAL DEFENDANTS by 1/30/2018.) (Attachments: |

| | | | |
|---|---|---|---|
| | | | # 1 USPS receipts and delivery information)(Gupta, Deepak) (Entered: 12/01/2017) |
| 12/01/2017 | 18 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Rachel Bloomekatz, :Firm– Gupta Wessler PLLC, :Address– rachel@guptawessler.com. Phone No. – 2028881741. Fax No. – 2028887792 Filing fee $ 100, receipt number 0090–5229960. Fee Status: Fee Paid. by LEANDRA ENGLISH (Attachments: # 1 Declaration Declaration of Rachel S. Bloomekatz)(Gupta, Deepak) (Entered: 12/01/2017) |
| 12/01/2017 | 19 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Joshua Matz, :Firm– Gupta Wessler PLLC, :Address– joshua@guptawessler.com. Phone No. – 2028881741. Fax No. – 2028887792 Filing fee $ 100, receipt number 0090–5229965. Fee Status: Fee Paid. by LEANDRA ENGLISH (Attachments: # 1 Declaration Declaration of Joshua Matz)(Gupta, Deepak) (Entered: 12/01/2017) |
| 12/01/2017 | 20 | | PROPOSED BRIEFING SCHEDULE by JOHN MICHAEL MULVANEY, DONALD JOHN TRUMP. (Berns, Matthew) (Entered: 12/01/2017) |
| 12/01/2017 | 21 | | PROPOSED BRIEFING SCHEDULE by LEANDRA ENGLISH. (Gupta, Deepak) (Entered: 12/01/2017) |
| 12/04/2017 | | | MINUTE ORDER granting 18 Motion for Leave to Appear Pro Hac Vice. Attorney Rachel S. Bloomekatz is hereby admitted pro hac vice to appear in this matter. Signed by Judge Timothy J. Kelly on 12/4/2017. (lctjk1) (Entered: 12/04/2017) |
| 12/04/2017 | | | MINUTE ORDER granting 19 Motion for Leave to Appear Pro Hac Vice. Attorney Joshua Matz is hereby admitted pro hac vice to appear in this matter. Signed by Judge Timothy J. Kelly on 12/4/2017. (lctjk1) (Entered: 12/04/2017) |
| 12/04/2017 | | | MINUTE ORDER: In light of the separate proposed briefing schedules submitted by the parties, it is hereby ORDERED that the parties shall appear for a scheduling conference tomorrow, December 5, 2017, at 11:00 a.m. in Courtroom 11. Signed by Judge Timothy J. Kelly on 12/4/2017. (lctjk1) (Entered: 12/04/2017) |
| 12/05/2017 | | | Minute Entry for proceedings held before Judge Timothy J. Kelly: Initial Scheduling Conference held on 12/5/2017. Scheduling Order to follow. (Court Reporter: Timothy Miller) (kh) (Entered: 12/05/2017) |
| 12/05/2017 | | | MINUTE ORDER: As discussed at today's scheduling conference, it is hereby ORDERED that: (1) Plaintiff shall file her motion for preliminary injunction by December 6, 2017; (2) Any amicus curiae briefs in support of Plaintiff's motion shall be filed by December 8, 2017; (3) Defendants shall file their opposition to Plaintiff's motion by December 18, 2017 at 1:00 p.m.; (4) Any amicus curiae briefs in support of Defendants' opposition shall be filed by December 18, 2017 at 1:00 p.m.; (5) Plaintiff shall file her reply in support of her motion by December 20, 2017 at 1:00 p.m.; and (6) A hearing on the motion is set for December 22, 2017 at 10:00 a.m. in Courtroom 11. Signed by Judge Timothy J. Kelly on 12/5/2017. (lctjk1) (Entered: 12/05/2017) |
| 12/06/2017 | 22 | | AMENDED COMPLAINT against All Defendants filed by LEANDRA ENGLISH.(Gupta, Deepak) (Entered: 12/06/2017) |

| | | | |
|---|---|---|---|
| 12/06/2017 | 23 | | MOTION for Preliminary Injunction by LEANDRA ENGLISH (Attachments: # 1 Proposed Order)(Gupta, Deepak) (Entered: 12/06/2017) |
| 12/06/2017 | 24 | | AFFIDAVIT re 23 MOTION for Preliminary Injunction by LEANDRA ENGLISH. (Attachments: # 1 Exhibit A (Memorandum of Director Richard Cordray), # 2 Exhibit B (Resignation Letter from Director Richard Cordray), # 3 Exhibit C (White House Press Statement))(Gupta, Deepak) (Entered: 12/06/2017) |
| 12/06/2017 | 25 | | MEMORANDUM re 23 MOTION for Preliminary Injunction filed by LEANDRA ENGLISH by LEANDRA ENGLISH. (Gupta, Deepak) (Entered: 12/06/2017) |
| 12/07/2017 | | | NOTICE OF ERROR re 25 Memorandum; emailed to deepak@guptawessler.com, cc'd 27 associated attorneys –– The PDF file you docketed contained errors: 1. In future, the memorandum in support and affidavits/exhibits should be attached to the motion docket entry, not filed separately. Do not refile. (znmw, ) (Entered: 12/07/2017) |
| 12/07/2017 | 26 | | ERRATA *(CORRECTED MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION)* by LEANDRA ENGLISH 23 MOTION for Preliminary Injunction filed by LEANDRA ENGLISH. (Gupta, Deepak) (Entered: 12/07/2017) |
| 12/08/2017 | 27 | | Unopposed MOTION for Leave to File *Brief as Amici Curiae In Support of Plaintiff's Motion for a Preliminary Injunction* by Public Citizen, Inc., AMERICANS FOR FINANCIAL REFORM, CENTER FOR RESPONSIBLE LENDING, CONSUMER ACTION, NATIONAL ASSOCIATION OF CONSUMER ADVOCATES, NATIONAL CONSUMER LAW CENTER, NATIONAL CONSUMERS LEAGUE, national fair housing alliance, Tzedek DC, Inc., United States Public Interest Research Group Education Fund, Inc. (Attachments: # 1 Exhibit Proposed amicus brief, # 2 Text of Proposed Order)(Smullin, Rebecca) (Entered: 12/08/2017) |
| 12/08/2017 | | | MINUTE ORDER granting, for good cause shown, the 27 Unopposed Motion for Leave to File Brief as Amici Curiae. It is hereby ORDERED that the amici curiae brief (ECF No. 27–1) shall be deemed filed as of December 8, 2017. Signed by Judge Timothy J. Kelly on 12/8/2017. (lctjk1) (Entered: 12/08/2017) |
| 12/08/2017 | 28 | | MOTION for Leave to File *Brief of Amicus Curiae Consumer Finance Regulation Scholars in Support of Plaintiff's Motion for a Preliminary Injunction* by ETHAN S BERNSTEIN, BENJAMIN P. EDWARDS, KATHLEEN C. ENGEL, ROBERT HOCKETT, DALIE JIMENEZ, ADAM J. LEVITIN, PATRICIA A. MCCOY, CHRISTOPHER LEWIS PETERSON, JEFF SOVERN, ARTHUR E. WILLMARTH, JR (Attachments: # 1 Text of Proposed Order Proposed Order, # 2 Exhibit Brief of Amicus Curiae Consumer Finance Regulation Scholars)(Weiner, Courtney) (Entered: 12/08/2017) |
| 12/08/2017 | | | MINUTE ORDER granting, for good cause shown, the 28 Motion for Leave to File Brief of Amicus Curiae. It is hereby ORDERED that the amicus curiae brief (ECF No. 28–2) shall be deemed filed as of December 8, 2017. Signed by Judge Timothy J. Kelly on 12/8/2017. (lctjk1) (Entered: 12/08/2017) |
| 12/08/2017 | 29 | | Unopposed MOTION for Leave to File *Brief of Current and Former Members of Congress as Amici Curiae in Support of Plaintiff's Motion for a Preliminary* |

| | | | |
|---|---|---|---|
| | | | *Injunction* by SHERROD BROWN, MICHAEL CAPUANO, CATHERINE CORTEZ MASTO, CHARLIE CRIST, JOHN K. DELANEY, KEITH ELLISON, BILL FOSTER, BARNEY FRANK, DENNY HECK, JIM HIMES, STENY HOYER, DAN KILDEE, CAROLYN B. MALONEY, BOB MENENDEZ, GWEN S. MOORE, NANCY PELOSI, BRIAN SCHATZ, CHARLES E. SCHUMER, BRAD SHERMAN, CHRIS VAN HOLLEN, JUAN VARGAS, NYDIA VELAZQUEZ, ELIZABETH WARREN, MAXINE WATERS, JOYCE BEATTY, WILLIAM "LACY" CLAY, JR, EMANUEL CLEAVER, JOSEPH CROWLEY, CHRISTOPHER DODD, AL GREEN, MAZIE K. HIRONO, TIM JOHNSON, PAUL E. KANJORSKI, STEPHEN F. LYNCH, GREGORY W. MEEKS, JEFF MERKLEY, BRAD MILLER (Attachments: # 1 Exhibit Proposed Amicus Brief, # 2 Exhibit Proposed Order)(Gorod, Brianne) (Entered: 12/08/2017) |
| 12/08/2017 | 30 | | Consent MOTION for Leave to File *Amicus Brief* by Peter Conti−Brown (Attachments: # 1 Exhibit Proposed Amicus Brief, # 2 Text of Proposed Order)(Haac, Anna) (Entered: 12/08/2017) |
| 12/08/2017 | 31 | | MOTION for Leave to File *Brief of Amici Curiae in Support of Plaintiff's Motion for a Preliminary Injunction* by DISTRICT OF COLUMBIA, CALIFORNIA, CONNECTICUT, DELAWARE, HAWAII, ILLINOIS, IOWA, MAINE, MARYLAND, MASSACHUSETTS, MINNESOTA, NEW MEXICO, NEW YORK, OREGON, PENNSYLVANIA, RHODE ISLAND, VERMONT, WASHINGTON (Attachments: # 1 Exhibit Brief of Amici Curiae In Support of Plaintiff's Motion for a Preliminary Injunction)(Schifferle, Carl) (Entered: 12/08/2017) |
| 12/08/2017 | 34 | | AMICUS BRIEF by JOYCE BEATTY, SHERROD BROWN, MICHAEL CAPUANO, WILLIAM "LACY" CLAY, JR, EMANUEL CLEAVER, CATHERINE CORTEZ MASTO, CHARLIE CRIST, JOSEPH CROWLEY, JOHN K. DELANEY, CHRISTOPHER DODD, KEITH ELLISON, BILL FOSTER, BARNEY FRANK, AL GREEN, DENNY HECK, JIM HIMES, MAZIE K. HIRONO, STENY HOYER, TIM JOHNSON, PAUL E. KANJORSKI, DAN KILDEE, STEPHEN F. LYNCH, CAROLYN B. MALONEY, GREGORY W. MEEKS, BOB MENENDEZ, JEFF MERKLEY, BRAD MILLER, GWEN S. MOORE, NANCY PELOSI, BRIAN SCHATZ, CHARLES E. SCHUMER, BRAD SHERMAN, CHRIS VAN HOLLEN, JUAN VARGAS, NYDIA VELAZQUEZ, ELIZABETH WARREN, MAXINE WATERS. (nunc pro tunc 12/08/2017)(jf) (Entered: 12/11/2017) |
| 12/08/2017 | 35 | | AMICUS BRIEF by ETHAN S BERNSTEIN, BENJAMIN P. EDWARDS, KATHLEEN C. ENGEL, ROBERT HOCKETT, DALIE JIMENEZ, ADAM J. LEVITIN, PATRICIA A. MCCOY, CHRISTOPHER LEWIS PETERSON, JEFF SOVERN, ARTHUR E. WILLMARTH, JR. (nunc pro tunc 12/08/2017) (jf) (Entered: 12/11/2017) |
| 12/11/2017 | | | MINUTE ORDER granting, nunc pro tunc, and for good cause shown, the 29 Unopposed Motion for Leave to File Brief of Current and Former Members of Congress as Amici Curiae. It is hereby ORDERED that the amici curiae brief (ECF No. 29−1) shall be deemed filed as of December 8, 2017. Signed by Judge Timothy J. Kelly on 12/11/2017. (lctjk1) (Entered: 12/11/2017) |
| 12/11/2017 | | | MINUTE ORDER granting, nunc pro tunc, and for good cause shown, the 30 Consent Motion for Leave to File Amicus Brief. It is hereby ORDERED that the |

| | | | |
|---|---|---|---|
| | | | amicus curiae brief (ECF No. 30–1) shall be deemed filed as of December 8, 2017. Signed by Judge Timothy J. Kelly on 12/11/2017. (lctjk1) (Entered: 12/11/2017) |
| 12/11/2017 | | | MINUTE ORDER granting, nunc pro tunc, and for good cause shown, the 31 Motion for Leave to File Brief of Amici Curiae. It is hereby ORDERED that the amici curiae brief (ECF No. 31–1) shall be deemed filed as of December 8, 2017. Signed by Judge Timothy J. Kelly on 12/11/2017. (lctjk1) (Entered: 12/11/2017) |
| 12/11/2017 | 32 | | AMICUS BRIEF by DISTRICT OF COLUMBIA, CALIFORNIA, CONNECTICUT, DELAWARE, HAWAII, ILLINOIS, IOWA, MAINE, MARYLAND, MASSACHUSETTS, MINNESOTA, NEW MEXICO, NEW YORK, OREGON, PENNSYLVANIA, RHODE ISLAND, VERMONT, WASHINGTON (nunc pro tunc 12/08/2017) (jf) (Entered: 12/11/2017) |
| 12/11/2017 | 33 | | AMICUS BRIEF by PETER CONTI–BROWN. (nunc pro tunc 12/08/2017) (jf) (Entered: 12/11/2017) |
| 12/11/2017 | 36 | | AMICUS BRIEF by AMERICANS FOR FINANCIAL REFORM, CENTER FOR RESPONSIBLE LENDING, CONSUMER ACTION, NATIONAL ASSOCIATION OF CONSUMER ADVOCATES, NATIONAL CONSUMER LAW CENTER, NATIONAL CONSUMERS LEAGUE, NATIONAL FAIR HOUSING ALLIANCE, PUBLIC CITIZEN, INC., TZEDEK DC, INC., UNITED STATES PUBLIC INTEREST RESEARCH GROUP EDUCATION FUND, INC. (nunc pro tunc 12/08/2017) (jf) (Entered: 12/11/2017) |
| 12/12/2017 | 37 | | Unopposed MOTION for Leave to File *Amicus Brief* by CREDIT UNION NATIONAL ASSOCIATION, INC (Attachments: # 1 Exhibit A – Proposed Amicus Brief, # 2 Text of Proposed Order)(Flo, Theodore) (Entered: 12/12/2017) |
| 12/14/2017 | | | MINUTE ORDER granting, for good cause shown, the 37 Unopposed Motion for Leave to File Amicus Brief. It is hereby ORDERED that the amicus curiae brief (ECF No. 37–1) shall be deemed filed as of December 12, 2017. Signed by Judge Timothy J. Kelly on 12/14/2017. (lctjk1) (Entered: 12/14/2017) |
| 12/14/2017 | 38 | | AMICUS BRIEF by CREDIT UNION NATIONAL ASSOCIATION, INC. (znmw) (Entered: 12/15/2017) |
| 12/18/2017 | 39 | | Unopposed MOTION for Leave to File *to File Amicus Curiae Brief Supporting Defendants* by THE CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA (Attachments: # 1 Exhibit A – Memorandum of Law of the Chamber of Commerce of the United States of America as Amicus Curiae Supporting Defendants, # 2 Exhibit B – Proposed Order)(Pincus, Andrew) (Entered: 12/18/2017) |
| 12/18/2017 | 40 | | MOTION for Leave to File by STATE OF TEXAS (Attachments: # 1 Exhibit Brief of Amici Curiae Texas et al, # 2 Text of Proposed Order Proposed Order)(Keller, Scott) (Entered: 12/18/2017) |
| 12/18/2017 | 41 | | RESPONSE re 23 MOTION for Preliminary Injunction filed by JOHN MICHAEL MULVANEY, DONALD JOHN TRUMP. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5)(Berns, Matthew) (Entered: 12/18/2017) |

| | | | |
|---|---|---|---|
| 12/18/2017 | | | MINUTE ORDER granting, for good cause shown, the 39 Unopposed Motion for Leave to File Amicus Curiae Brief. It is hereby ORDERED that the amicus curiae brief (ECF No. 39–1) shall be deemed filed as of December 18, 2017. Signed by Judge Timothy J. Kelly on 12/18/2017. (lctjk1) (Entered: 12/18/2017) |
| 12/18/2017 | | | MINUTE ORDER granting, for good cause shown, the 40 Motion for Leave to File Brief of Amici Curiae. It is hereby ORDERED that the amici curiae brief (ECF No. 40–1) shall be deemed filed as of December 18, 2017. Signed by Judge Timothy J. Kelly on 12/18/2017. (lctjk1) (Entered: 12/18/2017) |
| 12/18/2017 | 42 | | AMICUS BRIEF by CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA. (jf) (Entered: 12/19/2017) |
| 12/18/2017 | 43 | | AMICUS BRIEF by STATE OF ALABAMA, STATE OF ARKANSAS, STATE OF GEORGIA, STATE OF LOUISIANA, STATE OF OKLAHOMA, STATE OF SOUTH CAROLINA, STATE OF TEXAS, STATE OF WEST VIRGINIA, STATE OF FLORIDA, STATE OF ARIZONA, STATE OF KANSAS, STATE OF MICHIGAN, STATE OF NEBRASKA. (jf) (Entered: 12/19/2017) |
| 12/20/2017 | 44 | | REPLY to opposition to motion re 23 MOTION for Preliminary Injunction filed by LEANDRA ENGLISH. (Gupta, Deepak) (Entered: 12/20/2017) |
| 12/20/2017 | 45 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Daniel Townsend, :Firm– Gupta Wessler PLLC, :Address– daniel@guptawessler.com. Phone No. – 2028881741. Fax No. – 2028887792 Filing fee $ 100, receipt number 0090–5257815. Fee Status: Fee Paid. by LEANDRA ENGLISH (Attachments: # 1 Declaration of Daniel Townsend)(Gupta, Deepak) (Entered: 12/20/2017) |
| 12/21/2017 | | | MINUTE ORDER granting 45 Motion for Leave to Appear Pro Hac Vice. Attorney Daniel Townsend is hereby admitted pro hac vice to appear in this matter. Signed by Judge Timothy J. Kelly on 12/21/2017. (lctjk1) (Entered: 12/21/2017) |
| 12/22/2017 | | | Minute Entry for proceedings held before Judge Timothy J. Kelly: Motion Hearing held on 12/22/2017 re 23 MOTION for Preliminary Injunction filed by LEANDRA ENGLISH. Oral arguments heard and taken under advisement. (Court Reporter: Timothy Miller) (kh) (Entered: 12/22/2017) |
| 01/09/2018 | 46 | | TRANSCRIPT OF PRELIMINARY INJUNCTION HEARING before Judge Timothy J. Kelly held on 12–22–2017; Page Numbers: 1–87; Date of Issuance: 1–9–2018; Court Reporter/Transcriber: Timothy R. Miller, Telephone number (202) 354–3111, Transcripts may be ordered by submitting the <a href="http://www.dcd.uscourts.gov/node/110">Transcript Order Form</a><P></P><P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<P>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on |

| | | | |
|---|---|---|---|
| | | | our website at www.dcd.uscourts.gov.\<P>\</P> Redaction Request due 1/30/2018. Redacted Transcript Deadline set for 2/9/2018. Release of Transcript Restriction set for 4/9/2018.(Miller, Timothy) (Entered: 01/09/2018) |
| 01/10/2018 | 47 | 75 | MEMORANDUM OPINION AND ORDER denying 23 Motion for Preliminary Injunction. See order for details. Signed by Judge Timothy J. Kelly on 1/10/2018. (lctjk1) (Entered: 01/10/2018) |
| 01/12/2018 | 48 | 25 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 47 Order on Motion for Preliminary Injunction by LEANDRA ENGLISH. Filing fee $ 505, receipt number 0090–5285487. Fee Status: Fee Paid. Parties have been notified. (Attachments: # 1 Exhibit District Court Memorandum Opinion and Order)(Gupta, Deepak) (Entered: 01/12/2018) |

LEANDRA ENGLISH,
            *Plaintiff*,

        v.

DONALD J. TRUMP and
JOHN M. MULVANEY,
            *Defendants*.

Case No. 1:17-cv-02534

### PLAINTIFF'S NOTICE OF APPEAL

Notice is hereby given that Plaintiff Leandra English appeals to the United States Court of Appeals for the District of Columbia Circuit from the order of this Court denying her motion for a preliminary injunction, entered on January 10, 2018. *See* Ex. 1. She brings this appeal under 28 U.S.C. § 1292.

In addition, under 28 U.S.C. § 1657(a) and Circuit Rule 47.2(a), the plaintiff is entitled to—and hereby requests—expedited appellate review. *See* 28 U.S.C. § 1657(a) ("[E]ach court of the United States shall . . . expedite the consideration of any action . . . for temporary or preliminary injunctive relief."); Circuit Rule 47.2(a) (directing that the clerk shall "prepare an expedited schedule for briefing and argument" in "an action seeking . . . preliminary or injunctive relief").

This case presents precisely the sort of extraordinary circumstances that justify expedited consideration. The plaintiff is entitled by law to serve as Acting Director of the Consumer Financial Protection Bureau (CFPB). *See* 12 U.S.C. § 5491(b)(5)(B). Defendant Donald J. Trump, however, has unlawfully purported to appoint Defendant John M. Mulvaney to that position. As a result, the plaintiff is suffering a continuing and manifestly irreparable injury: the usurpation of

her position at the fore of a federal agency in a role that will disappear as soon as the President nominates and the Senate confirms a new Director. Moreover, there is an urgent public need for clarity as to the Acting Director position at the CFPB. The CFPB is the primary federal regulator of many consumer financial products and services, issuing rules and taking enforcement actions affecting a large portion of the economy. *See* David H. Carpenter, *The Consumer Financial Protection Bureau (CFPB)*, at 9–14, CRS (2014). The dispute between the plaintiff, the President, and Mr. Mulvaney has generated substantial attention in the media, which has repeatedly noted the existence of public confusion over the CFPB's leadership. Until the full judicial process has run its course, the Bureau's employees, the companies it regulates, and millions of American consumers will continue to suffer under a cloud of disruptive legal uncertainty.

In light of these circumstances, the plaintiff respectfully requests that the Court of Appeals accord expedited treatment to this case.

Respectfully submitted,

*/s/ Deepak Gupta*
DEEPAK GUPTA (D.C. Bar No. 495451)
JONATHAN E. TAYLOR (D.C. Bar No. 1015713)
JOSHUA MATZ (*pro hac vice*) (D.C. Bar No. 1045064)
DANIEL TOWNSEND (*pro hac vice*)
GUPTA WESSLER PLLC
1900 L Street, NW, Suite 312
Washington, DC 20036
Phone: (202) 888-1741
Fax: (202) 888-7792
*deepak@guptawessler.com*

January 12, 2018                    *Attorneys for Plaintiff Leandra English*

2

**CERTIFICATE OF SERVICE**

I hereby certify that on January 12, 2018, I electronically filed this notice of appeal through this Court's CM/ECF system. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

*/s/ Deepak Gupta*
Deepak Gupta

# Exhibit 1

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LEANDRA ENGLISH,

      *Plaintiff*,

    v.

DONALD J. TRUMP *et al.*,

      *Defendants*.

Civil Action No. 17-2534 (TJK)

## <u>MEMORANDUM OPINION AND ORDER</u>

This case concerns whether the President is authorized to name an acting Director of the Consumer Financial Protection Bureau ("CFPB") or whether his choice must yield to the ascension of the Deputy Director, who was installed in that office by the outgoing Director in the hours before he resigned. The CFPB is a government agency created after the financial crisis of 2007-2008 by the Dodd-Frank Wall Street Reform and Consumer Protection Act (the "Dodd-Frank Act" or "Dodd-Frank"), Pub. L. No. 111-203, 124 Stat. 1376 (2010). The CFPB's previous Director, Richard Cordray, resigned effective at midnight on the day after Thanksgiving: Friday, November 24, 2017. That same day, he named Plaintiff Leandra English the CFPB's Deputy Director, in an apparent attempt to select his successor. But the President, Defendant Donald John Trump, made his own appointment that day, announcing that Defendant John Michael Mulvaney, who serves as the Director of the Office of Management and Budget ("OMB"), would also serve as acting Director of the CFPB upon Cordray's resignation.

English claims that, by operation of the Dodd-Frank Act, she—and only she—is now entitled to be the acting Director of the CFPB. She seeks a preliminary injunction that would restrain the President from appointing an acting Director other than her, require the President to

withdraw Mulvaney's appointment, and prohibit Mulvaney from serving as acting Director. Defendants, joined by the CFPB's General Counsel, argue that the President's appointment of Mulvaney is valid under a separate statute, the Federal Vacancies Reform Act of 1998 (the "FVRA"), 5 U.S.C. § 3345 *et seq.*, which they contend provides the President an available method to fill Executive Branch vacancies such as this one. They urge the Court to deny the injunction.

The merits of this case turn on a question of statutory interpretation, where "[t]he 'role of this Court is to apply the statute[s] as [they are] written—even if . . . some other approach might accord with good policy.'" *Loving v. IRS*, 742 F.3d 1013, 1022 (D.C. Cir. 2014) (quoting *Burrage v. United States*, 134 S. Ct. 881, 892 (2014)). Thus, the particular policies or priorities that English or Mulvaney might pursue as the CFPB's acting Director are irrelevant to the Court's analysis. For the reasons explained below, including that English has not demonstrated a likelihood of success on the merits or shown that she will suffer irreparable injury absent injunctive relief, her request for a preliminary injunction is **DENIED**.

## I.   Statutory Background

### A.   The Federal Vacancies Reform Act of 1998

"Article II of the Constitution requires that the President obtain 'the Advice and Consent of the Senate' before appointing 'Officers of the United States.'" *NLRB v. SW Gen., Inc.*, 137 S. Ct. 929, 934 (2017) (quoting U.S. Const. art. II, § 2, cl. 2). "Given this provision, the responsibilities of an office requiring Presidential appointment and Senate confirmation— known as a 'PAS' office—may go unperformed if a vacancy arises and the President and Senate cannot promptly agree on a replacement." *Id.* "Congress has long accounted for this reality by authorizing the President to direct certain officials to temporarily carry out the duties of a vacant PAS office in an acting capacity, without Senate confirmation." *Id.*

2

In some cases, Congress has provided agency-specific rules for acting officers.  *See, e.g.*, 12 U.S.C. § 4 (providing that the Deputy Comptrollers of the Currency shall perform the duties of the Comptroller during the latter's "vacancy," "absence," or "disability").  But since at least the 1860s, Congress has also provided general rules that apply to executive vacancies more broadly, across a wide range of government agencies.  *See SW Gen.*, 137 S. Ct. at 935-36.  Over the years, these authorizations have evolved, and have included default rules that allowed a PAS officer's "assistant" to take over her duties automatically, with provisions that also permitted the President to fill the vacancy with another person meeting certain qualifications, such as a person currently serving in a PAS office.  *See id.*

The current iteration of Congress' general rule for acting officers is the FVRA, which was passed in part to address perceived threats to the Senate's advice and consent power that arose in the 1990s.  *See id.* at 936.  As such, the FVRA imposes carefully calibrated limits on who can be appointed as an acting PAS officer and how long they may serve.  *See* 5 U.S.C. §§ 3345, 3346.  Its default rule is that the officer's "first assistant" takes over as acting officer. *Id.* § 3345(a)(1).  However, the President may override that rule by appointing a different officer or employee from within the same agency, *see id.* § 3345(a)(3), or a PAS officer from a different agency, *see id.* § 3345(a)(2).  The FVRA generally forbids acting officers from serving for more than 210 days.  *See id.* § 3346.  In addition, with certain exceptions, a person may not serve as an acting officer if he has been nominated for the permanent position.  *See id.* § 3345(b).

The FVRA generally covers any PAS office in any "Executive agency" in the event the officer "dies, resigns, or is otherwise unable to perform the functions and duties of the office." *Id.* § 3345(a).  Certain offices are specifically excluded from the statute's scope, including members of any multi-member body that "governs an independent establishment or Government

3

corporation." *Id.* § 3349c(1)(B).  In addition, unless another statute expressly addresses the appointment of an acting officer, the FVRA provides that it is the "exclusive means" for any such appointments within its scope. *Id.* § 3347(a).  If no one can serve as acting officer under the FVRA, the position remains vacant. *Id.* § 3348(b).

### B.    The Dodd-Frank Wall Street Reform and Consumer Protection Act

"In response to the financial crisis in 2008 . . . Congress passed and President Obama signed the Dodd-Frank [Act]." *State Nat'l Bank of Big Spring v. Lew*, 795 F.3d 48, 51 (D.C. Cir. 2015).  Title X of Dodd-Frank established the CFPB to "regulate the offering and provision of consumer financial products or services under the Federal consumer financial laws." *CFPB v. Accrediting Council for Indep. Colls. & Schs.*, 854 F.3d 683, 687 (D.C. Cir. 2017) (quoting 12 U.S.C. § 5491(a)); *see also* 12 U.S.C. § 5492(a) (listing the CFPB's powers).  The CFPB's purpose is to "implement and, where applicable, enforce Federal consumer financial law consistently for the purpose of ensuring that all consumers have access to markets for consumer financial products and services and that markets for consumer financial products and services are fair, transparent, and competitive." 12 U.S.C. § 5511(a).  The "Federal consumer financial law" the CFPB is charged with enforcing "includes [Title X of Dodd-Frank] and eighteen pre-existing consumer protection statutes." *Accrediting Council,* 854 F.3d at 687 (citing 12 U.S.C. § 5481(12), (14)).  Dodd-Frank vested the CFPB with "broad 'rulemaking, supervisory, investigatory, adjudicatory, and enforcement authority'" to carry out its mission. *Id.* at 688 (quoting *Morgan Drexen, Inc. v. CFPB*, 785 F.3d 684, 687 (D.C. Cir. 2015)).

The Dodd-Frank Act established the CFPB as an "independent bureau" within the Federal Reserve System. 12 U.S.C. § 5491(a).  However, unlike many other independent agencies within the Executive Branch, it is led by a single Director. *Id.* § 5491(b)(1).  The Director is appointed by the President with the advice and consent of the Senate, and may be

4

removed only by the President for cause. *Id.* § 5491(b)(2), (c)(3).[1] The Dodd-Frank Act establishes a five-year term for the Director. *Id.* § 5491(c)(1). The CFPB's structure is also marked by a number of other unusual features: for example, the CFPB receives funding from the Federal Reserve, as opposed to Congress. *Id.* § 5497(a). Moreover, other Executive Branch officers may not exercise control over the CFPB's communications with Congress about potential legislation. *See id.* § 5492(c)(4). The Dodd-Frank Act also created a Deputy Director of the CFPB, who "shall— (A) be appointed by the Director, and (B) serve as acting Director in the absence or unavailability of the Director." *Id.* § 5491(b)(5). In addition, Dodd-Frank provides that "[e]xcept as otherwise provided expressly by law, all Federal laws dealing with . . . officers [or] employees . . . apply to the exercise of the powers of the [CFPB]." *Id.* § 5491(a).

## II.     Factual and Procedural Background

### A.     Cordray's Resignation and the Dueling Appointments of English and Mulvaney

This controversy was set in motion on the day after Thanksgiving: Friday, November 24, 2017. That day, as consumers thronged the country's shopping malls, CFPB Director Cordray resigned from his position effective as of midnight, well short of the completion of his five-year term. *See* ECF No. 22 ("Am. Compl.") ¶¶ 11-12; ECF No. 24 ("English Decl.") ¶ 6. He also named English, his Chief of Staff, to serve as the CFPB's Deputy Director—a position that apparently no one had occupied since August 2015—effective at noon. *See* English Decl. ¶ 4; ECF No. 41-2 at 2 n.1. At 2:30 p.m., Cordray publicly announced the decision, explaining that the appointment was intended "to ensure an orderly succession for this independent agency" by effectively making English the acting Director after he left office. English Decl. ¶ 5. He also

---

[1] An action challenging the constitutionality of this removal restriction is currently pending before the D.C. Circuit sitting *en banc*. *See PHH Corp. v. CFPB*, 839 F.3d 1 (D.C. Cir. 2016), *vacated, reh'g en banc granted*, No. 15-1177 (D.C. Cir. Feb. 16, 2017).

stated that having his Chief of Staff serve as acting Director "would minimize operational disruption and provide for a smooth transition given her operational expertise." *Id.* English had previously served in a number of other roles at the CFPB, OMB, and other federal agencies. *See id.* ¶¶ 2-3.

But the President had other plans on that busy day. He issued a memorandum directing Mulvaney to "perform the functions and duties" of the CFPB Director "until the position is filled by appointment or subsequent designation, effective 12:01 a.m. eastern standard time, November 25, 2017." ECF No. 41-1. The President cited the FVRA as the basis for Mulvaney's designation as the CFPB's acting Director. *Id.* At approximately 8:50 p.m., the White House issued a statement announcing the designation. English Decl. ¶ 7.

The next day, Saturday, November 25, the Department of Justice's Office of Legal Counsel issued a memorandum confirming legal advice it had provided orally the previous day: that the President was lawfully permitted to designate an acting Director of the CFPB pursuant to the FVRA. *See* ECF No. 41-2. That same day, the CFPB's General Counsel issued a memorandum to CFPB senior management reaching the same conclusion. *See* ECF No. 41-3. Subsequently, in a conference call on Sunday, November 26, the Associate Directors of the CFPB's six divisions agreed that they would act consistently with the understanding that Mulvaney was the acting Director. *See* ECF No. 41-4 ("Fulton Decl.") ¶ 6.

On Monday, November 27, Mulvaney showed up for work at the CFPB's facilities and was provided access to the Director's office. *Id.* ¶ 7. As of early December, he was spending three days a week working there, and three days a week at OMB. *See* ECF No. 41-5 at 1. He regularly receives memoranda intended for the CFPB Director, including memoranda requesting decisions from the Director. Fulton Decl. ¶ 9. He also issues directives with which CFPB staff

6

comply. *Id.* ¶ 10. On December 4, he held a CFPB press roundtable during which he described some of the activity he had undertaken as acting Director. *See* ECF No. 41-5. Also, the CFPB's website lists him as the acting Director. *See* CFPB, https://www.consumerfinance.gov/about-us/the-bureau/about-director/ (last accessed Jan. 10, 2018). In summary, the record evidence suggests that CFPB "operations have continued with the understanding that Mick Mulvaney is the Acting Director." Fulton Decl. ¶ 8. Indeed, it is notable that the CFPB's General Counsel and other CFPB attorneys are listed as "Of Counsel" on Defendants' opposition brief. ECF No. 41 ("Def. Opp.") at 40.

For her part, English continues to work at the CFPB, apparently at a separate facility from Mulvaney. *See* ECF No. 41-5 at 2. She has held herself out as the acting Director by sending a number of emails to CFPB staff to that effect. *See id.* at 12. She has also held herself out as the acting Director in meetings with Congressional leaders and other stakeholders. *See* ECF No. 16 at 11:19-24. In response, Mulvaney has sent her a number of emails asking her to stop holding herself out as acting Director. *See* ECF No. 41-5 at 4, 12. He has also sent her emails asking her to perform certain customary duties of the Deputy Director. *See id.* at 4-5, 12. As of December 4, he had not received a response. *Id.* at 4. However, during the press roundtable held on that same day, Mulvaney unequivocally stated that he was not considering terminating her. *Id.* at 5. As of late December, all parties agreed that these basic facts remained unchanged. ECF No. 46 ("PI Hr'g Tr.") at 4:3-10, 6:3-10.

### B. Procedural History

On November 26, 2017, English filed this lawsuit against the President and Mulvaney, requesting declaratory and injunctive relief. ECF No. 1. Also on November 26, she filed an emergency motion for a temporary restraining order ("TRO") restraining the President from appointing any acting Director other than her, requiring the President to withdraw Mulvaney's

7

appointment, and prohibiting Mulvaney from serving as acting Director. ECF No. 2. On November 27, the Court held a hearing on the motion. ECF No. 15. That same day, Defendants filed their opposition to English's motion. ECF No. 9. The next day, November 28, the Court held another hearing and denied the TRO motion, finding that English had not shown a likelihood of success on the merits and had otherwise failed to meet the prerequisites for emergency relief. ECF No. 16. On December 6, English filed an amended complaint, Am. Compl., and moved for a preliminary injunction seeking substantially the same relief, ECF No. 23. On December 7, English filed a corrected version of her brief in support. ECF No. 26 ("Mot."). On December 18, Defendants filed their opposition to English's motion. Def. Opp. On December 20, English filed her reply. ECF No. 44 ("Reply to Def. Opp."). On December 22, the Court held a hearing on the motion for a preliminary injunction. PI Hr'g Tr.

## III.    Legal Standard

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To warrant a preliminary injunction, a plaintiff must establish that (1) she "is likely to succeed on the merits"; (2) she "is likely to suffer irreparable harm in the absence of preliminary relief"; (3) the "balance of equities" tips in her favor; and (4) "an injunction is in the public interest." *Id.* at 20; *accord Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014). The last two factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). The plaintiff "bear[s] the burdens of production and persuasion" when moving for a preliminary injunction. *Qualls v. Rumsfeld*, 357 F. Supp. 2d 274, 281 (D.D.C. 2005) (citing *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004)).

"Before the Supreme Court's decision in *Winter*, courts weighed the preliminary-injunction factors on a sliding scale, allowing a weak showing on one factor to be overcome by a

8

strong showing on another factor." *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 205 F. Supp. 3d 4, 26 (D.D.C. 2016) (citing *Davenport v. Int'l Bhd. of Teamsters*, 166 F.3d 356, 360-61 (D.C. Cir. 1999)). However, the D.C. Circuit has "suggested, without deciding, that *Winter* should be read to abandon the sliding-scale analysis in favor of a 'more demanding burden' requiring a plaintiff to independently demonstrate both a likelihood of success on the merits and irreparable harm." *Id.* (quoting *Sherley v. Sebelius*, 644 F.3d 388, 392-93 (D.C. Cir. 2011)); *see also Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1292 (D.C. Cir. 2009).

Regardless of whether the sliding-scale analysis survives *Winter* in this Circuit, it is clear that a plaintiff's failure to show a likelihood of success on the merits is, standing alone, sufficient to defeat the motion. *Standing Rock*, 205 F. Supp. 3d at 26 (citing *Ark. Dairy Co-op Ass'n, Inc. v. USDA*, 573 F.3d 815, 832 (D.C. Cir. 2009)). In addition, "the basis of injunctive relief in the federal courts has always been irreparable harm." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (quoting *Sampson v. Murray*, 415 U.S. 61, 88 (1974)). As such, a plaintiff must show that at least some "irreparable injury is *likely* in the absence of an injunction," regardless of whether she satisfies the other three factors. *Winter*, 555 U.S. at 21-22 (emphasis in original); *see Chaplaincy*, 454 F.3d at 297.

Finally, the purpose of a preliminary injunction "is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). When a plaintiff seeks an injunction that would alter the status quo rather than merely preserve it (*i.e.*, a mandatory injunction), some district courts in this Circuit have applied an even higher standard. *See, e.g.*, *Elec. Privacy Info. Ctr. v. DOJ*, 15 F. Supp. 3d 32, 39 (D.D.C. 2014) (collecting cases); *Columbia Hosp. for Women Found., Inc. v. Bank of Tokyo-Mitsubishi Ltd.*, 15 F. Supp. 2d 1, 4 (D.D.C. 1997) ("[W]here an injunction is mandatory—that

9

is, where its terms would alter, rather than preserve, the status quo by commanding some positive act—the moving party must meet a higher standard than in the ordinary case by showing clearly that he or she is entitled to relief or that extreme or very serious damage will result from the denial of the injunction." (internal quotation marks omitted) (quoting *Phillip v. Fairfield Univ.*, 118 F.3d 131, 133 (2d Cir. 1997))), *aff'd*, 159 F.3d 636 (D.C. Cir. 1998). "The D.C. Circuit has not opined on the issue, but application of a heightened standard of review to requests for mandatory preliminary injunctive relief has been adopted in other Circuits." *Singh v. Carter*, 185 F. Supp. 3d 11, 17 n.3 (D.D.C. 2016) (collecting cases).

The Court need not resolve the question of whether the sliding scale test is viable after *Winter*. As explained in more detail below, because English "cannot meet the less demanding 'sliding scale' standard, [she] cannot satisfy the more stringent standard alluded to by the Court of Appeals." *Kingman Park Civic Ass'n v. Gray*, 956 F. Supp. 2d 230, 241 (D.D.C. 2013). Similarly, the Court need not determine the nature of the injunction sought by English, because even under the standard governing prohibitive injunctions, she cannot meet her burden. *See, e.g.*, *Sataki v. Broad. Bd. of Governors*, 733 F. Supp. 2d 1, 11 n.12 (D.D.C. 2010) (declining to determine whether to apply a higher standard for a mandatory injunction because plaintiff could not meet the traditional standard).

## IV.    Analysis

The Court finds that English is not likely to succeed on the merits of her claims, nor is she likely to suffer irreparable harm absent the injunctive relief sought. Moreover, the balance of the equities and the public interest also weigh against granting the relief. Therefore, English has not met the exacting standard to obtain a preliminary injunction.

10

### A. Likelihood of Success on the Merits

English asserts several different causes of action in her Amended Complaint, but all of them—including her claim that Mulvaney's appointment is invalid because it violates the Constitution's Appointments Clause—turn on her argument that the President is not statutorily authorized to appoint Mulvaney as the CFPB's acting Director. Am. Compl. ¶¶ 19-28; PI Hr'g Tr. at 16:20-19:25. Accordingly, the Court organizes its analysis of the merits around two issues: (1) whether the President is authorized by statute to appoint an acting Director of the CFPB; and (2) if he is so authorized, whether he may appoint Mulvaney to that position.

#### 1. The President's Authority to Appoint the CFPB's Acting Director

English argues that she acceded to the CFPB's acting Director position by operation of the Dodd-Frank Act, and that the President lacks the authority under the FVRA to designate an acting Director. Mot. at 6-17. She asserts that the Dodd-Frank Act's provision that its Deputy Director "shall . . . be appointed by the Director [and] serve as acting Director in the absence or unavailability of the Director" displaces the President's authority under the FVRA to designate an acting CFPB Director. *Id.* at 7-8. According to English, Dodd-Frank and the FVRA are in "unavoidable conflict," *id.* at 9, which "must be resolved against application of the FVRA" because "Dodd-Frank was enacted later in time, and speaks with greater specificity to the question at hand," *id.* at 7. Defendants argue that the FVRA is not displaced by Dodd-Frank's Deputy Director provision, and remains available as an option for the President to fill the CFPB's acting Director position. Def. Opp. at 12.

11

## a.     The FVRA's Applicability

As an initial matter, the Court must determine whether the FVRA—independent of whether it is displaced by the Deputy Director provision of the Dodd-Frank Act—authorizes the President's appointment of the CFPB's acting Director on its own terms.  It clearly does.

The FVRA applies if "an officer of an Executive agency . . . whose appointment to office is required to be made by the President, by and with the advice and consent of the Senate, dies, resigns, or is otherwise unable to perform the functions and duties of the office."  5 U.S.C. § 3345(a).  Under those conditions, the FVRA provides that "the President (and only the President) may direct a person who serves in an office for which appointment is required to be made by the President, by and with the advice and consent of the Senate, to perform the functions and duties of the vacant office temporarily in an acting capacity."  *Id.* § 3345(a)(2).

The CFPB is "an Executive Agency."  12 U.S.C. § 5491(a).  The Director of the CFPB is "appointed by the President, by and with the advice and consent of the Senate."  *Id.* § 5491(b)(2).  Director Cordray resigned effective at midnight on November 24, 2017.  English Decl. ¶ 6.  Therefore, a plain reading of the FVRA's text allows the President to direct a person who serves in a PAS office to "perform the functions and duties of the [CFPB Director] temporarily in an acting capacity."  5 U.S.C. § 3345(a)(2).

English argues that the FVRA is inapplicable because the CFPB Director is excluded from its coverage.  *See* Mot. at 16-17.  She cites an FVRA provision that excludes certain officers, including "any member who is appointed by the President, by and with the advice of the Senate to any board, commission, or similar entity that— (A) is composed of multiple members; and (B) governs an independent establishment or Government corporation."  5 U.S.C. § 3349c(1).  Of course, this exception does not directly apply to the CFPB Director, because the

12

CFPB is not a multi-member body.  12 U.S.C. § 5491(a), (b)(1).  English argues, however, that the exception indirectly applies, because the CFPB Director (whether permanent or acting) also serves on the Board of Directors of the Federal Deposit Insurance Corporation ("FDIC"), which is such a multi-member body.  Mot. at 16-17; *see* 12 U.S.C. § 1812(a)(1)(B), (d)(2).  Therefore, she concludes, § 3349c(1) of the FVRA prohibits the President from using it to name an acting Director of the CFPB.

English misconstrues this statutory exception.  By its terms, it applies only to FDIC board members if they are "appointed by the President, by and with the advice and consent of the Senate to" the board.  5 U.S.C. § 3349c(1).  The CFPB Director is not appointed to the FDIC board in that manner, but rather serves in that position *ex officio* by operation of statute.  *See* 12 U.S.C. § 1812(a)(1)(B).  In fact, the FDIC's organic statute explicitly distinguishes between the two *ex officio* members of its board and the three "appointed members," *id.* § 1812(b)(1), (b)(2), (c)(1), (c)(3), each of whom is in fact appointed to the board "by the President, by and with the advice of and consent of the Senate," *id.* § 1812(a)(1)(C).[2]  The CFPB Director is not "appointed . . . to" the FDIC board by the President with the advice and consent of the Senate.  5 U.S.C. § 3349c(1).  Therefore, the statutory exception does not cover the acting CFPB Director or his *ex officio* membership on the FDIC board.

The D.C. Circuit's decision in *Symons v. Chrysler Corp. Loan Guar. Bd.*, 670 F.2d 238 (D.C. Cir. 1981), confirms the Court's interpretation of this statutory exception.  In that case, the Circuit considered the scope the Government in the Sunshine Act (the "Sunshine Act"), which applies to any agency "headed by a collegial body composed of two or more individual

---

[2] The *ex officio* members are the Director of the CFPB and the Comptroller of the Currency.  *See* 12 U.S.C. § 1812(a)(1)(B)-(C).  When there are vacancies, these seats are automatically filled by the acting Director or acting Comptroller, respectively.  *See id.* § 1812(d)(2).

members, a majority of whom are appointed to such position by the President with the advice and consent of the Senate." 5 U.S.C. § 552b(a)(1). The Circuit held that the Sunshine Act does not apply to a multi-member body composed only of *ex officio* members who hold other PAS offices in the Executive Branch, because they are not appointed to that multi-member body by the President with the advice and consent of the Senate. *See Symons*, 670 F.2d at 241. The court rejected arguments that this reading would undermine the intent of the Sunshine Act, reasoning "that when Congress wishes to extend Sunshine coverage to *ex officio* agencies, it will do so." *Id.* at 244-45. Similarly, if Congress wished to exclude *ex officio* members of the FDIC board from the FVRA, it would have done so.

English also suggests that, because 5 U.S.C. § 3349c(1) was intended to reach all agencies with "hallmarks of independence," it should be interpreted to cover the CFPB. Reply to Def. Opp. at 9. Indeed, English suggests that Congress would have included the CFPB in § 3349c had the CFPB existed at the time. *Id.* at 9 n.5. But such speculation cannot justify rewriting the statute. And in any event, when Congress passed Dodd-Frank, it could have amended § 3349c to include the CFPB Director—but it did not. "Where a statute contains explicit exceptions, the courts are reluctant to find other implicit exceptions." *In re England*, 375 F.3d 1169, 1178 (D.C. Cir. 2004) (quoting *Detweiler v. Pena*, 38 F.3d 591, 594 (D.C. Cir. 1994)). The Court declines English's invitation to do so here.

As a result, the Court concludes that by its own terms, the FVRA authorizes the President to appoint an acting Director of the CFPB pursuant to 5 U.S.C. § 3345(a)(2). It now turns to the question of whether the Deputy Director provision of the Dodd-Frank Act displaces it.

14

### b. Potential Displacement of the FVRA by the Dodd-Frank Act's Deputy Director Provision

English argues that Dodd-Frank—by providing that the Deputy Director "shall— (A) be appointed by the Director, and (B) serve as acting Director in the absence or unavailability of the Director," 12 U.S.C. § 5491(b)(5)(B)—creates an unavoidable conflict with the FVRA and therefore displaces it. Mot. at 7. Defendants counter that the two statutes can be read harmoniously and the FVRA remains available as an option for the President. "In ascertaining the plain meaning of [a] statute, the [C]ourt must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *United States v. Sunia*, 643 F. Supp. 2d 51, 62 (D.D.C. 2009) (quoting *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988)).

The Court concludes that a fair reading of the entirety of these statutes, in light of relevant principles of statutory construction, does not result in an unavoidable conflict. Instead, the two statutes can, and therefore must, be read harmoniously. The best reading of the two statutes is that Dodd-Frank requires that the Deputy Director "shall" serve as acting Director, but that under the FVRA the President "may" override that default rule. This reading is compelled by several considerations: the text of the FVRA, including its exclusivity provision, the text of Dodd-Frank, including its express-statement requirement and Deputy Director provision, and traditional principles of statutory construction.

### The FVRA's Exclusivity Provision

It is a "familiar principle that Congress legislates with a full understanding of existing law." *Am. Fed'n of Gov't Emps.*, *Local 3295 v. FLRA*, 46 F.3d 73, 78 (D.C. Cir. 1995) (citing *Miles v. Apex Marine Corp.,* 498 U.S. 19, 32 (1990)). Therefore, when passing Dodd-Frank, Congress was aware of how the FVRA typically interacts with other statutes. And the FVRA's

15

exclusivity provision makes clear that it was generally intended to apply alongside agency-specific statutes, rather than be displaced by them.

As discussed above, § 3345 of the FVRA applies broadly to any PAS office in any "Executive agency," such as the CFPB.  5 U.S.C. § 3345.  It sets out a series of methods for filling vacancies, including designating a PAS officer under § 3345(a)(2).  Section 3347 of the FVRA, titled "Exclusivity," further provides that the FVRA is the "exclusive means" for authorizing acting service in the event of a vacancy "unless" the President makes a recess appointment or another statutory provision expressly: "(A) authorizes the President, a court, or the head of an Executive department, to designate an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity;" or "(B) designates an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity."  5 U.S.C. § 3347(a)(1).  Where such a statutory provision exists and § 3345 of the FVRA applies, that can only mean that § 3345—while not the "exclusive means"—is a nonexclusive means for appointing officers.

Here, there is no question that Dodd-Frank's Deputy Director provision "designates an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity."  *Id.* § 3347(a)(1); *see* 12 U.S.C. § 5491(b)(5)(B).  As such, by its own terms, the FVRA is not the "excusive means" for filling the vacancy, and remains a nonexclusive means to do so.  5 U.S.C. § 3347(a)(1).

The Ninth Circuit's holding in *Hooks v. Kitsap Tenant Support Servs., Inc.*, 816 F.3d 550 (9th Cir. 2016), is instructive.  In that case, the plaintiff argued that the President could not invoke the FVRA to designate an acting General Counsel for the National Labor Relations Board during a vacancy, because the National Labor Relations Act ("NLRA") also authorized the

16

President "to designate the officer or employee who shall act as General Counsel during such vacancy." *Id.* at 555 n.5 (quoting 29 U.S.C. § 153(d)); *see id.* at 555-56. Rejecting that argument, the court held that the FVRA remained available as an additional option. The presence of an agency-specific statute, the court held, merely meant that "neither the FVRA nor the NLRA is the *exclusive* means of appointing an Acting General Counsel," and thus, "the President is permitted to elect between two statutory alternatives." *Id.* at 556 (emphasis in original).

Admittedly, *Hooks* did not squarely address the question before the Court: whether the specific language in Dodd-Frank displaces the FVRA. Unlike Dodd-Frank, the NLRA does not require that any particular person "shall" serve as acting General Counsel, but merely authorizes the President to appoint an acting General Counsel. *See* 29 U.S.C. § 153(d). Moreover, that section of the NLRA predates the FVRA, leaving no room for an argument that it was intended to displace the FVRA. *Hooks* nonetheless supports the general proposition that where the appointment mechanisms of § 3345 of the FVRA are available but are not, under § 3347, *the* "exclusive means" of appointing acting officials, they nonetheless typically remain *a* means of doing so alongside the agency-specific statute. And when Congress passed the Dodd-Frank Act, it did so with the understanding that the FVRA often co-exists with other acting-official provisions—such as the one at issue here.

English attempts to distinguish *Hooks* on the grounds that the NLRA provides authority to appoint an acting official to the very same person authorized to make a temporary appointment under the FVRA: the President. *See* Mot. at 14. That is not the case here, where the Deputy Director automatically becomes acting Director upon an "absence" or "unavailability." 12 U.S.C. § 5491(b)(5)(B). But there is nothing in *Hooks* to suggest that the

<div align="center">17</div>

court's interpretation of the FVRA would turn on this distinction, nor does the text of the FVRA provide any reason to think so. *See Hooks*, 816 F.3d at 555-56.

<center>**Dodd-Frank's Express-Statement Requirement**</center>

Dodd-Frank also explains how it interacts with other statutes, by providing an express-statement requirement that is important in evaluating whether the FVRA applies to the CFPB's acting Director in this case. Dodd-Frank specifies that, "[e]xcept as otherwise provided expressly by law, all Federal laws dealing with public or Federal . . . officers [or] employees . . . shall apply to the exercise of the powers of the [CFPB]." 12 U.S.C. § 5491(a). The FVRA is a "Federal law[] dealing with . . . Federal . . . officers." *Id.*; *see* 5 U.S.C. § 3345 (entitled "Acting officer"). It is located in Part III—"Employees"—of Title 5 of the U.S. Code. *See* 5 U.S.C. § 3345 *et seq.* English has not disputed the conclusion that follows: that the FVRA applies to the CFPB unless Dodd-Frank "expressly" displaces it. *See* Mot. at 12-13; Reply to Def. Opp. at 3 n.4. In fact, she has conceded that the express-statement requirement applies, and has sought to meet that burden. *See* PI Hr'g Tr. at 38:12-39:21; Mot. at 13.

English argues, however, that this express-statement clause should be read narrowly, and she relies on cases holding that such clauses do not require "magical passwords" to signal a conflict between two statutes. Mot. at 13 (citing *Marcello v. Bonds*, 349 U.S. 302, 310 (1955)); *see id.* (citing *Dorsey v. United States*, 567 U.S. 260, 273-74 (2012), and *Lockhart v. United States*, 546 U.S. 142, 149 (2005) (Scalia, J., concurring)). But those cases are distinguishable. They concern the effect of certain express-statement provisions that cabin the efforts of future legislatures. In contrast, Dodd-Frank's express-statement requirement operates here simply to clarify the circumstances under which the FVRA, which Congress had previously passed, applies to the CFPB.

<center>18</center>

For example, in *Marcello*, the Supreme Court considered an express-statement provision in the Administrative Procedure Act, which lays out general rules governing the conduct of federal agencies and provides that later-enacted statutes may supersede those rules only if they do so expressly. *See* 349 U.S. at 310; 5 U.S.C. § 559. The Supreme Court has expressed doubts about such future-limiting rules "because statutes enacted by one Congress cannot bind a later Congress, which remains free to repeal the earlier statute, to exempt the current statute from the earlier statute, to modify the earlier statute, or to apply the earlier statute but as modified." *Dorsey*, 567 U.S. at 274. Indeed, under those circumstances, a "subsequent Congress . . . may exempt itself . . . by 'fair implication'—that is, without an express statement." *Lockhart*, 546 U.S. at 148 (Scalia, J., concurring) (emphasis omitted) (citing *Warden v. Marrero*, 417 U.S. 653, 659-60, n.10 (1974)). Put differently, in those contexts, "express" does not really mean "express."

The reasoning of those cases does not apply here. In this case, the only issue is whether the CFPB's Deputy Director provision displaces a prior statute, the FVRA. The 111th Congress, when passing Dodd-Frank Act, included guidance on that question, explaining that certain laws, including the FVRA, apply to the CFPB unless the law "expressly" provides otherwise. *See* 12 U.S.C. § 5491(a). Here, then, this express-statement provision does not operate to restrict future Congresses; it merely clarifies the circumstances under which FVRA, which was already on the books, applies to the CFPB. Therefore, "expressly" should not be read narrowly, but given its normal meaning: "Clearly and unmistakably communicated; stated with directness and clarity." *Express*, Black's Law Dictionary 701 (10th ed. 2014); *see also Magone v. Heller*, 150 U.S. 70, 74 (1893) ("[T]he adverb 'expressly,' in its primary meaning, denotes precision of statement, as

opposed to ambiguity, implication, or inference, and is equivalent to 'in an express manner' or 'in direct terms' . . . .").

<h2 align="center">Dodd-Frank's Deputy Director Provision</h2>

With that textual background in mind, the Court now turns to the specific provision that English asserts displaces the FVRA. Under Dodd-Frank, the Deputy Director "shall— (A) be appointed by the Director, and (B) serve as acting Director in the absence or unavailability of the Director." 12 U.S.C. § 5491(b)(5). In contrast, the FVRA provides that the President "may" appoint an acting officer, 5 U.S.C. § 3345(a)(2), if an officer "dies, resigns, or is otherwise unable to perform the functions and duties of the office," *id.* at 3345(a). As explained below, on its face, Dodd-Frank's Deputy Director provision does not *expressly* displace the FVRA.

As a threshold matter, there is reason to doubt whether the Deputy Director provision even covers a vacancy created by a resignation like Cordray's. Significantly, the provision does not use the word "vacancy." If Congress intended to displace the FVRA, it could have explicitly referred to "vacancies," as the title of the FVRA does. Certainly, it has done so in numerous other agency-specific statutes. *See, e.g.*, 20 U.S.C. § 3412(a)(1) (Secretary of Education); 28 U.S.C. § 508 (Attorney General); 29 U.S.C. § 153(d) (NLRB General Counsel); 38 U.S.C. § 304 (Secretary of Veterans Affairs); 40 U.S.C. § 302(b) (GSA Administrator); 42 U.S.C. § 902(b)(4) (Commissioner of Social Security). Congress could alternatively have mimicked the language used in the FVRA, which is applicable when an officer "dies, resigns, or is otherwise unable to perform the functions and duties of the office." 5 U.S.C. § 3345(a). It could also have simply referred to resignations. But Congress did none of those things. This is all the more telling in light of the fact that Congress *did* use the term "vacancy" elsewhere in Dodd-Frank. 12 U.S.C. § 5321(c)(3).

<p align="center">20</p>

Instead, under Dodd-Frank, the Deputy Director assumes the acting Director post "in the absence or unavailability of the Director." 12 U.S.C. § 5491(b)(5). Black's Law Dictionary defines "absence" as a "failure to appear, or to be available and reachable, when expected." *Absence*, Black's Law Dictionary 8 (10th ed. 2014). "Available" is commonly defined as "immediately utilizable" or "capable of use for the accomplishment of a purpose." *Available*, Webster's Third New International Dictionary 150 (1993). To be sure, these words might reasonably be read to include the vacancy created by Cordray's resignation, a conclusion that the Defendants have not squarely disputed. On the other hand, Defendants argue, with some force, that both words are commonly understood to reflect a temporary condition, such as not being reachable due to illness or travel. Def. Opp. at 17-18. Students, for example, are "absent" from school, and a traveler may be "unavailable" when on a long flight. Obviously, these are not the circumstances here, given that Cordray's resignation is permanent. In any event, even assuming that a vacancy created by a resignation is an "absence or availability" under Dodd-Frank, this is hardly language that Congress would have used to expressly displace the FVRA.

But perhaps most tellingly, the Deputy Director provision—and the entirety of Dodd-Frank—is silent regarding the *President's* ability to appoint an acting Director. Dodd-Frank certainly does not expressly prohibit the President from doing so. Nor does it affirmatively require the President to appoint a particular person. *Cf.* 12 U.S.C. § 4512(f) (providing that the President "shall designate" one of a number of Federal Housing Finance Agency ("FHFA") officers "to serve as acting Director" in the "event of the death, resignation, sickness, or absence of the Director"). This silence makes it impossible to conclude that Dodd-Frank "expressly" makes the FVRA's appointment mechanisms unavailable. *Cf. Lindsay v. Gov't Emps. Ins. Co*., 448 F.3d 416, 422 (D.C. Cir. 2006) (holding that a statute did not "expressly" prohibit the

exercise of supplemental jurisdiction where it "include[d] no mention of supplemental jurisdiction at all"). Ultimately, if the Dodd-Frank Act's Deputy Director provision served to displace the FVRA here, its express-statement requirement "would call for nothing more than a 'provision,' pure and simple, leaving the word 'expressly' without any consequence whatever." *Breuer v. Jim's Concrete of Brevard*, 538 U.S. 691, 691-92 (2003).

English's displacement argument relies heavily on Dodd-Frank's use of the word "shall." She argues that this word is both "mandatory" and "unqualified," and creates an unavoidable conflict between Dodd-Frank and the FVRA that must be resolved in favor of Dodd-Frank. Mot. at 9. She and her *amici* rely on cases holding that "'shall' . . . 'normally creates an obligation impervious to judicial discretion.'" *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1977 (2016) (quoting *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998)); *see* Reply to Def. Opp. at 2; ECF No. 34 at 8-9. No doubt this is often the case. *See Shall*, Black's Law Dictionary 1585 (10th ed. 2014) (listing "has a duty to; more broadly, is required to" as its first definition). But although "shall" is usually understood as mandatory, these authorities do not suggest that "shall" is always understood to be *unqualified*.

"*Shall* is, in short, a semantic mess. *Black's Law Dictionary* records five meanings for the word." A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* § 11, at 113 (2012) (emphasis in original); *see also Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 432 n.9 (1995) ("Though 'shall' generally means 'must,' legal writers sometimes use, or misuse, 'shall' to mean 'should,' 'will,' or even 'may.'"). That is why courts look to the entire statutory context to determine how to construe it. *See, e.g.*, *Gutierrez,* 515 U.S. at 439 (Souter, J., dissenting) (conceding that courts should not "read 'shall' as . . . uncompromising" when there is another provision in the law that requires a different result).

Viewed in light of the entirety of the text of both the FVRA and Dodd-Frank, as set forth above, it becomes clear that Dodd-Frank's "shall" is implicitly qualified by the FVRA's "may." In fact, the structure of similar statutes often reflects that some official "shall" serve, only to elsewhere qualify that apparently mandatory service in some way. For example, Dodd-Frank provides that the Director "shall serve as the head of the [CFPB]." 12 U.S.C. § 5491(b)(1). At the same time, the President "may remove" the Director for cause. *Id.* § 5491(c)(3). And obviously, an official may always resign, as Cordray did here, despite the apparently mandatory length of his term. *See id.* § 5491(c)(1) ("The Director shall serve for a term of five years."). Similarly, the FVRA provides that the first assistant "shall perform" the duties of the vacant PAS office. 5 U.S.C. § 3345(a)(1). But "notwithstanding" this requirement, the President "may" appoint another PAS officer to perform those duties. *Id.* § 3345(a)(2). To take another example, "[e]ach member [of the Nuclear Regulatory Commission] shall serve for a term of five years." 42 U.S.C. § 5841(c). But those members "may be removed by the President for inefficiency, neglect of duty, or malfeasance in office." *Id.* § 5841(e). No one could reasonably dispute how to resolve these apparent conflicts: the seemingly mandatory language requiring an official to serve is implicitly qualified by other statutory provisions.[3] It does not wholly displace such provisions, let alone do so expressly. The same holds true here.

---

[3] In the case of the FVRA, Congress explicitly clarified this apparent conflict by including a "notwithstanding" clause. 5 U.S.C. § 3345(a)(2). But such "notwithstanding" clauses do not necessarily mean that the conflict is a difficult one to resolve—the clause's existence might merely "suggest that Congress thought the conflict was . . . quite likely to arise." *SW Gen.*, 137 S. Ct. at 940. Indeed, the Supreme Court has held that such clauses typically do no more than resolve a particular conflict, and that courts should generally draw no further inference from the presence or absence of such clauses. *See id.* In the FVRA, the "notwithstanding" clause in § 3345(a)(2) merely makes explicit what is already implicit. Even absent that clause, it would have been obvious that the President "may" appoint certain acting officials under the FVRA notwithstanding "mandatory" language providing that the first assistant "shall perform" those same duties.

## Principles of Statutory Construction

The Court is also guided by the operation of two principles of statutory construction in reaching its conclusion. The first is the harmonious-reading canon. "[I]f by any fair course of reasoning the two [statutes] can be reconciled, both shall stand." *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 622 (2011) (alterations in original) (quoting *Ludlow's Heirs v. Johnston*, 3 Ohio 553, 564 (1828)). Indeed, "when two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Howard v. Pritzker*, 775 F.3d 430, 437 (D.C. Cir. 2015) (quoting *J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*, 534 U.S. 124, 143-44 (2001) (internal quotation marks omitted)); *see also Ill. Nat'l Guard v. FLRA*, 854 F.2d 1396, 1405 (D.C. Cir. 1988) ("Faced, as we are, with two conflicting statutes, we must do our best to harmonize them."). As described above, these statutes are capable of co-existence, and the Court's interpretation renders each of them effective. Moreover, there is no clearly expressed congressional intent for Dodd-Frank to displace the President's authority under the FVRA. In fact, both the FVRA's exclusivity provision and Dodd-Frank's express-statement requirement strongly suggest the opposite.

The second, related principle is the presumption against implied repeals. English effectively seeks a partial repeal of the FVRA, which by its own terms authorizes the President to appoint an acting Director of the CFPB. Such "'repeals by implication are not favored' and will not be presumed unless the 'intention of the legislature to repeal [is] clear and manifest.'" *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 662 (2007) (alteration in original) (quoting *Watt v. Alaska*, 451 U.S. 259, 267 (1981)). They are not to be implied unless the later-enacted statute "expressly contradict[s] the original act" or such an inference "is absolutely necessary . . . in order that [the] words [of the later statute] shall have any meaning at

none
24

all." *Id.* (alterations in original) (quoting *Traynor v. Turnage*, 485 U.S. 535, 548 (1988)). "An implied repeal will only be found where provisions in two statutes are in irreconcilable conflict, or where the latter Act covers the whole subject of the earlier one and is clearly intended as a substitute." *Id.* at 663 (internal quotation marks omitted) (quoting *Branch v. Smith*, 538 U.S. 254, 273 (2003) (plurality opinion)). Again, as described above, the two statutes at issue are not irreconcilable, and the text of Dodd-Frank is devoid of any "clear and manifest" intention on the part of Congress to partially repeal the President's authority under the FVRA. Indeed, the FVRA's exclusivity provision and Dodd-Frank's express-statement requirement strongly suggest the opposite.

English argues that merely adding the CFPB Director as a specific exception to the FVRA's general rule does not constitute an implied repeal. Reply to Def. Opp. at 3. But as the Supreme Court has explained, she cannot avoid the presumption against implied repeals by relabeling a partial repeal in this manner. "It does not matter whether this alteration is characterized as an amendment or a partial repeal. Every amendment of a statute effects a partial repeal to the extent that the new statutory command displaces earlier, inconsistent commands, and we have repeatedly recognized that implied amendments are no more favored than implied repeals." *Nat'l Ass'n of Home Builders*, 551 U.S. at 664 n.8. "A new statute will not be read as wholly *or even partially* amending a prior one unless there exists a positive repugnancy between the provisions of the new and those of the old that cannot be reconciled." *Id.* (emphasis added) (quoting *Reg'l Rail Reorg. Act Cases*, 419 U.S. 102, 134 (1974)).

English advances additional arguments, based on other principles of statutory interpretation, why "shall" should be read as without qualification in this context. But they are all unpersuasive. She contends that this case is distinguished by the fact that the "shall" is

contained in one act of Congress and the "may" is contained in a separate law that is older and more general.  *See* Mot. at 9-10.  In support of this contention, she invokes two well-established canons of statutory construction: "recent enactments should be favored over older ones; and specific statutory provisions should prevail over general ones."  *Detweiler*, 38 F.3d at 594; *see* Mot. at 9-10.  The problem for English is that "[t]hese canons, whatever their combative power against a statute's plain meaning, are not appropriately invoked in this case; they apply only in the face of 'irreconcilably conflicting statutes.'" *Detweiler*, 38 F.3d at 594 (quoting *Watt*, 451 U.S. at 266).  Statutes are "irreconcilably conflicting where 'there is a positive repugnancy between them' or 'they cannot mutually coexist.'"  *Howard*, 775 F.3d at 437 (quoting *Radzanower v. Touche Ross & Co.,* 426 U.S. 148, 155 (1976)).  But, as explained above, the Dodd-Frank Act and the FVRA *can* be reconciled.

Moreover, even if there were an irreconcilable conflict, it is not clear that Dodd-Frank is more "specific" than the FVRA as applied to these facts.  Notwithstanding its application to a broad array of Executive agencies, the FVRA explicitly applies where a PAS office becomes "vacant" because the officer "resigns," 5 U.S.C. § 3345(a)—the precise scenario at issue here.  Thus, the FVRA is arguably more "specific" than Dodd-Frank with respect to the President's authority to appoint an acting official in the event of a vacancy due to resignation, even though Dodd-Frank is specific to the position of the CFPB's Deputy Director.

English also tries to draw a distinction between Dodd-Frank and other acting-official statutes with mandatory, but expressly qualified, language providing that one official "shall" serve "unless the President designates another officer" to do so.  Mot. at 11; *see, e.g.*, 42 U.S.C. § 902(b)(4) (Commissioner of Social Security).  She claims that the lack of such an express proviso in Dodd-Frank means the Court should not infer one.  Mot. at 11.  In support of this

claim, she relies on a plurality opinion stating that the presence of an express exception in one statute "tends to refute rather than support" the existence of such exceptions in other statutes. *Lukhard v. Reed*, 481 U.S. 368, 376 (1987) (plurality opinion). A careful examination of that case shows the infirmity of her argument.

The plaintiffs in *Lukhard* argued that personal-injury awards should not constitute "income" under a federal benefits statute, and pointed out that certain tax statutes expressly exclude such awards when defining income. *See id.* at 374-77. But as the plurality observed, the fact that Congress had found it necessary to exclude personal-injury awards from "income" in these tax statutes arguably implied that "income" in the federal benefits statute, which did not have such an exclusion, might include such awards. *Id.* at 376-77. The plurality, however, did not affirmatively rely on that point because, as its language ("tends to refute") suggests, any such inference would be a weak one. Rather, the plurality largely rested its analysis on the plain language of the federal benefits statute itself, and considered the tax statutes only when addressing plaintiffs' arguments. *See id.* at 375-76.

Concededly, the Deputy Director provision does not expressly authorize the President to appoint an acting Director. But it need not, because of the presumption against implied repeals. Unlike in *Lukhard*, the issue in this case is not whether to import an exception from one, inapplicable statute into another statute that does apply. Instead, the issue is whether Dodd-Frank displaces the FVRA's plain language. Only a "clear and manifest" legislative intent would suffice to do so. *Nat'l Ass'n of Home Builders*, 551 U.S. at 662 (quoting *Watt*, 451 U.S. at 267). And simply put, the inference that English advances by citing *Lukhard* is far too weak to meet that standard. Finally, turning from Dodd-Frank to the FVRA, the holding of *Lukhard* affirmatively works against English. *Lukhard* suggests that courts should hesitate to infer

unwritten exceptions. But English seeks to find such an unwritten exception in the FVRA (*i.e.*, that it does not apply to the CFPB Director), even though it already contains several express exclusions that remove certain officers from its coverage. *See* 5 U.S.C. § 3349c. Congress could easily have added the CFPB's Director to that list of exclusions, but it did not do so.

English also invokes the canon against superfluity, which provides that, "if possible, effect shall be given to every clause and part of a statute." *RadLAX Gateway Hotel, LLC v. Amalg. Bank*, 566 U.S. 639, 645 (2012) (quoting *D. Ginsberg & Sons, Inc. v. Popkin*, 285 U.S. 204, 208 (1932)); *see* Mot. at 9-10, 15. More specifically, English argues that the Deputy Director provision would be a "near nullity" if the FVRA applies, PI Hr'g Tr. at 26:21-27:3, because the FVRA already provides that the Deputy Director—as "first assistant" to the Director—automatically steps into his shoes, 5 U.S.C. § 3345(a)(1). But this canon does not help her here.

There are numerous functional differences between the CFPB's Deputy Director provision and the FVRA. For example, Dodd-Frank allows the Deputy Director to serve as acting Director in situations where the FVRA itself would not authorize such service. The FVRA imposes time limits on the service of the "first assistant," *see id.* § 3346, whereas Dodd-Frank does not expressly contain such time limits, *see* 12 U.S.C. § 5491(b)(5). Moreover, Dodd-Frank's use of the phrase "absence or unavailability," *id.*, permits the Deputy Director to serve as acting Director during temporary absences of the Director that the FVRA does not appear to cover. *See* 5 U.S.C. § 3345(a) (requiring that the official to be replaced be "unable to perform the functions and duties of the office"). Lastly, under the FVRA, a Deputy Director that holds that position for less than ninety days prior to a vacancy in the directorship, and who is then nominated by the President to that permanent post, cannot not accede to acting Director. 5

28

U.S.C. § 3345(b)(1).  There is no express bar to such service under the Deputy Director provision in Dodd-Frank.  For all these reasons, even if the FVRA is available to the President here, the Deputy Director provision is hardly a nullity.

Although the Court's analysis does not hinge on it, a final principle of statutory construction—the canon of constitutional avoidance— further confirms the conclusion that English's preferred construction of these statutes is not likely to succeed.  "[T]he canon of constitutional avoidance requires that if one of two linguistically permissible interpretations raises 'serious constitutional problems' and the other does not, we are to choose the second unless it is 'plainly contrary to the intent of Congress.'"  *United States v. Cano-Flores*, 796 F.3d 83, 94 (D.C. Cir. 2015) (quoting *Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Eng'rs*, 531 U.S. 159, 173 (2001)).

Under the Constitution, the President must "take care that the laws be faithfully executed," U.S. Const. art. II, § 3, across the entire Executive Branch—including "independent" agencies.  *See Free Enter. Fund v. PCAOB*, 561 U.S. 477, 496-97 (2010).  A "key means" of doing so is "the power of appointing, overseeing, and controlling those who execute the laws." *Id.* at 501 (quoting 1 Annals of Cong. 463 (1789) (J. Madison)).

But English's interpretation of Dodd-Frank potentially impairs the President's ability to fulfill his obligations under the Take Care Clause.  Under English's theory, because Cordray installed her as Deputy Director, she must remain acting Director—no matter whom the President would prefer in that role—until a new permanent Director is appointed.  As a practical matter, her claim to the position of acting Director assumes that the President may only remove the acting Director for cause.  *See* PI Hr'g Tr. at 49:22-50:10.  Thus, under English's reading, the CFPB's Director has unchecked authority to decide who will inherit the potent regulatory and

enforcement powers of that office, as well as the privilege of insulation from direct presidential control, in the event he resigns. Such authority appears to lack any precedent, even among other independent agencies. Indeed, at oral argument, English acknowledged that members of the Securities and Exchange Commission, for example, cannot name their successors in this fashion. *See* PI Hr'g Tr. at 53:9-11.[4]

The Supreme Court has, of course, allowed Congress to limit the President's ability to remove—and thus to control—the Executive Branch officials who lead independent agencies. *See Free Enter. Fund*, 561 U.S. at 483. But the Court has blessed that practice in cases where the President had some say in appointing these officials to ensure that they are qualified to faithfully execute the laws of the United States. *See id.*[5] And in *Free Enterprise Fund*, the Supreme Court held that two layers of "for-cause" removal protection cannot stand between the President and other Executive Branch officers. *See* 561 U.S. at 492. Thus, in general, it appears

---

[4] English has asserted only one precedent for a position with such authority: the Director of the FHFA, which was established by the Housing and Economic Recovery Act of 2008, Pub. L. No. 110-289, 122 Stat. 2654 (2008). *See* PI Hr'g Tr. at 53:1-21. But that example is inapposite. The FHFA statute—unlike Dodd-Frank's Deputy Director provision—gives the *President* the power to choose an acting Director from among the FHFA's three Deputy Directors (even if that choice is far more cabined than under the FVRA). *See* 12 U.S.C. § 4512(f). And a single example only two years older than Dodd-Frank does not provide meaningful comfort about any constitutional problems. *Cf. Noel Canning v. NLRB*, 134 S. Ct. 2550, 2567 (2014) ("[W]hen considered against 200 years of settled practice, we regard these few scattered examples as anomalies."). To the extent courts have considered the constitutionality of the FHFA provision, they have not had the occasion to examine its compatibility with the Take Care Clause. *See, e.g.*, *FHFA v. UBS Americas Inc.*, 712 F.3d 136, 144 (2d Cir. 2013).

[5] One potential exception involves inferior officers appointed by "courts of law" pursuant to a grant of congressional authority. *See Morrison v. Olson*, 487 U.S. 654, 673-77 (1988). But *Morrison* suggested that such appointments would be inappropriate if made to independent agencies, like the CFPB, with subject-area expertise outside the realm of judicial experience. *See id.* at 676 n.13. In any event, that exception has no relevance here, because Congress has not authorized a court of law to appoint the acting Director. And it is very doubtful that the CFPB Director is an inferior officer. *See Edmond v. United States*, 520 U.S. 651, 662-63 (1997); *Ass'n of Am. Railroads v. U.S. Dep't of Transp.*, 821 F.3d 19, 38-39 (D.C. Cir. 2016).

that officers who lead independent enforcement agencies and enjoy such removal protections cannot be appointed without the consent of either the President or another official who lacks those protections—and is therefore directly accountable to the President.

Under English's interpretation, however, Cordray could have named *anyone* the CFPB's Deputy Director, and the President would be virtually powerless to replace that person upon ascension to acting Director—no matter how unqualified that person might be. That alone threatens to undermine the President's ability to fulfill his Take Care Clause obligations. And this problem is compounded by another unique feature of the directorship of the CFPB: it is vested with unilateral, unchecked control over the CFPB's substantial regulatory and enforcement power. *See* 12 U.S.C. §§ 5491(b)(1), 5492(a); *PHH Corp. v. CFPB*, 839 F.3d 1, 12-17 (D.C. Cir. 2016), *vacated, reh'g en banc granted*, No. 15-1177 (D.C. Cir. Feb. 16, 2017). Almost all "independent" agencies with broad enforcement power are multi-member boards, where no single officer has such unchecked authority. *See PHH Corp.*, 839 F.3d at 17-22.

This potential imposition on the President's Take Care Clause responsibilities matters. The Constitution's separation of powers is not a mere abstract principle, but a practical measure that is "critical to preserving liberty." *Free Enter. Fund*, 561 U.S. at 501 (quoting *Bowsher v. Synar*, 478 U.S. 714, 730 (1986)). As the Supreme Court explained in *Free Enterprise Fund*, "the people do not vote for the 'Officers of the United States.'" *Id.* at 497-98 (quoting U.S. Const. art. II, § 2, cl. 2). They vote for the President. And the public must be able to hold the President accountable for his Take Care Clause responsibilities across the entire Executive Branch. *See id.* (citing The Federalist No. 70 (A. Hamilton)). This is especially true regarding an office like the CFPB Director's, which is vested with unilateral, unchecked authority to bring enforcement actions—a core executive power with direct implications for individual liberty.

31

Ultimately, the Court need not decide whether English's interpretation of Dodd-Frank comports with the Constitution. The Court notes only that it poses a serious constitutional problem, and that the canon of constitutional avoidance operates to confirm a conclusion—that the FVRA is available to the President—that would have otherwise been commanded by the text of the statutes and other principles of statutory construction.

### The Dodd-Frank Act's Structure

English also argues that the statutory scheme of Dodd-Frank, which undeniably created the CFPB as "an independent" bureau, requires that her interpretation of these statutes controls. Mot. at 12 (citing 12 U.S.C. § 5491(a)). But "[v]ague notions of a statute's 'basic purpose' are . . . inadequate to overcome the words of its text regarding the specific issue under consideration." *Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan*, 136 S. Ct. 651, 661 (2016) (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 261 (1993)). Thus, hosannas to the CFPB's independence cannot override the force of the statute's text, interpreted in light of the principles of statutory construction. *See United States ex rel. Totten v. Bombardier Corp.*, 380 F.3d 488, 495 (D.C. Cir. 2004) ("The task of statutory interpretation cannot be reduced to a mechanical choice in which the interpretation that would advance the statute's general purposes to a greater extent must always prevail . . . ."). Moreover, the very same statutory provision she cites goes on to state that "all Federal laws dealing with . . . officers . . . shall apply to the exercise of the powers of the Bureau." 12 U.S.C. § 5491(a). As discussed above, the FVRA is a federal law dealing with officers. *See* 5 U.S.C. § 3345 (entitled "Acting officer"). Thus, even the specific provision on which English relies does not work in her favor.

In any event, the CFPB's independence hardly turns on English's preferred statutory construction of the Deputy Director provision in Dodd-Frank. Whether English or Mulvaney is

32

entitled to be acting Director, the CFPB remains part of the Federal Reserve System. 12 U.S.C. § 5491(a). Its new Director, once appointed by the President and confirmed by the Senate, will have for-cause removal protections (subject to the outcome of pending litigation about the constitutionality of those protections). *See id.* § 5491(b)(2); *supra* note 1. The CFPB will continue to receive funding from the Federal Reserve, instead of Congress. *See id.* § 5497(a). And the bar on other Executive Branch officers exercising control over the CFPB's communications with Congress about potential legislation will remain in place. *See id.* § 5492(c)(4). Finally, it is worth noting that, to the extent that Mulvaney's appointment as acting Director under the FVRA impacts the CFPB's independence, the duration of his appointment—unlike English's under Dodd-Frank—is time-limited. *See* 5 U.S.C. § 3346.

English also contends that her independent-structure argument "is reinforced by the Senate's advice and consent power." Mot. at 12. According to English, if the President can appoint an acting Director through the FVRA, then the CFPB could be headed "by an Acting Director hand-picked by the President without the check of Senate confirmation." *Id.* Of course, there is nothing unusual about this—it is precisely what happens whenever a President chooses to name an acting officer under the FVRA. More importantly, free-standing principles about the Senate's advice and consent power say nothing about the Dodd-Frank Act's specific statutory scheme. In fact, it is the FVRA that vindicates the Senate's advice and consent power here, at least to some extent, by limiting the pool of candidates from which the President may select an acting Director under § 3345(a)(2) to those who have already been confirmed to a PAS office. Mulvaney has been confirmed by the Senate to such an office: Director of OMB. 163 Cong. Rec. S1313 (daily ed. Feb. 16, 2017). In contrast, the appointment mechanism in the CFPB's Deputy Director provision involves no role for the Senate in the selection of the acting Director.

33

## Legislative History

English also attempts to enlist the scant legislative history to her cause, but it is of little use. "[L]egislative history is . . . often murky, ambiguous, and contradictory." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005). In fact, "[j]udicial investigation of legislative history has a tendency to become, to borrow Judge Leventhal's memorable phrase, an exercise in 'looking over a crowd and picking out your friends.'" *Id.* (citation omitted). "[T]he authoritative statement is the statutory text, not the legislative history or any other extrinsic material. Extrinsic materials have a role in statutory interpretation only to the extent they shed a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms." *Id.* Legislative history must be "anchored" to the statutory text in order to shed light on it. *Shannon v. United States*, 512 U.S. 573, 583 (1994).

English cites a Senate Committee Report that discusses an earlier version of the FVRA, as well as a Senator's floor statement, to suggest that the purpose of the FVRA is to preserve the Senate's advice and consent power. Mot. at 8-9; *see* S. Rep. No. 105-250, 1998 WL 404532, at *5 (1998); 144 Cong. Rec. 12,431-32 (1998) (statement of Sen. Thompson). As a result, she argues, it "must be strictly construed," so as not to apply to the circumstances here. Mot. at 8.

Putting aside the question of the value of these forms of legislative history generally, the point for which English cites them is a banal one that does not help her cause. It seems clear that the purpose of the FVRA was to protect the Senate's interests in the confirmation process. *See SW Gen.*, 137 S. Ct. at 936. But English offers no logic or precedent to explain why it follows that the FVRA must be "strictly construed." Mot. at 8. In fact, as noted above, interpreting the FVRA as available to the President under these circumstances, where his choice for acting Director is a PAS officer, at least somewhat fortifies the role of the Senate. Reading it as displaced by Dodd-Frank leaves the Senate with no role whatsoever in approving an acting

34

Director.  Such a construction would hardly seem to "reinforce Congress's constitutional prerogatives."  Mot. at 9 (citing *SW Gen.*, 137 S. Ct. at 935-36).

English also argues that the legislative history of the Dodd-Frank Act supports her view.  Mot. at 11-12.  She points out that an earlier version of Dodd-Frank provided only for a Director position (and not a Deputy Director), and stated that in the event of a "[v]acancy or during the absence of the Director" an acting Director "shall be appointed in the manner provided" by the FVRA.  *See* H.R. 4173, 111th Cong. § 4102(b)(6)(B)(i) (engrossed version, Dec. 11, 2009).  In contrast, the enacted law creates a Deputy Director position and provides that he or she "shall . . . serve as acting Director in the absence or unavailability of the Director."  12 U.S.C. § 5491(b)(5).

English argues that the omission of a reference to the FVRA in the enacted version of Dodd-Frank suggests that Congress considered—and rejected—its continued availability to the President here.  But this omission, without any explanation, is insufficient evidence to establish that Congress intended to supplant, not supplement, the FVRA.  *See Cheney R.R. Co. v. ICC*, 902 F.2d 66, 69 (D.C. Cir. 1990) (concluding that the omission of a legislative provision that "dropped out, without explanation, in the final version" of a bill had no interpretive value); *see also Trailmobile Co. v. Whirls*, 331 U.S. 40, 61 (1947) ("[T]he most important committee changes relied upon were made without explanation.  The interpretation of statutes cannot safely be made to rest upon mute intermediate legislative maneuvers." (footnote omitted)).

In fact, Congress may have decided to create a Deputy Director position in the final bill for any number of reasons.  The fact that an earlier draft bill contained language explicitly referring to a "vacancy" to be filled by the FVRA that was removed in the final version demonstrates that this legislative history does not clearly cut in English's favor.  It could show

that Congress understood Dodd-Frank's express-statement requirement as sufficient to invoke the FVRA in this context, chose not to exempt the CFPB from the FVRA, and chose not to have the Deputy Director serve in the event of a vacancy resulting from a resignation except as provided in the FVRA. Ultimately, "[e]ven if [the Court] were inclined to look to legislative history for guidance in this case, there is little that is useful here." *Pub. Citizen, Inc. v. Rubber Mfrs. Ass'n*, 533 F.3d 810, 818 (D.C. Cir. 2008).

In light of all of the above, the Court concludes that English is not likely to succeed on the merits of her claim that Dodd-Frank's Deputy Director provision displaces the President's ability to name an acting Director of the CFPB pursuant to the FVRA. Based on the entire text of both statutes and relevant principles of statutory construction, their best reading is that the FVRA remains available to the President here.

### 2. The President's Ability to Appoint Mulvaney as the CFPB's Acting Director

In the alternative, English argues that even if the FVRA generally permits the President to appoint an acting Director of the CFPB, the appointment of Mulvaney in particular is unlawful because the Dodd-Frank Act established an "independent" CFPB, and Mulvaney is a "White House staffer" who continues to serve as the Director of OMB. Mot. at 19-22. This argument is completely without support in the text of Dodd-Frank, and the Court declines to create such a restriction out of whole cloth. Simply put, Dodd-Frank does not prohibit the Director of OMB from also serving as the acting Director of the CFPB.

Dodd-Frank states that "[t]here is established in the Federal Reserve System, an independent bureau to be known as the [CFPB], which shall regulate the offering and provision of consumer financial products or services under the Federal consumer financial laws." 12 U.S.C. § 5491(a). English argues that appointing "a still-serving White House staffer to lead the

CFPB is a blatant violation of Congress's mandate that the agency be 'independent.'" Mot. at

21. But the term "independent bureau," without more, says nothing about who can serve as the

CFPB's acting Director.

Even assuming the benefits of Congress having given financial regulatory agencies

significant independence, *see* Mot. at 20, the Court must "apply the statute as it is written—even

if . . . some other approach might accord with good policy." *Loving*, 742 F.3d at 1022 (quoting

*Burrage*, 134 S. Ct. at 892). As explained above, the CFPB is, of course, independent in the

many specific ways that Dodd-Frank dictates. But the Court may not invent new atextual ways

for it to be independent. *See Milner v. Dep't of Navy*, 562 U.S. 562, 573 (2011) (rejecting

interpretation that suffers from the "patent flaw" of being "disconnected from" the text of the

statute); *District of Columbia v. Dep't of Labor*, 819 F.3d 444, 454 (D.C. Cir. 2016) ("We are

unwilling to green-light such a massive, atextual, and ahistorical expansion of the Davis-Bacon

Act."); *Loving*, 742 F.3d at 1022 ("The IRS may not unilaterally expand its authority through

such an expansive, atextual, and ahistorical reading of Section 330."); *U.S. Dep't of the Treasury

IRS Office of Chief Counsel Wash. D.C. v. FLRA*, 739 F.3d 13, 20 (D.C. Cir. 2014) ("[W]hatever

the validity of the Authority's policy rationale, it has failed to justify its atextual construction of

section 7106(b)(3).").

This conclusion is reinforced by the fact that Dodd-Frank *does* speak to the limitations on

who can serve as acting Director. Section 5491(d), entitled "Service restriction," provides that

"[n]o Director or Deputy Director may hold any office, position, or employment in any Federal

reserve bank, Federal home loan bank, covered person, or service provider during the period of

service of such person as Director or Deputy Director." 12 U.S.C. § 5491(d). Thus, when

drafting Dodd-Frank, Congress considered restrictions on who could serve as the Director and

Deputy Director.  The fact that it did not include "still-serving White House staffers," as English characterizes Mulvaney, Mot. at 19, makes all the more clear that the Court is not at liberty to read a new exception into the statute.  *See United States v. Johnson*, 529 U.S. 53, 58 (2000) ("When Congress provides exceptions in a statute, it does not follow that courts have authority to create others."); *Detweiler*, 38 F.3d at 594 ("Where a statute contains explicit exceptions, the courts are reluctant to find other implicit exceptions.").

English also argues that appointment of Mulvaney would be particularly inappropriate because the CFPB and the FDIC are intended to be independent from OMB.  Mot. at 21-22.  But again, the statutory provisions she points to compel no such conclusion.  Dodd-Frank merely states that (1) the CFPB director "shall provide" the OMB Director copies of the Bureau's financial operating plans, forecasts, and quarterly reports, 12 U.S.C. § 5497(a)(4)(A); and (2) this requirement shall not be construed as an "obligation" to consult with or obtain approval from the OMB Director for "any report, plan, forecast . . . or any jurisdiction or oversight over the affairs or operations of the Bureau," *id* § 5497(a)(4)(E).  Similarly, the laws governing the FDIC disclaim any consultation obligation.  *Id.* § 1827(c)(3).  The fact that the CFPB Director is required to provide financial information to the OMB Director and need not, but apparently still can, consult with him or her hardly creates a "wall of separation" between the CFPB and OMB.  Mot. at 22.  More importantly, these statutes say nothing about who can serve as acting Director of the CFPB.  Again, the Court declines to read such a limitation into the text.

In summary, there is nothing in Dodd-Frank's text that disqualifies Mulvaney from serving as the CFPB's acting Director under 5 U.S.C. § 3345(a)(2) on the basis of his service as OMB Director.  To the contrary, Mulvaney was a valid selection for the President under the FVRA *because* he was previously confirmed by the Senate to serve in that role.  163 Cong. Rec.

S1313 (daily ed. Feb. 16, 2017). Therefore, the Court cannot conclude that English is likely to prevail on this alternative argument, either. For all the reasons described above, the Court concludes that English is not likely to succeed on the merits.[6] This is, standing alone, sufficient to deny her motion. *See Standing Rock*, 205 F. Supp. 3d at 26 (citing *Ark. Dairy,* 573 F.3d at 832). Nonetheless, the Court proceeds to analyze the remaining factors below.

### B. Irreparable Harm

The irreparable injury requirement sets a "very high bar" for a movant seeking a preliminary injunction. *Coal. for Common Sense in Gov't Procurement v. United States*, 576 F. Supp. 2d 162, 168 (D.D.C. 2008); *see also Save Jobs USA v. U.S. Dep't of Homeland Sec.*, 105 F. Supp. 3d 108, 112 (D.D.C. 2015). To be entitled to such relief, a plaintiff must show injury that is "certain, great, actual, and imminent." *Mylan Labs. Ltd. v. FDA*, 910 F. Supp. 2d 299, 313 (D.D.C. 2012) (citing *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)). Indeed, the moving party must show that the purported injury "is of such imminence that there is a 'clear and present' need for equitable relief to prevent irreparable harm." *Chaplaincy*, 454 F.3d at 297 (emphasis omitted) (quoting *Wis. Gas Co.*, 758 F.2d at 674). And the harm must be "beyond remediation." *Id.* The availability of "adequate compensatory or other corrective relief . . . in the ordinary course of litigation weighs heavily against a claim of irreparable harm." *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 102 (D.D.C. 2014) (quoting *Wis. Gas Co.*, 758 F.2d at 674).

---

[6] Defendants also argue that English fails to assert a valid cause of action. Def. Opp. at 31-32. In doing so, they rely on D.C. Circuit cases discussing the "de facto officer" doctrine. Traditionally, that doctrine has held that courts could hear only "direct" attacks on a public officer's appointment, and that such attacks could be brought only by seeking a "writ of quo warranto," a common law remedy that remains codified under D.C. Code §§ 16-3501 to 16-3548. *See SW Gen.*, 796 F.3d at 81. The Court need not decide whether English has failed to state a claim on these grounds, because she is not likely to succeed on the merits.

For purposes of the irreparable harm analysis, English argues that *Chaplaincy* requires this Court to "assume[], without deciding, that the movant has demonstrated a likelihood that the non-movant's conduct violates the law," and examine only "whether that violation, if true, inflicts irremediable injury." *Chaplaincy,* 454 F.3d at 303; Mot. at 25. But it is not at all clear that this language controls the Court's decision here. Defendants argue that it should be understood as limited to that case, or at least to the Establishment Clause context. *See* PI Hr'g Tr. at 69:2-10. Indeed, even after *Chaplaincy*, courts have held that the presence of irreparable harm can depend on whether the movant is likely to succeed on the merits. *See, e.g.*, *Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.*, No. 17-2554 (ABJ), 2017 WL 6314142, at *19 (D.D.C. Dec. 8, 2017) ("[Plaintiff's] . . . irreparable harm argument rises and falls with its merits arguments. Since the Court has concluded that plaintiff's constitutional and statutory rights have not been violated, plaintiff has failed to demonstrate that it would suffer irreparable harm in the absence of relief."); *Pulphus v. Ayers*, 249 F. Supp. 3d 238, 254 (D.D.C. 2017); *Judicial Watch, Inc. v. Dep't of Commerce*, 501 F. Supp. 2d 83, 90-91 (D.D.C. 2007). Given that English has not demonstrated a likelihood of success on the merits, this approach would doom her irreparable harm argument from the start. Nonetheless, even if the Court must assume that she is correct on the merits under *Chaplaincy*, she cannot show irreparable harm.

English does not ground her claim of irreparable harm in the line of cases that describe the contours of such harm in typical employment cases, nor could she. The Supreme Court has held that only in a "genuinely extraordinary situation" will loss of a job constitute an irreparable injury. *Sampson*, 415 U.S. at 92 n.68; *see also Farris v. Rice*, 453 F. Supp. 2d 76, 79 (D.D.C. 2006) ("[C]ases are legion holding that loss of employment does not constitute irreparable injury.") (collecting cases). That is particularly true in cases involving government employment.

*Sampson*, 415 U.S. at 84 ("[Plaintiff] at the very least must make a showing of irreparable injury sufficient in kind and degree to override these factors cutting against the general availability of preliminary injunctions in Government personnel cases."). A loss of income or reputational damage "falls far short" of being such a situation. *Id.* at 91.

Nevertheless, "cases may arise in which the circumstances surrounding an employee's discharge, together with the resultant effect on the employee, may so far depart from the normal situation that irreparable injury might be found." *Id.* at 92 n.68. But this is not such a case. English has not alleged that she is likely to be discharged from her job as the CFPB's Deputy Director, and during Mulvaney's press roundtable in December, he stated that he was not considering terminating her. *See* ECF No. 41-5 at 5. Indeed, it is telling that English submitted a declaration in support of her motion, but she includes no factual allegations about any harm that she has suffered as a result of the events at issue here. *See* English Decl.

Instead, English bases her alleged injury solely on "the loss of a 'statutory right to function' in a position directly related to a federal agency's 'ability to fulfill its mandate.'" Mot. at 26 (quoting *Berry v. Reagan*, No. 83-3182, 1983 WL 538, at *5 (D.D.C. Nov. 14, 1983)). In *Berry*, President Carter had appointed the plaintiffs, with the advice and consent of the Senate, to the Commission on Civil Rights. 1983 WL 538, at *1. By statute, that body did not have a fixed term for members; it expired 60 days after the date established for submission of its final report, September 30, 1983—a deadline the commission apparently did not meet, leaving it scrambling to finish the report before it dissolved on November 29. *Id.* at *1 & n.1, *5. President Reagan fired the plaintiffs before the commission submitted its report, and they brought suit. *Id.* at *1. After concluding the plaintiffs were likely to succeed on the merits, the *Berry* court found that they had established irreparable injury to "their statutory right to function as Commissioners,"

reasoning that "[t]he irreparable nature of this injury is evident by the obviously disruptive effect the *denial* of preliminary relief will likely have on the Commission's final activities" and that "the Commission's ability to fulfill its mandate is disrupted by plaintiffs['] removal for the Commission is left without a quorum." *Id.* at \*5 (emphasis in original). But even *Berry*, a case that is not binding on this Court, does not provide English a basis to argue that she will likely suffer irreparable harm here.

First, the court in *Berry* appears to have considered alleged injury to the commission as one and the same as alleged injury to the plaintiff commissioners. But in that case, denial of the plaintiffs' requested injunction would have shut down the commission without it having fulfilled its mandate by issuing its final report. Even assuming she is likely to succeed on the merits, English and the CFPB are not similarly situated here. The CFPB is not and will not be shuttered; it continues to operate with Mulvaney functioning as acting Director. Moreover, Mulvaney is doing so with the backing of the CFPB's General Counsel and senior management. No doubt, there could be harm suffered by the CFPB or by other parties if it is later determined that Mulvaney has not been lawfully the acting Director since November 25. But English must demonstrate the likelihood of irreparable harm *to her* if an injunction does not issue. And here— again, even assuming for argument's sake that she is likely to succeed on the merits—it does not appear that she would suffer any irreparable harm if the Court does not grant an injunction. Certainly, she has utterly failed to describe any such harm. Mot. at 24-25.

Second, in *Berry,* absent an injunction, any harm suffered by the commissioners was plainly irreparable because the commission would have expired and they could not have been reinstated to it. Here, to the extent that she argues that she suffers harm solely from not functioning as the acting Director, her argument cannot succeed because any such harm can be

42

remediated in the ordinary course of this case. English argues that this harm "will soon be entirely beyond remedy" because the position of acting Director "will expire when the President nominates and the Senate confirms a new Director for the CFPB." Mot. at 26. She goes on to assert that a traditional damages remedy or declaratory judgment ceases to be an adequate remedy "[o]nce a new Director is appointed." *Id.* But it is entirely speculative how long it could take for the President to nominate and the Senate to confirm a permanent CFPB Director. As such, her claim that she is entitled to be acting Director, standing alone, is not "of such imminence that there is a 'clear and present' need for equitable relief to prevent irreparable harm." *Chaplaincy*, 454 F.3d at 297 (emphasis omitted); *see Davis v. Billington*, 76 F. Supp. 3d 59, 65 (D.D.C. 2014) ("The plaintiff fails to meet this high standard as he has no concrete proof that the vacancy . . . will not be available when this matter is ultimately resolved.").

Third, in *Berry*, the plaintiffs were attempting to preserve a status quo in which they had a "statutory right to function as Commissioners" after they were appointed by President Carter, with the advice and consent of the Senate, pursuant to the authorizing statute of the Commission. 1983 WL 538, at *1. In contrast, there was never a time here in which English functioned as the CFPB's acting Director. This fact affects both the injunctive relief she is seeking, and the harm that she can argue would flow from the absence of such relief.

English claims to be seeking only a prohibitive injunction that preserves the status quo. *See* PI Hr'g Tr. at 7:21-8:16. Her request for injunctive relief seeks only to restrain the President from appointing an acting Director other than her, require the President to withdraw Mulvaney's appointment, and prohibit Mulvaney from serving as acting Director. *See* ECF No. 23 at 2; Mot. at 3. Even assuming English is likely to succeed on the merits, then, she would only be entitled to relief that would preserve the "last uncontested status which preceded the pending

43

controversy." *See District 50, United Mine Workers of Am. v. Int'l Union, United Mine Workers of Am.*, 412 F.2d 165, 168 (D.C. Cir. 1969). During the last uncontested status in this case, she was the CFPB's Deputy Director. She was never the CFPB's uncontested acting Director. So to the extent that her argument depends on irreparable harm suffered by her, absent an injunction, from loss of a "statutory right to function" as acting Director, it fails because she would not be entitled to that position even if the Court granted her an injunction. Indeed, injunctions generally "should not work to give a party essentially the full relief [sought] on the merits," which is what an injunction permitting English to accede to acting Director would do. *Singh*, 185 F. Supp. 3d at 17 (quoting *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 n.13 (D.C. Cir. 1969)).

English's inability to demonstrate that she is likely to suffer irreparable harm, regardless of her likelihood of success on the merits, is also a sufficient basis to deny her motion. *See, e.g.*, *Human Touch DC, Inc. v. Merriweather*, No. 15-741 (APM), 2015 WL 12564162, at *2 (D.D.C. May 18, 2015) (citing *CityFed Fin. Corp. v. OTS*, 58 F.3d 738, 747) (D.C. Cir. 1995)); *Sataki v. Broad. Bd. of Gov'rs*, 733 F. Supp. 2d 22, 48 (D.D.C. 2010). In any event, even if English has shown some irreparable injury, it does not outweigh the other preliminary injunction factors, each of which tips in Defendants' favor. *See, e.g.*, *Winter*, 555 U.S. at 23; *Hamdan v. Gates*, 565 F. Supp. 2d 130, 137 (D.D.C. 2008); *Bradshaw v. Veneman*, 338 F. Supp. 2d 139, 144 (D.D.C. 2004).

### C.     The Balance of the Equities and the Public Interest

Finally, in determining whether to grant a preliminary injunction, "courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (internal quotation marks omitted) (quoting *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987)). "In exercising their sound discretion, courts . . . should [also] pay particular regard for the public consequences in

<center>44</center>

employing the extraordinary remedy of injunction." *Id.* (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).  These considerations merge into the same factor when the government is the non-movant.  *Nken*, 556 U.S. at 435; *see also Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016) (the government's "harm and the public interest are one and the same, because the government's interest *is* the public interest") (emphasis in original).

As explained above, English's theory of harm—loss of her "statutory right to function"—fails to establish that she will suffer irreparable injury absent injunctive relief.  Because she does not face irreparable injury, English cannot, of course, show that the "competing claims of injury" tip in her favor.  But even if the Court fully accepted her "statutory right to function" theory of harm, the balance of the equities still would not favor her.  That is because Mulvaney could claim precisely the same harm: his own competing statutory right to serve as acting Director of the CFPB.  So even in that case, because the Court has determined that English is not likely to succeed on the merits, the balance of the equities would necessarily weigh against granting her an injunction.

In addition, both English and Defendants cite the need for clarity, both for the CFPB's sake and for that of the parties affected by its regulatory and enforcement activities.  *See* Mot. at 26-28; Def. Opp. at 40.  There is little question that there is a public interest in clarity here, but it is hard to see how granting English an injunction would bring about more of it.  "[T]he Government has traditionally been granted the widest latitude in the 'dispatch of its own internal affairs.'" *Sampson*, 415 U.S. at 83 (quoting *Cafeteria & Rest. Workers Union, Local 473 v. McElroy*, 367 U.S. 886, 896 (1961)).  The President has designated Mulvaney the CFPB's acting Director, the CFPB has recognized him as the acting Director, and it is operating with him as the

45

acting Director.  Granting English an injunction would not bring about more clarity; it would only serve to muddy the waters.  Therefore, the balance of the equities and the public interest weigh against the injunction.

**V.**      **Conclusion and Order**

For all of the above reasons, English's Motion for a Preliminary Injunction is **DENIED**.


**SO ORDERED.**

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: January 10, 2018

LEANDRA ENGLISH,

     *Plaintiff*,

     v.

DONALD J. TRUMP *et al.*,

     *Defendants*.

Civil Action No. 17-2534 (TJK)

## MEMORANDUM OPINION AND ORDER

This case concerns whether the President is authorized to name an acting Director of the Consumer Financial Protection Bureau ("CFPB") or whether his choice must yield to the ascension of the Deputy Director, who was installed in that office by the outgoing Director in the hours before he resigned. The CFPB is a government agency created after the financial crisis of 2007-2008 by the Dodd-Frank Wall Street Reform and Consumer Protection Act (the "Dodd-Frank Act" or "Dodd-Frank"), Pub. L. No. 111-203, 124 Stat. 1376 (2010). The CFPB's previous Director, Richard Cordray, resigned effective at midnight on the day after Thanksgiving: Friday, November 24, 2017. That same day, he named Plaintiff Leandra English the CFPB's Deputy Director, in an apparent attempt to select his successor. But the President, Defendant Donald John Trump, made his own appointment that day, announcing that Defendant John Michael Mulvaney, who serves as the Director of the Office of Management and Budget ("OMB"), would also serve as acting Director of the CFPB upon Cordray's resignation.

English claims that, by operation of the Dodd-Frank Act, she—and only she—is now entitled to be the acting Director of the CFPB. She seeks a preliminary injunction that would restrain the President from appointing an acting Director other than her, require the President to

withdraw Mulvaney's appointment, and prohibit Mulvaney from serving as acting Director. Defendants, joined by the CFPB's General Counsel, argue that the President's appointment of Mulvaney is valid under a separate statute, the Federal Vacancies Reform Act of 1998 (the "FVRA"), 5 U.S.C. § 3345 *et seq.*, which they contend provides the President an available method to fill Executive Branch vacancies such as this one. They urge the Court to deny the injunction.

The merits of this case turn on a question of statutory interpretation, where "[t]he 'role of this Court is to apply the statute[s] as [they are] written—even if . . . some other approach might accord with good policy.'" *Loving v. IRS*, 742 F.3d 1013, 1022 (D.C. Cir. 2014) (quoting *Burrage v. United States*, 134 S. Ct. 881, 892 (2014)). Thus, the particular policies or priorities that English or Mulvaney might pursue as the CFPB's acting Director are irrelevant to the Court's analysis. For the reasons explained below, including that English has not demonstrated a likelihood of success on the merits or shown that she will suffer irreparable injury absent injunctive relief, her request for a preliminary injunction is **DENIED**.

## I. Statutory Background

### A. The Federal Vacancies Reform Act of 1998

"Article II of the Constitution requires that the President obtain 'the Advice and Consent of the Senate' before appointing 'Officers of the United States.'" *NLRB v. SW Gen., Inc.*, 137 S. Ct. 929, 934 (2017) (quoting U.S. Const. art. II, § 2, cl. 2). "Given this provision, the responsibilities of an office requiring Presidential appointment and Senate confirmation—known as a 'PAS' office—may go unperformed if a vacancy arises and the President and Senate cannot promptly agree on a replacement." *Id.* "Congress has long accounted for this reality by authorizing the President to direct certain officials to temporarily carry out the duties of a vacant PAS office in an acting capacity, without Senate confirmation." *Id.*

2

In some cases, Congress has provided agency-specific rules for acting officers. *See, e.g.*, 12 U.S.C. § 4 (providing that the Deputy Comptrollers of the Currency shall perform the duties of the Comptroller during the latter's "vacancy," "absence," or "disability"). But since at least the 1860s, Congress has also provided general rules that apply to executive vacancies more broadly, across a wide range of government agencies. *See SW Gen.*, 137 S. Ct. at 935-36. Over the years, these authorizations have evolved, and have included default rules that allowed a PAS officer's "assistant" to take over her duties automatically, with provisions that also permitted the President to fill the vacancy with another person meeting certain qualifications, such as a person currently serving in a PAS office. *See id.*

The current iteration of Congress' general rule for acting officers is the FVRA, which was passed in part to address perceived threats to the Senate's advice and consent power that arose in the 1990s. *See id.* at 936. As such, the FVRA imposes carefully calibrated limits on who can be appointed as an acting PAS officer and how long they may serve. *See* 5 U.S.C. §§ 3345, 3346. Its default rule is that the officer's "first assistant" takes over as acting officer. *Id.* § 3345(a)(1). However, the President may override that rule by appointing a different officer or employee from within the same agency, *see id.* § 3345(a)(3), or a PAS officer from a different agency, *see id.* § 3345(a)(2). The FVRA generally forbids acting officers from serving for more than 210 days. *See id.* § 3346. In addition, with certain exceptions, a person may not serve as an acting officer if he has been nominated for the permanent position. *See id.* § 3345(b).

The FVRA generally covers any PAS office in any "Executive agency" in the event the officer "dies, resigns, or is otherwise unable to perform the functions and duties of the office." *Id.* § 3345(a). Certain offices are specifically excluded from the statute's scope, including members of any multi-member body that "governs an independent establishment or Government

3

corporation." *Id.* § 3349c(1)(B). In addition, unless another statute expressly addresses the appointment of an acting officer, the FVRA provides that it is the "exclusive means" for any such appointments within its scope. *Id.* § 3347(a). If no one can serve as acting officer under the FVRA, the position remains vacant. *Id.* § 3348(b).

**B.**     **The Dodd-Frank Wall Street Reform and Consumer Protection Act**

"In response to the financial crisis in 2008 . . . Congress passed and President Obama signed the Dodd-Frank [Act]." *State Nat'l Bank of Big Spring v. Lew*, 795 F.3d 48, 51 (D.C. Cir. 2015). Title X of Dodd-Frank established the CFPB to "regulate the offering and provision of consumer financial products or services under the Federal consumer financial laws." *CFPB v. Accrediting Council for Indep. Colls. & Schs.*, 854 F.3d 683, 687 (D.C. Cir. 2017) (quoting 12 U.S.C. § 5491(a)); *see also* 12 U.S.C. § 5492(a) (listing the CFPB's powers). The CFPB's purpose is to "implement and, where applicable, enforce Federal consumer financial law consistently for the purpose of ensuring that all consumers have access to markets for consumer financial products and services and that markets for consumer financial products and services are fair, transparent, and competitive." 12 U.S.C. § 5511(a). The "Federal consumer financial law" the CFPB is charged with enforcing "includes [Title X of Dodd-Frank] and eighteen pre-existing consumer protection statutes." *Accrediting Council,* 854 F.3d at 687 (citing 12 U.S.C. § 5481(12), (14)). Dodd-Frank vested the CFPB with "broad 'rulemaking, supervisory, investigatory, adjudicatory, and enforcement authority'" to carry out its mission. *Id.* at 688 (quoting *Morgan Drexen, Inc. v. CFPB*, 785 F.3d 684, 687 (D.C. Cir. 2015)).

The Dodd-Frank Act established the CFPB as an "independent bureau" within the Federal Reserve System. 12 U.S.C. § 5491(a). However, unlike many other independent agencies within the Executive Branch, it is led by a single Director. *Id.* § 5491(b)(1). The Director is appointed by the President with the advice and consent of the Senate, and may be

4

removed only by the President for cause. *Id.* § 5491(b)(2), (c)(3).[1] The Dodd-Frank Act

establishes a five-year term for the Director. *Id.* § 5491(c)(1). The CFPB's structure is also

marked by a number of other unusual features: for example, the CFPB receives funding from the

Federal Reserve, as opposed to Congress. *Id.* § 5497(a). Moreover, other Executive Branch

officers may not exercise control over the CFPB's communications with Congress about

potential legislation. *See id.* § 5492(c)(4). The Dodd-Frank Act also created a Deputy Director

of the CFPB, who "shall— (A) be appointed by the Director, and (B) serve as acting Director in

the absence or unavailability of the Director." *Id.* § 5491(b)(5). In addition, Dodd-Frank

provides that "[e]xcept as otherwise provided expressly by law, all Federal laws dealing with . . .

officers [or] employees . . . apply to the exercise of the powers of the [CFPB]." *Id.* § 5491(a).

## II.     Factual and Procedural Background

### A.      Cordray's Resignation and the Dueling Appointments of English and Mulvaney

This controversy was set in motion on the day after Thanksgiving: Friday, November 24,

2017. That day, as consumers thronged the country's shopping malls, CFPB Director Cordray

resigned from his position effective as of midnight, well short of the completion of his five-year

term. *See* ECF No. 22 ("Am. Compl.") ¶¶ 11-12; ECF No. 24 ("English Decl.") ¶ 6. He also

named English, his Chief of Staff, to serve as the CFPB's Deputy Director—a position that

apparently no one had occupied since August 2015—effective at noon. *See* English Decl. ¶ 4;

ECF No. 41-2 at 2 n.1. At 2:30 p.m., Cordray publicly announced the decision, explaining that

the appointment was intended "to ensure an orderly succession for this independent agency" by

effectively making English the acting Director after he left office. English Decl. ¶ 5. He also

---

[1] An action challenging the constitutionality of this removal restriction is currently pending before the D.C. Circuit sitting *en banc*. *See PHH Corp. v. CFPB*, 839 F.3d 1 (D.C. Cir. 2016), *vacated, reh'g en banc granted*, No. 15-1177 (D.C. Cir. Feb. 16, 2017).

stated that having his Chief of Staff serve as acting Director "would minimize operational disruption and provide for a smooth transition given her operational expertise." *Id.* English had previously served in a number of other roles at the CFPB, OMB, and other federal agencies. *See id.* ¶¶ 2-3.

But the President had other plans on that busy day. He issued a memorandum directing Mulvaney to "perform the functions and duties" of the CFPB Director "until the position is filled by appointment or subsequent designation, effective 12:01 a.m. eastern standard time, November 25, 2017." ECF No. 41-1. The President cited the FVRA as the basis for Mulvaney's designation as the CFPB's acting Director. *Id.* At approximately 8:50 p.m., the White House issued a statement announcing the designation. English Decl. ¶ 7.

The next day, Saturday, November 25, the Department of Justice's Office of Legal Counsel issued a memorandum confirming legal advice it had provided orally the previous day: that the President was lawfully permitted to designate an acting Director of the CFPB pursuant to the FVRA. *See* ECF No. 41-2. That same day, the CFPB's General Counsel issued a memorandum to CFPB senior management reaching the same conclusion. *See* ECF No. 41-3. Subsequently, in a conference call on Sunday, November 26, the Associate Directors of the CFPB's six divisions agreed that they would act consistently with the understanding that Mulvaney was the acting Director. *See* ECF No. 41-4 ("Fulton Decl.") ¶ 6.

On Monday, November 27, Mulvaney showed up for work at the CFPB's facilities and was provided access to the Director's office. *Id.* ¶ 7. As of early December, he was spending three days a week working there, and three days a week at OMB. *See* ECF No. 41-5 at 1. He regularly receives memoranda intended for the CFPB Director, including memoranda requesting decisions from the Director. Fulton Decl. ¶ 9. He also issues directives with which CFPB staff

6

comply. *Id.* ¶ 10. On December 4, he held a CFPB press roundtable during which he described some of the activity he had undertaken as acting Director. *See* ECF No. 41-5. Also, the CFPB's website lists him as the acting Director. *See* CFPB, https://www.consumerfinance.gov/about-us/the-bureau/about-director/ (last accessed Jan. 10, 2018). In summary, the record evidence suggests that CFPB "operations have continued with the understanding that Mick Mulvaney is the Acting Director." Fulton Decl. ¶ 8. Indeed, it is notable that the CFPB's General Counsel and other CFPB attorneys are listed as "Of Counsel" on Defendants' opposition brief. ECF No. 41 ("Def. Opp.") at 40.

For her part, English continues to work at the CFPB, apparently at a separate facility from Mulvaney. *See* ECF No. 41-5 at 2. She has held herself out as the acting Director by sending a number of emails to CFPB staff to that effect. *See id.* at 12. She has also held herself out as the acting Director in meetings with Congressional leaders and other stakeholders. *See* ECF No. 16 at 11:19-24. In response, Mulvaney has sent her a number of emails asking her to stop holding herself out as acting Director. *See* ECF No. 41-5 at 4, 12. He has also sent her emails asking her to perform certain customary duties of the Deputy Director. *See id.* at 4-5, 12. As of December 4, he had not received a response. *Id.* at 4. However, during the press roundtable held on that same day, Mulvaney unequivocally stated that he was not considering terminating her. *Id.* at 5. As of late December, all parties agreed that these basic facts remained unchanged. ECF No. 46 ("PI Hr'g Tr.") at 4:3-10, 6:3-10.

## B. Procedural History

On November 26, 2017, English filed this lawsuit against the President and Mulvaney, requesting declaratory and injunctive relief. ECF No. 1. Also on November 26, she filed an emergency motion for a temporary restraining order ("TRO") restraining the President from appointing any acting Director other than her, requiring the President to withdraw Mulvaney's

appointment, and prohibiting Mulvaney from serving as acting Director. ECF No. 2. On November 27, the Court held a hearing on the motion. ECF No. 15. That same day, Defendants filed their opposition to English's motion. ECF No. 9. The next day, November 28, the Court held another hearing and denied the TRO motion, finding that English had not shown a likelihood of success on the merits and had otherwise failed to meet the prerequisites for emergency relief. ECF No. 16. On December 6, English filed an amended complaint, Am. Compl., and moved for a preliminary injunction seeking substantially the same relief, ECF No. 23. On December 7, English filed a corrected version of her brief in support. ECF No. 26 ("Mot."). On December 18, Defendants filed their opposition to English's motion. Def. Opp. On December 20, English filed her reply. ECF No. 44 ("Reply to Def. Opp."). On December 22, the Court held a hearing on the motion for a preliminary injunction. PI Hr'g Tr.

### III.    Legal Standard

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To warrant a preliminary injunction, a plaintiff must establish that (1) she "is likely to succeed on the merits"; (2) she "is likely to suffer irreparable harm in the absence of preliminary relief"; (3) the "balance of equities" tips in her favor; and (4) "an injunction is in the public interest." *Id.* at 20; *accord Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014). The last two factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). The plaintiff "bear[s] the burdens of production and persuasion" when moving for a preliminary injunction. *Qualls v. Rumsfeld*, 357 F. Supp. 2d 274, 281 (D.D.C. 2005) (citing *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004)).

"Before the Supreme Court's decision in *Winter*, courts weighed the preliminary-injunction factors on a sliding scale, allowing a weak showing on one factor to be overcome by a

8

strong showing on another factor." *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 205 F. Supp. 3d 4, 26 (D.D.C. 2016) (citing *Davenport v. Int'l Bhd. of Teamsters*, 166 F.3d 356, 360-61 (D.C. Cir. 1999)). However, the D.C. Circuit has "suggested, without deciding, that *Winter* should be read to abandon the sliding-scale analysis in favor of a 'more demanding burden' requiring a plaintiff to independently demonstrate both a likelihood of success on the merits and irreparable harm." *Id.* (quoting *Sherley v. Sebelius*, 644 F.3d 388, 392-93 (D.C. Cir. 2011)); *see also Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1292 (D.C. Cir. 2009).

Regardless of whether the sliding-scale analysis survives *Winter* in this Circuit, it is clear that a plaintiff's failure to show a likelihood of success on the merits is, standing alone, sufficient to defeat the motion. *Standing Rock*, 205 F. Supp. 3d at 26 (citing *Ark. Dairy Co-op Ass'n, Inc. v. USDA*, 573 F.3d 815, 832 (D.C. Cir. 2009)). In addition, "the basis of injunctive relief in the federal courts has always been irreparable harm." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (quoting *Sampson v. Murray*, 415 U.S. 61, 88 (1974)). As such, a plaintiff must show that at least some "irreparable injury is *likely* in the absence of an injunction," regardless of whether she satisfies the other three factors. *Winter*, 555 U.S. at 21-22 (emphasis in original); *see Chaplaincy*, 454 F.3d at 297.

Finally, the purpose of a preliminary injunction "is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). When a plaintiff seeks an injunction that would alter the status quo rather than merely preserve it (*i.e.*, a mandatory injunction), some district courts in this Circuit have applied an even higher standard. *See, e.g.*, *Elec. Privacy Info. Ctr. v. DOJ*, 15 F. Supp. 3d 32, 39 (D.D.C. 2014) (collecting cases); *Columbia Hosp. for Women Found., Inc. v. Bank of Tokyo-Mitsubishi Ltd.*, 15 F. Supp. 2d 1, 4 (D.D.C. 1997) ("[W]here an injunction is mandatory—that

9

is, where its terms would alter, rather than preserve, the status quo by commanding some positive act—the moving party must meet a higher standard than in the ordinary case by showing clearly that he or she is entitled to relief or that extreme or very serious damage will result from the denial of the injunction." (internal quotation marks omitted) (quoting *Phillip v. Fairfield Univ*., 118 F.3d 131, 133 (2d Cir. 1997))), *aff'd*, 159 F.3d 636 (D.C. Cir. 1998). "The D.C. Circuit has not opined on the issue, but application of a heightened standard of review to requests for mandatory preliminary injunctive relief has been adopted in other Circuits." *Singh v. Carter*, 185 F. Supp. 3d 11, 17 n.3 (D.D.C. 2016) (collecting cases).

The Court need not resolve the question of whether the sliding scale test is viable after *Winter*. As explained in more detail below, because English "cannot meet the less demanding 'sliding scale' standard, [she] cannot satisfy the more stringent standard alluded to by the Court of Appeals." *Kingman Park Civic Ass'n v. Gray*, 956 F. Supp. 2d 230, 241 (D.D.C. 2013). Similarly, the Court need not determine the nature of the injunction sought by English, because even under the standard governing prohibitive injunctions, she cannot meet her burden. *See, e.g.*, *Sataki v. Broad. Bd. of Governors*, 733 F. Supp. 2d 1, 11 n.12 (D.D.C. 2010) (declining to determine whether to apply a higher standard for a mandatory injunction because plaintiff could not meet the traditional standard).

## IV.    Analysis

The Court finds that English is not likely to succeed on the merits of her claims, nor is she likely to suffer irreparable harm absent the injunctive relief sought. Moreover, the balance of the equities and the public interest also weigh against granting the relief. Therefore, English has not met the exacting standard to obtain a preliminary injunction.

## A. Likelihood of Success on the Merits

English asserts several different causes of action in her Amended Complaint, but all of them—including her claim that Mulvaney's appointment is invalid because it violates the Constitution's Appointments Clause—turn on her argument that the President is not statutorily authorized to appoint Mulvaney as the CFPB's acting Director. Am. Compl. ¶¶ 19-28; PI Hr'g Tr. at 16:20-19:25. Accordingly, the Court organizes its analysis of the merits around two issues: (1) whether the President is authorized by statute to appoint an acting Director of the CFPB; and (2) if he is so authorized, whether he may appoint Mulvaney to that position.

### 1. The President's Authority to Appoint the CFPB's Acting Director

English argues that she acceded to the CFPB's acting Director position by operation of the Dodd-Frank Act, and that the President lacks the authority under the FVRA to designate an acting Director. Mot. at 6-17. She asserts that the Dodd-Frank Act's provision that its Deputy Director "shall . . . be appointed by the Director [and] serve as acting Director in the absence or unavailability of the Director" displaces the President's authority under the FVRA to designate an acting CFPB Director. *Id.* at 7-8. According to English, Dodd-Frank and the FVRA are in "unavoidable conflict," *id.* at 9, which "must be resolved against application of the FVRA" because "Dodd-Frank was enacted later in time, and speaks with greater specificity to the question at hand," *id.* at 7. Defendants argue that the FVRA is not displaced by Dodd-Frank's Deputy Director provision, and remains available as an option for the President to fill the CFPB's acting Director position. Def. Opp. at 12.

11

### a. The FVRA's Applicability

As an initial matter, the Court must determine whether the FVRA—independent of whether it is displaced by the Deputy Director provision of the Dodd-Frank Act—authorizes the President's appointment of the CFPB's acting Director on its own terms. It clearly does.

The FVRA applies if "an officer of an Executive agency . . . whose appointment to office is required to be made by the President, by and with the advice and consent of the Senate, dies, resigns, or is otherwise unable to perform the functions and duties of the office." 5 U.S.C. § 3345(a). Under those conditions, the FVRA provides that "the President (and only the President) may direct a person who serves in an office for which appointment is required to be made by the President, by and with the advice and consent of the Senate, to perform the functions and duties of the vacant office temporarily in an acting capacity." *Id.* § 3345(a)(2).

The CFPB is "an Executive Agency." 12 U.S.C. § 5491(a). The Director of the CFPB is "appointed by the President, by and with the advice and consent of the Senate." *Id.* § 5491(b)(2). Director Cordray resigned effective at midnight on November 24, 2017. English Decl. ¶ 6. Therefore, a plain reading of the FVRA's text allows the President to direct a person who serves in a PAS office to "perform the functions and duties of the [CFPB Director] temporarily in an acting capacity." 5 U.S.C. § 3345(a)(2).

English argues that the FVRA is inapplicable because the CFPB Director is excluded from its coverage. *See* Mot. at 16-17. She cites an FVRA provision that excludes certain officers, including "any member who is appointed by the President, by and with the advice of the Senate to any board, commission, or similar entity that— (A) is composed of multiple members; and (B) governs an independent establishment or Government corporation." 5 U.S.C. § 3349c(1). Of course, this exception does not directly apply to the CFPB Director, because the

12

CFPB is not a multi-member body. 12 U.S.C. § 5491(a), (b)(1). English argues, however, that the exception indirectly applies, because the CFPB Director (whether permanent or acting) also serves on the Board of Directors of the Federal Deposit Insurance Corporation ("FDIC"), which is such a multi-member body. Mot. at 16-17; *see* 12 U.S.C. § 1812(a)(1)(B), (d)(2). Therefore, she concludes, § 3349c(1) of the FVRA prohibits the President from using it to name an acting Director of the CFPB.

English misconstrues this statutory exception. By its terms, it applies only to FDIC board members if they are "appointed by the President, by and with the advice and consent of the Senate to" the board. 5 U.S.C. § 3349c(1). The CFPB Director is not appointed to the FDIC board in that manner, but rather serves in that position *ex officio* by operation of statute. *See* 12 U.S.C. § 1812(a)(1)(B). In fact, the FDIC's organic statute explicitly distinguishes between the two *ex officio* members of its board and the three "appointed members," *id.* § 1812(b)(1), (b)(2), (c)(1), (c)(3), each of whom is in fact appointed to the board "by the President, by and with the advice of and consent of the Senate," *id.* § 1812(a)(1)(C).[2] The CFPB Director is not "appointed . . . to" the FDIC board by the President with the advice and consent of the Senate. 5 U.S.C. § 3349c(1). Therefore, the statutory exception does not cover the acting CFPB Director or his *ex officio* membership on the FDIC board.

The D.C. Circuit's decision in *Symons v. Chrysler Corp. Loan Guar. Bd.*, 670 F.2d 238 (D.C. Cir. 1981), confirms the Court's interpretation of this statutory exception. In that case, the Circuit considered the scope the Government in the Sunshine Act (the "Sunshine Act"), which applies to any agency "headed by a collegial body composed of two or more individual

---

[2] The *ex officio* members are the Director of the CFPB and the Comptroller of the Currency. *See* 12 U.S.C. § 1812(a)(1)(B)-(C). When there are vacancies, these seats are automatically filled by the acting Director or acting Comptroller, respectively. *See id.* § 1812(d)(2).

members, a majority of whom are appointed to such position by the President with the advice and consent of the Senate." 5 U.S.C. § 552b(a)(1). The Circuit held that the Sunshine Act does not apply to a multi-member body composed only of *ex officio* members who hold other PAS offices in the Executive Branch, because they are not appointed to that multi-member body by the President with the advice and consent of the Senate. *See Symons*, 670 F.2d at 241. The court rejected arguments that this reading would undermine the intent of the Sunshine Act, reasoning "that when Congress wishes to extend Sunshine coverage to *ex officio* agencies, it will do so." *Id.* at 244-45. Similarly, if Congress wished to exclude *ex officio* members of the FDIC board from the FVRA, it would have done so.

English also suggests that, because 5 U.S.C. § 3349c(1) was intended to reach all agencies with "hallmarks of independence," it should be interpreted to cover the CFPB. Reply to Def. Opp. at 9. Indeed, English suggests that Congress would have included the CFPB in § 3349c had the CFPB existed at the time. *Id.* at 9 n.5. But such speculation cannot justify rewriting the statute. And in any event, when Congress passed Dodd-Frank, it could have amended § 3349c to include the CFPB Director—but it did not. "Where a statute contains explicit exceptions, the courts are reluctant to find other implicit exceptions." *In re England*, 375 F.3d 1169, 1178 (D.C. Cir. 2004) (quoting *Detweiler v. Pena*, 38 F.3d 591, 594 (D.C. Cir. 1994)). The Court declines English's invitation to do so here.

As a result, the Court concludes that by its own terms, the FVRA authorizes the President to appoint an acting Director of the CFPB pursuant to 5 U.S.C. § 3345(a)(2). It now turns to the question of whether the Deputy Director provision of the Dodd-Frank Act displaces it.

14

### b. Potential Displacement of the FVRA by the Dodd-Frank Act's Deputy Director Provision

English argues that Dodd-Frank—by providing that the Deputy Director "shall— (A) be appointed by the Director, and (B) serve as acting Director in the absence or unavailability of the Director," 12 U.S.C. § 5491(b)(5)(B)—creates an unavoidable conflict with the FVRA and therefore displaces it. Mot. at 7. Defendants counter that the two statutes can be read harmoniously and the FVRA remains available as an option for the President. "In ascertaining the plain meaning of [a] statute, the [C]ourt must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *United States v. Sunia*, 643 F. Supp. 2d 51, 62 (D.D.C. 2009) (quoting *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988)).

The Court concludes that a fair reading of the entirety of these statutes, in light of relevant principles of statutory construction, does not result in an unavoidable conflict. Instead, the two statutes can, and therefore must, be read harmoniously. The best reading of the two statutes is that Dodd-Frank requires that the Deputy Director "shall" serve as acting Director, but that under the FVRA the President "may" override that default rule. This reading is compelled by several considerations: the text of the FVRA, including its exclusivity provision, the text of Dodd-Frank, including its express-statement requirement and Deputy Director provision, and traditional principles of statutory construction.

### The FVRA's Exclusivity Provision

It is a "familiar principle that Congress legislates with a full understanding of existing law." *Am. Fed'n of Gov't Emps.*, *Local 3295 v. FLRA*, 46 F.3d 73, 78 (D.C. Cir. 1995) (citing *Miles v. Apex Marine Corp.,* 498 U.S. 19, 32 (1990)). Therefore, when passing Dodd-Frank, Congress was aware of how the FVRA typically interacts with other statutes. And the FVRA's

exclusivity provision makes clear that it was generally intended to apply alongside agency-specific statutes, rather than be displaced by them.

As discussed above, § 3345 of the FVRA applies broadly to any PAS office in any "Executive agency," such as the CFPB.  5 U.S.C. § 3345.  It sets out a series of methods for filling vacancies, including designating a PAS officer under § 3345(a)(2).  Section 3347 of the FVRA, titled "Exclusivity," further provides that the FVRA is the "exclusive means" for authorizing acting service in the event of a vacancy "unless" the President makes a recess appointment or another statutory provision expressly: "(A) authorizes the President, a court, or the head of an Executive department, to designate an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity;" or "(B) designates an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity."  5 U.S.C. § 3347(a)(1).  Where such a statutory provision exists and § 3345 of the FVRA applies, that can only mean that § 3345—while not the "exclusive means"—is a nonexclusive means for appointing officers.

Here, there is no question that Dodd-Frank's Deputy Director provision "designates an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity."  *Id.* § 3347(a)(1); *see* 12 U.S.C. § 5491(b)(5)(B).  As such, by its own terms, the FVRA is not the "excusive means" for filling the vacancy, and remains a nonexclusive means to do so.  5 U.S.C. § 3347(a)(1).

The Ninth Circuit's holding in *Hooks v. Kitsap Tenant Support Servs., Inc.*, 816 F.3d 550 (9th Cir. 2016), is instructive.  In that case, the plaintiff argued that the President could not invoke the FVRA to designate an acting General Counsel for the National Labor Relations Board during a vacancy, because the National Labor Relations Act ("NLRA") also authorized the

President "to designate the officer or employee who shall act as General Counsel during such vacancy." *Id.* at 555 n.5 (quoting 29 U.S.C. § 153(d)); *see id.* at 555-56. Rejecting that argument, the court held that the FVRA remained available as an additional option. The presence of an agency-specific statute, the court held, merely meant that "neither the FVRA nor the NLRA is the *exclusive* means of appointing an Acting General Counsel," and thus, "the President is permitted to elect between two statutory alternatives." *Id.* at 556 (emphasis in original).

Admittedly, *Hooks* did not squarely address the question before the Court: whether the specific language in Dodd-Frank displaces the FVRA. Unlike Dodd-Frank, the NLRA does not require that any particular person "shall" serve as acting General Counsel, but merely authorizes the President to appoint an acting General Counsel. *See* 29 U.S.C. § 153(d). Moreover, that section of the NLRA predates the FVRA, leaving no room for an argument that it was intended to displace the FVRA. *Hooks* nonetheless supports the general proposition that where the appointment mechanisms of § 3345 of the FVRA are available but are not, under § 3347, *the* "exclusive means" of appointing acting officials, they nonetheless typically remain *a* means of doing so alongside the agency-specific statute. And when Congress passed the Dodd-Frank Act, it did so with the understanding that the FVRA often co-exists with other acting-official provisions—such as the one at issue here.

English attempts to distinguish *Hooks* on the grounds that the NLRA provides authority to appoint an acting official to the very same person authorized to make a temporary appointment under the FVRA: the President. *See* Mot. at 14. That is not the case here, where the Deputy Director automatically becomes acting Director upon an "absence" or "unavailability." 12 U.S.C. § 5491(b)(5)(B). But there is nothing in *Hooks* to suggest that the

17

court's interpretation of the FVRA would turn on this distinction, nor does the text of the FVRA provide any reason to think so. *See Hooks*, 816 F.3d at 555-56.

## Dodd-Frank's Express-Statement Requirement

Dodd-Frank also explains how it interacts with other statutes, by providing an express-statement requirement that is important in evaluating whether the FVRA applies to the CFPB's acting Director in this case. Dodd-Frank specifies that, "[e]xcept as otherwise provided expressly by law, all Federal laws dealing with public or Federal . . . officers [or] employees . . . shall apply to the exercise of the powers of the [CFPB]." 12 U.S.C. § 5491(a). The FVRA is a "Federal law[] dealing with . . . Federal . . . officers." *Id.*; *see* 5 U.S.C. § 3345 (entitled "Acting officer"). It is located in Part III—"Employees"—of Title 5 of the U.S. Code. *See* 5 U.S.C. § 3345 *et seq.* English has not disputed the conclusion that follows: that the FVRA applies to the CFPB unless Dodd-Frank "expressly" displaces it. *See* Mot. at 12-13; Reply to Def. Opp. at 3 n.4. In fact, she has conceded that the express-statement requirement applies, and has sought to meet that burden. *See* PI Hr'g Tr. at 38:12-39:21; Mot. at 13.

English argues, however, that this express-statement clause should be read narrowly, and she relies on cases holding that such clauses do not require "magical passwords" to signal a conflict between two statutes. Mot. at 13 (citing *Marcello v. Bonds*, 349 U.S. 302, 310 (1955)); *see id.* (citing *Dorsey v. United States*, 567 U.S. 260, 273-74 (2012), and *Lockhart v. United States*, 546 U.S. 142, 149 (2005) (Scalia, J., concurring)). But those cases are distinguishable. They concern the effect of certain express-statement provisions that cabin the efforts of future legislatures. In contrast, Dodd-Frank's express-statement requirement operates here simply to clarify the circumstances under which the FVRA, which Congress had previously passed, applies to the CFPB.

18

For example, in *Marcello*, the Supreme Court considered an express-statement provision in the Administrative Procedure Act, which lays out general rules governing the conduct of federal agencies and provides that later-enacted statutes may supersede those rules only if they do so expressly. *See* 349 U.S. at 310; 5 U.S.C. § 559. The Supreme Court has expressed doubts about such future-limiting rules "because statutes enacted by one Congress cannot bind a later Congress, which remains free to repeal the earlier statute, to exempt the current statute from the earlier statute, to modify the earlier statute, or to apply the earlier statute but as modified." *Dorsey*, 567 U.S. at 274. Indeed, under those circumstances, a "subsequent Congress . . . may exempt itself . . . by 'fair implication'—that is, without an express statement." *Lockhart*, 546 U.S. at 148 (Scalia, J., concurring) (emphasis omitted) (citing *Warden v. Marrero*, 417 U.S. 653, 659-60, n.10 (1974)). Put differently, in those contexts, "express" does not really mean "express."

The reasoning of those cases does not apply here. In this case, the only issue is whether the CFPB's Deputy Director provision displaces a prior statute, the FVRA. The 111th Congress, when passing Dodd-Frank Act, included guidance on that question, explaining that certain laws, including the FVRA, apply to the CFPB unless the law "expressly" provides otherwise. *See* 12 U.S.C. § 5491(a). Here, then, this express-statement provision does not operate to restrict future Congresses; it merely clarifies the circumstances under which FVRA, which was already on the books, applies to the CFPB. Therefore, "expressly" should not be read narrowly, but given its normal meaning: "Clearly and unmistakably communicated; stated with directness and clarity." *Express*, Black's Law Dictionary 701 (10th ed. 2014); *see also Magone v. Heller*, 150 U.S. 70, 74 (1893) ("[T]he adverb 'expressly,' in its primary meaning, denotes precision of statement, as

opposed to ambiguity, implication, or inference, and is equivalent to 'in an express manner' or 'in direct terms' . . . .").

## Dodd-Frank's Deputy Director Provision

With that textual background in mind, the Court now turns to the specific provision that English asserts displaces the FVRA.  Under Dodd-Frank, the Deputy Director "shall— (A) be appointed by the Director, and (B) serve as acting Director in the absence or unavailability of the Director."  12 U.S.C. § 5491(b)(5).  In contrast, the FVRA provides that the President "may" appoint an acting officer, 5 U.S.C. § 3345(a)(2), if an officer "dies, resigns, or is otherwise unable to perform the functions and duties of the office,"  *id.* at 3345(a).  As explained below, on its face, Dodd-Frank's Deputy Director provision does not *expressly* displace the FVRA.

As a threshold matter, there is reason to doubt whether the Deputy Director provision even covers a vacancy created by a resignation like Cordray's.  Significantly, the provision does not use the word "vacancy."  If Congress intended to displace the FVRA, it could have explicitly referred to "vacancies," as the title of the FVRA does.  Certainly, it has done so in numerous other agency-specific statutes.  *See, e.g.*, 20 U.S.C. § 3412(a)(1) (Secretary of Education); 28 U.S.C. § 508 (Attorney General); 29 U.S.C. § 153(d) (NLRB General Counsel); 38 U.S.C. § 304 (Secretary of Veterans Affairs); 40 U.S.C. § 302(b) (GSA Administrator); 42 U.S.C. § 902(b)(4) (Commissioner of Social Security).  Congress could alternatively have mimicked the language used in the FVRA, which is applicable when an officer "dies, resigns, or is otherwise unable to perform the functions and duties of the office."  5 U.S.C. § 3345(a).  It could also have simply referred to resignations.  But Congress did none of those things.  This is all the more telling in light of the fact that Congress *did* use the term "vacancy" elsewhere in Dodd-Frank.  12 U.S.C. § 5321(c)(3).

Instead, under Dodd-Frank, the Deputy Director assumes the acting Director post "in the absence or unavailability of the Director." 12 U.S.C. § 5491(b)(5). Black's Law Dictionary defines "absence" as a "failure to appear, or to be available and reachable, when expected." *Absence*, Black's Law Dictionary 8 (10th ed. 2014). "Available" is commonly defined as "immediately utilizable" or "capable of use for the accomplishment of a purpose." *Available*, Webster's Third New International Dictionary 150 (1993). To be sure, these words might reasonably be read to include the vacancy created by Cordray's resignation, a conclusion that the Defendants have not squarely disputed. On the other hand, Defendants argue, with some force, that both words are commonly understood to reflect a temporary condition, such as not being reachable due to illness or travel. Def. Opp. at 17-18. Students, for example, are "absent" from school, and a traveler may be "unavailable" when on a long flight. Obviously, these are not the circumstances here, given that Cordray's resignation is permanent. In any event, even assuming that a vacancy created by a resignation is an "absence or availability" under Dodd-Frank, this is hardly language that Congress would have used to expressly displace the FVRA.

But perhaps most tellingly, the Deputy Director provision—and the entirety of Dodd-Frank—is silent regarding the *President's* ability to appoint an acting Director. Dodd-Frank certainly does not expressly prohibit the President from doing so. Nor does it affirmatively require the President to appoint a particular person. *Cf.* 12 U.S.C. § 4512(f) (providing that the President "shall designate" one of a number of Federal Housing Finance Agency ("FHFA") officers "to serve as acting Director" in the "event of the death, resignation, sickness, or absence of the Director"). This silence makes it impossible to conclude that Dodd-Frank "expressly" makes the FVRA's appointment mechanisms unavailable. *Cf. Lindsay v. Gov't Emps. Ins. Co.*, 448 F.3d 416, 422 (D.C. Cir. 2006) (holding that a statute did not "expressly" prohibit the

exercise of supplemental jurisdiction where it "include[d] no mention of supplemental jurisdiction at all"). Ultimately, if the Dodd-Frank Act's Deputy Director provision served to displace the FVRA here, its express-statement requirement "would call for nothing more than a 'provision,' pure and simple, leaving the word 'expressly' without any consequence whatever." *Breuer v. Jim's Concrete of Brevard*, 538 U.S. 691, 691-92 (2003).

English's displacement argument relies heavily on Dodd-Frank's use of the word "shall." She argues that this word is both "mandatory" and "unqualified," and creates an unavoidable conflict between Dodd-Frank and the FVRA that must be resolved in favor of Dodd-Frank. Mot. at 9. She and her *amici* rely on cases holding that "'shall' . . . 'normally creates an obligation impervious to judicial discretion.'" *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1977 (2016) (quoting *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998)); *see* Reply to Def. Opp. at 2; ECF No. 34 at 8-9. No doubt this is often the case. *See Shall*, Black's Law Dictionary 1585 (10th ed. 2014) (listing "has a duty to; more broadly, is required to" as its first definition). But although "shall" is usually understood as mandatory, these authorities do not suggest that "shall" is always understood to be *unqualified*.

"*Shall* is, in short, a semantic mess. *Black's Law Dictionary* records five meanings for the word." A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* § 11, at 113 (2012) (emphasis in original); *see also Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 432 n.9 (1995) ("Though 'shall' generally means 'must,' legal writers sometimes use, or misuse, 'shall' to mean 'should,' 'will,' or even 'may.'"). That is why courts look to the entire statutory context to determine how to construe it. *See, e.g.*, *Gutierrez,* 515 U.S. at 439 (Souter, J., dissenting) (conceding that courts should not "read 'shall' as . . . uncompromising" when there is another provision in the law that requires a different result).

22

96

Viewed in light of the entirety of the text of both the FVRA and Dodd-Frank, as set forth above, it becomes clear that Dodd-Frank's "shall" is implicitly qualified by the FVRA's "may." In fact, the structure of similar statutes often reflects that some official "shall" serve, only to elsewhere qualify that apparently mandatory service in some way. For example, Dodd-Frank provides that the Director "shall serve as the head of the [CFPB]." 12 U.S.C. § 5491(b)(1). At the same time, the President "may remove" the Director for cause. *Id.* § 5491(c)(3). And obviously, an official may always resign, as Cordray did here, despite the apparently mandatory length of his term. *See id.* § 5491(c)(1) ("The Director shall serve for a term of five years."). Similarly, the FVRA provides that the first assistant "shall perform" the duties of the vacant PAS office. 5 U.S.C. § 3345(a)(1). But "notwithstanding" this requirement, the President "may" appoint another PAS officer to perform those duties. *Id.* § 3345(a)(2). To take another example, "[e]ach member [of the Nuclear Regulatory Commission] shall serve for a term of five years." 42 U.S.C. § 5841(c). But those members "may be removed by the President for inefficiency, neglect of duty, or malfeasance in office." *Id.* § 5841(e). No one could reasonably dispute how to resolve these apparent conflicts: the seemingly mandatory language requiring an official to serve is implicitly qualified by other statutory provisions.[3] It does not wholly displace such provisions, let alone do so expressly. The same holds true here.

---

[3] In the case of the FVRA, Congress explicitly clarified this apparent conflict by including a "notwithstanding" clause. 5 U.S.C. § 3345(a)(2). But such "notwithstanding" clauses do not necessarily mean that the conflict is a difficult one to resolve—the clause's existence might merely "suggest that Congress thought the conflict was . . . quite likely to arise." *SW Gen.*, 137 S. Ct. at 940. Indeed, the Supreme Court has held that such clauses typically do no more than resolve a particular conflict, and that courts should generally draw no further inference from the presence or absence of such clauses. *See id.* In the FVRA, the "notwithstanding" clause in § 3345(a)(2) merely makes explicit what is already implicit. Even absent that clause, it would have been obvious that the President "may" appoint certain acting officials under the FVRA notwithstanding "mandatory" language providing that the first assistant "shall perform" those same duties.

## Principles of Statutory Construction

The Court is also guided by the operation of two principles of statutory construction in reaching its conclusion. The first is the harmonious-reading canon. "[I]f by any fair course of reasoning the two [statutes] can be reconciled, both shall stand." *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 622 (2011) (alterations in original) (quoting *Ludlow's Heirs v. Johnston*, 3 Ohio 553, 564 (1828)). Indeed, "when two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Howard v. Pritzker*, 775 F.3d 430, 437 (D.C. Cir. 2015) (quoting *J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*, 534 U.S. 124, 143-44 (2001) (internal quotation marks omitted)); *see also Ill. Nat'l Guard v. FLRA*, 854 F.2d 1396, 1405 (D.C. Cir. 1988) ("Faced, as we are, with two conflicting statutes, we must do our best to harmonize them."). As described above, these statutes are capable of co-existence, and the Court's interpretation renders each of them effective. Moreover, there is no clearly expressed congressional intent for Dodd-Frank to displace the President's authority under the FVRA. In fact, both the FVRA's exclusivity provision and Dodd-Frank's express-statement requirement strongly suggest the opposite.

The second, related principle is the presumption against implied repeals. English effectively seeks a partial repeal of the FVRA, which by its own terms authorizes the President to appoint an acting Director of the CFPB. Such "'repeals by implication are not favored' and will not be presumed unless the 'intention of the legislature to repeal [is] clear and manifest.'" *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 662 (2007) (alteration in original) (quoting *Watt v. Alaska*, 451 U.S. 259, 267 (1981)). They are not to be implied unless the later-enacted statute "expressly contradict[s] the original act" or such an inference "is absolutely necessary . . . in order that [the] words [of the later statute] shall have any meaning at

all." *Id.* (alterations in original) (quoting *Traynor v. Turnage*, 485 U.S. 535, 548 (1988)). "An implied repeal will only be found where provisions in two statutes are in irreconcilable conflict, or where the latter Act covers the whole subject of the earlier one and is clearly intended as a substitute." *Id.* at 663 (internal quotation marks omitted) (quoting *Branch v. Smith*, 538 U.S. 254, 273 (2003) (plurality opinion)). Again, as described above, the two statutes at issue are not irreconcilable, and the text of Dodd-Frank is devoid of any "clear and manifest" intention on the part of Congress to partially repeal the President's authority under the FVRA. Indeed, the FVRA's exclusivity provision and Dodd-Frank's express-statement requirement strongly suggest the opposite.

English argues that merely adding the CFPB Director as a specific exception to the FVRA's general rule does not constitute an implied repeal. Reply to Def. Opp. at 3. But as the Supreme Court has explained, she cannot avoid the presumption against implied repeals by relabeling a partial repeal in this manner. "It does not matter whether this alteration is characterized as an amendment or a partial repeal. Every amendment of a statute effects a partial repeal to the extent that the new statutory command displaces earlier, inconsistent commands, and we have repeatedly recognized that implied amendments are no more favored than implied repeals." *Nat'l Ass'n of Home Builders*, 551 U.S. at 664 n.8. "A new statute will not be read as wholly *or even partially* amending a prior one unless there exists a positive repugnancy between the provisions of the new and those of the old that cannot be reconciled." *Id.* (emphasis added) (quoting *Reg'l Rail Reorg. Act Cases*, 419 U.S. 102, 134 (1974)).

English advances additional arguments, based on other principles of statutory interpretation, why "shall" should be read as without qualification in this context. But they are all unpersuasive. She contends that this case is distinguished by the fact that the "shall" is

contained in one act of Congress and the "may" is contained in a separate law that is older and more general.  *See* Mot. at 9-10.  In support of this contention, she invokes two well-established canons of statutory construction: "recent enactments should be favored over older ones; and specific statutory provisions should prevail over general ones."  *Detweiler*, 38 F.3d at 594; *see* Mot. at 9-10.  The problem for English is that "[t]hese canons, whatever their combative power against a statute's plain meaning, are not appropriately invoked in this case; they apply only in the face of 'irreconcilably conflicting statutes.'" *Detweiler*, 38 F.3d at 594 (quoting *Watt*, 451 U.S. at 266).  Statutes are "irreconcilably conflicting where 'there is a positive repugnancy between them' or 'they cannot mutually coexist.'"  *Howard*, 775 F.3d at 437 (quoting *Radzanower v. Touche Ross & Co.,* 426 U.S. 148, 155 (1976)).  But, as explained above, the Dodd-Frank Act and the FVRA *can* be reconciled.

Moreover, even if there were an irreconcilable conflict, it is not clear that Dodd-Frank is more "specific" than the FVRA as applied to these facts.  Notwithstanding its application to a broad array of Executive agencies, the FVRA explicitly applies where a PAS office becomes "vacant" because the officer "resigns," 5 U.S.C. § 3345(a)—the precise scenario at issue here.  Thus, the FVRA is arguably more "specific" than Dodd-Frank with respect to the President's authority to appoint an acting official in the event of a vacancy due to resignation, even though Dodd-Frank is specific to the position of the CFPB's Deputy Director.

English also tries to draw a distinction between Dodd-Frank and other acting-official statutes with mandatory, but expressly qualified, language providing that one official "shall" serve "unless the President designates another officer" to do so.  Mot. at 11; *see, e.g.*, 42 U.S.C. § 902(b)(4) (Commissioner of Social Security).  She claims that the lack of such an express proviso in Dodd-Frank means the Court should not infer one.  Mot. at 11.  In support of this

26

claim, she relies on a plurality opinion stating that the presence of an express exception in one statute "tends to refute rather than support" the existence of such exceptions in other statutes. *Lukhard v. Reed*, 481 U.S. 368, 376 (1987) (plurality opinion). A careful examination of that case shows the infirmity of her argument.

The plaintiffs in *Lukhard* argued that personal-injury awards should not constitute "income" under a federal benefits statute, and pointed out that certain tax statutes expressly exclude such awards when defining income. *See id.* at 374-77. But as the plurality observed, the fact that Congress had found it necessary to exclude personal-injury awards from "income" in these tax statutes arguably implied that "income" in the federal benefits statute, which did not have such an exclusion, might include such awards. *Id.* at 376-77. The plurality, however, did not affirmatively rely on that point because, as its language ("tends to refute") suggests, any such inference would be a weak one. Rather, the plurality largely rested its analysis on the plain language of the federal benefits statute itself, and considered the tax statutes only when addressing plaintiffs' arguments. *See id.* at 375-76.

Concededly, the Deputy Director provision does not expressly authorize the President to appoint an acting Director. But it need not, because of the presumption against implied repeals. Unlike in *Lukhard*, the issue in this case is not whether to import an exception from one, inapplicable statute into another statute that does apply. Instead, the issue is whether Dodd-Frank displaces the FVRA's plain language. Only a "clear and manifest" legislative intent would suffice to do so. *Nat'l Ass'n of Home Builders*, 551 U.S. at 662 (quoting *Watt*, 451 U.S. at 267). And simply put, the inference that English advances by citing *Lukhard* is far too weak to meet that standard. Finally, turning from Dodd-Frank to the FVRA, the holding of *Lukhard* affirmatively works against English. *Lukhard* suggests that courts should hesitate to infer

unwritten exceptions. But English seeks to find such an unwritten exception in the FVRA (*i.e.*, that it does not apply to the CFPB Director), even though it already contains several express exclusions that remove certain officers from its coverage. *See* 5 U.S.C. § 3349c. Congress could easily have added the CFPB's Director to that list of exclusions, but it did not do so.

English also invokes the canon against superfluity, which provides that, "if possible, effect shall be given to every clause and part of a statute." *RadLAX Gateway Hotel, LLC v. Amalg. Bank*, 566 U.S. 639, 645 (2012) (quoting *D. Ginsberg & Sons, Inc. v. Popkin*, 285 U.S. 204, 208 (1932)); *see* Mot. at 9-10, 15. More specifically, English argues that the Deputy Director provision would be a "near nullity" if the FVRA applies, PI Hr'g Tr. at 26:21-27:3, because the FVRA already provides that the Deputy Director—as "first assistant" to the Director—automatically steps into his shoes, 5 U.S.C. § 3345(a)(1). But this canon does not help her here.

There are numerous functional differences between the CFPB's Deputy Director provision and the FVRA. For example, Dodd-Frank allows the Deputy Director to serve as acting Director in situations where the FVRA itself would not authorize such service. The FVRA imposes time limits on the service of the "first assistant," *see id.* § 3346, whereas Dodd-Frank does not expressly contain such time limits, *see* 12 U.S.C. § 5491(b)(5). Moreover, Dodd-Frank's use of the phrase "absence or unavailability," *id.*, permits the Deputy Director to serve as acting Director during temporary absences of the Director that the FVRA does not appear to cover. *See* 5 U.S.C. § 3345(a) (requiring that the official to be replaced be "unable to perform the functions and duties of the office"). Lastly, under the FVRA, a Deputy Director that holds that position for less than ninety days prior to a vacancy in the directorship, and who is then nominated by the President to that permanent post, cannot not accede to acting Director. 5

28

U.S.C. § 3345(b)(1). There is no express bar to such service under the Deputy Director provision in Dodd-Frank. For all these reasons, even if the FVRA is available to the President here, the Deputy Director provision is hardly a nullity.

Although the Court's analysis does not hinge on it, a final principle of statutory construction—the canon of constitutional avoidance— further confirms the conclusion that English's preferred construction of these statutes is not likely to succeed. "[T]he canon of constitutional avoidance requires that if one of two linguistically permissible interpretations raises 'serious constitutional problems' and the other does not, we are to choose the second unless it is 'plainly contrary to the intent of Congress.'" *United States v. Cano-Flores*, 796 F.3d 83, 94 (D.C. Cir. 2015) (quoting *Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Eng'rs*, 531 U.S. 159, 173 (2001)).

Under the Constitution, the President must "take care that the laws be faithfully executed," U.S. Const. art. II, § 3, across the entire Executive Branch—including "independent" agencies. *See Free Enter. Fund v. PCAOB*, 561 U.S. 477, 496-97 (2010). A "key means" of doing so is "the power of appointing, overseeing, and controlling those who execute the laws." *Id.* at 501 (quoting 1 Annals of Cong. 463 (1789) (J. Madison)).

But English's interpretation of Dodd-Frank potentially impairs the President's ability to fulfill his obligations under the Take Care Clause. Under English's theory, because Cordray installed her as Deputy Director, she must remain acting Director—no matter whom the President would prefer in that role—until a new permanent Director is appointed. As a practical matter, her claim to the position of acting Director assumes that the President may only remove the acting Director for cause. *See* PI Hr'g Tr. at 49:22-50:10. Thus, under English's reading, the CFPB's Director has unchecked authority to decide who will inherit the potent regulatory and

enforcement powers of that office, as well as the privilege of insulation from direct presidential control, in the event he resigns.  Such authority appears to lack any precedent, even among other independent agencies.  Indeed, at oral argument, English acknowledged that members of the Securities and Exchange Commission, for example, cannot name their successors in this fashion. *See* PI Hr'g Tr. at 53:9-11.[4]

The Supreme Court has, of course, allowed Congress to limit the President's ability to remove—and thus to control—the Executive Branch officials who lead independent agencies. *See Free Enter. Fund*, 561 U.S. at 483.  But the Court has blessed that practice in cases where the President had some say in appointing these officials to ensure that they are qualified to faithfully execute the laws of the United States.  *See id.*[5]  And in *Free Enterprise Fund*, the Supreme Court held that two layers of "for-cause" removal protection cannot stand between the President and other Executive Branch officers.  *See* 561 U.S. at 492.  Thus, in general, it appears

---

[4] English has asserted only one precedent for a position with such authority: the Director of the FHFA, which was established by the Housing and Economic Recovery Act of 2008, Pub. L. No. 110-289, 122 Stat. 2654 (2008).  *See* PI Hr'g Tr. at 53:1-21.  But that example is inapposite.  The FHFA statute—unlike Dodd-Frank's Deputy Director provision—gives the *President* the power to choose an acting Director from among the FHFA's three Deputy Directors (even if that choice is far more cabined than under the FVRA).  *See* 12 U.S.C. § 4512(f).  And a single example only two years older than Dodd-Frank does not provide meaningful comfort about any constitutional problems.  *Cf. Noel Canning v. NLRB*, 134 S. Ct. 2550, 2567 (2014) ("[W]hen considered against 200 years of settled practice, we regard these few scattered examples as anomalies.").  To the extent courts have considered the constitutionality of the FHFA provision, they have not had the occasion to examine its compatibility with the Take Care Clause.  *See, e.g.*, *FHFA v. UBS Americas Inc.*, 712 F.3d 136, 144 (2d Cir. 2013).

[5] One potential exception involves inferior officers appointed by "courts of law" pursuant to a grant of congressional authority.  *See Morrison v. Olson*, 487 U.S. 654, 673-77 (1988).  But *Morrison* suggested that such appointments would be inappropriate if made to independent agencies, like the CFPB, with subject-area expertise outside the realm of judicial experience. *See id.* at 676 n.13.  In any event, that exception has no relevance here, because Congress has not authorized a court of law to appoint the acting Director.  And it is very doubtful that the CFPB Director is an inferior officer.  *See Edmond v. United States*, 520 U.S. 651, 662-63 (1997); *Ass'n of Am. Railroads v. U.S. Dep't of Transp.*, 821 F.3d 19, 38-39 (D.C. Cir. 2016).

that officers who lead independent enforcement agencies and enjoy such removal protections cannot be appointed without the consent of either the President or another official who lacks those protections—and is therefore directly accountable to the President.

Under English's interpretation, however, Cordray could have named *anyone* the CFPB's Deputy Director, and the President would be virtually powerless to replace that person upon ascension to acting Director—no matter how unqualified that person might be. That alone threatens to undermine the President's ability to fulfill his Take Care Clause obligations. And this problem is compounded by another unique feature of the directorship of the CFPB: it is vested with unilateral, unchecked control over the CFPB's substantial regulatory and enforcement power. *See* 12 U.S.C. §§ 5491(b)(1), 5492(a); *PHH Corp. v. CFPB*, 839 F.3d 1, 12-17 (D.C. Cir. 2016), *vacated, reh'g en banc granted*, No. 15-1177 (D.C. Cir. Feb. 16, 2017). Almost all "independent" agencies with broad enforcement power are multi-member boards, where no single officer has such unchecked authority. *See PHH Corp.*, 839 F.3d at 17-22.

This potential imposition on the President's Take Care Clause responsibilities matters. The Constitution's separation of powers is not a mere abstract principle, but a practical measure that is "critical to preserving liberty." *Free Enter. Fund*, 561 U.S. at 501 (quoting *Bowsher v. Synar*, 478 U.S. 714, 730 (1986)). As the Supreme Court explained in *Free Enterprise Fund*, "the people do not vote for the 'Officers of the United States.'" *Id.* at 497-98 (quoting U.S. Const. art. II, § 2, cl. 2). They vote for the President. And the public must be able to hold the President accountable for his Take Care Clause responsibilities across the entire Executive Branch. *See id.* (citing The Federalist No. 70 (A. Hamilton)). This is especially true regarding an office like the CFPB Director's, which is vested with unilateral, unchecked authority to bring enforcement actions—a core executive power with direct implications for individual liberty.

31

Ultimately, the Court need not decide whether English's interpretation of Dodd-Frank comports with the Constitution. The Court notes only that it poses a serious constitutional problem, and that the canon of constitutional avoidance operates to confirm a conclusion—that the FVRA is available to the President—that would have otherwise been commanded by the text of the statutes and other principles of statutory construction.

### The Dodd-Frank Act's Structure

English also argues that the statutory scheme of Dodd-Frank, which undeniably created the CFPB as "an independent" bureau, requires that her interpretation of these statutes controls. Mot. at 12 (citing 12 U.S.C. § 5491(a)). But "[v]ague notions of a statute's 'basic purpose' are . . . inadequate to overcome the words of its text regarding the specific issue under consideration." *Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan*, 136 S. Ct. 651, 661 (2016) (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 261 (1993)). Thus, hosannas to the CFPB's independence cannot override the force of the statute's text, interpreted in light of the principles of statutory construction. *See United States ex rel. Totten v. Bombardier Corp.*, 380 F.3d 488, 495 (D.C. Cir. 2004) ("The task of statutory interpretation cannot be reduced to a mechanical choice in which the interpretation that would advance the statute's general purposes to a greater extent must always prevail . . . ."). Moreover, the very same statutory provision she cites goes on to state that "all Federal laws dealing with . . . officers . . . shall apply to the exercise of the powers of the Bureau." 12 U.S.C. § 5491(a). As discussed above, the FVRA is a federal law dealing with officers. *See* 5 U.S.C. § 3345 (entitled "Acting officer"). Thus, even the specific provision on which English relies does not work in her favor.

In any event, the CFPB's independence hardly turns on English's preferred statutory construction of the Deputy Director provision in Dodd-Frank. Whether English or Mulvaney is

32

entitled to be acting Director, the CFPB remains part of the Federal Reserve System.  12 U.S.C. § 5491(a).  Its new Director, once appointed by the President and confirmed by the Senate, will have for-cause removal protections (subject to the outcome of pending litigation about the constitutionality of those protections).  *See id.* § 5491(b)(2); *supra* note 1.  The CFPB will continue to receive funding from the Federal Reserve, instead of Congress.  *See id.* § 5497(a).  And the bar on other Executive Branch officers exercising control over the CFPB's communications with Congress about potential legislation will remain in place.  *See id.* § 5492(c)(4).  Finally, it is worth noting that, to the extent that Mulvaney's appointment as acting Director under the FVRA impacts the CFPB's independence, the duration of his appointment— unlike English's under Dodd-Frank—is time-limited.  *See* 5 U.S.C. § 3346.

English also contends that her independent-structure argument "is reinforced by the Senate's advice and consent power."  Mot. at 12.  According to English, if the President can appoint an acting Director through the FVRA, then the CFPB could be headed "by an Acting Director hand-picked by the President without the check of Senate confirmation."  *Id.*  Of course, there is nothing unusual about this—it is precisely what happens whenever a President chooses to name an acting officer under the FVRA.  More importantly, free-standing principles about the Senate's advice and consent power say nothing about the Dodd-Frank Act's specific statutory scheme.  In fact, it is the FVRA that vindicates the Senate's advice and consent power here, at least to some extent, by limiting the pool of candidates from which the President may select an acting Director under § 3345(a)(2) to those who have already been confirmed to a PAS office.  Mulvaney has been confirmed by the Senate to such an office: Director of OMB.  163 Cong. Rec. S1313 (daily ed. Feb. 16, 2017).  In contrast, the appointment mechanism in the CFPB's Deputy Director provision involves no role for the Senate in the selection of the acting Director.

English also attempts to enlist the scant legislative history to her cause, but it is of little use.  "[L]egislative history is . . . often murky, ambiguous, and contradictory."  *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005).  In fact, "[j]udicial investigation of legislative history has a tendency to become, to borrow Judge Leventhal's memorable phrase, an exercise in 'looking over a crowd and picking out your friends.'"  *Id.* (citation omitted).  "[T]he authoritative statement is the statutory text, not the legislative history or any other extrinsic material.  Extrinsic materials have a role in statutory interpretation only to the extent they shed a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms."  *Id.*  Legislative history must be "anchored" to the statutory text in order to shed light on it.  *Shannon v. United States*, 512 U.S. 573, 583 (1994).

English cites a Senate Committee Report that discusses an earlier version of the FVRA, as well as a Senator's floor statement, to suggest that the purpose of the FVRA is to preserve the Senate's advice and consent power.  Mot. at 8-9; *see* S. Rep. No. 105-250, 1998 WL 404532, at *5 (1998); 144 Cong. Rec. 12,431-32 (1998) (statement of Sen. Thompson).  As a result, she argues, it "must be strictly construed," so as not to apply to the circumstances here.  Mot. at 8.

Putting aside the question of the value of these forms of legislative history generally, the point for which English cites them is a banal one that does not help her cause.  It seems clear that the purpose of the FVRA was to protect the Senate's interests in the confirmation process.  *See SW Gen.*, 137 S. Ct. at 936.  But English offers no logic or precedent to explain why it follows that the FVRA must be "strictly construed."  Mot. at 8.  In fact, as noted above, interpreting the FVRA as available to the President under these circumstances, where his choice for acting Director is a PAS officer, at least somewhat fortifies the role of the Senate.  Reading it as displaced by Dodd-Frank leaves the Senate with no role whatsoever in approving an acting

34

Director.  Such a construction would hardly seem to "reinforce Congress's constitutional prerogatives."  Mot. at 9 (citing *SW Gen.*, 137 S. Ct. at 935-36).

English also argues that the legislative history of the Dodd-Frank Act supports her view. Mot. at 11-12.  She points out that an earlier version of Dodd-Frank provided only for a Director position (and not a Deputy Director), and stated that in the event of a "[v]acancy or during the absence of the Director" an acting Director "shall be appointed in the manner provided" by the FVRA.  *See* H.R. 4173, 111th Cong. § 4102(b)(6)(B)(i) (engrossed version, Dec. 11, 2009).  In contrast, the enacted law creates a Deputy Director position and provides that he or she "shall . . . serve as acting Director in the absence or unavailability of the Director."  12 U.S.C. § 5491(b)(5).

English argues that the omission of a reference to the FVRA in the enacted version of Dodd-Frank suggests that Congress considered—and rejected—its continued availability to the President here.  But this omission, without any explanation, is insufficient evidence to establish that Congress intended to supplant, not supplement, the FVRA.  *See Cheney R.R. Co. v. ICC*, 902 F.2d 66, 69 (D.C. Cir. 1990) (concluding that the omission of a legislative provision that "dropped out, without explanation, in the final version" of a bill had no interpretive value); *see also Trailmobile Co. v. Whirls*, 331 U.S. 40, 61 (1947) ("[T]he most important committee changes relied upon were made without explanation.  The interpretation of statutes cannot safely be made to rest upon mute intermediate legislative maneuvers." (footnote omitted)).

In fact, Congress may have decided to create a Deputy Director position in the final bill for any number of reasons.  The fact that an earlier draft bill contained language explicitly referring to a "vacancy" to be filled by the FVRA that was removed in the final version demonstrates that this legislative history does not clearly cut in English's favor.  It could show

that Congress understood Dodd-Frank's express-statement requirement as sufficient to invoke the FVRA in this context, chose not to exempt the CFPB from the FVRA, and chose not to have the Deputy Director serve in the event of a vacancy resulting from a resignation except as provided in the FVRA. Ultimately, "[e]ven if [the Court] were inclined to look to legislative history for guidance in this case, there is little that is useful here." *Pub. Citizen, Inc. v. Rubber Mfrs. Ass'n*, 533 F.3d 810, 818 (D.C. Cir. 2008).

In light of all of the above, the Court concludes that English is not likely to succeed on the merits of her claim that Dodd-Frank's Deputy Director provision displaces the President's ability to name an acting Director of the CFPB pursuant to the FVRA. Based on the entire text of both statutes and relevant principles of statutory construction, their best reading is that the FVRA remains available to the President here.

### 2. The President's Ability to Appoint Mulvaney as the CFPB's Acting Director

In the alternative, English argues that even if the FVRA generally permits the President to appoint an acting Director of the CFPB, the appointment of Mulvaney in particular is unlawful because the Dodd-Frank Act established an "independent" CFPB, and Mulvaney is a "White House staffer" who continues to serve as the Director of OMB. Mot. at 19-22. This argument is completely without support in the text of Dodd-Frank, and the Court declines to create such a restriction out of whole cloth. Simply put, Dodd-Frank does not prohibit the Director of OMB from also serving as the acting Director of the CFPB.

Dodd-Frank states that "[t]here is established in the Federal Reserve System, an independent bureau to be known as the [CFPB], which shall regulate the offering and provision of consumer financial products or services under the Federal consumer financial laws." 12 U.S.C. § 5491(a). English argues that appointing "a still-serving White House staffer to lead the

<center>36</center>

CFPB is a blatant violation of Congress's mandate that the agency be 'independent.'" Mot. at 21. But the term "independent bureau," without more, says nothing about who can serve as the CFPB's acting Director.

Even assuming the benefits of Congress having given financial regulatory agencies significant independence, *see* Mot. at 20, the Court must "apply the statute as it is written—even if . . . some other approach might accord with good policy." *Loving*, 742 F.3d at 1022 (quoting *Burrage*, 134 S. Ct. at 892). As explained above, the CFPB is, of course, independent in the many specific ways that Dodd-Frank dictates. But the Court may not invent new atextual ways for it to be independent. *See Milner v. Dep't of Navy*, 562 U.S. 562, 573 (2011) (rejecting interpretation that suffers from the "patent flaw" of being "disconnected from" the text of the statute); *District of Columbia v. Dep't of Labor*, 819 F.3d 444, 454 (D.C. Cir. 2016) ("We are unwilling to green-light such a massive, atextual, and ahistorical expansion of the Davis-Bacon Act."); *Loving*, 742 F.3d at 1022 ("The IRS may not unilaterally expand its authority through such an expansive, atextual, and ahistorical reading of Section 330."); *U.S. Dep't of the Treasury IRS Office of Chief Counsel Wash. D.C. v. FLRA*, 739 F.3d 13, 20 (D.C. Cir. 2014) ("[W]hatever the validity of the Authority's policy rationale, it has failed to justify its atextual construction of section 7106(b)(3).").

This conclusion is reinforced by the fact that Dodd-Frank *does* speak to the limitations on who can serve as acting Director. Section 5491(d), entitled "Service restriction," provides that "[n]o Director or Deputy Director may hold any office, position, or employment in any Federal reserve bank, Federal home loan bank, covered person, or service provider during the period of service of such person as Director or Deputy Director." 12 U.S.C. § 5491(d). Thus, when drafting Dodd-Frank, Congress considered restrictions on who could serve as the Director and

Deputy Director. The fact that it did not include "still-serving White House staffers," as English characterizes Mulvaney, Mot. at 19, makes all the more clear that the Court is not at liberty to read a new exception into the statute. *See United States v. Johnson*, 529 U.S. 53, 58 (2000) ("When Congress provides exceptions in a statute, it does not follow that courts have authority to create others."); *Detweiler*, 38 F.3d at 594 ("Where a statute contains explicit exceptions, the courts are reluctant to find other implicit exceptions.").

English also argues that appointment of Mulvaney would be particularly inappropriate because the CFPB and the FDIC are intended to be independent from OMB. Mot. at 21-22. But again, the statutory provisions she points to compel no such conclusion. Dodd-Frank merely states that (1) the CFPB director "shall provide" the OMB Director copies of the Bureau's financial operating plans, forecasts, and quarterly reports, 12 U.S.C. § 5497(a)(4)(A); and (2) this requirement shall not be construed as an "obligation" to consult with or obtain approval from the OMB Director for "any report, plan, forecast . . . or any jurisdiction or oversight over the affairs or operations of the Bureau," *id* § 5497(a)(4)(E). Similarly, the laws governing the FDIC disclaim any consultation obligation. *Id.* § 1827(c)(3). The fact that the CFPB Director is required to provide financial information to the OMB Director and need not, but apparently still can, consult with him or her hardly creates a "wall of separation" between the CFPB and OMB. Mot. at 22. More importantly, these statutes say nothing about who can serve as acting Director of the CFPB. Again, the Court declines to read such a limitation into the text.

In summary, there is nothing in Dodd-Frank's text that disqualifies Mulvaney from serving as the CFPB's acting Director under 5 U.S.C. § 3345(a)(2) on the basis of his service as OMB Director. To the contrary, Mulvaney was a valid selection for the President under the FVRA *because* he was previously confirmed by the Senate to serve in that role. 163 Cong. Rec.

S1313 (daily ed. Feb. 16, 2017).  Therefore, the Court cannot conclude that English is likely to

prevail on this alternative argument, either.  For all the reasons described above, the Court

concludes that English is not likely to succeed on the merits.[6]  This is, standing alone, sufficient

to deny her motion.  *See Standing Rock*, 205 F. Supp. 3d at 26 (citing *Ark. Dairy,* 573 F.3d at

832).  Nonetheless, the Court proceeds to analyze the remaining factors below.

### B.    Irreparable Harm

The irreparable injury requirement sets a "very high bar" for a movant seeking a

preliminary injunction.  *Coal. for Common Sense in Gov't Procurement v. United States*, 576 F.

Supp. 2d 162, 168 (D.D.C. 2008); *see also Save Jobs USA v. U.S. Dep't of Homeland Sec*., 105

F. Supp. 3d 108, 112 (D.D.C. 2015).  To be entitled to such relief, a plaintiff must show injury

that is "certain, great, actual, and imminent."  *Mylan Labs. Ltd. v. FDA*, 910 F. Supp. 2d 299,

313 (D.D.C. 2012) (citing *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)).  Indeed,

the moving party must show that the purported injury "is of such imminence that there is a 'clear

and present' need for equitable relief to prevent irreparable harm."  *Chaplaincy*, 454 F.3d at 297

(emphasis omitted) (quoting *Wis. Gas Co.*, 758 F.2d at 674).  And the harm must be "beyond

remediation."  *Id.*  The availability of "adequate compensatory or other corrective relief . . .  in

the ordinary course of litigation weighs heavily against a claim of irreparable harm."  *Guttenberg*

*v. Emery*, 26 F. Supp. 3d 88, 102 (D.D.C. 2014) (quoting *Wis. Gas Co.*, 758 F.2d at 674).

---

[6] Defendants also argue that English fails to assert a valid cause of action.  Def. Opp. at 31-32.
In doing so, they rely on D.C. Circuit cases discussing the "de facto officer" doctrine.
Traditionally, that doctrine has held that courts could hear only "direct" attacks on a public
officer's appointment, and that such attacks could be brought only by seeking a "writ of quo
warranto," a common law remedy that remains codified under D.C. Code §§ 16-3501 to 16-
3548.  *See SW Gen.*, 796 F.3d at 81.  The Court need not decide whether English has failed to
state a claim on these grounds, because she is not likely to succeed on the merits.

For purposes of the irreparable harm analysis, English argues that *Chaplaincy* requires this Court to "assume[], without deciding, that the movant has demonstrated a likelihood that the non-movant's conduct violates the law," and examine only "whether that violation, if true, inflicts irremediable injury." *Chaplaincy,* 454 F.3d at 303; Mot. at 25. But it is not at all clear that this language controls the Court's decision here. Defendants argue that it should be understood as limited to that case, or at least to the Establishment Clause context. *See* PI Hr'g Tr. at 69:2-10. Indeed, even after *Chaplaincy*, courts have held that the presence of irreparable harm can depend on whether the movant is likely to succeed on the merits. *See, e.g.*, *Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.*, No. 17-2554 (ABJ), 2017 WL 6314142, at *19 (D.D.C. Dec. 8, 2017) ("[Plaintiff's] . . . irreparable harm argument rises and falls with its merits arguments. Since the Court has concluded that plaintiff's constitutional and statutory rights have not been violated, plaintiff has failed to demonstrate that it would suffer irreparable harm in the absence of relief."); *Pulphus v. Ayers*, 249 F. Supp. 3d 238, 254 (D.D.C. 2017); *Judicial Watch, Inc. v. Dep't of Commerce*, 501 F. Supp. 2d 83, 90-91 (D.D.C. 2007). Given that English has not demonstrated a likelihood of success on the merits, this approach would doom her irreparable harm argument from the start. Nonetheless, even if the Court must assume that she is correct on the merits under *Chaplaincy*, she cannot show irreparable harm.

English does not ground her claim of irreparable harm in the line of cases that describe the contours of such harm in typical employment cases, nor could she. The Supreme Court has held that only in a "genuinely extraordinary situation" will loss of a job constitute an irreparable injury. *Sampson*, 415 U.S. at 92 n.68; *see also Farris v. Rice*, 453 F. Supp. 2d 76, 79 (D.D.C. 2006) ("[C]ases are legion holding that loss of employment does not constitute irreparable injury.") (collecting cases). That is particularly true in cases involving government employment.

*Sampson*, 415 U.S. at 84 ("[Plaintiff] at the very least must make a showing of irreparable injury sufficient in kind and degree to override these factors cutting against the general availability of preliminary injunctions in Government personnel cases."). A loss of income or reputational damage "falls far short" of being such a situation. *Id.* at 91.

Nevertheless, "cases may arise in which the circumstances surrounding an employee's discharge, together with the resultant effect on the employee, may so far depart from the normal situation that irreparable injury might be found." *Id.* at 92 n.68. But this is not such a case. English has not alleged that she is likely to be discharged from her job as the CFPB's Deputy Director, and during Mulvaney's press roundtable in December, he stated that he was not considering terminating her. *See* ECF No. 41-5 at 5. Indeed, it is telling that English submitted a declaration in support of her motion, but she includes no factual allegations about any harm that she has suffered as a result of the events at issue here. *See* English Decl.

Instead, English bases her alleged injury solely on "the loss of a 'statutory right to function' in a position directly related to a federal agency's 'ability to fulfill its mandate.'" Mot. at 26 (quoting *Berry v. Reagan*, No. 83-3182, 1983 WL 538, at *5 (D.D.C. Nov. 14, 1983)). In *Berry*, President Carter had appointed the plaintiffs, with the advice and consent of the Senate, to the Commission on Civil Rights. 1983 WL 538, at *1. By statute, that body did not have a fixed term for members; it expired 60 days after the date established for submission of its final report, September 30, 1983—a deadline the commission apparently did not meet, leaving it scrambling to finish the report before it dissolved on November 29. *Id.* at *1 & n.1, *5. President Reagan fired the plaintiffs before the commission submitted its report, and they brought suit. *Id.* at *1. After concluding the plaintiffs were likely to succeed on the merits, the *Berry* court found that they had established irreparable injury to "their statutory right to function as Commissioners,"

41

reasoning that "[t]he irreparable nature of this injury is evident by the obviously disruptive effect the *denial* of preliminary relief will likely have on the Commission's final activities" and that "the Commission's ability to fulfill its mandate is disrupted by plaintiffs['] removal for the Commission is left without a quorum." *Id.* at \*5 (emphasis in original). But even *Berry*, a case that is not binding on this Court, does not provide English a basis to argue that she will likely suffer irreparable harm here.

First, the court in *Berry* appears to have considered alleged injury to the commission as one and the same as alleged injury to the plaintiff commissioners. But in that case, denial of the plaintiffs' requested injunction would have shut down the commission without it having fulfilled its mandate by issuing its final report. Even assuming she is likely to succeed on the merits, English and the CFPB are not similarly situated here. The CFPB is not and will not be shuttered; it continues to operate with Mulvaney functioning as acting Director. Moreover, Mulvaney is doing so with the backing of the CFPB's General Counsel and senior management. No doubt, there could be harm suffered by the CFPB or by other parties if it is later determined that Mulvaney has not been lawfully the acting Director since November 25. But English must demonstrate the likelihood of irreparable harm *to her* if an injunction does not issue. And here— again, even assuming for argument's sake that she is likely to succeed on the merits—it does not appear that she would suffer any irreparable harm if the Court does not grant an injunction. Certainly, she has utterly failed to describe any such harm. Mot. at 24-25.

Second, in *Berry,* absent an injunction, any harm suffered by the commissioners was plainly irreparable because the commission would have expired and they could not have been reinstated to it. Here, to the extent that she argues that she suffers harm solely from not functioning as the acting Director, her argument cannot succeed because any such harm can be

remediated in the ordinary course of this case. English argues that this harm "will soon be entirely beyond remedy" because the position of acting Director "will expire when the President nominates and the Senate confirms a new Director for the CFPB." Mot. at 26. She goes on to assert that a traditional damages remedy or declaratory judgment ceases to be an adequate remedy "[o]nce a new Director is appointed." *Id.* But it is entirely speculative how long it could take for the President to nominate and the Senate to confirm a permanent CFPB Director. As such, her claim that she is entitled to be acting Director, standing alone, is not "of such imminence that there is a 'clear and present' need for equitable relief to prevent irreparable harm." *Chaplaincy*, 454 F.3d at 297 (emphasis omitted); *see Davis v. Billington*, 76 F. Supp. 3d 59, 65 (D.D.C. 2014) ("The plaintiff fails to meet this high standard as he has no concrete proof that the vacancy . . . will not be available when this matter is ultimately resolved.").

Third, in *Berry*, the plaintiffs were attempting to preserve a status quo in which they had a "statutory right to function as Commissioners" after they were appointed by President Carter, with the advice and consent of the Senate, pursuant to the authorizing statute of the Commission. 1983 WL 538, at *1. In contrast, there was never a time here in which English functioned as the CFPB's acting Director. This fact affects both the injunctive relief she is seeking, and the harm that she can argue would flow from the absence of such relief.

English claims to be seeking only a prohibitive injunction that preserves the status quo. *See* PI Hr'g Tr. at 7:21-8:16. Her request for injunctive relief seeks only to restrain the President from appointing an acting Director other than her, require the President to withdraw Mulvaney's appointment, and prohibit Mulvaney from serving as acting Director. *See* ECF No. 23 at 2; Mot. at 3. Even assuming English is likely to succeed on the merits, then, she would only be entitled to relief that would preserve the "last uncontested status which preceded the pending

43

controversy." *See District 50, United Mine Workers of Am. v. Int'l Union, United Mine Workers of Am.*, 412 F.2d 165, 168 (D.C. Cir. 1969). During the last uncontested status in this case, she was the CFPB's Deputy Director. She was never the CFPB's uncontested acting Director. So to the extent that her argument depends on irreparable harm suffered by her, absent an injunction, from loss of a "statutory right to function" as acting Director, it fails because she would not be entitled to that position even if the Court granted her an injunction. Indeed, injunctions generally "should not work to give a party essentially the full relief [sought] on the merits," which is what an injunction permitting English to accede to acting Director would do. *Singh*, 185 F. Supp. 3d at 17 (quoting *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 n.13 (D.C. Cir. 1969)).

English's inability to demonstrate that she is likely to suffer irreparable harm, regardless of her likelihood of success on the merits, is also a sufficient basis to deny her motion. *See, e.g.*, *Human Touch DC, Inc. v. Merriweather*, No. 15-741 (APM), 2015 WL 12564162, at *2 (D.D.C. May 18, 2015) (citing *CityFed Fin. Corp. v. OTS*, 58 F.3d 738, 747) (D.C. Cir. 1995)); *Sataki v. Broad. Bd. of Gov'rs*, 733 F. Supp. 2d 22, 48 (D.D.C. 2010). In any event, even if English has shown some irreparable injury, it does not outweigh the other preliminary injunction factors, each of which tips in Defendants' favor. *See, e.g.*, *Winter*, 555 U.S. at 23; *Hamdan v. Gates*, 565 F. Supp. 2d 130, 137 (D.D.C. 2008); *Bradshaw v. Veneman*, 338 F. Supp. 2d 139, 144 (D.D.C. 2004).

### C.      The Balance of the Equities and the Public Interest

Finally, in determining whether to grant a preliminary injunction, "courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (internal quotation marks omitted) (quoting *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987)). "In exercising their sound discretion, courts . . . should [also] pay particular regard for the public consequences in

44

employing the extraordinary remedy of injunction." *Id.* (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)). These considerations merge into the same factor when the government is the non-movant. *Nken*, 556 U.S. at 435; *see also Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016) (the government's "harm and the public interest are one and the same, because the government's interest *is* the public interest") (emphasis in original).

As explained above, English's theory of harm—loss of her "statutory right to function"—fails to establish that she will suffer irreparable injury absent injunctive relief. Because she does not face irreparable injury, English cannot, of course, show that the "competing claims of injury" tip in her favor. But even if the Court fully accepted her "statutory right to function" theory of harm, the balance of the equities still would not favor her. That is because Mulvaney could claim precisely the same harm: his own competing statutory right to serve as acting Director of the CFPB. So even in that case, because the Court has determined that English is not likely to succeed on the merits, the balance of the equities would necessarily weigh against granting her an injunction.

In addition, both English and Defendants cite the need for clarity, both for the CFPB's sake and for that of the parties affected by its regulatory and enforcement activities. *See* Mot. at 26-28; Def. Opp. at 40. There is little question that there is a public interest in clarity here, but it is hard to see how granting English an injunction would bring about more of it. "[T]he Government has traditionally been granted the widest latitude in the 'dispatch of its own internal affairs.'" *Sampson*, 415 U.S. at 83 (quoting *Cafeteria & Rest. Workers Union, Local 473 v. McElroy*, 367 U.S. 886, 896 (1961)). The President has designated Mulvaney the CFPB's acting Director, the CFPB has recognized him as the acting Director, and it is operating with him as the

acting Director.  Granting English an injunction would not bring about more clarity; it would only serve to muddy the waters.  Therefore, the balance of the equities and the public interest weigh against the injunction.

## V.    Conclusion and Order

For all of the above reasons, English's Motion for a Preliminary Injunction is **DENIED**.


### SO ORDERED.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: January 10, 2018